ORAL ARGUMENT NOT YET SCHEDULED
No. 23-5280

# In The United States Court Of Appeals
# For The District Of Columbia Circuit

·········································· ❋ ··········································

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

v.

FACEBOOK, INC.,

a corporation,
*Defendant-Appellant.*

·········································· ❋ ··········································

**EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**
·········································· ❋ ··········································
ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA NO. 1:19-CV-02184-TJK
·········································· ❋ ··········································

Paul J. Nathanson
DAVIS POLK & WARDWELL LLP
901 15th Street, NW
Washington, DC 20005
Tel: (202) 962-7000
paul.nathanson@davispolk.com

James P. Rouhandeh
Michael Scheinkman
David B. Toscano
Marc J. Tobak
John A. Atchley III
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com
david.toscano@davispolk.com
marc.tobak@davispolk.com
john.atchley@davispolk.com

*Counsel for Defendant-Appellant Meta Platforms, Inc.*

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ....................................................................................1

BACKGROUND ......................................................................................4

    A.    In 2019, the FTC Commences a Federal Court Action.........................4

    B.    The Parties Agree to a Stipulated Order Incorporating
        Attachment A ...............................................................................5

    C.    The District Court Enters the Stipulated Order Including
        Attachment A ...............................................................................6

    D.    Meta Invests in Complying with the Stipulated Order .........................8

    E.    The FTC Seeks to Rewrite the Stipulated Order.................................8

    F.    The District Court's November 27 Decision and Instant Appeal .........9

ARGUMENT ..........................................................................................9

I.    Meta Is Likely to Prevail on the Merits and Has, at a Minimum,
    Presented "Serious Legal Questions" for Appeal..........................................11

    A.    The Ruling Below Contradicts Controlling Authority.......................11

    B.    Under the District Court's Ruling, Attachment A Violates the
        FTC Act. ....................................................................................16

II.    Meta Will Suffer Irreparable Harm If the OTSC Proceeding Is Not
    Enjoined Pending Appeal ...............................................................................17

III.    The Balance of Equities and Public Interest Favor an Injunction
    Pending Appeal.............................................................................................20

CONCLUSION ......................................................................................21

CERTIFICATE OF COMPLIANCE.......................................................23

CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND
RELATED CASES ...................................................................................24

    A.    Parties and Amici ..................................................................24

    B.    Rulings Under Review .......................................................25

    C.    Related Cases ......................................................................25

    D.    Corporate Disclosure Statement.........................................25

CERTIFICATE OF SERVICE .................................................................27

ADDENDUM

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Alpine Sec. Corp. v. FINRA*, 2023 WL 4703307 (D.C. Cir. July 5, 2023)......... 9, 21

*Atlantic Marine Const. Co. v. U.S. Dist. Court for Western District of Texas*,
    571 U.S. 49 (2013) ............................................................................ 20

*Axon Enter., Inc. v. FTC*, 986 F.3d 1173 (9th Cir. 2021), *rev'd*,
    598 U.S. 175 (2023) ........................................................................... 19

*Bd. of Trs. of Hotel & Rest. Emps. Loc. 25 v. Madison Hotel, Inc.*,
    97 F.3d 1479 (D.C. Cir. 1996) ..................................................... 2, 12

*Ciena Corp. v. Nortel Networks Inc.*, 2005 WL 1189881
    (E.D. Tex. May 19, 2005) ................................................................. 19

*Comm. on Judiciary of U.S. House of Reps. v. Miers*, 542 F.3d 909
    (D.C. Cir. 2008) ................................................................................ 10

*Commonwealth v. Beshear*, 981 F.3d 505 (6th Cir. 2020) ................................... 11

*Dodocase VR, Inc. v. MerchSource, LLC*, 2018 WL 1475289
    (N.D. Cal. Mar. 26, 2018) ................................................................. 18

*Facebook, Inc. v. Brandtotal, Ltd.*, 2021 WL 2354751
    (N.D. Cal. June 9, 2021) ................................................................... 14

*FDIC v. Bank of New York*, 479 F. Supp. 2d 1 (D.D.C. 2007), *aff'd* 508 F.3d 1
    (D.C. Cir. 2007) ................................................................................ 18

*Fed. Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981)......................................... 20

*Flanagan v. Arnaiz*, 143 F.3d 540 (9th Cir. 1998) ............................................... 11

*FTC v. Cement Inst.*, 333 U.S. 683 (1948) ........................................................... 15

*FTC v. Owens-Corning Fiberglas Corp.*, 853 F.2d 458 (6th Cir. 1988)............... 17

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355
    (Fed. Cir. 2011) ................................................................... 17–18, 20

