[NOT YET SCHEDULED FOR ORAL ARGUMENT]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | |
| v. | No. 23-5280 |
| FACEBOOK, INC., a corporation, | |
| Defendants-Appellees. | |

## PLAINTIFF-APPELLEE'S OPPOSITION TO EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

ARUN G. RAO
*Deputy Assistant Attorney General*

AMANDA N. LISKAMM
*Director, Consumer Protection Branch*

LISA K. HSIAO
*Assistant Director*

ZACHARY L. COWAN
CAMERON A. BROWN
*Trial Attorneys*
*Consumer Protection Branch*
*U.S. Department of Justice*
*450 5th Street, N.W.*
*Washington, D.C. 20530*
*(202) 353-7728*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A. Parties and Amici

All parties, intervenors, and amici appearing before the district court and in this court are listed in the Defendant-Appellant's Emergency Motion for Injunction Pending Appeal.

## B. Rulings Under Review

References to the ruling at issue appear in the Defendant-Appellant's Emergency Motion for Injunction Pending Appeal.

## C. Related Cases

This case has not previously been before this Court. Defendant-Appellant has filed a lawsuit and motion in the U.S. District Court for the District of Columbia, seeking to enjoin the Commission's administrative proceedings. *See Meta Platforms, Inc. v. Federal Trade Commission, et al.*, No. 1:23-cv-3562 (D.D.C.).

/s/ Zachary L. Cowan
Zachary L. Cowan

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................. 1

BACKGROUND.................................................................................................... 2

   I.  Factual Background ..................................................................................... 2

   II. Procedural Background............................................................................... 4

   III.Statutory Background ................................................................................. 6

ARGUMENT ........................................................................................................ 7

   I.  Meta's Emergency Motion Should Be Denied As Procedurally Improper ........ 7

   II. Meta Failed To Show It Is Entitled To An Injunction Pending Appeal ............ 8

      A. Meta Is Unlikely To Succeed On The Merits Of Its Appeal Because The District Court Correctly Interpreted The Stipulated Order........................... 9

         1.  The Stipulated Order Does Not Limit The Commission's Authority To Modify Its Own Administrative Order.......................................... 9

         2.  The 2020 Administrative Order Expressly Contemplates Future Modification By The Commission ............................................... 13

         3.  Extrinsic Evidence Confirms The Commission Retained Authority To Modify The 2020 Administrative Order.................................... 15

      B. Meta Failed To Show It Will Suffer Irreparable Harm Without An Injunction Pending Appeal ................................................................. 18

      C. The Balance Of The Equities And Public Interest Favor Allowing The Commission's Administrative Proceedings To Continue ........................... 19

CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases:**

*Barber v. Thomas*,
    560 U.S. 474, 484 (2010) ........................................................................ 15

*Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*,
    996 F.3d 37 (1st Cir. 2021) ..................................................................... 8

*Brotherhood of Ry. v. National Mediation Bd.*,
    374 F.2d 269 (D.C. Cir. 1966) ............................................................... 8

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006) ..........................................................18-19

*Dolcin Corp. v. FTC*,
    219 F.2d 742 (D.C. Cir. 1954) ............................................................... 14

*Elmo Co. v. FTC*,
    389 F.2d 550 (D.C. Cir. 1967) ..........................................................12, 19

*Evans v. Michigan*,
    568 U.S. 313, 325-26 (2013) ................................................................. 8

*Facebook, Inc. v. Brandtotal Ltd.*,
    No. 20-cv-7182, 2021 WL 2354751 (N.D. Cal. June 9, 2021) ........................... 15

*FTC v. Endo Pharms. Inc.*,
    No. 16-cv-1440, 2017 WL 4583802 (E.D. Pa. Aug. 21, 2017) ........................... 14

*FTC v. Ruberoid Co.*,
    343 U.S. 470 (1952) ............................................................................ 14

*FTC v. Surescripts, LLC*,
    No. 19-cv-1080, 2020 WL 2571627 (D.D.C. May 21, 2020) ............................. 14

*George Banta Co., Inc., v. NLRB*,
    686 F.2d 10 (D.C. Cir. 1982) ................................................................. 1

*John Doe Co. v. CFPB,*
    849 F.3d 1129 (D.C. Cir. 2017) ..................................................................... 18

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994)...........................................................................5, 8-11

*Pigford v. Veneman,*
    292 F.3d 918 (D.C. Cir. 2002) ....................................................................... 5

*Pigford v. Vilsack,*
    777 F.3d 509 (D.C. Cir. 2015) ....................................................................... 9

