# In the United States Court of Appeals
# For the District of Columbia Circuit

———————————❆———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*

v.

FACEBOOK, INC.,

a corporation,
        *Defendant-Appellant.*

———————————❆———————————

## MOTION FOR INJUNCTION PENDING APPEAL

———————————❆———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA NO. 1:19-CV-02184-TJK

———————————❆———————————

Paul J. Nathanson
DAVIS POLK & WARDWELL LLP
901 15th Street, NW
Washington, DC 20005
Tel: (202) 962-7000
paul.nathanson@davispolk.com

James P. Rouhandeh
Michael Scheinkman
David B. Toscano
Marc J. Tobak
John A. Atchley III
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com
david.toscano@davispolk.com
marc.tobak@davispolk.com
john.atchley@davispolk.com

*Counsel for Defendant-Appellant Meta Platforms, Inc.*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................ iii

INTRODUCTION ......................................................................1

BACKGROUND ......................................................................5

    A.    The FTC's 2019 Federal Court Action ................................5

    B.    The Parties Agree to a Stipulated Order Incorporating Attachment A ...............................................................5

    C.    The District Court Enters the Stipulated Order Including Attachment A ...............................................................6

    D.    The FTC Seeks to Rewrite the Stipulated Order .................7

    E.    Meta's Motion to Enforce, the District Court's November 27 Decision and the Instant Appeal .........................8

ARGUMENT ............................................................................9

I.    Meta Is Likely to Prevail on the Merits and, at a Minimum, Will Present "Serious Legal Questions" for Appeal ...........................9

    A.    The Opinion Erroneously Interprets the Stipulated Order, Which Is a Consent Decree .................................9

    B.    The Opinion Misapplies *Kokkonen* to the Stipulated Order ...............15

    C.    The Opinion Errs in Holding that the FTC Has Authority to Modify the Stipulated Order ...............................18

II.    Meta Will Suffer Irreparable Harm If the OTSC Proceedings Are Not Enjoined Pending Appeal ...........................................19

III.    The Balance of Equities and Public Interest Favor an Injunction Pending Appeal ................................................................22

CONCLUSION .......................................................................24

CERTIFICATE OF COMPLIANCE........................................................................25

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*Am. Sec. Vanlines, Inc. v. Gallagher*,
782 F.2d 1056 (D.C. Cir. 1986) ...................................................................... 22

*Axon Enter., Inc. v. FTC*,
986 F.3d 1173 (9th Cir. 2021),
*rev'd*, 598 U.S. 175 (2023) ............................................................................. 20

*Bd. of Trs. of the Hotel & Rest. Empls. Loc. 25 v. Madison Hotel*,
97 F.3d 1479 (D.C. Cir. 1996) ........................................................................ 17

*Brill v. Wing*,
937 F. Supp. 170 (N.D.N.Y. 1996) ................................................................. 10

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ........................................................................................... 21

*Cemex Inc. v. Dep't of the Interior*,
560 F. Supp. 3d 268 (D.D.C. 2021) ................................................................ 15

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ........................................................................ 19

*Ciena Corp. v. Nortel Networks, Inc.*
2005 WL 1189881 (E.D. Tex. May 19, 2005) ................................................. 20

*Cigar Ass'n of Am. v. FDA*,
317 F. Supp. 3d 555 (D.D.C. 2018) ................................................................ 23

*Deutsche Mex. Holdings S.a.r.l. v. Accendo Banco, S.A.*,
2019 WL 5257995 (S.D.N.Y. Oct. 17, 2019) ................................................. 20

*Elmo Div. of Drive-X Co. v. Dixon*,
348 F.2d 342 (D.C. Cir. 1965) ........................................................................ 21

*Facebook, Inc. v. Brandtotal Ltd.*,
2021 WL 2354751 (N.D. Cal. June 9, 2021) .................................................. 13

*FDIC v. Bank of N.Y.*,
479 F. Supp. 2d 1 (D.D.C. 2007),
*aff'd*, 508 F.3d 1 (D.C. Cir. 2007) ................................................. 21

*FTC v. Cement Inst.*,
333 U.S. 683 (1948) ..................................................................... 11

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
651 F.3d 1355 (Fed. Cir. 2011) ............................................... 19, 22

*Hemstreet v. Spiegel, Inc.*,
851 F.2d 348 (Fed. Cir. 1988) ..................................................... 22

*In re Idaho Conservation League*,
811 F.3d 502 (D.C. Cir. 2016) ..................................................... 16

*JW Gaming Dev., LLC v. James*,
544 F. Supp. 3d 903 (N.D. Cal. 2021) ......................................... 21

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ............................................................. 3, 15–17

*Laker Airways, Ltd. v. Sabena, Belgian World Airlines*,
731 F.2d 909 (D.C. Cir. 1984) ..................................................... 22

