[NOT YET SCHEDULED FOR ORAL ARGUMENT]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

      v.

FACEBOOK, INC.,
a corporation,

      Defendant-Appellant.

No. 23-5280

**PLAINTIFF-APPELLEE'S OPPOSITION TO MOTION FOR
INJUNCTION PENDING APPEAL**

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney General*

ARUN G. RAO
   *Deputy Assistant Attorney General*

AMANDA N. LISKAMM
   *Director, Consumer Protection Branch*

LISA K. HSIAO
   *Assistant Director*

ZACHARY L. COWAN
   *Trial Attorney*
   *Consumer Protection Branch*
   *U.S. Department of Justice*
   *450 5th Street, N.W.*
   *Washington, D.C. 20530*
   *(202) 353-7728*

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................... 1

BACKGROUND..................................................................................................... 2

    I.    Factual Background ................................................................... 2

    II.    Statutory Background ............................................................... 5

ARGUMENT ........................................................................................................ 6

    I.    Meta Is Unlikely To Succeed On The Merits Of Its Appeal........................... 7

        A.    The District Court Correctly Interpreted Its Stipulated Order .................. 7

            1.    The Stipulated Order Does Not Limit The Commission's Authority To Modify Its Own Administrative Order............................................. 7

            2.    The 2020 Administrative Order Expressly Contemplates Future Modifications By The Commission...................................................... 10

            3.    Extrinsic Evidence Confirms The Commission Retained Its Authority To Modify The 2020 Administrative Order....................................... 12

        B.    Meta's New Arguments Also Fail ............................................... 15

            1.    Meta Forfeited New Arguments By Failing To Raise Them In Its Initial Motion to Enforce......................................................................... 15

            2.    The District Court Did Not Assume Jurisdiction Over The Commission's Order By Approving The Overall Settlement........... 15

            3.    The FTC Act Authorizes The Commission To Modify The 2020 Administrative Order ......................................................................... 16

    II.    Meta Cannot Show It Will Suffer Irreparable Harm Absent An Injunction Because It Can Seek Judicial Review Of A Final Commission Decision..... 18

    III.    The Balance Of The Equities And Public Interest Favor Allowing The Commission's Administrative Proceedings To Continue .............................. 20

CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases:**

*Barber v. Thomas*,
    560 U.S. 474 (2010) ............................................................................ 12

*Brotherhood of Ry. v. National Mediation Bd.*,
    374 F.2d 269 (D.C. Cir. 1966) .......................................................... 6

*Changji Esquel Textile Co. v. Raimondo*,
    40 F.4th 716 (D.C. Cir. 2022) ........................................................... 6

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006) ....................................................18-19

*Davis v. Pension Benefit Guar. Corp.*,
    571 F.3d 1288 (D.C. Cir. 2009) ........................................................ 6

*Dr. Pepper/Seven-Up Companies, Inc. v. FTC*,
    991 F.2d 859 (D.C. Cir. 1993) ........................................................ 17

*Dr. Pepper/Seven-Up Companies, Inc. v. FTC*,
    798 F. Supp. 762 (D.D.C. 1992) ...................................................... 17

*Elmo Co. v. FTC*,
    389 F.2d 550 (D.C. Cir. 1967) ............................................... 18, 20-21

*Elmo Div. of Drive-X Co. v. Dixon*,
    348 F.2d 342 (D.C. Cir. 1965) .......................................................19-20

*Facebook, Inc. v. Brandtotal Ltd.*,
    No. 20-cv-7182, 2021 WL 2354751 (N.D. Cal. June 9, 2021) ............ 14

*FDIC v. Bank of New York*,
    479 F. Supp. 2d 1 (D.D.C. 2007) ...................................................18-19

*FTC v. Surescripts, LLC*,
    No. 19-cv-1080, 2020 WL 2571627 (D.D.C. May 21, 2020) ............... 12

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.,*
    651 F.3d 1355 (Fed. Cir. 2011) ................................................................ 19

*George Banta Co., Inc., v. NLRB,*
    686 F.2d 10 (D.C. Cir. 1982) .................................................................... 9

*John Doe Co. v. CFPB,*
    849 F.3d 1129 (D.C. Cir. 2017) ...........................................................18-19

*Keepseagle v. Perdue,*
    856 F.3d 1039 (D.C. Cir. 2017) .............................................................. 15

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ........................................................................... 7, 16

*Meta Platforms, Inc. v. FTC,*
    No. 1:23-cv-3562 (D.D.C.) ...................................................................... 4

*Pigford v. Veneman,*
    292 F.3d 918 (D.C. Cir. 2002) ................................................................ 16