*Homans v. City of Albuquerque*, 264 F.3d 1240 (10th Cir. 2001) ........................ 10

*JW Gaming Dev., LLC v. James*, 544 F. Supp. 3d. 903 (N.D. Cal. 2021) ............ 19

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) .............. 3, 12–13

*League of Women Voters v. Newby*, 838 F.3d 1 (D.C. Cir. 2016).......................... 21

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) ............. 15–16

*Murray v. Charleston*, 96 U.S. 432 (1878) ............................................................ 16

*Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021) .................................................... 21

*Ohana v. Acad. Express, LLC*, 2022 WL 2952400 (D.D.C. July 26, 2022) ......... 15

*Richardson v. Edwards*, 127 F.3d 97 (D.C. Cir. 1997) ................................... 11, 13

*Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011) .................................................. 9

*Sofinet v. INS*, 188 F.3d 703, 706–07 (7th Cir. 1999) .....................................10–11

*TGP Commc'ns, LLC v. Sellers*, 2022 WL 17484331 (9th Cir. Dec. 5, 2022) ..... 10

*Thomas v. Albright*, 77 F. Supp.2d 114 (D.D.C. 1999), *aff'd sub nom. Thomas v. Powell*, 247 F.3d 260 (D.C. Cir. 2001) ............................................................. 18

*United States v. Microsoft Corp.*, 56 F.3d 1448 (D.C. Cir. 1995) ........................ 14

*United States v. Volvo Powertrain Corp.*, 758 F.3d 330 (D.C. Cir. 2014) ........ 2, 13

## Statutes & Rules

16 C.F.R. § 3.72(b) ................................................................................................. 18

Fed. R. App. P. 8(a)(2)(A)(i) .................................................................................. 10

FTC Act § 5, 15 U.S.C. § 45..................................................................................... 4

FTC Act § 5(b), 15 U.S.C. § 45(b) ......................................................................... 16

FTC Act § 5(*l*), 15 U.S.C. § 45(*l*) .............................................................. 4, 5, 16, 17

FTC Act § 13(b), 15 U.S.C. § 53(b) ......................................................... 4, 5, 16, 17

## Other Authorities

11 Williston on Contracts § 30:25 (4th ed.)......................................................14–15

Restatement (Second) of Contracts § 132 (Am. L. Inst. 1981) ............................. 14

# INTRODUCTION

Absent relief before December 11, Meta must respond to a May 3, 2023 FTC Order to Show Cause ("OTSC") that reopens an administrative proceeding (the "OTSC Proceedings") in which the FTC proposes to unilaterally rewrite Meta's settlement with the FTC.[1]  Meta requests an emergency injunction staying the OTSC Proceedings and preserving the status quo while this Court considers Meta's appeal of the District Court's decision.

On April 23, 2020, the District Court entered a Stipulated Order effectuating Meta's settlement with the FTC.  Pursuant to the parties' agreement, the District Court ordered Meta to pay what the FTC touted as a record-setting $5 billion penalty and imposed on Meta an extensively negotiated injunction.  The District Court stated in its opinion approving the Stipulated Order that it was imposing the injunctive relief set forth in Attachment A to that order and retaining jurisdiction. The FTC and Meta had expressly and unambiguously urged the District Court to order the injunctive relief set forth in Attachment A and agreed to the retention of jurisdiction by the District Court.

Contrary to this clear record, the District Court ceded its jurisdiction to the FTC—ruling on November 27, 2023 that its jurisdiction over the Stipulated Order does not include Attachment A.  That ruling conflicts not only with the District

---

[1] A528.

Court's own prior rulings and the agreement of the parties, but with binding authority from the Supreme Court and this Court.  The District Court concluded that "the obligations imposed on Defendant reflected in [Attachment A] were not ordered by the Court or made part of the Stipulated Order—they were imposed later, when the FTC issued its 2020 administrative order."[2]  This ruling ignores the District Court's prior decision—and briefing from both parties— saying precisely the opposite.  Circuit precedent requires courts to interpret consent decrees by asking what a "reasonable person in the position of the parties would have thought the language meant."[3]  The decision below erred by ignoring these critical statements that unambiguously answer that very question.  As a result, the District Court allowed a federal agency to usurp the exclusive jurisdiction of an Article III court.

Under controlling authority, a district court retains jurisdiction over a consent decree if litigants *either* (1) expressly provide for such retention; or (2) incorporate the full text of their settlement into a stipulated order.[4]  Here the parties did **both**—providing for the retention of jurisdiction over the Stipulated Order and, to avoid any doubt, attaching the "full text" of Attachment A to the Stipulated

---

[2] A536.