*Renegotiation Bd. v. Bannercraft Clothing Co.,*
    415 U.S. 1 (1974)......................................................................................... 18

*Segar v. Mukasey,*
    508 F.3d 16 (D.C. Cir. 2007) ...................................................................... 12

*Sierra Club v. United States Army Corps of Engineers,*
    990 F. Supp. 2d 9 (D.D.C. 2013) ................................................................ 19

*United States v. ITT Cont'l Baking Co.,*
    420 U.S. 223 (1975)..................................................................................... 13

*United States v. Louisiana-Pac. Corp.,*
    754 F.2d 1445 (9th Cir. 1985)........................................................................ 7

*United States v. Twitter, Inc.,*
    No. 22-cv-3070, 2023 WL 8007994 (N.D. Cal. Nov. 16, 2023) .................. 10, 15

*United States v. Volvo Powertrain Corp.,*
    758 F.3d 330 (D.C. Cir. 2014) .................................................................. 9, 15

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,*
    559 F.2d 841, 844-45 (D.C. Cir. 1977) ......................................................... 8

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)...................................................................................... 8, 19

**Statutes and Regulations:**

Federal Trade Commission Act

15 U.S.C. § 45(a) .................................................................. 2, 6, 19

15 U.S.C. § 45(b) ........................................................ 6-7, 13, 17-19

15 U.S.C. § 45(c) ...................................................................... 7, 18

15 U.S.C. § 45(*l*) ............................................................ 3, 7, 11, 17

15 U.S.C. § 53(b) ............................................................................ 11

Federal Trade Commission Rules of Practice

16 C.F.R. § 2.51(b) ........................................................................ 13

16 C.F.R. § 3.72(b) .................................................................... 3, 13

16 C.F.R. § 3.72(b)(1) ..................................................................... 7

16 C.F.R. § 3.72(b)(2) ..................................................................... 7

# INTRODUCTION

Meta Platforms, Inc.'s[1] emergency motion to enjoin a pending Federal Trade Commission ("FTC" or "Commission") administrative proceeding relies on a misguided premise and should be denied.[2] Below, Meta claimed this administrative proceeding was barred by a court order that settled a 2020 civil penalties lawsuit between the United States and Meta. In a "motion to enforce" that order, Meta asserted that the district court had assumed jurisdiction over not only the civil penalty lawsuit, but also future administrative proceedings implicating Meta's privacy policies. The district court properly rejected Meta's argument, holding that the administrative proceedings were distinct from the civil penalty lawsuit. Consistent with established precedent, the district court interpreted its order and concluded that it had "no jurisdiction to reach" Meta's claims. A536.

Meta appealed and now asks this Court to grant the extraordinary remedy of an injunction pending appeal. But Meta fails to make the required showing for this relief. Meta cannot demonstrate a likelihood of success on appeal because the district court accurately interpreted its order. Nor will Meta suffer any irreparable harm without an injunction: any final Commission decision will be subject to judicial review. Finally, an

---

[1] Meta was formerly known as Facebook, Inc. For ease of reference, this opposition simply refers to the entity as "Meta."

[2] On the same day that Meta filed this motion, it also filed a new lawsuit to enjoin the Commission's proceedings in the district court. *See Meta Platforms, Inc. v. Federal Trade Commission,* No. 1:23-cv-3562 (D.D.C.).

injunction would harm the public interest by further stalling Commission proceedings intended to protect consumers' privacy. Accordingly, Meta's motion should be denied.

## BACKGROUND

### I.    Factual Background

In 2012, the Commission issued an administrative complaint against Meta, alleging multiple violations of the FTC Act, 15 U.S.C. § 45(a). A67-77.[3] Among other things, the complaint alleged that Meta misleadingly promised users they could restrict the sharing of their non-public information to limited audiences, when in fact Meta could share user information with third-party developers. A69-71. The complaint also alleged that Meta deceptively changed its website, making information public that users previously designated private, without warning users or obtaining their approval. *Id.*

Meta agreed to settle this complaint with an administrative cease-and-desist order ("2012 Administrative Order"). *See* A61-66, 318-27. The 2012 Administrative Order barred Meta from misrepresenting the privacy or security of consumers' information and required Meta to obtain users' consent before sharing their information with third parties in a manner that exceeds their privacy settings. A63. Meta was also ordered to establish and maintain a comprehensive privacy program and obtain independent third-party assessments of that program. A64-65.

In 2019, believing that Meta had violated the 2012 Administrative Order, the

---

[3] Except where otherwise noted, in all quotations, emphases have been added, and internal alteration marks, citations, and footnotes have been omitted.