*League of Women Voters v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ......................................................... 22

*Levelle, Inc. v. Scottsdale Ins. Co.*,
539 F. Supp. 2d 373 (D.D.C. 2008) ............................................. 10

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995) ....................................................................... 12

*Medley v. Dish Network, LLC*,
958 F.3d 1063 (11th Cir. 2020) ................................................... 18

*Murray v. Charleston*,
96 U.S. 432 (1877) ....................................................................... 15

*Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*,
25 F.4th 998 (Fed. Cir. 2022) ................................................ 19–22

*Ohana v. Acad. Express, LLC*,
2022 WL 2952400 (D.D.C. July 26, 2022) ................................... 11

*Pigford v. Veneman*,
    292 F.3d 918 (D.C. Cir. 2002) ........................................................ 17

*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011) .......................................................... 9

*Thomas v. Albright*,
    77 F. Supp. 2d 114 (D.D.C. 1999),
    *aff'd sub nom. Thomas v. Powell*,
    247 F.3d 260 (D.C. Cir. 2001) ........................................................ 23

*United States v. Colorado*,
    937 F.2d 505 (10th Cir. 1991) ........................................................ 21

*United States J.B. Williams Co.*,
    498 F.2d 414 (2d Cir. 1974) ........................................................... 14

*United States v. Microsoft Corp.*,
    56 F.3d 1448 (D.C. Cir. 1995) ........................................................ 14

*United States v. Twitter, Inc.*,
    2023 WL 8007994 (N.D. Cal. Nov. 16, 2023) ................................. 11

*United States v. Volvo Powertrain Corp.*,
    758 F.3d 330 (D.C. Cir. 2014) .............................................. 2, 9–10

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977) .......................................................... 9

*Willis Re Inc. v. Herriott*,
    550 F. Supp. 3d 68 (S.D.N.Y. 2021) ............................................... 20

## STATUTES & RULES

FTC Act § 5, 15 U.S.C. § 45 ................................................................ 5, 13, 18–19

FTC Act § 13(b), 15 U.S.C. § 53(b) .................................................. 5, 13

16 C.F.R. § 2.32(c) .............................................................................. 18

## OTHER AUTHORITIES

*In re Intuit Inc.*,
  Docket No. 9408 (FTC Jan. 22, 2024) ............................................. 14

*In re Kogan*,
  2019 WL 3451723 (FTC July 24, 2019) .......................................... 11

*In re Nix*,
  2019 WL 3451725 (FTC July 24, 2019) .......................................... 11

# INTRODUCTION

Absent relief before March 15, 2024, Meta must respond to a May 3, 2023 FTC Order to Show Cause ("OTSC") that reopens an administrative proceeding (the "OTSC Proceedings") in which the FTC proposes to unilaterally rewrite a consent decree agreed to by the FTC and Meta, and entered by the District Court.[1] Meta requests an injunction staying the OTSC Proceedings and preserving the status quo while this Court considers Meta's appeal.

In 2020, the District Court had entered a consent decree (the "Stipulated Order") effectuating the settlement of a federal court action against Meta. Pursuant to the parties' agreement, the District Court ordered Meta to pay a $5 billion penalty and imposed an extensively negotiated injunction, retaining jurisdiction "for purposes of construction, modification, and enforcement of th[e] Stipulated Order."[2] The injunctive terms were largely set forth in Attachment A to the Stipulated Order, which was also to be entered in the FTC's administrative proceeding. The parties confirmed the District Court's jurisdiction in Attachment A, which states that "[t]his Court has jurisdiction over this matter." In approving the Stipulated Order, the District Court stated that it was "impos[ing]" the

---

[1] A551.

[2] A173.

injective relief set forth in Attachment A and "retain[ing] jurisdiction over th[e] matter."[3]

After the FTC issued the OTSC in May 2023, Meta moved the District Court to enforce the Stipulated Order by enjoining the OTSC Proceedings in which the FTC proposed to modify Attachment A unilaterally. But instead of enforcing the Stipulated Order, the District Court abdicated its Article III jurisdiction by disclaiming that Attachment A was part of the consent decree over which it retained jurisdiction. Contrary to what it (and the parties) stated at the time of approval, the District Court concluded that "the obligations imposed on Defendant reflected in [Attachment A] were not ordered by the Court or made part of the Stipulated Order—they were imposed later, when the FTC issued its 2020 administrative order."[4]

Circuit precedent requires consent decrees to be given the interpretation that a "reasonable person in the position of the parties would have thought the language meant."[5] The decision below erred by ignoring this standard and, as a result, allowing a federal agency to usurp the exclusive jurisdiction of an Article III court.

---

[3] A158, A167.

[4] A536.

[5] *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 339 (D.C. Cir. 2014).