*Pigford v. Vilsack,*
    777 F.3d 509 (D.C. Cir. 2015) ........................................................... 7, 10

*Segar v. Mukasey,*
    508 F.3d 16 (D.C. Cir. 2007) .................................................................. 10

*Sherley v. Sebelius,*
    644 F.3d 388 (D.C. Cir. 2011) ................................................................ 6

*United States v. ITT Cont'l Baking Co.,*
    420 U.S. 223 (1975).......................................................................10-11, 17-18

*United States v. Louisiana-Pac. Corp.,*
    754 F.2d 1445 (9th Cir. 1985)................................................................. 5

*United States v. Twitter, Inc.,*
    No. 22-cv-3070, 2023 WL 8007994 (N.D. Cal. Nov. 16, 2023) ...................... 8, 14

*United States v. Volvo Powertrain Corp.*,
  758 F.3d 330 (D.C. Cir. 2014) ............................................................. 8, 13

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
  559 F.2d 841 (D.C. Cir. 1977) ................................................................ 18

*Willis Re Inc. v. Herriott*,
  550 F. Supp. 3d 68 (S.D.N.Y. 2021) ....................................................... 19

*Winter v. NRDC*,
  555 U.S. 7 (2008) ................................................................................ 6, 20

**Statutes, Rules, and Regulations:**

Federal Rules of Civil Procedure
  Fed. R. Civ. P. 65(d)(1)(C) ...................................................................... 8

Federal Trade Commission Act
  15 U.S.C. § 45(a) ..................................................................................... 5
  15 U.S.C. § 45(b) .............................................................................*passim*
  15 U.S.C. § 45(c) ................................................................................ 6, 19
  15 U.S.C. § 45(*l*) ................................................................................... 2, 5

Federal Trade Commission Rules of Practice
  16 C.F.R. § 2.51(b) ................................................................................ 11
  16 C.F.R. § 3.72(b) ........................................................................... 11, 17
  16 C.F.R. § 3.72(b)(1) .......................................................................... 5-6
  16 C.F.R. § 3.72(b)(2) ............................................................................. 6

# INTRODUCTION

Meta's motion for an injunction pending appeal should be denied.[1] Based on a misreading of the district court's order—one the district court rejected—Meta seeks to stop the Federal Trade Commission ("FTC" or "Commission") from exercising its statutory authority to reopen its own proceedings and revisit its administrative orders.

Below, Meta argued that the Commission's proceeding is barred by a court order resolving a 2020 lawsuit filed by the United States against Meta. In a "motion to enforce" that order, Meta claimed the district court unknowingly assumed jurisdiction over not only the lawsuit, but also future FTC proceedings. The district court rejected Meta's claims. The court applied established precedent, interpreted the language of its own order, and held that its jurisdiction does not extend to the FTC's proceedings.

The district court also rejected Meta's request for an injunction pending appeal. This Court should as well. The lower court accurately interpreted its own order, so Meta cannot show a likelihood of success on appeal. Meta will not suffer irreparable harm without an injunction: litigation expenses are insufficient, and any final Commission decision is judicially reviewable. Lastly, an injunction harms the public by halting proceedings to protect consumers' privacy. Meta's motion should be denied.

---

[1] Meta Platforms, Inc. was formerly Facebook, Inc. This opposition refers to the entity as "Meta."

# BACKGROUND

## I.      Factual Background

In 2012, the Commission issued an administrative complaint against Meta, alleging violations of the FTC Act. Meta allegedly misled users, promising they could restrict sharing of non-public information, when in fact Meta could share information with third-party developers. A69-71.[2]

Meta settled that complaint with an administrative cease-and-desist order ("2012 Administrative Order"). The 2012 Administrative Order barred Meta from misrepresenting its privacy practices, required Meta to obtain users' consent before sharing their information with third parties, and ordered Meta to maintain a comprehensive privacy program. A63-65.

In 2019, believing that Meta had violated the 2012 Administrative Order, the Commission referred a complaint to the Department of Justice for civil penalties and injunctive relief under Section 5(*l*) of the FTC Act, 15 U.S.C. § 45(*l*). The complaint alleged that Meta again misled users about its information sharing with third parties and failed to maintain a program to address privacy risks. A53-58.

After extensive negotiations, the parties reached a new settlement. In July 2019, the Department filed a complaint and consent motion for entry of Stipulated Order in the district court. A11, 87. That order required Meta to pay a $5 billion civil penalty.

---

[2] In quotations, emphases were added, and internal alterations, citations, and footnotes were omitted.