[3] *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 339 (D.C. Cir. 2014).

[4] *Bd. of Trustees of Hotel & Rest. Emps. Loc. 25 v. Madison Hotel, Inc.*, 97 F.3d 1479, 1486 n.8 (D.C. Cir. 1996).

Order, which was filed on the docket as a single document.  The decision errs in misplaced reliance on a case—*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)—in which the parties did ***neither***.

The District Court also erred when it allowed the FTC to breach the parties' agreement by unilaterally rewriting those injunctive terms.  As the District Court and the FTC would have it, Meta did not "buy peace," but instead irrationally agreed to a settlement that allows the FTC to add mandatory injunctive requirements at will and in perpetuity.  That interpretation of the consent decree defies its plain language, structure, context, and common sense.  It also improperly breaks apart a document negotiated in a single settlement into two separate parts— one of which (Attachment A) could be unilaterally rewritten by one party.  And that party (the FTC) would be able to do so without being put to its burden of proof before the federal court that approved the settlement.

The FTC should be enjoined from moving forward, and the status quo maintained, while this Court considers what the District Court itself described as "complex and significant issues raised" in this appeal.  (A008.)  Meta will otherwise be irreparably harmed.  It will be deprived of the Article III court adjudication of any alleged breach of the Stipulated Order for which it bargained and forced to relitigate a matter resolved by final order without basic due process rights.  Absent an injunction Meta will be deprived of the full benefit of its

appellate rights because the OTSC Proceeding will move forward prior to this Court reaching the merits of Meta's appeal.

The balance of equities and public interest weigh heavily in favor of an injunction. The OTSC is premised on a July 2021 assessment of Meta's Privacy Program predating the OTSC by nearly two years. This belies any claim that the FTC would suffer meaningful harm from any delay pending appeal. Meta agreed to give up important rights in consenting to the sweeping injunctive relief imposed by the District Court and reflected in the Stipulated Order. The FTC has itself acknowledged that it could not have obtained such relief if Meta had not agreed to it—on the condition that the relief ordered by the District Court would be final and enforced by the District Court. The public interest is best served by holding the FTC to the terms of that bargain.

## BACKGROUND

### A.    In 2019, the FTC Commences a Federal Court Action

On July 24, 2019, the FTC invoked the District Court's jurisdiction by filing a Complaint alleging that Meta had violated a 2012 administrative order and Section 5 of the FTC Act. (A011, 053–058.) The Complaint sought civil penalties and injunctive relief, under 15 U.S.C. §§ 45(l) and 53(b) and "the Court's own equitable powers." (A011, 059.) These statutory provisions authorize the District

Court, not the Commission, to impose both civil penalties and mandatory injunctive relief.  15 U.S.C. §§ 45(*l*), 53(b).

## B.    The Parties Agree to a Stipulated Order Incorporating Attachment A

The next day, the Commission filed a Consent Motion for Entry of Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief (the "Consent Motion").  (A087.)  The Consent Motion sought entry of a Stipulated Order that required Meta to pay a $5 billion civil penalty and imposed injunctive relief requiring Meta to implement a comprehensive Privacy Program and to retain an Assessor who would conduct biennial assessments of the Privacy Program over a twenty-year term.  (A171, 189.)  The agreed injunctive relief was set forth in Attachment A to the Stipulated Order, which, if approved and entered by the District Court, was also to be entered by the Commission as a new administrative order replacing the 2012 order.  (A172.)  The Stipulated Order specified that "this Court shall retain jurisdiction in this matter for purposes of construction, modification, and enforcement of this Stipulated Order."  (A172–73.)  Attachment A to the Stipulated Order reiterated that "[t]his Court has jurisdiction over this matter."  (A177.)  Attachment A also included provisions relying on the District Court's ongoing jurisdiction, such as Part XV, which allowed the FTC to obtain civil discovery "without *further* leave of court." (A196.)

In briefs supporting entry of the Stipulated Order, the FTC and Meta also

expressly acknowledged that Attachment A is part of the Stipulated Order:

- Meta stated that "the proposed administrative decision and order" was
  "incorporated in the Stipulated Order," (A131), and that its
  obligations under Attachment A are required by the Stipulated Order.
  (A148–49.)

- The FTC stated that the Stipulated Order "imposed" the relief in
  Attachment A (A087), and that it "gives . . . the FTC authority,"
  discussed above, that it enjoys under Part XV of Attachment A.
  (A089.)

The FTC also acknowledged that the settlement provided greater injunctive relief

than it could ever have achieved through litigation. (A210.)