Commission referred to the U.S. Department of Justice a complaint for civil penalties and injunctive relief under Section 5(*l*) of the FTC Act, 15 U.S.C. § 45(*l*). The complaint alleged that Meta (1) again misrepresented the extent to which users could control the privacy of their data; (2) again misrepresented the information Meta made accessible to third parties; and (3) failed to establish and maintain a privacy program reasonably designed to address privacy risks. A53-58.

After extensive negotiations, the government and Meta reached a settlement, and the Department filed a complaint and a consent motion for entry of Stipulated Order in the U.S. District Court for the District of Columbia. A11, 87. On April 23, 2020, the Honorable Judge Kelly entered the Stipulated Order. Section I ordered Meta to pay a $5 billion civil penalty. A171. Section II required Meta to consent to the Commission reopening its administrative proceeding, modifying the 2012 Administrative Order, and replacing it with a new administrative order, the content of which attached to the Stipulated Order as "Attachment A." A172. Section II provides:

> IT IS FURTHER ORDERED that Defendant, and its successors and assigns, shall consent to: (i) reopening of the proceeding in FTC Docket No. C-4365; (ii) waiver of its rights under the show cause procedures set forth in Section 3.72(b) of the Commission's Rules of Practice, 16 C.F.R. § 3.72(b); and (iii) modifying the Decision and Order in *In re Facebook, Inc.*, C-4365, 2012 FTC LEXIS 135 (F.T.C. July 27, 2012), with the Decision and Order set forth in Attachment A.

*Id.* Lastly, Section IV provided that the court "shall retain jurisdiction . . . for purposes of construction, modification, and enforcement of this Stipulated Order." A173.

After the district court issued the Stipulated Order, the Commission initiated its own process. On April 27, 2020, the Commission reopened its administrative proceedings against Meta and determined it was in the "public interest" to modify the 2012 Administrative Order. A288. Finding Meta had "consented to modifying the 2012 [Administrative Order] as set forth," the Commission modified the administrative order to reflect the contents of Attachment A ("2020 Administrative Order"). *Id.* Two commissioners dissented. *Id.* Consistent with the terms of the Stipulated Order, Meta did not object to the Commission reopening its proceedings or modifying its order.

Among other things, the 2020 Administrative Order: (1) expanded the privacy program assessment provisions, mandating that Meta conduct a "privacy review" of every new or modified product, service, or practice; (2) required Meta to exercise more rigorous oversight over third-party apps; and (3) commanded Meta to implement greater data security protections for certain user information. A293-304. As provided, Meta retained an independent assessor to conduct a privacy review.

## II.   Procedural Background

In July 2021, Meta's independent assessor produced an initial report, identifying gaps and weaknesses from its review. A218. Based largely on this, FTC staff concluded there were deficiencies presenting substantial risks to the public. *Id.* On May 3, 2023, the Commission issued an order to show cause why it should not modify the 2020 Administrative Order to include additional safeguards. *See* A215-27. The Commission explained it had good cause to believe that Meta: (1) failed to implement an effective

privacy program as required by the 2020 Administrative Order; (2) misrepresented the extent to which third-party developers received non-public information; and (3) misrepresented privacy protections in connection with its messaging and video calling application specifically intended for users under the age of 13. A225-26.

Instead of answering the allegations, on May 31, 2023, Meta filed a motion in the district court to enforce the Stipulated Order and enjoin the Commission's proceedings. A8. Noting that the district court retained jurisdiction to modify the Stipulated Order, Meta claimed the Commission is also powerless to modify its own 2020 Administrative Order. A534. Subsequently, the Commission extended Meta's deadline to respond to the show cause order so Meta could pursue its motion. A428.

On October 17, 2023, the district court held a hearing on Meta's motion. Judge Kelly recognized that, while "both sides [had] envisioned" the Commission would modify the 2012 Administrative Order, the district court had not "substantively order[ed] the contents of Attachment A" as part of the Stipulated Order. A438-39. Thereafter, the Commission further extended its deadline to give Meta additional time to respond after the court issued its ruling. A528.

On November 27, 2023, the district court issued a memorandum and order, denying Meta's motion. A530-47. The court explained that its "jurisdiction to enforce consent decrees is not free-ranging, [but] is constrained by the terms of the decree and related order." A538 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Pigford v. Veneman*, 292 F.3d 918 (D.C. Cir. 2002)). While the Stipulated Order directed

Meta to "consent to" modifying the 2012 Administrative Order as reflected in Attachment A, it "did not order [Meta] to comply with the terms of Attachment A, nor order the FTC to do anything." A539. And while the court retained jurisdiction to enforce the Stipulated Order, "that jurisdiction does not extend to Attachment A, or the FTC's 2020 Administrative Order." *Id.* Thus, Meta's claims challenging the Commission's authority to modify its own orders, and the process the Commission may use to do so, "do not fall within the Court's retained jurisdiction." A543.