Under the FTC's interpretation, Meta did not "buy peace," but instead irrationally agreed to a settlement in which the FTC was free, even after the District Court's approval, to impose entirely different terms—and to change them at will and in perpetuity. That interpretation defies the settlement's plain language, its structure, and common sense. It ignores the FTC's contemporaneous and subsequent admissions that Attachment A is part of the Stipulated Order, and that the Stipulated Order requires Meta to comply with Attachment A's terms. And it improperly breaks apart a consent decree negotiated, reviewed, and approved as a single settlement into two separate parts—one of which (Attachment A) could be unilaterally rewritten by one party.

The decision below also errs by equating the District Court's considered analysis and approval of the Stipulated Order with ministerial endorsement of a voluntary stipulation of dismissal. The District Court's consideration of the terms of Attachment A as an integral part of the consent decree that it approved as "fair, reasonable, and in the public interest" confirms the unity of the Stipulated Order and Attachment A. And the District Court's searching scrutiny of the consent decree here is substantially different in kind from the judge's "mere awareness and approval" of a voluntary stipulation of dismissal in *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). A district court retains jurisdiction over a consent decree if litigants ***either*** (1) expressly provide for such retention; or

(2) incorporate the text of their settlement into a stipulated order.  Here the parties did ***both***.  The decision below misapplied *Kokkonen*, in which the parties did ***neither***.

This Court should maintain the status quo by enjoining the OTSC Proceedings while it considers what the District Court has recognized as "complex and significant issues" and "serious legal questions."[6]  Meta otherwise will be irreparably harmed by being (1) deprived of its bargained-for Article III court adjudication of alleged breaches of the Stipulated Order, (2) forced to relitigate a matter resolved by final order, and (3) denied the full benefit of its appellate rights.  These deprivations constitute irreparable harm irrespective of their financial costs.

The balance of equities and public interest weigh heavily in favor of an injunction pending appeal.  The OTSC is premised on a July 2021 assessment of Meta's Privacy Program predating the OTSC by nearly two years.  The FTC's delay belies any claim of a public interest in ***immediate*** enforcement.  Meta ceded important rights in consenting to the sweeping injunctive relief imposed by the District Court.  The FTC has acknowledged that it could not have obtained such relief without Meta's agreement—and Meta agreed on the condition that the settlement would be final and enforced by the District Court.  The public interest is

---

[6] A8, A555.

best served by holding the FTC to the terms of its bargain, and by the federal district court protecting and exercising its jurisdiction.

## BACKGROUND

### A. The FTC's 2019 Federal Court Action

On July 24, 2019, the United States, on behalf of the FTC, invoked the District Court's jurisdiction by filing a complaint alleging that Meta had violated a 2012 FTC consent order and Section 5 of the FTC Act. (A11, A53–58.) The complaint sought civil penalties and injunctive relief under 15 U.S.C. §§ 45(l) and 53(b) and "the Court's own equitable powers." (A11, A59.)

### B. The Parties Agree to a Stipulated Order Incorporating Attachment A

The next day, the government moved for entry of a "Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief" (A87) imposing on Meta a $5 billion civil penalty and extensively negotiated injunctive relief. (A171, A189.) The agreed injunctive relief was set forth in Attachment A to the Stipulated Order, which, if approved by the District Court, was also to be entered by the Commission to supersede the 2012 consent order. (A172.)

The Stipulated Order provided that "this Court shall retain jurisdiction in this matter for purposes of construction, modification, and enforcement of this Stipulated Order." (A173.) Attachment A reiterated that "[t]his Court has jurisdiction over this matter" (A177), and it included provisions relying on the

District Court's ongoing jurisdiction, such as Part XV, which allowed the FTC to obtain civil discovery "without ***further*** leave of court." (A196.)

In advocating for entry of the Stipulated Order, ***both*** parties represented to the District Court that the ***Stipulated Order*** imposed the injunctive relief set forth in Attachment A. Meta stated that "the proposed administrative decision and order" was "incorporated in the Stipulated Order" (A131), and that "the Stipulated Order requires" Attachment A's terms (A148). The FTC likewise stated that the Stipulated Order "impose[s]" the relief in Attachment A (A87), and "gives … the FTC authority" that it exercises under Attachment A. (A89.)

### C. The District Court Enters the Stipulated Order Including Attachment A

On April 23, 2020, the District Court entered the Stipulated Order, explaining it "require[s] Facebook to pay a $5 billion civil money penalty" and "***impose[s] injunctive relief*** in the form of an amended administrative order to be entered by the FTC." (A152.)

The District Court "retain[ed] jurisdiction over this matter, including to enforce [the Stipulated Order's] terms," and warned that it would vigorously supervise any breach of Attachment A, and that if the government again alleged that "Facebook has reneged on its promises and continued to violate the law ***or the terms of the amended administrative order***, the Court may not apply quite the same deference to the terms of a proposed resolution." (A167.) It entered the

Stipulated Order, including Attachment A, as a single document and docket entry. (A169–98.)