This appeal arises out of Sections II and IV of the Stipulated Order. Section II stated that Meta "shall consent" to: (1) reopening the 2012 administrative proceeding; (2) waiving its procedural rights under FTC Rules; and (3) modifying the 2012 Administrative Order to replace it with a revised administrative order, the content of which was attached to the Stipulated Order as "Attachment A." A172. Section IV declared that the court "shall retain jurisdiction . . . for purposes of construction, modification, and enforcement of this Stipulated Order." A173.

In April 2020, the district court entered the Stipulated Order. A7. Thereafter, the Commission reopened its administrative proceedings against Meta and determined that modifying the 2012 Administrative Order was in the "public interest." A288. Finding Meta had "consented to modifying the 2012 order as set forth," the Commission modified its order to impose the terms in Attachment A ("2020 Administrative Order"). *Id.* Two commissioners dissented. *Id.* Meta did not object.

The 2020 Administrative Order required Meta to: (1) expand its privacy program assessment; (2) exercise more oversight over third-party apps; (3) implement greater data security protections for user information; and (4) hire an independent assessor to conduct privacy reviews. A293-304.

In July 2021, Meta's assessor produced an initial report, finding gaps and weaknesses. A218. Based largely on this, FTC staff concluded there were deficiencies presenting substantial risks to the public. On May 3, 2023, the Commission issued an order to show cause why it should not modify the 2020 Administrative Order to include

additional safeguards. A215-27. The Commission identified good cause to believe that Meta: (1) failed to implement an effective privacy program; (2) misrepresented third-party information sharing; and (3) misrepresented privacy protections in a children's application. A225-26.

Instead of responding, on May 31, 2023, Meta filed a motion in the district court to enforce the Stipulated Order and enjoin the show-cause proceedings. Relying on the Stipulated Order's retention provision, Meta claimed the Commission is powerless to modify its own 2020 Administrative Order, notwithstanding the Commission's statutory modification authority.

On November 27, 2023, the court denied Meta's motion. The court explained that its "jurisdiction to enforce consent decrees . . . is constrained by the terms" of the Stipulated Order A538. While the Stipulated Order directed Meta to "consent to" modifying the 2012 Administrative Order as reflected in Attachment A, it "did not order [Meta] to comply with the terms of Attachment A, nor order the FTC to do anything." A539. And while the court retained jurisdiction to enforce the Stipulated Order, "that jurisdiction does not extend to Attachment A, or the FTC's 2020 Administrative Order." *Id.* Thus, Meta's challenges to the Commission's proceedings "do not fall within the court's retained jurisdiction." A543.

Meta appealed to this Court and filed a new lawsuit to enjoin the Commission's proceedings in the district court, raising constitutional challenges. *Meta Platforms, Inc. v. FTC*, No. 1:23-cv-3562 (D.D.C.). On November 29, 2023, Meta filed an emergency

motion in this Court for an injunction pending appeal. The motions panel issued a briefing schedule. After the government filed an opposition on December 6, 2023, Meta withdrew its motion, noting that the Commission had extended Meta's show-cause response deadline in light of new litigation. Meta next moved for an injunction pending appeal in the district court. That motion was denied on January 12, 2024. Meta again moved this Court for an injunction pending appeal.

## II. Statutory Background

The FTC Act directs the FTC to halt "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). To do so, the Commission may commence administrative proceedings and issue administrative orders commanding "corporation[s] to cease and desist from using . . . such act or practice." *Id.* § 45(b).

The FTC Act authorizes the Commission to "reopen" and "modify" an order if "conditions of fact or of law have so changed as to require such action or if the public interest shall so require." *Id.* Additionally, the Commission may seek civil penalties for violations of administrative orders by referring a complaint to the Department of Justice to file in district court. *Id.* § 45(*l*). These avenues are not mutually exclusive. Occasionally, the FTC conducts judicial and administrative proceedings related to the same order. *E.g., United States v. Louisiana-Pac. Corp.*, 754 F.2d 1445, 1450 (9th Cir. 1985).

Before modifying an administrative order, the Commission provides "notice and opportunity for hearing," 15 U.S.C. § 45(b), via "an order to show cause, stating the changes it proposes to make in the decision and the reasons they are deemed necessary,"

5

16 C.F.R. § 3.72(b)(1). The defendant may file an answer. If a show-cause order is unopposed, or if the pleadings "do not raise issues of fact to be resolved, the Commission . . . may decide the matter on the order to show cause and answer." *Id.* "When the pleadings raise substantial factual issues," the Commission provides for appropriate hearings. Id. § 3.72(b)(2). If the Commission modifies an order, the defendant may seek judicial review in a court of appeals. 15 U.S.C. § 45(b), (c).