## C.     The District Court Enters the Stipulated Order Including Attachment A

On April 23, 2020, the District Court granted the Consent Motion, and

agreed to enter the Stipulated Order, including its Attachment A. The District

Court explained that the Stipulated Order "would require Facebook to pay a $5

billion civil money penalty" and that it would "*impose injunctive relief* in the form

of an amended administrative order to be entered by the FTC." (A152.) It then

entered the Stipulated Order (with Attachment A) as a single document and docket

entry. (A169–98.)

The District Court noted that "under the Stipulated Order it retains

jurisdiction over *this matter*, including to enforce its terms." (A167.) (emphasis

added). It also cautioned Meta that it would vigorously supervise any breach of

Attachment A, warning: "[i]n the event that the parties return to this Court because the United States alleges—once again—that Facebook has reneged on its promises and continued to violate the law *or the terms of the amended administrative order* . . . the Court may not apply quite the same deference to the terms of a proposed resolution." (*Id.*)

Four days later, on April 27, 2020, the FTC entered Attachment A in its administrative proceeding against Meta, while specifically stating that the "Court has jurisdiction over this matter." (A289.) The version entered by the FTC was still marked as "Attachment A"—as it had been when entered by the District Court. It was attached to a one-page order citing the District Court's Stipulated Order. (A288.)

The FTC has since reiterated that Attachment A's requirements are the Stipulated Order's requirements and treated the Stipulated Order and its Attachment A as one and the same. For example, in a June 30, 2022 letter, the FTC described Attachment A's injunctive terms as "the Order's provisions:"

> As you know, ***the Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief*** entered by the United States District Court for the District of Columbia on April 23, 2020 (Dkt. No. 35) (the "Order") . . . entitles the Commission and the Department to request documents and information concerning Meta's compliance with. . . ***the Order's*** provisions concerning a mandated privacy program. *Id.* at 4 and Attachment A, Sections I, VII, and XV.

(A426.)

### D.    Meta Invests in Complying with the Stipulated Order

The Stipulated Order required Meta to implement "a comprehensive privacy program (the "Privacy Program")," and to retain an Assessor who would conduct biennial assessments of the Privacy Program over the course of twenty years, in addition to an "initial Assessment" covering its first 180 days.  (A184, 188–87.)  Meta did so, and the initial Assessment was submitted to the FTC and DOJ on July 1, 2021.  Between August 2021 and May 2022, Meta responded to numerous discovery requests from the FTC under Part XV of Attachment A to the Stipulated Order relating to the Assessor's findings.  (A200.)  After completing its responses in May 2022, Meta did not hear from the FTC concerning these issues for nearly a year.  (*Id.*)  Meta is confident that its efforts were more than sufficient to meet its Privacy Program requirements.

### E.    The FTC Seeks to Rewrite the Stipulated Order

On May 3, 2023, hours before its first meeting with the Assessor to preview findings from the first biennial Assessment, the three-member Commission issued the OTSC, directing Meta to show cause why the FTC should not modify Attachment A to the Stipulated Order and enter a new Proposed Order.  The Proposed Order would substantially rewrite Attachment A, with more than 800 changes, including expansive and unprecedented new injunctive and equitable requirements and prohibitions.  (A229–56.)

8

### F.     The District Court's November 27 Decision and Instant Appeal

After hearing on October 17, 2023, the District Court denied Meta's Motion to Enforce on November 27, 2023 ("Opinion").  (A531–47.)  The District Court found it lacks jurisdiction over Meta's claims because "the obligations imposed on Meta through the FTC's 2020 administrative order, although set forth in an attachment to the Stipulated Order, were not made part of the Stipulated Order itself" and "do not involve the construction, modification or enforcement of the Stipulated Order."  (A532.)[5]

## ARGUMENT

An injunction pending appeal is appropriate when the movant is "likely to win on the merits, it will suffer irreparable harm without an injunction, and the equities and public interest favor [the court's] intervention."  *Alpine Sec. Corp. v. FINRA*, 2023 WL 4703307, at *1 (D.C. Cir. July 5, 2023) (Walker, J., concurring).  It is also appropriate where the movant has presented a "serious legal question" on the merits, and the other three factors weigh decisively in the movant's favor.  *See Sherley v. Sebelius*, 644 F.3d 388, 398 (D.C. Cir. 2011). Such questions are "serious, substantial, difficult and doubtful, as to make them a

---

[5] Meta's motion also raised constitutional challenges to the FTC's structure and enforcement authority.  At oral argument, the District Court noted that, assuming it does not have jurisdiction over Meta's claims relating to the FTC's reopening authority, it will not have "ancillary or pendent jurisdiction" over Meta's constitutional claims and Meta may need to "file another lawsuit" to assert such claims.  (A482.)  Meta has also filed a separate action raising those constitutional challenges.

fair ground for litigation and thus for more deliberative investigation." *Comm. on Judiciary of U.S. House of Reps. v. Miers*, 542 F.3d 909, 911–12 (D.C. Cir. 2008) (Tatel, J., concurring).  Meta's claims raise serious legal questions, and the other factors tip sharply in favor of enjoining the OTSC proceeding pending appellate review.