Meta appealed and filed this emergency motion.

### III.    Statutory Background

The FTC Act prohibits, and directs the FTC to halt, "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). If the Commission believes a corporation is engaging in such conduct, it may issue an administrative complaint. *Id.* § 45(b). After a hearing, the Commission may issue an administrative order commanding the "corporation to cease and desist from using . . . such act or practice." *Id.*

The FTC Act established judicial and administrative avenues by which the Commission may seek to deter and halt violations of its administrative orders. The Commission may "reopen and alter, modify, or set aside" any administrative order whenever it is of the "opinion" that "conditions of fact or of law have so changed as to require such action or if the public interest shall so require." *Id.* When the Commission believes a defendant violated an administrative order—as in this case—it may also seek civil penalties by referring a complaint to the Department of Justice to file in district

court. *Id.* § 45(*l*). These enforcement tools, which require different showings, are not mutually exclusive. Occasionally, the FTC conducts both judicial and administrative proceedings regarding the same administrative order. *See, e.g., United States v. Louisiana-Pac. Corp.*, 754 F.2d 1445, 1450 (9th Cir. 1985).

Before modifying an administrative order, the Commission provides "notice and opportunity for hearing," 15 U.S.C. § 45(b), via "an order to show cause, stating the changes it proposes to make in the decision and the reasons they are deemed necessary," 16 C.F.R. § 3.72(b)(1). The defendant may file an answer. *Id.* "When the pleadings raise substantial factual issues, the Commission will direct such hearings as it deems appropriate." *Id.* § 3.72(b)(2). If a show cause order is unopposed, or if the pleadings "do not raise issues of fact to be resolved, the Commission, in its discretion, may decide the matter on the order to show cause and answer." *Id.* If the Commission modifies an administrative order, the defendant may seek judicial review in the appropriate court of appeals, which may affirm, modify, or set aside the order. 15 U.S.C. § 45(b), (c).

## ARGUMENT

## I.    Meta's Emergency Motion Should Be Denied As Procedurally Improper

Federal Rule of Appellate Procedure 8(a)(1) requires a party to "move first in the district court for . . . an order . . . granting an injunction while an appeal is pending." Meta failed to do so, so its motion should be denied. Meta claims this failure should be excused because of its imminent response deadline and because the district court held that it did not have jurisdiction. *See* Mot. at 10–11. But an adverse merits decision and

an imminent deadline does not excuse Meta's failure to move first before the district court. *See Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, 996 F.3d 37, 43-44 (1st Cir. 2021) (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844-45 (D.C. Cir. 1977)). Also, Meta's motion raises new arguments not presented below. For example, Meta claims that the district court misapplied *Kokkonen*—an issue the district court had no opportunity to address. *See* Mot. at 12–13.

Meta treats the district court's decision as a foregone conclusion, but it should have presumed Judge Kelly would act in good faith and expeditiously consider its request. *See Evans v. Michigan*, 568 U.S. 313, 325-26 (2013); *cf.* A502 (district court noting it would decide the motion before Meta's show cause answer deadline). Sidestepping the district court was unwarranted; Meta's motion should therefore be denied.

## II.    Meta Failed To Show It Is Entitled To An Injunction Pending Appeal

An injunction pending appeal is an "extraordinary remedy." *Brotherhood of Ry. & S.S. Clerks, Freight Handlers, Exp. & Station Emp. v. National Mediation Bd.*, 374 F.2d 269, 275 (D.C. Cir. 1966). To obtain such relief, Meta must show (1) it is likely to succeed on the merits, (2) an injunction will prevent irreparable harm, and (3) the harm is not outweighed by harm to third parties and the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Meta cannot satisfy these requirements.

### A. Meta Is Unlikely To Succeed On The Merits Of Its Appeal Because The District Court Correctly Interpreted The Stipulated Order

To persuade this Court to take the extraordinary step of enjoining the Commission from exercising its statutory authority to modify its 2020 Administrative Order, Meta advocates a strained reading of the Stipulated Order that is inconsistent with its text, the parties' intentions, and the events that led the Commission to issue the 2020 Administrative Order. The Court should reject Meta's misreading.