Four days later, the FTC replaced the 2012 administrative order with Attachment A, which was still marked as "Attachment A" and identical to Attachment A as entered by the District Court. Thus, Attachment A stated—as it did when the District Court entered it—that "[t]his Court has jurisdiction over this matter." (A289.)

### D. The FTC Seeks to Rewrite the Stipulated Order

The Stipulated Order required Meta to implement "a comprehensive privacy program (the 'Privacy Program')," and to retain an Assessor to assess the Privacy Program biennially for 20 years, after conducting an "initial Assessment" covering its first 180 days. (A184, A188–89.) The initial Assessment was submitted on July 1, 2021. Meta responded to numerous discovery requests from the FTC under Part XV of Attachment A relating to the Assessor's findings. (A200.) After Meta completed its responses in May 2022, the FTC was silent on these issues for nearly a year. (*Id.*)

On May 3, 2023, the Commission issued the OTSC, directing Meta to show cause why the FTC should not replace Attachment A with a new Proposed Order including expansive and unprecedented new mandatory and prohibitive injunctive provisions, among 800 changes. (A229–56.) The OTSC emphasized the need for

an "enforcement action" as a result of Meta's alleged "non-compliance" principally with "the Commission's Orders." (A226).

### E. Meta's Motion to Enforce, the District Court's November 27 Decision and the Instant Appeal

On May 31, 2023, Meta moved the District Court to enforce the Stipulated Order and enjoin the OTSC Proceedings, in which the Commission asserted the unilateral authority to modify Attachment A to the Stipulated Order, contrary to the District Court's retention of exclusive jurisdiction over the Stipulated Order.

On November 27, 2023, the District Court denied Meta's motion. (A531–47.) In its opinion ("Opinion"), the District Court disclaimed jurisdiction because "the obligations imposed on [Meta] through the FTC's 2020 administrative order, although set forth in an attachment to the Stipulated Order, were not made part of the Stipulated Order itself" and "do not involve the construction, modification or enforcement of the Stipulated Order." (A532.)[7]

Meta noticed an appeal on November 28, 2023, and moved this Court for an injunction pending appeal the next day. After the FTC *sua sponte* extended Meta's deadline to respond to the OTSC to January 31, 2024, Meta withdrew its motion without prejudice, and sought the same relief from the District Court, which was

---

[7] Meta's motion raised structural constitutional challenges, the merits of which the District Court did not reach. Meta has filed a separate action raising those challenges.

denied on January 12, 2024.  (A553.)  The FTC again *sua sponte* extended Meta's

deadline to March 15, 2024.  (A551–52.)

## ARGUMENT

An injunction pending appeal is appropriate when the movant is likely to

win on the merits, it will suffer irreparable harm without an injunction, and the

equities and public interest favor relief.  *Wash. Metro. Area Transit Comm'n v.

Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).  It is also appropriate

where the movant has presented a "serious legal question" on the merits, and the

other factors weigh decisively in the movant's favor.  *Sherley v. Sebelius*, 644

F.3d 388, 398 (D.C. Cir. 2011).  Meta prevails under both standards.

## I.     Meta Is Likely to Prevail on the Merits and, at a Minimum, Will Present "Serious Legal Questions" for Appeal

The District Court erroneously concluded that its exclusive jurisdiction to

enforce the Stipulated Order does not reach the injunctive relief in Attachment A.

It nonetheless recognized that Meta has "present[ed] serious legal questions" and

that "the Government makes no serious attempt to argue otherwise."  (A555.)

### A.     The Opinion Erroneously Interprets the Stipulated Order, Which Is a Consent Decree

The Opinion ignores the applicable standard for enforcing a consent decree

and the dispositive record facts.  Consent decrees are governed by "general

principles of contract law," which focus on "what a reasonable person in the

position of the parties would have thought the language meant."  *Volvo*, 758 F.3d

9

at 339. Under this standard, the plain language of the Stipulated Order (including Attachment A), and prior statements by both parties, another federal court, and the District Court itself, all make clear that the Stipulated Order includes Attachment A.

The Stipulated Order states that "this Court shall retain jurisdiction in this matter for purposes of construction, modification, and enforcement of this Stipulated Order," and defines "Stipulated Order" as the document that the parties asked the District Court to enter. (A169, A173 ("Plaintiff and Defendant stipulate to the entry of this Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief ('Stipulated Order') to resolve …the Complaint.").) Attachment A was physically attached to and referred to throughout the Stipulated Order, considered as part of the Stipulated Order in the District Court's substantive review of the parties' settlement, and a main component of the resolution of the Complaint. All of these factors confirm that Attachment A is an integral part of the Stipulated Order. *See*, *e.g.*, *Levelle, Inc. v. Scottsdale Ins. Co.*, 539 F. Supp. 2d 373, 376 (D.D.C. 2008) (contract includes documents "physically attached" to it); *Brill v. Wing*, 937 F. Supp. 170, 175–76 (N.D.N.Y. 1996) (attachments "are an intrinsic part of [consent] decree and are to be given the same effect as the main document").