## ARGUMENT

An injunction pending appeal is an "extraordinary remedy." *Brotherhood of Ry. & S.S. Clerks, Freight Handlers, Exp. & Station Emp. v. National Mediation Bd.*, 374 F.2d 269, 275 (D.C. Cir. 1966). To obtain an injunction, Meta must demonstrate (1) it is likely to succeed on the merits, (2) an injunction will prevent irreparable harm, and (3) the harm is not outweighed by harm to third parties and the public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

"In the past, this Court has applied a sliding scale approach under which a strong showing on one factor could make up for a weaker showing on another." *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022). However, "under the Supreme Court's precedents, a movant cannot obtain a preliminary injunction without showing *both* a likelihood of success *and* a likelihood of irreparable harm, among other things." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh & Henderson, JJ., concurring); *accord Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011).

6

Meta fails to make a clear showing as to each of the factors, or even to show that one or more of these factors "tip sharply" in its favor. A555. Accordingly, Meta is not entitled to an injunction pending appeal.

## I.     Meta Is Unlikely To Succeed On The Merits Of Its Appeal

### A.     The District Court Correctly Interpreted Its Stipulated Order

To persuade this Court to take the extraordinary step of enjoining the Commission from exercising its statutory authority to modify its 2020 Administrative Order, Meta advocates a strained reading of the Stipulated Order that is inconsistent with its text, the parties' intentions, and the events that led the Commission to issue the 2020 Administrative Order. The Court should reject Meta's misreading.

### 1.     The Stipulated Order Does Not Limit The Commission's Authority To Modify Its Own Administrative Order

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In *Kokkonen*, the Supreme Court held that "enforcement of [a] settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.* at 378. A court may "enforce its consent decrees . . . if the parties' agreement or the court order dismissing the action reserves jurisdiction to enforce compliance." *Pigford v. Vilsack*, 777 F.3d 509, 514 (D.C. Cir. 2015) (*Pigford II*). "Even where, as here, the consent decree does retain jurisdiction in the district court to enforce its terms, the

court still lacks a free-ranging 'ancillary' jurisdiction, and is limited by the explicit terms of the parties' agreement." *Id.*

Decree terms are "interpreted as a contract." *Id.* This Court conducts *de novo* review, asking "what a reasonable person in the position of the parties would have thought the language meant." *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 337, 339 (D.C. Cir. 2014). Below, the district court properly applied binding precedent and rejected Meta's "attempts to retroactively characterize" the Stipulated Order to subsume the FTC's proceedings. A536.

Meta nevertheless insists, wrongly, that the court assumed jurisdiction over the "obligations" imposed by the 2020 Administrative Order. It argues these obligations "were ordered by the [court] or made part of the Stipulated Order." Mot. at 2. But the plain language of the Stipulated Order "did not order [Meta] to comply with the terms of Attachment A." A539. Rather, Section II provided that Meta "shall consent" to the Commission "reopening" its administrative proceeding and "modifying" the 2012 Administrative Order as "set forth in Attachment A." A172.[3] The court held this was the "only injunctive relief it ordered" with respect to Attachment A. A540; *accord United States v. Twitter, Inc.,* No. 22-cv-3070, 2023 WL 8007994, at *6 (N.D. Cal. Nov. 16, 2023) (holding that a judicial order to "consent to" an FTC order modification did "not mean

---

[3] Despite Meta's assertions otherwise, Mot. at n. 13, enjoining Meta to "consent to" a detailed modification complies with the FTC Act. *Cf.* Fed. R. Civ. P. 65(d)(1)(C) (stating an injunction must "describe" what is "required").

that the Administrative Order became a Court order").

Moreover, the Stipulated Order in no way limits the Commission's authority to modify its own administrative orders. A540 (noting the orders were drafted "against a statutory backdrop" allowing modification). The Stipulated Order contains no "express statement" prohibiting modification, indicating the parties did not intend to preclude the Commission from later modifying the 2020 Administrative Order. *George Banta Co., Inc., v. NLRB*, 686 F.2d 10, 20 (D.C. Cir. 1982). Had the parties intended to preclude modification, they would have said so as they did with respect to other Commission rights. *E.g.,* A169-70 (releasing certain "claims known by the FTC").

Meta also relies on Section IV of the Stipulated Order, Mot. at 10, which provides that the court "shall retain jurisdiction . . . for purposes of construction, modification, and enforcement of this Stipulated Order," A173. But Section IV reserved jurisdiction to enforce the *Stipulated Order*, which "does not extend" to obligations that were later imposed by the *2020 Administrative Order*. A539.[4]

Examining the Stipulated Order as a whole, there are three more reasons that Meta's obligations under the Commission's order cannot be "part of the Stipulated Order." *First*, while Attachment A was "referred to" within the Stipulated Order, Mot. at 10, these references were for specific, limited purposes. *E.g.,* A170 (Meta admitting allegations "as specifically stated . . . in Attachment A."). If the 2020 Administrative

---

[4] Contrary to Meta's circular reading, Mot. at 10, "Stipulated Order" is not defined to include Attachment A. *See* A169.