Meta seeks an injunction from this Court because "moving first in the district court would be impracticable."  *See* Fed. R. App. P. 8(a)(2)(A)(i).  Meta must respond in the OTSC Proceeding on December 11—twelve days from now. Meta thus seeks emergency relief from this Court to maximize the time available for the Government's opposition and the Court's consideration of the motion. Courts of Appeals have routinely concluded that moving first in the district court is "impracticable" under similar circumstances.  *See, e.g.*, *TGP Commc'ns, LLC v. Sellers*, 2022 WL 17484331, at *3, *6 (9th Cir. Dec. 5, 2022); *Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020); *Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001).  The District Court's conclusion that it "has no jurisdiction over [Meta's] claim that the FTC lacks the authority to reopen its proceedings and modify the 2020 administrative order," (A546), further confirms that it would be impracticable to first seek provisional injunctive relief there.  *See Sofinet v. INS*, 188 F.3d 703, 706–07 (7th Cir. 1999) ("no

10

obligation" to seek relief first from a tribunal that has concluded it lacks "authority" to grant relief).

## I.    Meta Is Likely to Prevail on the Merits and Has, at a Minimum, Presented "Serious Legal Questions" for Appeal

The District Court erred in concluding that its exclusive jurisdiction to enforce the Stipulated Order does not reach the injunctive relief in Attachment A. Its decision runs afoul of basic principles of federal procedure, contract interpretation, and the FTC's statutory authority. The District Court itself recognized that Meta's motion raised "complex and significant" legal issues, (A008), which this Court will review *de novo*. *See Richardson v. Edwards*, 127 F.3d 97, 101 (D.C. Cir. 1997).

### A.    The Ruling Below Contradicts Controlling Authority

The Opinion errs because the District Court expressly retained exclusive jurisdiction to enforce and modify the Stipulated Order. It is settled law that where a court retains jurisdiction to enforce an order—like the District Court did—that jurisdiction is exclusive. *See, e.g.*, *Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998). The operative question is whether the District Court's exclusive jurisdiction over "the Stipulated Order" included Attachment A. The District Court's conclusion that it did not is contrary to controlling authority, the agreement of the parties, and the District Court's prior opinion.

11

*First*, this Court teaches that litigants reserve continuing jurisdiction in the district courts in either of two ways: by "clearly providing for retention of federal district court jurisdiction in their stipulations of dismissal, or by incorporating the full text of the settlement agreement into those stipulations." *Madison Hotel*, 97 F.3d at 1485 n.8. Here, the parties did both. The Stipulated Order on its face reserves continuing jurisdiction with the District Court by providing that the Court "shall retain jurisdiction" over it, and by reiterating in Attachment A itself that "***[t]his Court*** has jurisdiction over this matter." (A173, 177.) The parties also incorporated the full text of Attachment A into the Stipulated Order. Nothing else was required to ensure the District Court's continuing jurisdiction. *Madison Hotel*, 97 F.3d at 1485 n.8; *see Kokkonen*, 511 U.S. at 381–82 (1994) ("the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract[] if the parties agree").

Instead of applying these authorities, the District Court misapplied *Kokkonen*, which held that a court did not retain jurisdiction when the stipulation and order of dismissal at issue neither expressly reserved "jurisdiction in the District Court to enforce the settlement agreement" nor "refer[red] to the settlement agreement." *Kokkonen*, 511 U.S. at 377. *Kokkonen* has no application to a Stipulated Order that includes a continuing jurisdiction provision and

incorporates the full text of Attachment A. This essential distinction explains why neither party cited *Kokkonen* and renders the District Court's reliance on it erroneous.

*Second*, the opinion ignores both the applicable standard for enforcement of a consent decree and the record to which that standard must be applied. Consent decrees are reviewed "according to general principles of contract law." *Volvo Powertrain Corp.*, 758 F.3d at 339. "[T]he question for the lower court, when it interprets a consent decree incorporating a settlement agreement, is what a reasonable person in the position of the parties would have thought the language meant." *Id.* (quoting *Richardson*, 127 F.3d at 101). The FTC, Meta, another federal court, and the District Court itself have *all* previously made clear that the Stipulated Order includes Attachment A.