#### 1. The Stipulated Order Does Not Limit The Commission's Authority To Modify Its Own Administrative Order

"Federal courts are courts of limited jurisdiction." *Kokkonen*, 511 U.S. at 377. In *Kokkonen*, the Supreme Court held that a court retains jurisdiction "to enforce its consent decrees . . . if the parties' agreement or the court order dismissing the action reserves jurisdiction to enforce compliance." *Pigford v. Vilsack*, 777 F.3d 509, 514 (D.C. Cir. 2015) (citing *Kokkonen*). "Even where, as here, the consent decree does retain jurisdiction in the district court to enforce its terms, the court still lacks a free-ranging 'ancillary' jurisdiction, and is limited by the explicit terms of the parties' agreement." *Id.*

A consent decree is "a written reflection of the parties' bargain resolving their case, [so it] should be interpreted as a contract." *Id.* This Court conducts de novo review of the decree terms, asking "what a reasonable person in the position of the parties would have thought the language meant." *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 337, 339 (D.C. Cir. 2014). A party cannot escape the clear meaning of a decree by offering a different interpretation. *See Pigford*, 777 F.3d at 517. Here, the district court

9

properly interpreted the terms of the Stipulated Order, applied *Kokkonen* and its progeny,[4] and rejected Meta's "attempt[] to retroactively characterize" the parties' agreement so as to evade the Commission's proceeding. A536.

Meta wrongly claims that the district court assumed jurisdiction over Meta's "obligations" reflected in Attachment A to the Stipulated Order, contending that those obligations "were ordered by the [district court] or made part of the Stipulated Order." Mot. at 2. But, by its plain terms, the Stipulated Order "did not order [Meta] to comply with the terms of Attachment A." A539. Rather, Section II of the Stipulated Order commands that Meta "shall consent" to the Commission reopening its administrative proceeding and "modifying the [2012 Administrative Order as] set forth in Attachment A." A172.[5] The district court found this was the "only injunctive relief it ordered" with respect to Attachment A. A540; *accord United States v. Twitter, Inc.,* No. 22-cv-3070, 2023 WL 8007994, at *6 (N.D. Cal. Nov. 16, 2023) (similarly holding that a court order to "consent to" an FTC order modification may have "sped up the issuance of the Administrative Order, but it did not mean that the Administrative Order *became* a Court order" (emphasis in original)). Despite Meta's conclusory assertions to the contrary, *see*

---

[4] Meta makes much of the fact that neither party cited *Kokkonen* before the district court, *see* Mot. at 13, but it fails to mention that the government relied on *Kokkonen*'s principles as summarized by this Court in *Pigford*.

[5] Contrary to Meta's assertions, *see* Mot. at 14, the Stipulated Order does *not* define the term "Stipulated Order" to include Attachment A. *See* A169.

Mot. at 16-17, this injunction comports with the FTC Act, 15 U.S.C. §§ 45(*l*), 53(b).[6]

Moreover, nothing in the Stipulated Order limits the FTC's authority to modify its own administrative orders under the FTC Act. *See* A540 (district court noting the orders were drafted "against a statutory backdrop" allowing modification); *see also George Banta Co., Inc., v. NLRB*, 686 F.2d 10, 20 (D.C. Cir. 1982) (reasoning that "the waiver of statutory rights must be demonstrated by an express statement in the contract to that effect"). The Stipulated Order lacks any language binding the FTC or ordering it to do anything with respect to the 2020 Administrative Order, indicating the parties did not intend to preclude the Commission from later modifying that order. *See Pigford*, 777 F.3d at 514. Had the parties intended to do so, they would have expressly said so, just as they did with respect to other rights of the FTC. *See, e.g.,* A169-70 (releasing certain "consumer-protection claims known by the FTC").[7]

Lacking textual support, Meta relies on Section IV of the Stipulated Order, which states that the district court "shall retain jurisdiction . . . for purposes of construction, modification, and enforcement of this Stipulated Order." A173. Applying *Kokkonen*, the district court correctly held that Section IV reserved jurisdiction to enforce only the

---

[6] The district court noted a "potential inconsistency" between Section III of the Stipulated Order and the FTC's proposed modification to the 2020 Administrative Order but held that this inconsistency did not warrant "an injunction prohibiting the FTC from reopening its proceedings." A544. Meta has not challenged that holding.

[7] Even if the Stipulated Order had directed the FTC to modify the 2012 Administrative Order, this one-time direction would not preclude the Commission from later exercising its statutory authority to modify the 2020 Administrative Order.