Attachment A likewise states that "[t]his Court has jurisdiction over this matter." The Opinion erroneously posits that "[t]his Court" likely references the *Commission*.[8] (A542.) But that would mean that the Commission—apparently for the first time and contrary to Supreme Court precedent[9]—referred to itself as "this Court." And that it did so in a document that includes "Commission" as a defined term, and on the same day it released two other orders stating that "[t]he Commission" has jurisdiction.[10] If the parties meant to say that the "Commission" has jurisdiction, they would have done so.[11]

It makes perfect sense that Attachment A refers to the District Court as "*this* Court." (A177.) The District Court entered Attachment A on its docket as part of the Stipulated Order, and the Commission subsequently entered the identical document.[12] It defines "Federal Trade Commission" as "Commission" and uses

---

[8] Alternatively, the Opinion speculates that this was a scrivener's error. But there is no evidence, let alone clear and convincing evidence of that, s*ee Ohana v. Acad. Express, LLC*, 2022 WL 2952400, at *21 (D.D.C. July 26, 2022), and any ambiguity must be construed against the FTC as drafter.

[9] *FTC v. Cement Inst.*, 333 U.S. 683, 703 n.12 (1948) ("The Commission is not a court.").

[10] *In re Kogan*, 2019 WL 3451723, at *1 (FTC July 24, 2019); *In re Nix*, 2019 WL 3451725, at *1 (FTC July 24, 2019).

[11] This provision, among others, distinguishes Attachment A from the agreement in *United States v. Twitter, Inc.*, 2023 WL 8007994, at *6 (N.D. Cal. Nov. 16, 2023), which stated, by contrast, that the FTC retained jurisdiction. *Id.* The Magistrate Judge in *Twitter* was thus considering a different settlement, with substantively different language.

[12] It was necessary for the Commission to enter Attachment A to formally replace the 2012 Order and to permit its enforcement through a Section 5(l) civil penalty action, as stated in

"court" to mean "court."  *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (a contract "should be read to give effect to all its provisions and to render them consistent with each other").

Part XV of Attachment A authorizes the FTC to obtain discovery under the Federal Rules of Civil Procedure "without *further* leave of court" (A196), which is nonsensical if "court" means "Commission."  This authorization to take discovery—which is found *only* in Attachment A—confirms that Attachment A carries the force of a federal court order because only the District Court could authorize the FTC to conduct civil discovery.  The District Court made no attempt to reconcile its conclusion that Attachment A was not part of the Stipulated Order with Attachment A's authorization of civil discovery.  The District Court's conclusion necessarily implies that the Commission granted itself the right to civil discovery under the Federal Rules—which the Commission, of course, was powerless to do.

Attachment A also provides that the "Commission waive[s] all rights to appeal … this Order."  (A177.)  This waiver confirms that Attachment A must be part of a court order because the Commission has the right to appeal court orders

_____

Section XVI.  (A196.)

(which it waived as to Attachment A), **but has no right to appeal its own administrative orders**.  *See* 15 U.S.C. § 45(c).

Examining this language, another federal court concluded that Attachment A is a "**stipulation between the FTC and Facebook in a judicial enforcement proceeding**"—i.e., part of the Stipulated Order.  *See Facebook, Inc. v. Brandtotal, Ltd.*, 2021 WL 2354751, at *8 (N.D. Cal. June 9, 2021).

In reaching the contrary conclusion, the District Court ignored both parties' representations that Attachment A was "incorporated" into the Stipulated Order, which "impose[d]" the injunctive relief contained in Attachment A.  (A87, A131.)  In 2020, the District Court found that the Stipulated Order "**impose[d**] injunctive relief in the form of an amended administrative order to be entered by the FTC." (A152, A157.)[13]  The Opinion does not attempt to explain how the Stipulated Order could "impose" the relief in Attachment A—as the District Court concluded in 2020—without also incorporating it.