9

Order is wholly incorporated, this would improperly render these provisions superfluous. *Pigford II*, 777 F.3d at 515.

*Second*, Meta's view is "inconsistent with the stipulated purpose" to resolve certain claims predating settlement. *Segar v. Mukasey*, 508 F.3d 16, 24 (D.C. Cir. 2007). The Stipulated Order released certain claims related to conduct "prior to June 12, 2019," but "reserve[d] all other claims," including for conduct after that date. A169-70. Meta's reading eviscerates this reservation, barring the Commission from exercising its authority to modify the 2020 Administrative Order to address future developments.[5]

*Finally*, if Meta's obligations under the 2020 Administrative Order were entirely subsumed by the Stipulated Order, there would be no reason to put those terms in an "Attachment" at all. Instead, those obligations would appear in the body of the order. This Court should reject Meta's untenable interpretation.

### 2.    The 2020 Administrative Order Expressly Contemplates Future Modifications By The Commission

Meta also attempts to manufacture ambiguity through the Commission's own order. Meta cannot contort the 2020 Administrative Order, the terms of which were attached for limited purposes specified in the Stipulated Order, to bootstrap interpretations "precluded by the words of the order itself." *United States v. ITT Cont'l*

---

[5] Meta claims it would be "irrational[]" to settle a lawsuit if it could not "buy peace." Mot. at 3. But Meta settled the claims specified in the Stipulated Order—not all claims in perpetuity. Meta did not purchase the right to avoid the same scrutiny under the FTC Act as other companies, or scrutiny related to later conduct.

*Baking Co.*, 420 U.S. 223, 238 n. 12 (1975).

The express terms of the Commission's order show the parties contemplated potential future administrative modifications without judicial involvement. The FTC Act and FTC Rules authorize the Commission to modify its orders. 15 U.S.C. § 45(b); 16 C.F.R. §§ 2.51(b), 3.72(b). Consistent with this, the 2020 Administrative Order states that Meta "may seek modification of this Part pursuant to 15 U.S.C. § 45(b) and 16 C.F.R. § 2.51(b) to address relevant developments that affect compliance." A294. This confirms "Attachment A was not part of the Stipulated Order, because. . . the FTC could modify its administrative order without the court's consent." A541.[6]

Meta attempts to rebut this *unambiguous* reservation of the Commission's modification power by selectively excerpting and generating *post hoc* inferences about other provisions. Mot. at 11-13. These provisions cannot bear the weight Meta places on them. For example, Meta relies on the Finding: "This Court has jurisdiction over this matter." A289. Context matters. The 2020 Administrative Order is captioned "*In the Matter of Facebook, Inc.*," with the forum identified as "United States of America Federal Trade Commission." *Id.* Immediately preceding that Finding is the sentence: "After due consideration, the *Commission* issues its Complaint, makes the following Findings, and issues the following Order[.]" *Id.* The first Finding is: "*This* Court has

---

[6] An administrative order need not specify every instance in which it could be modified, as statutory provisions are "implicit in every order issued under the authority of the [FTC] Act, just as if the order set them out." A541.

jurisdiction over this matter." *Id.* Context reveals that the phrase "This Court" "refers to the body entering the order, the FTC." A542.[7]

Meta also claims that the 2020 Administrative Order elsewhere refers to the Commission as the "Commission" and the district court as a "court." Mot. at 11-12. Again, context matters. While words are generally presumed to have the same meaning throughout a document, this presumption "yields readily to indications that the same phrase used in different parts . . . means different things." *Barber v. Thomas*, 560 U.S. 474, 484 (2010). Neither order declares that the district court would exercise jurisdiction over FTC proceedings, and the 2020 Administrative Order expressly recognizes that the Commission could modify the 2020 Administrative Order. Full context makes clear that "This Court" refers to the Commission.