When the FTC and Meta sought entry of the Stipulated Order, they represented to the District Court that Attachment A was "incorporated" in the Stipulated Order, and that the Stipulated Order "impose[d]" the injunctive relief in Attachment A. (A087, 131.) The District Court found that the Stipulated Order "impose[d] injunctive relief in the form of an amended administrative order to be entered by the FTC," and referred to Meta's obligations under Attachment A as "remedies" and "obligations" of ***the Stipulated Order***. (A152, 163–64.) The District Court then concluded that it retains "jurisdiction over this matter,

13

including to enforce its terms," that it could adjudicate any claim that Meta

violated the Stipulated Order's Attachment A, (A167 (citing *United States v.

Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995)), and that it "may not apply

quite the same level of deference" to the parties' agreement if the Government

were to allege that Meta violated "the terms of the amended administrative

order." (A167.) The November 27 opinion is directly contrary to—and entirely

ignores—these express conclusions. It is thus unsurprising that another federal

court separately concluded that the Stipulated Order incorporates Attachment A.

*See Facebook, Inc. v. Brandtotal, Ltd.*, 2021 WL 2354751, at *8 (N.D. Cal. June

9, 2021) (holding that the administrative order is a "***stipulation between the FTC

and Facebook in a judicial enforcement proceeding***.").

    The opinion also ignores the plain language of the Stipulated Order, which

defines "Stipulated Order" as the document that the parties asked the District Court

to enter and which it did enter at Docket No. 35. (A169.) That definition

unambiguously includes Attachment A. Attachment A was physically attached to

the Stipulated Order, and the Stipulated Order expressly refers to Attachment A.

*See* Restatement (Second) of Contracts § 132 (1981); 11 Williston on Contracts §

30:25 (4th ed.) (when "a writing refers to another document, that other document .

. . becomes constructively a part of the writing, and . . . the two form a single

instrument.").

To elide this conclusion, the District Court renders simple phrases incomprehensible and the Stipulated Order and its Attachment A inconsistent. The District Court suggests that Attachment A's provision that "[t]his Court has jurisdiction over this matter" was more likely a reference to the **Commission**.[6] (A542.)  But the "Commission is not a court," *FTC v. Cement Inst.*, 333 U.S. 683, 703 n.12 (1948), and Attachment A defines the "Federal Trade Commission" as "Commission" in the first line of its first page and uses that term throughout. (A177.)  If the parties meant to say that the "Commission" has jurisdiction, they would have.  But it makes perfect sense that Attachment A refers to the District Court as "***this*** Court."  (A177.)  Attachment A was first entered on its docket as part of the Stipulated Order and was only later entered in that same format by the Commission.  By ignoring the parties' intent in interpreting "this Court" the District Court erred.  *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (referring to the "cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other.").

---

[6] The District Court also speculates that the use of "This Court," rather than "The Commission" may have been a scrivener's error, but there is *no* evidence that is the case, let alone the clear and convincing evidence required. *See Ohana v. Acad. Express, LLC*, 2022 WL 2952400, at *21 (D.D.C. July 26, 2022).  The District Court's decision essentially acknowledges the lack of such evidence, and construed the ambiguity against Meta, rather than against the FTC as drafter.

The District Court's interpretation below generates absurd results.  The District Court concluded that, even after it approved the parties' settlement, the FTC was left with a decision whether to enter Attachment A.  (A539.)  Meta did not agree to pay $5 billion and to adhere to stipulated terms entirely on speculation as to what the FTC would do.  "A promise to pay, with a reserved right to deny or change the effect of the promise, is an absurdity."  *Murray v. Charleston*, 96 U.S. 432, 445 (1878).  That is not the way the parties' agreement worked; the bargain struck by the parties in Attachment was final and imposed by the District Court as part of its Stipulated Order.

### B.    Under the District Court's Ruling, Attachment A Violates the FTC Act.

Attachment A had to have been part of the Stipulated Order for the additional reason that ***only*** the District Court could lawfully order the injunctive relief therein.  In Section 5(b) of the FTC Act, Congress granted the Commission administrative authority solely in the form of "cease and desist" orders."  15 U.S.C. § 45(b).  The Complaint invoked two provisions of the FTC Act—15 U.S.C. §§ 45(l) and 53(b)—that authorize ***District Courts*** to issue broader, mandatory injunctive relief.  (A58); 15 U.S.C. § 45(l) ("United States **district courts** are empowered to grant mandatory injunctions and such other and further equitable relief as they deem appropriate"); *id.* § 53(b) ("[T]he Commission may seek, and after proper proof, **the court may issue**, a permanent injunction.").  The