*Stipulated Order*; its jurisdiction "does not extend" to the *2020 Administrative Order*. A539.

Furthermore, examining the Stipulated Order as a whole, there are at least three additional reasons that Meta's obligations under the 2020 Administrative Order cannot be "part of the Stipulated Order." Mot. at 2. First, wholesale incorporation renders other parts of the Stipulated Order superfluous. *See Pigford*, 777 F.3d at 515. For example, the provisions incorporating Attachment A for a limited purpose would become redundant. *See, e.g.,* A170 (providing that Meta neither admits nor denies the allegations "except as specifically stated . . . in Attachment A.").

Second, Meta's interpretation is "inconsistent with the stipulated purpose of the consent decree" to resolve only claims predating June 12, 2019. *Segar v. Mukasey*, 508 F.3d 16, 24 (D.C. Cir. 2007). The Stipulated Order released certain claims related to conduct "prior to June 12, 2019" while the "FTC and the United States *specifically reserve[d]* all other claims." A169-70. Meta's construction eviscerates this reservation by forever barring the Commission from exercising its authority to modify the 2020 Administrative Order to address conduct occurring after June 12, 2019. *See Elmo Co. v. FTC*, 389 F.2d 550, 552 (D.C. Cir. 1967) (holding the Commission may "re-open a prior order if . . . the public interest *at the present time* would be served by the re-opening").[8]

Finally, if Meta's obligations under the 2020 Administrative Order were entirely

---

[8] Meta claims it would be "irrational[]" to settle if it could not "buy peace" from the government. Mot. at 3. But Meta settled the universe of claims specified in the Stipulated Order—not all claims in perpetuity.

subsumed by the Stipulated Order, it is unclear why the parties put those terms in an "Attachment" at all. Instead, the parties would have stated those terms in the body of the proposed order. Meta's proffered interpretation belies the plain language of the Stipulated Order and the clear intent of the parties when they negotiated and asked the district court to enter the order. This Court should reject Meta's untenable reading.

### 2.     The 2020 Administrative Order Expressly Contemplates Future Modification By The Commission

Lacking support within the Stipulated Order, Meta attempts to manufacture ambiguity through the Commission's administrative order. But Meta cannot contort the 2020 Administrative Order, the terms of which were attached for limited purposes identified in the Stipulated Order, to bootstrap interpretations "precluded by the words of the order itself." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 n. 12 (1975).

Moreover, the express terms of the 2020 Administrative Order show the parties contemplated future administrative modifications without involving the district court. The FTC Act and its regulations grant the Commission authority to modify its own orders, *see* 15 U.S.C. § 45(b); 16 C.F.R. §§ 2.51(b), 3.72(b); consistent with this, the 2020 Administrative Order states that Meta "may seek modification of this Part pursuant to 15 U.S.C. § 45(b) and 16 C.F.R. § 2.51(b) to address relevant developments that affect compliance." A294. The district court held that this provision reaffirms "Attachment A was not part of the Stipulated Order, because it contemplates that . . . the FTC could

modify its administrative order without the Court's consent." A541.[9]

Meta attempts to rebut this express reservation of the Commission's statutory modification authority by seizing on Paragraph 1 of the 2020 Administrative Order Findings, which states: "This Court has jurisdiction over this matter." A170; *see* Mot. at 15. But context matters. The 2020 Amended Order is captioned "*In the Matter of Facebook, Inc.*," with the forum identified as "United States of America Federal Trade Commission." *Id.* Immediately preceding the "Findings" is the sentence: "After due consideration, the *Commission* issues its Complaint, makes the following Findings, and issues the following Order[.]" *Id.* The first Finding is: "*This* Court has jurisdiction over this matter." *Id.* As the district court recognized, such context "strongly suggests" that the phrase "this Court" "refers to the body entering the order, the FTC." A542.[10]

Meta also complains the 2020 Administrative Order elsewhere refers to the Commission as the "Commission" and the district court as a "court." Mot. at 15. But, again, context matters. While words are generally presumed to have the same meaning throughout a document, this presumption "yields readily to indications that the same

---

[9] As the district court recognized, *see* A540, administrative orders need not specify every instance in which it could be modified under the FTC Act, as statutory provisions "are necessarily implicit in every order issued under the authority of the [FTC] Act, just as if the order set them out in extenso." *FTC v. Ruberoid Co.*, 343 U.S. 470, 476 (1952); *see Dolcin Corp. v. FTC*, 219 F.2d 742, 750 (D.C. Cir. 1954).