The District Court also provided in 2020 that it retains "jurisdiction over this matter, including to enforce [the Stipulated Order's] terms," and that it "may not apply quite the same level of deference" to an agreed settlement if the government

---

[13] Only the District Court could have "impose[d]" that relief, as the 2019 Complaint invoked two statutes—15 U.S.C. §§ 45(l) and 53(b)—that authorize only **District Courts** to issue injunctive relief.  (A58.)

were to later allege that Meta violated "the terms of the amended administrative order."  (A167 (citing *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995)).)  Thus, the District Court expressly retained jurisdiction in the very circumstances here—an alleged violation of the terms of Attachment A.  With good reason.  As the Commission held just days ago, "FTC orders … are enforceable only by order of the district court."  *In re Intuit Inc.*, Docket No. 9408 (FTC Jan. 22, 2024); *see United States v. J.B. Williams Co., Inc.*, 498 F.2d 414, 422 (2d Cir. 1974) (holding that because "adjudicat[ing] questions" concerning compliance with FTC orders is "the enforcement responsibility of the courts," the Commission lacks authority "to determine whether they have been violated").[14]

Significantly, as recently as June 30, 2022, the FTC invoked the District Court's retained jurisdiction over Attachment A—writing to Meta that ***Attachment A's terms are provisions of the Stipulated Order*** entered by the District Court at Docket No. 35, with which Meta must comply:

> As you know, ***the Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief*** entered by the United States District Court for the District of Columbia on April 23, 2020 (Dkt. No. 35) (the "Order"), authorizes the [FTC] and the [DOJ] to use discovery devices to … request documents and information concerning Meta's compliance with the Order, including the ***Order's prohibition against misrepresentations*** concerning the extent to which Meta maintains the

---

[14] The Commission's lack of authority to enforce administrative orders or adjudicate compliance is an independent obstacle to the OTSC Proceedings, which the OTSC makes clear is an "enforcement action" based on Meta's asserted "non-compliance" with Attachment A. (A226).  The District Court declined to address this issue below.

privacy or security of Covered Information, as that term is defined in the Order, and the ***Order's provisions concerning a mandated privacy program***. *Id.* at 4 and Attachment A, Sections I, VII and XV.

(A426.)  The injunctive provisions prohibiting misrepresentations and mandating the Privacy Program are found ***only*** in Attachment A.  The FTC letter acknowledged that they were ordered by the District Court in the Stipulated Order.  *See Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 278–79 (D.D.C. 2021) ("[C]ourts may look to evidence of course of performance for interpretative assistance even when the contractual language contains no ambiguity.").

The Opinion has other absurd implications, including that the FTC was free to decide ***whether*** to enter Attachment A or impose wholly different terms even after the District Court approved the settlement and ordered Meta to pay $5 billion and adhere to stipulated terms.  (A539.)  But Meta did not agree to pay $5 billion on speculation as to what order the FTC would enter.  "A promise to pay, with a reserved right to deny or change the effect of the promise, is an absurdity." *Murray v. Charleston*, 96 U.S. 432, 445 (1877).

### B.    The Opinion Misapplies *Kokkonen* to the Stipulated Order

The District Court erroneously applied a decision involving a voluntary stipulation of dismissal pursuant to a settlement between private parties.  *See Kokkonen,* 511 U.S. at 376–77.

Unlike a stipulation of dismissal, a consent decree has the force of a court order and can be approved ***only*** after the court has "satisf[ied] itself of the settlement's 'overall fairness to beneficiaries and consistency with the public interest.'" *In re Idaho Conservation League*, 811 F.3d 502, 515 (D.C. Cir. 2016). In 2020, the District Court analyzed and approved "the order [that] would require Facebook to pay a $5 billion civil money penalty … and impose injunctive relief in the form of an amended administrative order to be entered by the FTC that would require Facebook to take a variety of additional measures to protect its users' personal information." (A152.) In undertaking the requisite scrutiny of the consent decree, the District Court reasoned that the "injunctive relief in the amended administrative order"—i.e., Attachment A—was "[a]s important" as the $5 billion civil penalty. (A162.) In its 2023 Opinion, the District Court again recognized that it "'approved' Attachment A insofar as it needed to satisfy itself of the settlement's overall fairness." (A542.)

Notwithstanding this substantive review and approval, the District Court cited *Kokkonen*'s statement that "[t]he judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order." (A542.) That language from *Kokkonen* described a voluntary stipulation of dismissal between private parties—not, as here, a consent decree scrutinized in depth and approved by the District Court. As the Supreme Court emphasized, "the

only order [by the district court in *Kokkonen*] was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement." *Kokkonen,* 511 U.S. at 380. Here, the District Court's finding that the Stipulated Order, including the terms of Attachment A, "is fair, reasonable, and in the public interest" (A159) *is* "flouted [and] imperiled by" the FTC's determination that Attachment A needs to be modified. *Kokkonen*, 511 U.S. at 380.[15] The District Court's review and approval of Attachment A confirms that Attachment A is an integral part of the Stipulated Order, and that its unilateral modification by the FTC would "deny [Meta] the benefit of its bargain." *Pigford v. Veneman*, 292 F.3d 918, 925 (D.C. Cir. 2002).