Lastly, Meta points to the discovery provision, Mot. at 12, ignoring that the parties adopted by agreement only certain "procedures prescribed" by the Federal Rules of Civil Procedure. A308. The parties also agreed that discovery would not involve the court. And the Commission reserved administrative discovery procedures under the FTC Act, confirming the court did not retain jurisdiction. *Id.*

### 3. Extrinsic Evidence Confirms The Commission Retained Its Authority To Modify The 2020 Administrative Order

Meta also selectively excerpts briefing statements made by the parties and the

---

[7] The Commission is referred to as an administrative court during quasi-judicial proceedings. *E.g., FTC v. Surescripts, LLC*, No. 19-cv-1080, 2020 WL 2571627, at *5 (D.D.C. May 21, 2020).

court from when the Stipulated Order was entered, claiming everyone believed the obligations in the 2020 Administrative Order were part of the Stipulated Order. Mot. at 13-15. These statements are extrinsic evidence, and "a court may not look to extrinsic evidence of the parties' subjective intent unless the document itself is ambiguous." *Volvo Powertrain Corp.*, 758 F.3d at 340. The Stipulated Order is unambiguous: it does not bar administrative modifications to the 2020 Administrative Order. This Court need not consider extrinsic evidence.

Regardless, extrinsic evidence confirms the opposite of what Meta contends: the parties and the court understood that the Commission retained its authority to modify its own orders. When the Commission issued the 2020 Administrative Order, it independently determined it was "in the public interest. . . to issue a new order." A288. Two commissioners dissented. Meta did not object.

None of Meta's excerpts suggest the parties or the court believed that the obligations in the 2020 Administrative Order were subsumed by the Stipulated Order. Indeed, the opposite is true. The government's consent motion explained that the Stipulated Order "requires [Meta] to *consent* to the reopening of the FTC's earlier administrative proceeding against it so the *FTC can replace* the 2012 Order with an Amended Order." A89.[8] And both the consent motion and court noted that the

---

[8] The government also noted there were two orders (a "Stipulated Order" and "Amended FTC Order") which operate "in conjunction" to allow the Department "to obtain information related to [Meta]'s privacy practices." A7 (Dkt. No. 28 at 14). This reveals why the government cited the Stipulated Order in its letter. Mot. at 14-15.

Stipulated Order provides "significant injunctive relief, primarily in the form of an amended administrative order *that will be entered by the FTC.*" A87; *see* A152.

Meta also contorts the court's observation when entering the Stipulated Order that it might show less "deference" to a future "proposed resolution" if Meta "continued to violate the law or the terms of the amended administrative order." Mot. at 13-14. The court explained what it meant during a motion hearing: it thought that the government "might proceed" as it did "the first time," *i.e.,* with a new lawsuit against Meta for violating the 2020 Administrative Order. A444-45. This statement was not intended to "imply" what Meta claims. *Id.*[9]

Finally, Meta's selective quotation of the word "incorporated" from its own briefing, Mot. 13, does not show it believed the 2020 Administrative Order was wholly incorporated. Indeed, that sentence noted the Commission's order would become "final and effective upon the date of its publication on the Commission's website (ftc.gov) as a final order." A131. Terms that become effective upon *Commission* action are part of an administrative order, not a judicial order.

*       *       *

In sum, the district court correctly rejected Meta's attempts to retroactively

---

[9] Meta notes that one court characterized the 2020 Administrative Order as "a stipulation . . . in a judicial enforcement proceeding." *Facebook, Inc. v. Brandtotal Ltd.*, No. 20-cv-7182, 2021 WL 2354751, at *8 (N.D. Cal. June 9, 2021). The court also said the administrative order "*resembles* a consent decree," *id.*, suggesting it did not in fact believe it was *part* of a judicial decree. Regardless, in a very similar case to this one, a court reached the same result as the court below. *Twitter,* 2023 WL 8007994, at *6.

characterize the 2020 Administrative Order as subsumed by the Stipulated Order.

## B.    Meta's New Arguments Also Fail

Meta also claims it is likely to succeed on appeal by raising new challenges not asserted in its initial Motion to Enforce. First, Meta asserts that the court retained jurisdiction over the 2020 Administrative Order by finding the overall settlement was "reasonable" before entering the Stipulated Order. Mot. at 17. Second, Meta claims that the Commission cannot further modify its order because it was not issued "upon" hearing. Mot. at 18. Meta forfeited these arguments. They are also meritless.

### 1.    Meta Forfeited New Arguments By Failing To Raise Them In Its Initial Motion to Enforce

Meta did not raise its new challenges in its initial motion, so it cannot now. "It is well settled that issues and legal theories not asserted at the district court level ordinarily will not be heard on appeal." *Keepseagle v. Perdue*, 856 F.3d 1039, 1053 (D.C. Cir. 2017). There is no excuse for Meta's failure. Meta is a sophisticated litigant, and it pursued numerous other arguments below. Meta cannot belatedly raise new theories.[10]

### 2.    The District Court Did Not Assume Jurisdiction Over The Commission's Order By Approving The Overall Settlement

Furthermore, Meta's new arguments lack merit. First, the court's evaluation of

---

[10] Below, Meta claimed it raised these arguments in its initial Motion and Reply. A10 (Dkt. No. 68 at 10, 15). This is inaccurate. Its previously argued that the court reviewed both orders as a single, integrated document and that the failure to acknowledge the Commission's reopening authority demonstrates that Attachment A was part of the Stipulated Order. Its new theories are materially different.

whether the overall settlement was reasonable does not mean it retained jurisdiction over the Commission's order. Mot. at 15-18. Under *Kokkonen*, "mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of [a court's] order." 511 U.S. at 381. The court did not retain jurisdiction over Meta's obligations under the 2020 Administrative Order or incorporate those obligations into the Stipulated Order. *Supra*. Thus, the court's "approval" of the "settlement's overall fairness" does not divest the Commission of jurisdiction over its own order. A542.