16

Stipulated Order must incorporate Attachment A because the FTC therein obtained injunctive relief that only a District Court could issue. *See FTC v. Owens-Corning Fiberglas Corp.*, 853 F.2d 458, 462 (6th Cir. 1988) (Commission initiates Section 5(l) action "seeking relief from the district court").[7]

## II.    Meta Will Suffer Irreparable Harm If the OTSC Proceeding Is Not Enjoined Pending Appeal

The stakes of the OTSC Proceeding are substantial. The more than 800 changes the FTC aims to make to the Stipulated Order would curtail Meta's rights to develop products, superintend Meta's corporate governance and Board membership, and deprive Meta of the ability to better serve its users and advertisers. (A248, 234, 236–37.) Requiring Meta to respond to the OTSC would irreparably harm Meta in multiple ways.

Litigation before the FTC deprives Meta of its bargained-for forum—the District Court—which itself constitutes irreparable harm warranting injunctive relief. *See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1363–64 (Fed. Cir. 2011); *Dodocase VR, Inc. v. MerchSource*, LLC, 2018 WL 1475289, at *11–12 (N.D. Cal. Mar. 26, 2018).

---

[7] The fact that a Magistrate Judge in a different case, involving a different consent decree and different relief, reached a different conclusion offers no support for the District Court's erroneous decision. (A514.) Unlike in *Twitter*, the FTC's administrative order against Meta confirms the District Court's continuing jurisdiction. Attachment A to the Stipulated Order entered in Twitter states that the Commission has jurisdiction, (A522); in this case Attachment A expressly states that "[t]his Court has jurisdiction over this matter," (A177).

Because the Stipulated Order is a final judgment, litigation before the FTC amounts to relitigation of a final order—which "is sufficient alone" to constitute irreparable harm. *Thomas v. Albright*, 77 F. Supp.2d 114, 123 (D.D.C. 1999), *aff'd sub nom. Thomas v. Powell*, 247 F.3d 260 (D.C. Cir. 2001). The injury to Meta "by having to endure wasteful relitigation in [another forum] of an issue already finally decided by this Court is clearly irreparable." *FDIC v. Bank of New York*, 479 F. Supp. 2d 1, 19 (D.D.C. 2007), *aff'd* 508 F.3d 1 (D.C. Cir. 2007).

These harms would be greatly exacerbated because litigation before the FTC will deprive Meta of the safeguards inherent in litigation before an Article III court. For example, the OTSC purports to shift the burden of proof to *Meta* (A215), the FTC has sole discretion to determine whether Meta will have ***any*** hearing on the merits of the allegations of the OTSC (A215), and any such hearing would be limited to whatever factual issues the Commission identifies. *See* 16 C.F.R. § 3.72(b). These absent protections are all the more important because the entity adjudicating these matters is the entity that sued Meta and that seeks to impose the Amended Order. Federal judges are impartial factfinders, whereas the Commission has not lost an administrative proceeding this century. *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021), *rev'd*, 598 U.S.

175 (2023).  Meta is being forced to litigate the OTSC before a tribunal that is Meta's litigation adversary and is structurally biased in its own (the FTC's) favor.

That bias is even more apparent here.  Before hearing from Meta, the Commission had already found that it "has good cause to believe" that Meta violated the 2020 Order, and that "changed conditions demonstrat[e] that additional modifications to the Order are needed to clarify and strengthen its requirements."  (A226.)  That rested on "preliminary" findings of fact that the Commission had already made.  (A215.)  We are aware of no precedent for the Commission making "preliminary" ***findings*** of fact in "support" of any administrative action.

These harms are irreparable because none of them could be remedied by after-the-fact review of a final FTC order.  *See*, *e.g.*, *Ciena Corp. v. Nortel Networks Inc.*, 2005 WL 1189881, at *7 (E.D. Tex. May 19, 2005) (party would be irreparably harmed by ITC proceeding because it will be "deprived of its bargained-for forum—an Article III judge's court . . . ."); *JW Gaming Dev., LLC v. James*, 544 F. Supp. 3d. 903, 921 (N.D. Cal. 2021) (irreparable harm to litigant "forced to litigate in an improper forum" that would "cloud its entitlement to [a] federal judgment.").  By that point, instead of receiving the federal court adjudication it bargained for, Meta would have been forced to a decision on the

merits by the FTC.  That decision would be the product of litigation without the

protections Meta would and should have in federal court.

### III.    The Balance of Equities and Public Interest Favor an Injunction Pending Appeal

The balance of the equities and public interest weigh strongly in favor of an

injunction while this Court considers Meta's appeal.  Meta will suffer immediate

and irreparable injury upon being forced to participate in the OTSC Proceeding.