[10] The Commission is referred to as an administrative court when it adjudicates. *See, e.g., FTC v. Surescripts, LLC*, No. 19-cv-1080, 2020 WL 2571627, at *5 (D.D.C. May 21, 2020); *FTC v. Endo Pharms. Inc.*, No. 16-cv-1440, 2017 WL 4583802, at *3 (E.D. Pa. Aug. 21, 2017).

phrase used in different parts . . . means different things." *Barber v. Thomas*, 560 U.S. 474, 484 (2010). The Stipulated Order nowhere accedes that the district court would exercise jurisdiction over the Commission's proceedings, and the Commission expressly retained authority to modify the 2020 Administrative Order. The Commission unambiguously retained jurisdiction over its own administrative proceedings.

### 3. Extrinsic Evidence Confirms The Commission Retained Authority To Modify The 2020 Administrative Order

Finally, to support its argument, Meta selectively excerpts briefing statements made by the parties and the district court from when the Stipulated Order was entered, claiming everyone believed obligations reflected in the 2020 Administrative Order were part of the Stipulated Order. Mot. at 2, 13-14.[11] Such statements are extrinsic evidence, and "a court may not look to extrinsic evidence of the parties' subjective intent unless the document itself is ambiguous." *Volvo Powertrain Corp.*, 758 F.3d at 340. As set forth above, the Stipulated Order does not bar the Commission from modifying its 2020 Administrative Order, so the Court need not consider extrinsic evidence.

Regardless, extrinsic evidence demonstrates that the parties and district court understood that the Commission retained its authority to modify an administrative

---

[11] Meta notes that another district court characterized the 2020 Administrative Order as "a stipulation between the FTC and Facebook in a judicial enforcement proceeding." *Facebook, Inc. v. Brandtotal Ltd.*, No. 20-cv-7182, 2021 WL 2354751, at *8 (N.D. Cal. June 9, 2021). That court also indicated that the 2020 Administrative Order "*resembles* a consent decree," *id.*, suggesting the judge did not in fact believe it was part of the Stipulated Order. Regardless, in a similar case to this one, a judge in the same district reached the same result as Judge Kelly. *See Twitter*, 2023 WL 8007994, at *6.

order. When the Commission issued the 2020 Administrative Order, it independently determined it was "in the public interest to reopen the proceeding . . . and to issue a new order." A288. "Two Commissioners felt free to dissent from that determination." A539. And Meta itself did not object to the Commission's finding.[12]

None of Meta's selective excerpts from earlier briefing suggest—much less "unambiguously" confirm, Mot. at 2—that the government, the court, or even Meta, believed that the obligations reflected in the 2020 Administrative Order were part of the Stipulated Order. To the contrary, the government filed a consent motion stating that the Stipulated Order "requires [Meta] to *consent* to the reopening of the FTC's earlier administrative proceeding against it so the *FTC* can replace the 2012 Order with an Amended Order, which . . . contains substantial new compliance terms." A89.[13] Moreover, both the consent motion and the district court stated that the Stipulated Order provides "significant injunctive relief, primarily in the form of an amended administrative order *that will be entered by the FTC*." A87; *see* A152 (similar).

Nor is there anything to Meta's reliance on the district court observing that it

---

[12] Meta has abandoned its contention below that certain post-order FTC press releases support its claim. In fact, an April 2020 press release that was excerpted by Meta was titled "*FTC Gives Final Approval* to Modify FTC's 2012 Privacy Order with [Meta] with Provisions from 2019 Settlement." A312. This underscores that Commission understood it had authority to consider and approve the modification.

[13] The government also noted there were *two* orders (a "Stipulated Order" and "Amended FTC Order") which operate "in conjunction" to allow the Department "to obtain information related to [Meta]'s privacy practices." A7 (Dkt. No. 28 at 14). This reveals why the government cited the Stipulated Order in a discovery letter. Mot. at 7.

might show less "deference" to a future "proposed resolution" if Meta "continued to violate the law or the terms of the amended administrative order." A167. To the contrary, Judge Kelly contemplated that a future lawsuit could appear before him in the same way the government "proceeded the first time" in 2019, *i.e.,* by bringing a *new* civil penalties lawsuit for violations of the 2020 Administrative Order under Section 5(*l*) of the FTC Act. A444; *see* A445 (Judge Kelly stating this excerpt was not intended to "say" or "imply" that the government must proceed as Meta claims).