Even if Attachment A were, as in *Kokkonen*, merely a private dismissal stipulation, enforcement jurisdiction exists when the parties have either (1) "clearly provid[ed] for retention of federal district court jurisdiction in their stipulations of dismissal," or (2) "incorporat[ed] the full text of the settlement agreement into those stipulations." *Bd. of Trs. of the Hotel & Rest. Empls. Loc. 25 v. Madison Hotel, Inc.*, 97 F.3d 1479, 1484 n.8 (D.C. Cir. 1996). The dismissal stipulation in *Kokkonen* did neither. *See Kokkonen*, 511 U.S. at 381. Here, the Stipulated Order

---

[15] The District Court's finding that it "retains jurisdiction over this matter, including to enforce [the Stipulated Order's] terms" (A167) is similarly flouted by the FTC's assertion of jurisdiction to do exactly that.

did ***both*** by providing for continued jurisdiction and including Attachment A's full text.

**C.    The Opinion Errs in Holding that the FTC Has Authority to Modify the Stipulated Order**

The District Court erred in concluding that the "FTC's statutory authority to modify its own administrative orders" applies to Attachment A.

Section 5(b) authorizes the FTC to issue cease and desist orders "upon" administrative hearings and to "alter, modify or set aside" orders "made or issued" by the FTC "under this section."  15 U.S.C. § 45(b).  Commission regulations interpret this language to provide for the alteration, modification, or setting aside of only "Commission orders ***issued on a litigated or stipulated record***," not consent orders.  16 C.F.R. § 2.32(c).  In the absence of statutory authority to modify consent orders, Rule 2.32(c) expressly requires that "every" consent order resolving an administrative complaint "shall provide" that respondents ***agree*** the order is modifiable "in the same manner" as Section 5(b) provides for ***litigated*** orders.  *Id.*  Rule 2.32(c) is consistent with "black-letter contract law" in requiring consent before one party can "unilaterally modify" an agreement.  *Medley v. Dish Network, LLC*, 958 F.3d 1063, 1070 (11th Cir. 2020).

Attachment A was not an order "issued on a litigated or stipulated record." Consistent with Attachment A being part of the court-ordered relief resolving a federal complaint—and not an administrative complaint—the Commission did not

18

require Meta to consent to Attachment A's modification in the same manner that Section 5(b) provides for litigated orders.

Nor did Meta otherwise agree that the Commission can unilaterally modify Attachment A.  And the government has not pointed to ***any*** instance in which the Commission has modified a consent order without such consent.

## II. Meta Will Suffer Irreparable Harm If the OTSC Proceedings Are Not Enjoined Pending Appeal

Meta will suffer irreparable harm by being deprived of its bargained-for forum and forced to relitigate a settlement with its counterparty as adjudicator— harms that must be evaluated assuming Meta will prevail on appeal.  *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006).

The law is clear that deprivation of a bargained-for forum constitutes irreparable harm—without regard to the movant's ability to bear the associated burdens.  *See Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998, 1008 (Fed. Cir. 2022) (holding that "be[ing] deprived of its bargained-for choice of forum … ***constitutes irreparable harm*** sufficient to meet the standard for a preliminary injunction"); *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co*., 651 F.3d 1355, 1363–64 (Fed. Cir. 2011) (same).  The District Court erroneously declined to find irreparable harm because Meta did not ***also*** show that losing its bargained-for forum "would cause it financial hardship or disrupt its business."  (A554.)  But

irreparable harm flows from being "dragg[ed] into litigation in a [forum] other than the court for which [it] bargained," which is why courts conclude that large corporations are no less irreparably harmed by litigating outside their bargained-for forum. *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 97–98 (S.D.N.Y. 2021) (Willis Re); *Deutsche Mex. Holdings S.a.r.l. v. Accendo Banco, S.A.*, 2019 WL 5257995, at *7 (S.D.N.Y. Oct. 17, 2019) (Deutsche Bank); *Shinyaku*, 25 F.4th at 1008 (Nippon Shinyaku); *Ciena Corp. v. Nortel Networks Inc.*, 2005 WL 1189881, at *7 (E.D. Tex. May 19, 2005) (Nortel).

This harm is particularly acute here due to the fundamental differences between the two fora. Litigation before the FTC will strip Meta of the protections inherent in Article III litigation. *See Nortel*, 2005 WL 1189881, at *7 (Nortel irreparably harmed by ITC proceeding because it will be "deprived of its bargained-for forum—an Article III judge's court …."); *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 215 (2023) (Gorsuch, J., concurring) (reasoning that the "loss of a day in court in favor of one before an agency" is no "small thing").