Meta contends this case is different from *Kokkonen* because it involves a "consent decree," not a "voluntary stipulation of dismissal." Mot. at 15-16. But this Court has already applied *Kokkonen* to consent decrees. *See Pigford v. Veneman*, 292 F.3d 918, 924 (D.C. Cir. 2002) (*Pigford I*). Meta also claims that an administrative modification "imperils" the Stipulated Order. Mot. at 17. But the Stipulated Order merely obtained Meta's "consent" for a specific Commission modification "against a statutory backdrop" allowing for future modifications. A540.[11] Therefore, a modification would not imperil the Stipulated Order.

### 3. The FTC Act Authorizes The Commission To Modify The 2020 Administrative Order

Second, Meta wrongly claims the Commission cannot modify the 2020 Administrative Order under Section 5(b) of the FTC Act, 15 U.S.C. § 45(b), because

---

[11] Meta complains it would not have agreed to an FTC order that the Commission could modify at-will, Mot. at 3, but the FTC's ability to modify an administrative order is provided in the FTC Act.

that order was not issued under the FTC Act. According to Meta, Section 5(b) only authorizes the Commission to issue an order "upon" hearing. Mot. at 18-19. Because the 2020 Administrative Order was issued as a "consent decree" and without a hearing, Meta claims that the modification was contractual and not statutory.

This argument fails for three reasons. To start, as the district court held, a motion to enforce a court order is not the proper vehicle to bring statutory challenges to a new agency proceeding. A542-43.

Second, a statutory—not purely contractual—modification is consistent with Section 5(b), FTC Rules, and the parties' agreement. Section 5(b) provides that the Commission may modify "any" administrative order "after notice and *opportunity* for hearing." FTC Rule 3.72 implements Section 5(b), providing procedures for hearing and modification. 16 C.F.R. § 3.72(b). The parties understood they were operating within this framework. Meta waived its procedural rights under Rule 3.72, A172, and the Commission cited Rule 3.72 when issuing the 2020 Administrative Order. A288.[12]

Finally, this Court and the Supreme Court have recognized that "FTC consent orders are as enforceable as adjudicated orders" under the FTC Act. *Dr. Pepper/Seven-Up Companies, Inc. v. FTC*, 991 F.2d 859, 863 (D.C. Cir. 1993); *see ITT Cont'l Baking Co.*,

---

[12] Rule 2.32 prescribes "much of the content of settlement agreements." *Dr. Pepper/Seven-Up Companies, Inc. v. FTC*, 798 F. Supp. 762, 770 (D.D.C. 1992), *rev'd in part,* 991 F.2d 859 (D.C. Cir. 1993). The Commission generally requires litigants to agree consent orders may be modified "in the same manner" as other orders, probably to foreclose arguments like Meta makes now. 16 C.F.R. § 2.32(c).

420 U.S. at 243. Indeed, this Court previously upheld the Commission reopening a consent order. *Elmo Co. v. FTC*, 389 F.2d 550, 551-52 (D.C. Cir. 1967).

*    *    *

In sum, the district court properly interpreted its own order. Meta's new and recycled arguments to the contrary are irreconcilable with the plain text of both orders, the FTC Act, and binding precedent. Thus, Meta is unlikely to succeed on appeal, or even to raise "serious" and "difficult" questions for appeal. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). For this reason, Meta's request for an injunction should be denied.

## II. Meta Cannot Show It Will Suffer Irreparable Harm Absent An Injunction Because It Can Seek Judicial Review Of A Final Commission Decision

Meta's motion should also be denied because Meta cannot satisfy this Court's "high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). An irreparable injury must be "both certain and great." *Id.* Meta has failed to demonstrate such harm for four reasons.

*First*, Meta wrongly claims it will be injured through "wasteful relitigation" before the Commission of an issue it alleges was "finally" decided. Mot. at 21. But "the expense and disruption of defending oneself in protracted adjudicatory proceedings is not irreparable harm." *John Doe Co. v. CFPB*, 849 F.3d 1129, 1135 (D.C. Cir. 2017). Moreover, unlike in cases cited by Meta, no court has adjudicated and "finally" decided the issue of jurisdiction in Meta's favor. *E.g., FDIC v. Bank of New York*, 479 F. Supp.