Having waited nearly a year after receiving Meta's responses to the FTC's

inquiries relating to years-old facts to file the OTSC, the FTC will suffer no

cognizable harm from a delay preserving Meta's appellate rights and there "is no

public interest served by excusing a party's violation of its previously negotiated

contractual undertaking to litigate in a particular forum." *Gen. Protecht Grp.*,

651 F.3d at 1366.

Finally, the public interest favors an injunction.  "[P]ublic policy dictates

that there be an end of litigation; that those who have contested an issue shall be

bound by the result of the contest, and that matters once tried shall be considered

forever settled as between the parties." *Fed. Dep't Stores, Inc. v. Moitie*, 452

U.S. 394, 401 (1981).  Holding the FTC to the terms of its bargain with Meta

advances this public interest in the finality—and enforceability—of FTC

settlements.  *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western

District of Texas*, 571 U.S. 49, 66 (2013).  This is especially true here, where

20

the FTC's reopening proceeding would transform Meta's consent to Attachment A into a roving license to modify that order perpetually. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them."). While the public does have an interest in timely enforcement, that interest carries little weight here, as there is "generally no public interest in the perpetuation of unlawful agency action," *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016), and the public interest "favors preventing the deprivation of individual rights and abuses of government power," *Alpine Sec. Corp. v. FINRA*, 2023 WL 4703307, at *1 (D.C. Cir. July 5, 2023) (Walker, J., concurring).

## CONCLUSION

Meta respectfully requests that this Court enjoin the OTSC Proceeding pending resolution of this appeal.

Dated: November 29, 2023

Respectfully submitted,

*/s/ James P. Rouhandeh*

_____

Paul J. Nathanson
DAVIS POLK & WARDWELL LLP
901 15th Street, NW
Washington, DC 20005
Tel: (202) 962-7000
paul.nathanson@davispolk.com

James P. Rouhandeh
Michael Scheinkman
David B. Toscano
Marc J. Tobak
John A. Atchley III
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com
david.toscano@davispolk.com
john.atchley@davispolk.com

*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because this document contains 5,180 words excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

This document complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman Font.

Dated: November 29, 2023              */s/ James P. Rouhandeh*

————————————————————
James P. Rouhandeh
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com

*Counsel for Defendant-Appellant*

23

ORAL ARGUMENT NOT YET SCHEDULED

No. 23-5280

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

UNITED STATES OF AMERICA,

                        Plaintiff-Appellee,

      v.

FACEBOOK, INC.,
a corporation,

                        Defendant-Appellant,

**CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW,**
**AND RELATED CASES**

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

**A.    Parties and Amici**

Pursuant to D.C. Circuit Rule 28(a)(1)(A), the parties in this case are Defendant-Appellant Meta Platforms, Inc. ("Meta"), previously, Facebook, Inc., and Plaintiff-Appellee the United States of America.

Electronic Privacy Information Center ("EPIC"), Public Citizen, Campaign for A Commercial-Free Childhood, Common Sense Media, and United States Public Interest Research Group, Inc. participated as amicus curiae in earlier proceedings before the District Court.  There were no amici with respect to the

24

motion giving rise to the ruling under review and the undersigned is currently unaware of any amici in this Court.

### B.    Rulings Under Review

Pursuant to D.C. Circuit Rule 28(a)(1)(B), the ruling under review is *United States v. Facebook, Inc.*, No. 19-2184 (TJK), 2023 WL 8190858, at \*1 (D.D.C. Nov. 27, 2023), issued by Judge Timothy J. Kelly on November 27, 2023.  The decision under review is located at A531.

This Court has jurisdiction over Meta's appeal from an interlocutory order refusing an injunction under 28 U.S.C. § 1292(a)(1).

### C.    Related Cases

Pursuant to D.C. Circuit Rule 28(a)(1)(C), this case has not previously been before this Court.  Counsel for Meta is unaware of any other related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

### D.    Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Meta is a Delaware corporation with its principal place of business in Menlo Park, California.  No publicly held corporation owns 10% or more of Meta's stock.

Dated: November 29, 2023                    /s/ James P. Rouhandeh

                                            _____
                                            James P. Rouhandeh
                                            DAVIS POLK & WARDWELL LLP
                                            450 Lexington Avenue
                                            New York, New York 10017
                                            rouhandeh@davispolk.com

                                            *Counsel for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I certify that on November 29, 2023, I filed the foregoing document via the appellate CM/ECF system of the United States Court of Appeals for the District of Columbia Circuit. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: November 29, 2023          */s/ James P. Rouhandeh*

_____

James P. Rouhandeh
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com

*Counsel for Defendant-Appellant*