Finally, Meta's selective quotation of the word "incorporated" from its own briefing, Mot. 13, does not show it believed its obligations under the 2020 Administrative Order were part of the Stipulated Order. Indeed, Meta ignores the rest of that sentence, where it noted the 2020 Administrative Order would become "final and effective upon the date of its publication on the Commission's website (ftc.gov) as a final order." A131. Of course, terms that become effective after *Commission* action are part of an administrative order—not a judicial order.

\*      \*      \*

The FTC Act expressly contemplates that the Commission may modify its orders when necessary to protect the public. 15 U.S.C. § 45(b). Meta was undisputedly aware of this: both the Stipulated Order and the 2020 Administrative Order reference possible modifications and specifically cite authorities governing such procedures. The district court properly rejected Meta's attempt to bar the Commission from using its statutory authority to protect consumers, so Meta is unlikely to succeed in its appeal.

17

**B.    Meta Failed To Show It Will Suffer Irreparable Harm Without An Injunction Pending Appeal**

Meta's motion should also be denied because Meta cannot satisfy this Court's "high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). For an injunction, irreparable injury must be "both certain and great." *Id.* Meta has failed to demonstrate such harm.

Meta claims it will suffer irreparable harm through having to litigate before the Commission on an issue Meta contends has been "finally" decided by the district court through its Stipulated Order. Mot. at 17-18.[14] To begin, unlike in cases cited by Meta, the issue of jurisdiction has not been finally decided in Meta's favor. To the contrary, the district court ruled that it lacks jurisdiction over the Commission's proceedings. Moreover, "[m]ere litigation expense, even substantial and recoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974); *see John Doe Co. v. CFPB*, 849 F.3d 1129, 1134-35 (D.C. Cir. 2017).

Lastly, Meta has a statutory remedy for any potential adverse final decision by the Commission: a court of appeals may set aside any modification of the 2020 Administrative Order. *See* 15 U.S.C. § 45(b), (c). Thus, Meta will not suffer irreparable harm without an injunction. *See Chaplaincy*, 454 F.3d at 297-98 ("The possibility that

---

[14] Meta also claims it will be injured by the Commission's alleged bias against it, but the merits of the Meta's motion are devoted to a jurisdictional challenge. As the district court explained, it is improper for Meta to "seek temporary relief on claims . . . outside the jurisdiction retained by the Court under the Stipulated Order." A546.

adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.").

### C.      The Balance Of The Equities And Public Interest Favor Allowing The Commission's Administrative Proceedings To Continue

Finally, Meta fails to show that the equities and the public interest weigh in its favor. Even if Meta could show irreparable harm from the Commission's proceedings (it cannot), harm will also flow from halting those proceedings, and the public will "benefit most from permitting [the proceedings] to continue." *Sierra Club v. United States Army Corps of Engineers*, 990 F. Supp. 2d 9, 41 (D.D.C. 2013); *see Winter*, 555 U.S. at 24 (explaining "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction").

Congress "directed [the FTC] to prevent" corporations from engaging in "unfair or deceptive acts or practices," 15 U.S.C. § 45(a), and empowered the Commission to protect consumers by modifying its prior orders where the public interest requires, *id.* § 45(b). Congress understood that an administrative order might prove insufficient to "stop the deception." *Elmo*, 389 F.2d at 552. Rather than requiring "the public interest . . . to suffer as a result of inadvertence or mistake," *id.*, Congress authorized the Commission to modify administrative orders to protect the public. 15 U.S.C. § 45(b).

The Commission's show cause order reflects the expert agency's concerns that Meta's recent conduct may put consumers' privacy at risk. A215. Yet Meta seeks to halt all Commission proceedings while it litigates it grab bag of claims before this Court (and

the district court in Meta's new suit). The Court should reject Meta's effort to stop the ongoing administrative proceedings designed to protect consumers.

## CONCLUSION

For the foregoing reasons, the United States respectfully asks this Court to deny Meta's Emergency Motion.

Dated: December 6, 2023

Respectfully Submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

ARUN G. RAO
  *Deputy Assistant Attorney General*

AMANDA N. LISKAMM
  *Director, Consumer Protection Branch*

LISA K. HSIAO
  *Assistant Director*

 /s/ Zachary L. Cowan
ZACHARY L. COWAN
CAMERON A. BROWN
  *Trial Attorneys*
  *Consumer Protection Branch*
  *U.S. Department of Justice*
  *450 5th Street, N.W.*
  *Washington, D.C. 20530*
  *(202) 353-7728*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing response complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify that this response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,191 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), according to the word count of Microsoft Word.

/s/ Zachary L. Cowan
Zachary L. Cowan

**CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2023, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

/s/ Zachary L. Cowan
Zachary L. Cowan