Worse yet, while federal judges are impartial factfinders, the FTC "has not lost a single [administrative] case in the past quarter-century." *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021), *rev'd*, 598 U.S. 175 (2023). And Meta would incur these procedural deprivations in a matter with extraordinary stakes: The FTC's 800 proposed changes to Attachment A would curtail Meta's

development of new products, superintend Meta's corporate governance, and impair Meta's ability to serve its users and advertisers. (A229–56.) Avoiding this especially severe irreparable harm tips sharply in favor of granting the requested injunction. *Shinyaku*, 25 F.4th at 1008.

Being forced to relitigate a settlement is an independent irreparable harm. *United States v. Colorado*, 937 F.2d 505, 508–09 (10th Cir. 1991) (altering terms of consent decree irreparably harmed party). Meta's injury "by having to endure wasteful relitigation in [another forum] of an issue already finally decided by [the District] Court is clearly irreparable." *FDIC v. Bank of N.Y.*, 479 F. Supp. 2d 1, 19 (D.D.C. 2007), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007).

Judicial review ***after*** the OTSC Proceedings cannot mitigate these harms, which arise from litigating in that proceeding. *See JW Gaming Dev., LLC v. James*, 544 F. Supp. 3d. 903, 921 (N.D. Cal. 2021) (irreparable harm to litigant "forced to litigate in an improper forum" that would "cloud its entitlement to [a] federal judgment"). Under Supreme Court precedent, ongoing litigation can irreparably change parties' positions even if no judgment is rendered. *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 87–88 (1981). Regardless, this Court has held that where, as here, the movant asserts that an FTC proceeding violates a prior settlement, "the prospect of ultimate appellate review … is not adequate." *Elmo Div. of Drive-X Co. v. Dixon*, 348 F.2d 342, 344 (D.C. Cir. 1965).

III. **The Balance of Equities and Public Interest Favor an Injunction Pending Appeal**

The balance of equities and substantial public interests strongly support Meta's requested relief.

First, there is an overriding public interest in federal courts "protect[ing] their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984). The OTSC Proceedings usurp that jurisdiction, and there is "no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

Second, "[f]ew public policies are as well established as the principle that courts should favor voluntary settlements of litigation by the parties to a dispute." *Am. Sec. Vanlines, Inc. v. Gallagher*, 782 F.2d 1056, 1060 (D.C. Cir. 1986); *see Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988) (noting the "compelling public interest and policy in upholding and enforcing settlement agreements"). Holding the FTC to its "previously negotiated contractual undertaking to litigate in a particular forum" is in the public interest, *see Gen. Protecht Grp.*, 651 F.3d at 1366, even on appeal from a ruling that such a "contractual undertaking" was inapplicable, *see Shinyaku*, 25 F.4th at 1009. As the FTC acknowledged, "it is highly unlikely the Commission could have obtained [the] magnitude of injunctive relief" in the Stipulated Order without Meta's

22

agreement.  (A211.)  The OTSC Proceedings would transform Meta's consent into a roving license to modify the settlement perpetually.  Preserving the status quo while this Court considers these issues is in the public interest.  *Thomas v. Albright*, 77 F. Supp. 2d 114, 124 (D.D.C. 1999) ("public interest favors finality" of judgments), *aff'd sub nom. Thomas v. Powell*, 247 F.3d 260 (D.C. Cir. 2001).

The FTC's conduct belies any claim that the public interest would be impaired by enjoining the OTSC Proceedings while Meta's appeal proceeds.  The Commission already has determined (in Part XVI) that if Meta were to violate Attachment A, the public interest would be served not by changing its provisions, but instead by extending the time Meta must follow them.  (A196.)  The FTC cannot now argue that the public interest would be impaired by maintaining those terms temporarily.  If immediate action were necessary—based on information it received between 2019 and July 1, 2021—the FTC would have acted long before May 2023.  (A200.)  Likewise, the FTC repeatedly has extended the OTSC deadline, most recently twice *sua sponte*.  There is thus no "immediate public interest" in going forward with the administrative proceeding now, "rather than after a full hearing on appeal."  *Cigar Ass'n of Am. v. FDA*, 317 F. Supp. 3d 555, 563 (D.D.C. 2018).

# CONCLUSION

Meta respectfully requests that this Court enjoin the OTSC Proceedings pending resolution of this appeal.

Dated: January 25, 2024

Respectfully submitted,

*/s/ James P. Rouhandeh*

_____

Paul J. Nathanson
DAVIS POLK & WARDWELL LLP
901 15th Street, NW
Washington, DC 20005
Tel: (202) 962-7000
paul.nathanson@davispolk.com

James P. Rouhandeh
Michael Scheinkman
David B. Toscano
Marc J. Tobak
John A. Atchley III
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com
david.toscano@davispolk.com
john.atchley@davispolk.com

*Counsel for Defendant-Appellant*

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because this document contains 5,029 words excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

This document complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman Font.

Dated: January 25, 2024

*/s/ James P. Rouhandeh*

_____

James P. Rouhandeh
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com

*Counsel for Defendant-Appellant*