2d 1, 19 (D.D.C.), *aff'd,* 508 F.3d 1 (D.C. Cir. 2007). Indeed, the court ruled *against* Meta, holding it lacks jurisdiction over the FTC's proceedings.

*Second*, Meta contends it will be injured by the Commission's procedures and alleged biases, Mot. at 20-21, but Meta's motion is devoted to jurisdictional challenges. Meta cannot "seek temporary relief on claims . . . the court will have no occasion to finally adjudicate . . . on the merits." A546.

*Third*, Meta asserts it will suffer irreparable injury by being deprived of its "bargained-for forum." Mot. at 19. The out-of-circuit cases Meta cites hold that such deprivation could be irreparable where "litigating simultaneously" in two fora causes "financial and business hardship." *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1363 (Fed. Cir. 2011); *e.g., Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 105 (S.D.N.Y. 2021) (finding "loss of client relationships and customer goodwill" is irreparable). That is untrue here. Meta has an "annual revenue exceeding $100 billion" A556. It "has not shown that merely being forced to litigate in multiple fora would cause it financial hardship or disrupt its business." *Id.*

*Fourth*, Meta has a remedy for a final Commission decision: a court may set aside any potential modification. 15 U.S.C. § 45(b), (c). Vacatur of any modification, "even at the appeal-from-final-judgment stage, would fully vindicate" Meta's rights. *John Doe Co.*, 849 F.3d at 1135; *see Chaplaincy*, 454 F.3d at 297-98.[13]

---

[13] Contrary to Meta's assertions, Mot. at 21, *Elmo Division* simply held that an injunction may issue against a new administrative complaint "upon a proper showing"

### III.   The Balance Of The Equities And Public Interest Favor Allowing The Commission's Administrative Proceedings To Continue

Finally, Meta cannot show that the equities and public interest favor it. Meta's alleged equities are intertwined with the merits of its reading of the Stipulated Order, including allegedly protecting court's jurisdiction, settlement agreements, the finality of judgments, and halting unlawful agency actions. Mot. at 22-23. Meta's claims are meritless, so these claims "fall flat." A558.

Meta's other alleged equities are weak. Meta complains that the Commission did not take "immediate action" upon hearing about Meta's alleged misconduct. Mot. at 23. But the Commission can and should investigate allegations before commencing administrative proceedings. And while the Commission extended Meta's show-cause deadline—sometimes at Meta's request—the extensions ensured the courts had time to consider Meta's numerous lengthy filings.

Even if these equities somehow weighed in favor of a temporary injunction, the public benefits most from permitting the proceedings to continue. *Winter*, 555 U.S. at 24. Congress directed the Commission to stop deceptive conduct, knowing an administrative order could prove insufficient to "stop the deception." *Elmo Co.*, 389

---

of "the unavailability of other adequate relief." *Elmo Div. of Drive-X Co. v. Dixon*, 348 F.2d 342, 347 (D.C. Cir. 1965). This Court expressly distinguished new complaint proceedings from reopening proceedings, for which there is "judicial review of the necessity for disturbing such orders." *Id.* at 346 n. 7.

F.2d at 552. Congress thus authorized the Commission to modify administrative orders to protect the public. 15 U.S.C. § 45(b).

The show-cause order reflects the FTC's concerns that Meta is putting users' privacy at risk and further action may be needed to protect the public. A226. Yet Meta seeks to stall these important proceedings to litigate its ever-evolving contentions. This Court should reject Meta's efforts to further delay FTC's proceedings. A558 (holding courts should not "unnecessarily halt the functions of a coordinate branch").

## CONCLUSION

The government respectfully asks this Court to deny Meta's Motion for Injunction Pending Appeal.

Dated: February 5, 2024

Respectfully Submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

ARUN G. RAO
  *Deputy Assistant Attorney General*

AMANDA N. LISKAMM
  *Director, Consumer Protection Branch*

LISA K. HSIAO
  *Assistant Director*

  */s/ Zachary L. Cowan*
ZACHARY L. COWAN
  *Trial Attorney*
  *Consumer Protection Branch*
  *U.S. Department of Justice*
  *450 5th Street, N.W.*
  *Washington, D.C. 20530*
  *(202) 353-7728*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify that this response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,195 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), according to the word count of Microsoft Word.

*/s/ Zachary L. Cowan*
Zachary L. Cowan

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2024, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

/s/ *Zachary L. Cowan*
Zachary L. Cowan