ORAL ARGUMENT NOT YET SCHEDULED
No. 23-5280

# In the United States Court of Appeals for the District of Columbia Circuit

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*

v.

FACEBOOK, INC.,

a corporation,

*Defendant-Appellant.*

---

**OPENING BRIEF OF DEFENDANT-APPELLANT**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA No. 1:19-CV-02184-TJK

---

James P. Rouhandeh
Michael Scheinkman
David B. Toscano
Marc J. Tobak
John A. Atchley III
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com
david.toscano@davispolk.com
marc.tobak@davispolk.com
john.atchley@davispolk.com

Paul J. Nathanson
DAVIS POLK & WARDWELL LLP
901 15th Street, NW
Washington, DC 20005
Tel: (202) 962-7000
paul.nathanson@davispolk.com


*Counsel for Defendant-Appellant Meta Platforms, Inc.*

# CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A.    Parties and Amici

The parties are Defendant-Appellant Meta Platforms, Inc. ("Meta"), previously Facebook, Inc., and Plaintiff-Appellee the United States of America.

Center for the Legalization of Privacy, Electronic Privacy Information Center, Public Citizen, Campaign for A Commercial-Free Childhood, Common Sense Media, and U.S. Public Interest Research Group, Inc. participated as amici curiae in connection with the District Court's approval of the consent decree in 2020.  There were no amici with respect to the motion giving rise to the ruling under review and the undersigned is currently unaware of any amici before this Court.

## B.    Rulings Under Review

The ruling under review is *United States v. Facebook, Inc.*, No. 19-2184 (TJK), 2023 WL 8190858, at *1 (D.D.C. Nov. 27, 2023), issued by Judge Timothy J. Kelly on November 27, 2023.  (A698.)

## C.    Related Cases

This case has not previously been before this Court.  *Meta Platforms, Inc. v. FTC*, No. 24-5054, pending before this Court, involves different parties than the

i

instant action but similarly concerns the Commission's issuance of an order to show cause in the administrative proceeding *In the Matter of Facebook, Inc.*, FTC File No. C-4365.  Counsel for Meta is unaware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

### D.    Corporate Disclosure Statement

Meta is a Delaware corporation with its principal place of business in Menlo Park, California.  No publicly held corporation owns 10% or more of Meta's stock.

# TABLE OF CONTENTS

PAGE

CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES.........................................................................................i

    A.    Parties and Amici ..........................................................................i

    B.    Rulings Under Review ...................................................................i

    C.    Related Cases ...............................................................................i

    D.    Corporate Disclosure Statement ................................................ ii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES...............................................................1

STATUTES AND REGULATIONS..........................................................1

SUMMARY OF ARGUMENT .................................................................2

STATEMENT OF THE CASE...................................................................9

    A.    The Parties' 2012 Consent Order.................................................9

    B.    The FTC's 2019 Federal Court Action .......................................9

    C.    The Parties Agree to a Stipulated Order Including Attachment A...................................................................................................9

    D.    The District Court Approves and Enters the Stipulated Order, Including Attachment A.............................................................12

    E.    The FTC Enters Attachment A as an Administrative Order.....14

    F.    Meta Invests Billions to Comply with the Stipulated Order, and Obtains an Initial Assessment of Its Privacy Program .............15

    G.    The FTC Seeks to Rewrite the Stipulated Order Through an Administrative Order to Show Cause .......................................16

    H.    Meta's Motion to Enforce, the District Court's Decision, and the Instant Appeal ....................................................................17

STANDARD OF REVIEW .....................................................................18

ARGUMENT ...........................................................................................18

    I.    The District Court Expressly Retained Jurisdiction Over Attachment A .............................................................................18

II.   The District Court Has Jurisdiction Over this Matter Because Attachment A Is Part of the Stipulated Order ....................................24

   A.   The Plain Language of Attachment A Reflects the Parties' Intent That It Be Part of the District Court's Order.................25

   B.   Fundamental Contract Principles Further Confirm  that Attachment A Is Part of the Stipulated Order...........................28

   C.   Both Parties Repeatedly Took the Position  That Attachment A Was Part of the Court's Order  Both Before and After Entry of the Stipulated Order ..................................................................30

   D.   The Government Is Judicially Estopped from Arguing that the District Court Did Not Impose the Relief Contained in Attachment A ....................................................................32

III.  The District Court Has Jurisdiction Because It Approved Attachment A and Imposed the Injunctive Relief Therein ................33

   A.   The District Court's Approval of the Consent Decree  Confirms That Attachment A Was Ordered by the District Court ...........33

   B.   The Stipulated Order and Attachment Are  Inseparable Parts of the Consent Decree ....................................................35

   C.   The District Court Has Jurisdiction Over Attachment A Because It Ordered Meta to Consent to Its Entry ....................37

   D.   The District Court Misapplied *Kokkonen* .................................39

   E.   Treating Attachment A as Separate from the Stipulated Order Would Violate Rule 65(d)(1)(C)................................................42

IV.   The Res Judicata Effect of the  Stipulated Order Bars the FTC from Modifying It..................................................................................43

V.    The Commission Lacks Any Authority to Modify or Enforce Attachment A ..................................................................................45

   A.   Section 5(b) Does Not Authorize Modification of Consent Orders and Rule 2.32(c) Does Not Apply.................................46

   B.   Even if Section 5(b) Did Authorize Modification of Consent Orders, No Such Authority Was Incorporated into Attachment A ....................................................................48

   C.   Section 5(b) Does Not Allow the Commission to Enforce Its Own Orders...................................................................................52

iv

VI.     Meta Is Entitled to Injunctive Relief.....................................................53

CONCLUSION...................................................................................................56

CERTIFICATE OF COMPLIANCE......................................................................57

CERTIFICATE OF SERVICE .............................................................................58

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amfac Resorts, LLC v. Dep't of Interior*,
  142 F. Supp. 2d 54 (D.D.C. 2001) .................................................................. 49

*\*Bd. of Trs. of Hotel and Rest. Emps. Loc. 25 v. Madison Hotel, Inc.*,
  97 F.3d 1479 (D.C. Cir. 1996) ............................................................. 19, 25, 40

*Brill v. Wing*,
  937 F. Supp. 170 (N.D.N.Y. 1996) .................................................................. 29

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*,
  532 U.S. 598 (2001) ................................................................................... 40–41

*Cemex Inc. v. Dep't of the Interior*,
  560 F. Supp. 3d 268 (D.D.C. 2021) ................................................................ 31

*In re Cendant Corp. Sec. Litig.*,
  569 F. Supp. 2d 440 (D.N.J. 2008) ................................................................ 26

*Cnty. of San Miguel v. Kempthorne*,
  587 F. Supp. 2d 64 (D.D.C. 2008) .................................................................. 33

*Collins v. Thompson*,
  679 F.2d 168 (9th Cir. 1982) ........................................................................... 38

*Dailey v. Park*,
  468 F. Supp. 2d 209 (D.D.C. 2007) ........................................................... 38–39

*Davis v. Pension Ben. Guar. Corp.*,
  571 F.3d 1288 (D.C. Cir. 2009) ...................................................................... 55

*DC Soccer, LLC v. CapX Off. Sols., LLC*,
  2021 WL 1061206 (D.D.C. Mar. 18, 2021) ...................................................... 38

*Dunn v. N.Y. State Dep't of Lab.*,
  47 F.3d 485 (2d Cir. 1995) .............................................................................. 43

---

* Authorities upon which we chiefly rely are marked with asterisks.

*EEOC v. Morgan Stanley & Co.*,
  256 F.R.D. 124 (S.D.N.Y. 2004) ....................................................... 51

*\*Elmo Div. of Drive-X Co. v. Dixon*,
  348 F.2d 342 (D.C. Cir. 1965) ..................................................... 22, 49

*Est. of Boyland v. USDA*,
  913 F.3d 117 (D.C. Cir. 2019) ........................................................ 43

*Facebook, Inc. v. Brandtotal, Ltd.*,
  2021 WL 2354751 (N.D. Cal. June 9, 2021) .................................... 28

*\*FDIC v. Bank of N.Y.*,
  479 F. Supp. 2d 1 (D.D.C. 2007) .................................................... 55

*Flanagan v. Arnaiz*,
  143 F.3d 540 (9th Cir. 1998) .......................................................... 20

*Franklin-Mason v. Mabus*,
  742 F.3d 1051 (D.C. Cir. 2014) ...................................................... 40

*FTC v. Cement Inst.*,
  333 U.S. 683 (1948) ................................................................... 5, 22

*FTC v. Enforma Nat. Prod., Inc.*,
  362 F.3d 1204 (9th Cir. 2004) ........................................................ 33

*FTC v. Morton Salt Co.*,
  334 U.S. 37 (1948) ........................................................................ 53

*Gen. Motors Corp. v. Romein*,
  503 U.S. 181 (1992) ...................................................................... 49

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc.*,
  651 F.3d 1355 (Fed. Cir. 2011) ................................................. 55–56

*George Banta Co., Inc., Banta Div. v. NLRB*,
  686 F.2d 10 (D.C. Cir. 1982) ..................................................... 48–49

*Gomez v. Biden*,
  2021 WL 1037866 (D.D.C. Feb. 19, 2021) ...................................... 54

*Hoffman v. L&M Arts*,
  838 F.3d 568 (5th Cir. 2016) .......................................................... 52

*Holt v. Winpisinger*,
   811 F.2d 1532 (D.C. Cir. 1987) ....................................................... 27

*I.A.M. Nat'l Pension Fund, Benefit Plan A v. Indus. Gear Mfg. Co.*,
   723 F.2d 944 (D.C. Cir. 1983) ........................................................ 44

*In re Idaho Conservation League*,
   811 F.3d 502 (D.C. Cir. 2016) ........................................................ 36

*K.C. v. Torlakson*,
   762 F.3d 963 (9th Cir. 2014) ..................................................... 19–20

*Klay v. United Healthgroup, Inc.*,
   376 F.3d 1092 (11th Cir. 2004) ...................................................... 54

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ................................... 19–20, 24–25, 29, 38–41

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
   731 F.2d 909 (D.C. Cir. 1984) ........................................................ 33

*League of Women Voters v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ........................................................... 55

*Levelle, Inc. v. Scottsdale Ins. Co.*,
   539 F. Supp. 2d 373 (D.D.C. 2008) ................................................ 28

*Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*,
   478 U.S. 501 (1986) ..................................................................... 35

*Martinsville Nylon Emps. Council Corp. v. NLRB*,
   969 F.2d 1263 (D.C. Cir. 1992) ...................................................... 51

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
   514 U.S. 52 (1995) .................................................................. 21–22

*Medley v. Dish Network, LLC*,
   958 F.3d 1063 (11th Cir. 2020) ...................................................... 46

*Mesa Air Grp., Inc. v. Dep't of Transp.*,
   87 F.3d 498 (D.C. Cir. 1996) ......................................................... 23

*Morris v. Travisono*,
   509 F.2d 1358 (1st Cir. 1975) .................................................... 44–45

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) ................................................................ 46–47

*Nat'l Ass'n of Mfrs. v. DOD*,
  583 U.S. 109 (2018) ...................................................................... 47

*Nat'l Ass'n of Realtors v. United States*,
  97 F.4th 951 (D.C. Cir. 2024) ................................................ 36–37

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012) ...................................................................... 46

*Ohana v. Acad. Express, LLC*,
  2022 WL 2952400 (D.D.C. July 26, 2022) ................................... 23

*PETA v. U.S. Dep't of HHS*,
  901 F.3d 343 (D.C. Cir. 2018) ..................................................... 45

*\*Pigford v. Veneman*,
  292 F.3d 918 (D.C. Cir. 2002) .................................... 19, 25, 41–42

*Pigford v. Vilsack*,
  777 F.3d 509 (D.C. Cir. 2015) ..............................................25, 27–28

*Pulsifer v. United States*,
  144 S. Ct. 718 (2024) ............................................................ 47, 50

*R.I.L-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) ............................................... 55

*Richardson v. Edwards*,
  127 F.3d 97 (D.C. Cir. 1997) ....................................................... 18

*\*Salazar by Salazar v. D.C.*,
  896 F.3d 489 (D.C. Cir. 2018) ............................................ 7, 36, 44

*Schmidt v. Lessard*,
  414 U.S. 473 (1974) ...................................................................... 42

*Slaughter v. Nat'l R.R. Passenger Corp.*,
  460 F. Supp. 3d 1 (D.D.C. 2020) ................................................. 52

*\*Syngenta Crop Prot., Inc. v. Henson*,
  537 U.S. 28 (2002) ........................................................................ 54

*Tritz v. U.S. Postal Serv.*,
    721 F.3d 1133 (9th Cir. 2013) ............................................................. 43

*Union Home Mortgage Corp. v. Cromer*,
    31 F.4th 356 (6th Cir. 2022) ............................................................... 42

*United States ex rel. Schweizer v. Oce N.V.*,
    677 F.3d 1228 (D.C. Cir. 2012) ..................................................... 34, 41

*United States ex rel. Yelverton v. Fed. Ins. Co.*,
    831 F.3d 585 (D.C. Cir. 2016) ............................................................. 51

*United States v. ASCAP*,
    442 F.2d 601 (2d Cir. 1971) ................................................................ 20

*United States v. Bos. Sci. Corp.*,
    167 F. Supp. 2d 424 (D. Mass. 2001) .................................................. 22

*United States v. Civic Dev. Grp.*,
    No. 2:07-cv-4593-FSH-PS (D.N.J. Mar. 29, 2010) (Dkt. No. 93).................... 51

*United States v. Daniel Chapter One*,
    896 F. Supp. 2d 1 (D.D.C. 2012) ......................................................... 53

*United States v. ITT Cont'l Baking Co.*,
    420 U.S. 223 (1975) ...................................................................... 22, 25

*United States v. J. B. Williams*,
    498 F.2d 414 (2d Cir. 1974) ................................................................ 53

*United States v. Microsoft Corp.*,
    56 F.3d 1448 (D.C. Cir. 1995) .................................................. 14, 23–24

*\*United States v. New York Tel. Co.*,
    434 U.S. 159 (1977) ........................................................................... 54

*United States v. Trucking Emps., Inc.*,
    561 F.2d 313 (D.C. Cir. 1977) ............................................................. 35

*United States v. Twitter, Inc.*,
    2023 WL 8007994 (N.D. Cal. Nov. 16, 2023) ..................................... 28

*Waste Mgmt. of Ohio, Inc. v. City of Dayton*,
    132 F.3d 1142 (6th Cir. 1997) ....................................................... 33–34

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ............................................................. 34

*WMATA v. Loc. 689, Amalgamated Transit Union*,
    113 F. Supp. 3d 121 (D.D.C. 2015) ................................................. 55

*WMATA v. Mergentime Corp.*,
    626 F.2d 959 (D.C. Cir. 1980) ......................................................... 25

*Wright v. Eugene & Agnes E. Meyer Found.*,
    68 F.4th 612 (D.C. Cir. 2023) .......................................................... 51

## Statutes & Rules

*FTC Act § 5, 15 U.S.C. § 45............................ 1, 9–11, 16–17, 24, 27, 34, 45–52

FTC Act § 13, 15 U.S.C. § 53........................................................... 3, 9, 34

15 U.S.C. § 6502 ............................................................................... 16–17

*16 C.F.R § 2.32(c) ..................................................... 9, 46–48, 50

16 C.F.R. Part 312 ................................................................................. 17

Fed. R. Civ. P. 1 .................................................................................... 26

Fed. R. Civ. P. 41(a)(1)(ii) ................................................................... 40

Fed. R. Civ. P. 41(a)(1)(A)(ii) .............................................................. 40

*Fed. R. Civ. P. 60(b) ........................................................................... 45

*Fed. R. Civ. P. 65(d)(1)(C) ........................................................... 42–43

Local Civ. R. 40.5(a)(3) ....................................................................... 24

OTHER AUTHORITIES

11 *Williston on Contracts* § 30:25 (4th ed. 2024) .................................................. 28

*Further*, Black's Law Dictionary 675 (6th ed. 1990) ............................................. 26

Restatement (Second) of Contracts § 132 (1981) ............................................. 28–29

*In re Intuit Inc.*,
    2024 WL 382358 (FTC Jan. 22, 2024) ............................................................. 52

*In re Kogan*,
    2019 WL 3451723 (FTC July 24, 2019) ........................................................... 22

*In re Nix*,
    2019 WL 3451725 (FTC July 24, 2019) ........................................................... 22

Congressional Budget Justification FY 2025, FTC (2024) .................................... 53

# GLOSSARY OF ABBREVIATIONS

DOJ              United States Department of Justice

FTC              Federal Trade Commission

OTSC             FTC Order to Show Cause Why the Commission
                 Should Not Modify the Order and Enter the
                 Proposed New Order, dated May 3, 2023

A                Appendix

Add.             Addendum

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction under

28 U.S.C. §§ 1331, 1337(a), 1345, 1355, and 15 U.S.C. §§ 45(a) and (l).  The

District Court denied Meta's motion to enforce the Stipulated Order on November

27, 2023, and Meta filed its notice of appeal on November 28, 2023.  This Court

has appellate jurisdiction under 28 U.S.C. §§ 1291 and 1292(a)(1).

## STATEMENT OF THE ISSUES[1]

Meta appeals from a memorandum opinion and order entered by the District

Court on November 27, 2023, denying Meta's motion to enforce a 2020 consent

decree and to enjoin an administrative proceeding in which the FTC proposes to

change the injunctive terms contained in the decree.  (A697.)

This appeal presents the issue whether a district court's jurisdiction over a

consent decree, including pursuant to its express retention of jurisdiction, bars the

FTC from changing the consent decree unilaterally over the objections of the other

party to the consent decree.

## STATUTES AND REGULATIONS

Relevant statutes and regulations are set forth in the Addendum.

---

[1] Unless otherwise indicated in this brief, emphasis is added and internal citations and quotation marks are omitted.

## SUMMARY OF ARGUMENT

The District Court's denial of Meta's motion to enforce a consent decree improperly ceded the District Court's exclusive jurisdiction over the decree to an administrative agency.

The consent decree embodies a negotiated resolution of an enforcement action that the government, on behalf of the FTC, brought against Meta in the District Court in 2019.  As consideration, Meta paid a $5 billion civil penalty and consented to the entry of specified injunctive relief, which was set forth principally in an attachment—denominated "Attachment A"—to a Stipulated Order, all of which was approved by the District Court as fair and reasonable.  The District Court expressly retained jurisdiction over the Stipulated Order and Attachment A.

In addition to being entered by the District Court as part of the Stipulated Order in 2020, Attachment A was subsequently entered by the FTC as an administrative order—which allows the government to enforce it through civil penalties awarded in federal court.  Entry of Attachment A as an administrative order on the FTC docket did not divest the District Court of jurisdiction over its own order, which it expressly retained.  The government has cited no authority for such a proposition, nor is Meta aware of any.

The government expressly argued during the approval process—and the District Court expressly agreed—that *the District Court's Stipulated Order*

2

*"imposed" the relief in Attachment A*.  Indeed, only the District Court could have imposed Attachment A's relief.  The proceeding in which the District Court entered the consent decree was brought under Sections 5(l) and 13(b) of the FTC Act, which authorize only district courts—not the FTC—to impose injunctive relief.  The District Court's order that Meta consent to the FTC's subsequent entry of Attachment A as an administrative order also brought that attachment within the jurisdiction of the District Court.

The FTC recognized that Attachment A is part of the Stipulated Order when it was to the FTC's advantage to wield Attachment A as a federal court order.  In monitoring Meta's compliance with Attachment A, the FTC (and DOJ) invoked the Stipulated Order, which the agency expressly characterized as "including" Attachment A's injunctive terms, and warned Meta that its compliance with the Stipulated Order required its adherence to the terms set forth in Attachment A. (A611.)

But in 2023, when the FTC ordered Meta to show cause why it should not enforce and modify the injunctive provisions in Attachment A by extensively rewriting them, it proceeded administratively instead of returning to the District Court that approved, ordered, and expressly retained jurisdiction over the injunctive provisions of the Stipulated Order.  In doing so, the agency reversed its prior position that Attachment A was included in the Stipulated Order.  It now

takes the position that it has the power unilaterally to modify and expand the relief imposed by the District Court, and to extract far more extensive consideration from Meta than was previously agreed to by the parties.

To block the FTC's attempt to override a negotiated settlement that has the force of a federal court order, Meta moved the District Court to exercise its retained jurisdiction by enforcing the consent decree and enjoining the FTC's reopening proceeding. The District Court denied this motion, concluding that it lacks jurisdiction over the Stipulated Order's Attachment A, on the grounds that Attachment A is not part of the Stipulated Order entered by the District Court. That ruling contradicts statements made by the District Court in approving the settlement, as well as the positions taken by the government in seeking that approval.

The District Court's ruling also misconstrues the legal effect of its consent decree and abdicates its obligation to enforce the parties' negotiated resolution. The government presented the parties' resolution to the District Court for approval "as a whole" (A94), the District Court approved and memorialized it in a consent decree, and the District Court expressly retained jurisdiction over it.

The purpose of a consent decree is to imbue the parties' settlement with the force of a federal court order. The District Court's ruling rips apart the intertwined terms constituting the parties' carefully negotiated resolution of their dispute and

holds that only the main body of the Stipulated Order, and not its Attachment A, is enforceable by the federal court.

Here, there are five ***independent*** grounds for reversal—each of which demonstrates that the Commission cannot modify the injunctive relief contained in the consent decree through an administrative proceeding and over Meta's objection.

***First***, the District Court has jurisdiction over the Stipulated Order and its Attachment A because they both contain express provisions retaining jurisdiction. The Supreme Court has explained that federal district courts have continuing jurisdiction over even private settlements where the parties expressly include a retention of jurisdiction provision. The District Court declined to exercise jurisdiction, concluding that the reference to "[t]his Court" in Attachment A's retention of jurisdiction provision refers to the Commission. This ruling is not only directly contrary to the Supreme Court's observation that the "Commission is not a court," *FTC v. Cement Inst.*, 333 U.S. 683, 703 n.12 (1948), but is also irreconcilable with the definition of the Federal Trade Commission as the "Commission" on the very same page. The Commission does not refer to itself as the "Court" in its orders, and it did not do so for apparently the first (and only) time here.

***Second***, binding Supreme Court authority also states that federal district courts have continuing jurisdiction over even private settlement agreements when those terms are incorporated into a district court's order.  That is the case here.  The plain language of Attachment A shows that it was ordered by the District Court and is part of its order.  Among the terms that make sense only if Attachment A was imposed by the District Court is the provision for discovery pursuant to the Federal Rules of Civil Procedure "without further leave of court."  (A230.)  Because the FTC lacks power to grant discovery pursuant to the federal rules, only the District Court could have authorized this discovery.  Attachment A also includes a waiver by the FTC of "all rights to appeal … this Order."  (A211.)  Because the FTC can appeal federal court orders but not its own orders, this waiver is meaningful only if the District Court ordered Attachment A.  The District Court erred when it ignored these provisions—and by disregarding the fact that, years after entry of the consent decree, the FTC continued to take the position that the Stipulated Order includes Attachment A and that the injunctive provisions contained in Attachment A carry the force of a court order.

***Third***, the District Court has jurisdiction because the resolution here resulted in a consent decree—of which Attachment A is an integral part—that was expressly approved by the District Court.  Once approved, the injunctive provisions contained in Attachment A carried the force of a federal court order.

6

Contrary to the conclusion reached by the District Court, Attachment A was not a separately agreed, private settlement.  Indeed, it depended entirely on entry of the Stipulated Order for its legal force and would not have bound Meta had the District Court not entered the Stipulated Order.  Because the District Court acknowledged at the time of approval that Attachment A "impos[ed]" injunctive relief on Meta, it was required to enforce its order and protect its jurisdiction.  (A186.)

*Fourth*, the Stipulated Order is a final judgment with res judicata effect. Attachment A was entered to resolve the government's civil complaint—there was no administrative complaint or claim to settle.  Under these circumstances, not even a court—let alone a federal agency—could impose "entirely new injunctive relief" "under the guise of modification."  *Salazar by Salazar v. D.C.*, 896 F.3d 489, 498 (D.C. Cir. 2018).  Doing so "would deny the enjoined party the contractual bargain it struck in agreeing to the consent decree …, and would destroy the predictability and stability that final judgments are meant to provide." *Id*.

*Fifth*, the District Court erred in concluding that the FTC's modification authority extends to Attachment A and that the FTC has the authority to enforce Attachment A.  Nothing in the FTC Act or the FTC's own rules allows it ***to modify*** agreed orders; in fact, the FTC has formally determined otherwise.  The FTC, and the Supreme Court, have also long held that the FTC lacks the authority ***to enforce***

7

its own orders.  Nothing in the plain language of the Stipulated Order, including Attachment A, is to the contrary.

For each of these five independent reasons, Attachment A is an integral part of the Stipulated Order over which the District Court retained exclusive jurisdiction.  Despite the lack of any provision in the agreement or any legal or statutory basis that would permit unilateral modification, the FTC seeks to rewrite a court-approved consent decree and impose entirely new injunctive relief through its own administrative proceeding.  To the extent the FTC seeks to enforce, modify, or interpret Attachment A, it must return to the District Court.

## STATEMENT OF THE CASE

### A.    The Parties' 2012 Consent Order

On April 29, 2011, Meta and the FTC settled administrative allegations that Meta violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as memorialized in a Commission order entered on July 27, 2012 (the "2012 Order").  There was no District Court proceeding at that time, and the 2012 Order specified that the FTC "has jurisdiction of the subject matter of this proceeding."  (A64.)  Meta agreed that the 2012 Order "may be altered, modified, or set aside in the same manner and within the same time provided by statute for other orders" (A411)—as required for an "agreement in settlement of a Commission complaint."  16 C.F.R § 2.32(c).

### B.    The FTC's 2019 Federal Court Action

Seven years later, the FTC invoked the District Court's jurisdiction through a complaint filed by DOJ alleging that Meta had violated the 2012 Order and Section 5 of the FTC Act.  (A13, A55–A60.)  The complaint sought relief, including civil penalties and an injunction, under the Court's "equitable powers" and 15 U.S.C. §§ 45(l) and 53(b).  (A61.)  These statutory provisions authorize only the District Court, not the Commission, to impose civil penalties and injunctive relief.

### C.    The Parties Agree to a Stipulated Order Including Attachment A

With Meta's consent, the government moved for entry of a consent decree resolving the action (the "Consent Motion").  (A89.)  The parties' settlement

9

culminated "months of intense negotiations" between Meta, the FTC, and DOJ. (A92; *see* A169–A170.)

The consent decree required Meta to pay a $5 billion civil penalty and imposed injunctive relief requiring Meta to implement a comprehensive privacy program and to retain an assessor who would biennially assess the program for 20 years.  (A205–A231.)

The monetary relief was set forth in the main body of a Stipulated Order, and the injunctive relief was principally set forth in Attachment A.  The Stipulated Order also required Meta to consent to the FTC's entry of Attachment A on the FTC docket.  (A206.)  In 2019, the government explained to the District Court that it was necessary to "reopen[] the FTC's earlier administrative proceeding … so the FTC can replace the 2012 Order with … Attachment A to the Stipulated Order." (A91, A638.)  Otherwise, the 2012 Order and the Stipulated Order would have subjected Meta to conflicting requirements.  Entry by the FTC also would allow the government to enforce compliance in a Section 5(l) action—like the action settled by the Stipulated Order.  (A123, A230).  The FTC acknowledged, however, that it could not enter Attachment A on its docket "until the federal court entered" the Stipulated Order.  (A404.)

The Stipulated Order specifies that "this Court shall retain jurisdiction in this matter for purposes of construction, modification, and enforcement of this

Stipulated Order" (A207), and Attachment A to the Stipulated Order provides that "[t]his Court has jurisdiction over this matter" (A211).

Attachment A includes express provisions arising from the District Court's authority and relying on the District Court's ongoing jurisdiction. Part XV allows the FTC to obtain discovery from Meta under the Federal Rules of Civil Procedure "without further leave of court," and Part XVI extends the term of the agreement upon the filing of "a complaint … ***in federal court*** alleging any violation of this Order." (A230.) Attachment A also required the FTC to "waive all rights to appeal" Attachment A. (A211.) The FTC otherwise can appeal court orders but not its own administrative orders. *See* 15 U.S.C. § 45(c).

Unlike in the 2011 settlement, Meta did not consent in the Stipulated Order or its Attachment A to unilateral modification by the FTC. Instead, Attachment A allows Meta to seek from the FTC modification of two narrow requirements under specified circumstances. (A215–A216.)

The FTC acknowledged that the settlement memorialized in the Stipulated Order provided for "substantially greater" injunctive relief than it "realistically might have obtained" through litigation. (A302.) The FTC also acknowledged that the Stipulated Order would only "have the force of law when approved and signed by the district court judge." (A359.)

11

D.    **The District Court Approves and Enters the
Stipulated Order, Including Attachment A**

The Consent Motion prompted months of litigation over entry of the

Stipulated Order focusing on the adequacy of the injunctive relief in Attachment A.

The District Court allowed three amicus briefs and ordered the parties to respond

to them.  (A7–A8.)

The parties' briefs repeatedly described Attachment A's terms as part of the

Stipulated Order.  The government represented that the "Stipulated Order …

imposes significant injunctive relief, primarily in the form of an amended

administrative order that will be entered by the FTC" (A89); the "proposed

settlement has two main components: a civil penalty award and ***injunctive relief***

***imposing new compliance terms on Facebook***" (A92); and the "Stipulated Order

[through Part XV of Attachment A] gives … the FTC authority to monitor and

enforce Facebook's compliance" (A91).  Meta stated that the "proposed

administrative decision and order [is] incorporated in the Stipulated Order"

(A165); the "Stipulated Order [per Section VII of Attachment A] carefully protects

'Covered Information'" (A182); and "Section VII of [Attachment A to] the

Stipulated Order requires Facebook to engage in annual comprehensive

assessments …." (A183).

Nowhere in the robust debate over the adequacy of Attachment A's terms

did the government suggest that the FTC could modify those terms.  Rather, the

government represented (and Attachment A reflects), that it could enforce Meta's compliance by bringing claims in federal court.  (A230, A304–A305.)

The District Court granted the Consent Motion in an opinion that carefully reviewed and approved the Stipulated Order, including Attachment A, as "fair, reasonable, and in the public interest."  (A193.)

In evaluating the Stipulated Order's reasonableness, the District Court considered in detail the injunctive relief in Attachment A—including the creation of an "enhanced privacy program" with improved safeguards, training, and procedures, retention of an "independent, third-party assessor" to evaluate the program, and establishment of a "new independent board committee dedicated to information privacy."  (A196.)  The District Court also considered—and rejected—arguments by amici that Attachment A's terms were inadequate, concluding that "the overall terms of *the Stipulated Order* are not unreasonable simply because they do not apply an entirely different privacy-focused legal regime," and notwithstanding that "the Court might well have fashioned different remedies were it doing so out of whole cloth after a trial."  (A198.)

The District Court expressly acknowledged—echoing the parties' representations—that the Stipulated Order "*impose*[*s*] injunctive relief."  (A186.) That injunctive relief is set forth almost entirely in Attachment A.

13

Finally, the District Court concluded its opinion by providing that "it retains jurisdiction over this **matter**, including to enforce [the Stipulated Order's] terms," and warned that if the government alleged that Meta "reneged on its promises and continued to violate the law or the terms of the amended administrative order, the Court may not apply quite the same deference to the terms of a proposed resolution." (A201–A202 (citing the precedent of "a district judge [who] has administered a consent decree for some period of time," and quoting *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995)).)

The District Court entered the Stipulated Order, including Attachment A, as a single document and docket entry. (A9, A203.)

### E.     The FTC Enters Attachment A as an Administrative Order

On April 27, 2020, the FTC entered Attachment A in its administrative proceeding against Meta as a "final order." (A380, A400.) The document entered by the FTC was identical to the document entered by the District Court—including the "Attachment A" legend—and was attached to a one-page "Order Modifying Prior Decision and Order" that expressly relied on the District Court's entry of the Stipulated Order. (A380.) The FTC explained that "[p]ursuant to the 2019 settlement, [it] **could not amend its 2012 administrative order** with Facebook with the updated consumer protections **until the federal court entered its order**."

14

(A404.)  After it was entered by the Commission, Attachment A coexisted on the District Court's docket and on the FTC's docket.  (A203, A380.)

In subsequently monitoring Meta's compliance with Attachment A, the FTC and DOJ invoked the judicial force of the Stipulated Order and expressly represented that Attachment A's injunctive terms are "includ[ed]" in the Stipulated Order:

> As you know, ***the Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief*** entered by the United States District Court for the District of Columbia on April 23, 2020 (Dkt. No. 35) (***the "Order"***) … entitles the Commission and the Department to request documents and information concerning Meta's compliance with the Order, including ***the Order's prohibition against misrepresentations*** … and ***the Order's provisions concerning a mandated privacy program***.

(A611.)

### F.    Meta Invests Billions to Comply with the Stipulated Order, and Obtains an Initial Assessment of Its Privacy Program

The Stipulated Order required Meta to "implement … a comprehensive privacy program" by October 25, 2020, and to retain an assessor who would conduct biennial assessments of the program for 20 years, after an "initial Assessment" covering its first 180 days.  (A218, A223.)  Meta invested billions of dollars to implement a comprehensive privacy program and facilitate rigorous oversight by the assessor.

After the initial assessment was submitted to the government in July 2021, Meta responded through May 2022 to numerous requests from the FTC concerning the findings, and subsequently did not hear from the FTC about these issues for a year.  (A292.)

### G.    The FTC Seeks to Rewrite the Stipulated Order Through an Administrative Order to Show Cause

On May 3, 2023, the then-three-member Commission issued an OTSC directing Meta to show cause why the FTC should not modify Attachment A and enter a new Proposed Order.  (A307–A319).  The FTC invoked its reopening authority under Section 5(b) of the FTC Act, 15 U.S.C. § 45(b).  (A307.)  The Commission commenced the proceeding, citing findings from the initial 2021 assessment, just minutes before its first meeting with the assessor to preview findings from the 2023 assessment (the first full biennial assessment), which the FTC received in June 2023.

The OTSC states that the FTC's reopening is an "enforcement action" because the Commission has "reason to believe" that Meta (i) failed to implement an effective privacy program under Part VII of Attachment A; (ii) made misrepresentations between 2017 and 2019 with respect to its Messenger Kids product—a messaging and video calling app built for children to connect with family and friends in a parent-controlled environment—thus violating the 2012 Order, Section 5 of the FTC Act, The Children's Online Privacy Protection Act

16

("COPPA"), 15 U.S.C. § 6502, and the COPPA Rule, 16 C.F.R. Part 312; and (iii) made misrepresentations between 2018 and 2020 regarding which third-party developers could receive nonpublic information that violated Section 5 of the FTC Act and both the 2012 Order and Attachment A.  (A316–A318.)

Based on these assertions, the FTC has put forward a Proposed Order which would substantially rewrite Attachment A, imposing expansive and unprecedented new requirements and prohibitions on Meta.  The FTC has proposed more than 800 changes, including a requirement that at least one member of Meta's Independent Privacy Committee—a committee of Meta's board of directors—have specified experience at a nonprofit (A326); and a prohibition on collecting or benefitting from certain information about users under 18 years old (A328).

### H.    Meta's Motion to Enforce, the District Court's Decision, and the Instant Appeal

On May 31, 2023, Meta moved the District Court to enforce the Stipulated Order and enjoin the OTSC Proceedings principally because the Commission's unilateral attempt to modify Attachment A invades the District Court's exclusive jurisdiction over the Stipulated Order.  (A233.)

On November 27, 2023, the District Court denied Meta's motion.  (A697.) In its opinion, the District Court disclaimed jurisdiction because "the obligations imposed on [Meta] through the FTC's 2020 administrative order, although set forth in an attachment to the Stipulated Order, were not made part of the Stipulated

17

Order itself" and "do not involve the construction, modification or enforcement of the Stipulated Order."[2]  (A699.)

Meta noticed an appeal on November 28, 2023 (A715), and this Court denied Meta's motion for an injunction pending appeal on March 12, 2024.

Meta submitted its response to the OTSC on April 1, 2024.

## STANDARD OF REVIEW

This Court reviews "decisions interpreting consent decrees and the agreements underlying them *de novo*, in the same manner as … decisions interpreting contracts." *Richardson v. Edwards*, 127 F.3d 97, 101 (D.C. Cir. 1997).  The Court does not "search[] for the purpose of a consent decree and then constru[e] it in that light," but rather must construe the consent decree "as it is written," using "[o]rdinary aids of construction, such as the circumstances surrounding the formation of the consent order."  *Id.*

## ARGUMENT

**I.**    **The District Court Expressly Retained Jurisdiction Over Attachment A**

The District Court erred when it concluded that "although [it] 'retain[ed] jurisdiction in this matter for purposes of construction, modification, and enforcement of [the] Stipulated Order,' this jurisdiction does not extend to

---

[2] Meta's motion also raised structural constitutional challenges, the merits of which the District Court did not reach.  As the District Court instructed, Meta has filed a separate action raising those challenges.

Attachment A."  (A706 (quoting A207 (Stipulated Order)).)  Attachment A's very

first numbered paragraph—which expresses the District Court's retention of

jurisdiction—reveals the District Court's error.  (A211.)

As the Supreme Court and this Court have concluded, jurisdiction to enforce

even private settlements exists when the parties have either (i) "clearly provid[ed]

for retention of federal district court jurisdiction in their stipulations of dismissal,"

or (ii) "incorporat[ed] the full text of the settlement agreement into those

stipulations."  *Bd. of Trs. of Hotel & Rest. Emps. Loc. 25 v. Madison Hotel, Inc.*,

97 F.3d 1479, 1484 n.8 (D.C. Cir. 1996) (citing *Kokkonen v. Guardian Life Ins.

Co. of Am.*, 511 U.S. 375 (1994)); *Pigford v. Veneman*, 292 F.3d 918, 923 (D.C.

Cir. 2002).  The parties did both here.[3]

Under the first prong of the analysis, federal district courts have continuing

jurisdiction over settlements where, as here, the parties expressly include a

retention of jurisdiction provision.  *See*, *e.g.*, *Kokkonen*, 511 U.S. at 381 (stating

that the terms of a settlement agreement are "made part of the order of dismissal"

where a provision "retaining jurisdiction" is included); *Madison Hotel*, 97 F.3d at

1484 n.8; *Pigford*, 292 F.3d at 923; *K.C. v. Torlakson*, 762 F.3d 963, 967 (9th Cir.

---

[3] As discussed *infra*, that Attachment A was incorporated into the Stipulated Order (Point II) and that the Court approved a consent decree (Point III) to resolve the complaint (Point IV) each provides an independent basis for jurisdiction.

2014) (quoting *Kokkonen*, 511 U.S. at 381) ("[T]he district court specifically retained jurisdiction over the Settlement Agreement. Consequently, any breach of the Settlement Agreement 'would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.'").

In such circumstances, federal court jurisdiction is exclusive. *See*, *e.g.*, *Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998) (holding that "it would make no sense" for retained jurisdiction to be nonexclusive); *United States v. ASCAP*, 442 F.2d 601, 603 (2d Cir. 1971) (holding that retention-of-jurisdiction clause conveys exclusive jurisdiction).

Here, Attachment A expressly provides that the District Court retained jurisdiction. Attachment A states unambiguously that "[t]his Court has jurisdiction over this matter." (A211.) This language in Attachment A echoes the plain and unambiguous language in the Stipulated Order stating that "this Court shall retain jurisdiction … for purposes of construction, modification and enforcement of this Stipulated Order." (A207.) [4]

---

[4] As a result, there can be no doubt that, as set forth below, if Attachment A is part of the Stipulated Order, then the District Court also has jurisdiction over Attachment A pursuant to the retention-of-jurisdiction provision set forth in the Stipulated Order, regardless of how Attachment A's reference to "[t]his Court" is interpreted. *See infra* Point II.

The District Court erred in reaching a contrary conclusion.  The reference to "[t]his Court" in Attachment A plainly and unambiguously refers to the District Court.  The District Court read Attachment A as an order issued ***only*** by the Commission and through which ***only*** the Commission spoke and, as a result, found the reference to "[t]his Court" to be "curious."  (A708.)  But any such curiosity vanishes when the reference is read in its proper context—as part of an order entered by the District Court ***on its own docket*** in the first instance.  (A9 (entering the Stipulated Order as Doc. 35); A203–A232 (as-filed Stipulated Order).).  Indeed, the District Court reasoned that "[t]he use of the word 'this' before 'Court' strongly suggests that it refers to the body entering the order."  (A709.)  That is exactly right, and once it is acknowledged that the District Court entered Attachment A in the first instance, the District Court's own reasoning confirms that "the body [that] enter[ed] the order" is the District Court.[5]

Further, if "[t]his Court" means the Commission, then the parties used two different terms in Attachment A (the defined term "Commission" and the undefined term "Court") to refer to the Commission while using the same word ("Court") to refer to two separate bodies.  That cannot be right.  *See Mastrobuono*

---

[5] Even as subsequently entered by the FTC, Attachment A follows a one-page order referring to and relying on the District Court's entry of the Stipulated Order.  (A380.)

21

*v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) ("[A] document should be read to give effect to all its provisions and to render them consistent with each other.").[6]  Attachment A defines the "Federal Trade Commission" as "Commission" in the first line of its first page and uses that term consistently throughout, including when referring to the Commission in its adjudicative capacity.  (A211.)

Moreover, the "Commission is not a court," *Cement Inst.*, 333 U.S. at 703 n.12, and it does not call itself a "court."  If the parties meant to say that the "Commission" has jurisdiction, they would have done so—as the Commission has in thousands of prior orders, including two announced the same day as the Stipulated Order.[7]  "This Court has jurisdiction" appears in only one FTC order—this one—and it beggars belief to suggest that the Commission, apparently for the first time in its history, used "[t]his Court" to mean "Commission."

---

[6] It is beyond dispute—and the government agrees—that Attachment A must be interpreted as a contract.  *See United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975); *Elmo Div. of Drive-X Co. v. Dixon*, 348 F.2d 342, 345–46 (D.C. Cir. 1965) (holding that agreed Commission settlements give rise to "enforceable rights" against both parties, backed by "consideration," that the Commission "may not unilaterally obliterate"); *United States v. Bos. Sci. Corp.*, 167 F. Supp. 2d 424, 430 (D. Mass. 2001); (*see, e.g.*, A536, A584).

[7] *In re Kogan*, 2019 WL 3451723, at *1 (FTC July 24, 2019); *In re Nix*, 2019 WL 3451725, at *1 (FTC July 24, 2019).

Even if the phrase "[t]his Court has jurisdiction" were ambiguous, the District Court should have construed it in Meta's favor and against the Commission, as the original author of the phrase. *See Mesa Air Grp., Inc. v. Dep't of Transp.*, 87 F.3d 498, 506 (D.C. Cir. 1996) (describing "the basic principle of contract law" that ambiguous terms should be interpreted "against the party who supplies the words").[8]

The District Court's decision approving the consent decree also demonstrates that it retained jurisdiction over Attachment A. The District Court ended its opinion by noting that it "retains jurisdiction over this matter" and cautioning Meta that it may not be as deferential if the parties "return to this Court" on allegations that Meta "once again … has reneged on its promises and continued to violate the law ***or the terms of the amended administrative order***." (A201–A202 (citing *Microsoft*, 56 F.3d at 1461).) And the District Court quoted *Microsoft*'s reasoning explaining how the expertise of a district judge who has "administered a consent decree for some period of time" and become "familiar" with the facts affects the court's ability to "weigh[] the appropriateness of a proposed remedy." *Id.*

---

[8] The District Court's speculation that "[t]his Court" is a mere scrivener's error fares no better. (A708.) There is ***no*** evidence this is the case—let alone the clear and convincing evidence required—and the District Court's decision cites none. *See Ohana v. Acad. Express, LLC*, 2022 WL 2952400, at *21 (D.D.C. July 26, 2022).

Judge Kelly's reference to retained jurisdiction and to *Microsoft*'s reasoning regarding court administration of consent decrees made clear that any action to enforce Attachment A would necessarily be brought before him.[9]  If the District Court did not retain jurisdiction over Attachment A, then invoking the retention-of-jurisdiction provision and administration of consent decrees in its 2020 decision approving the consent decree would be irrelevant.  No contempt would lie and even if an action were brought in the District of the District of Columbia, it would come before Judge Kelly only by happenstance, if at all.[10]  In short, the District Court's decision in 2020 cannot be reconciled with its conclusion in 2023 that it did not retain jurisdiction over Attachment A.

## II.     The District Court Has Jurisdiction Over this Matter Because Attachment A Is Part of the Stipulated Order

The District Court separately erred when it held that the "obligations imposed on [Meta] reflected in [Attachment A] were not ordered by the Court or made part of the Stipulated Order."  (A699.)  Under the second prong of *Kokkonen*, federal district courts have continuing jurisdiction over settlement agreements whose terms are incorporated into the district court's order.  *See, e.g.*, *Kokkonen*,

---

[9] This could occur either through contempt or through a civil penalty action pursuant to Section 5(l) of the FTC Act.

[10] District Court rules dictate that civil cases are not "related" unless "the earliest is still pending on the merits in the District Court."  Local Civ. R. 40.5(a)(3).

511 U.S. at 381 (stating that terms of settlements are "made part of the order of dismissal" when they are "incorporat[ed]" into the order); *Madison Hotel*, 97 F.3d at 1484 n.8; *Pigford*, 292 F.3d at 923.

As set forth below, Attachment A is a part—indeed an integral part—of the Stipulated Order, over which the District Court agrees it has exclusive jurisdiction. (A700 ("The Stipulated Order provided that the Court would retain jurisdiction in this matter for purposes of construction, modification, and enforcement of this Stipulated Order.") (quoting A207).)  Concluding otherwise here would also be inconsistent with the parties' intent and deprive Meta of the benefit of its bargain.

### A. The Plain Language of Attachment A Reflects the Parties' Intent That It Be Part of the District Court's Order

In interpreting Attachment A, the District Court should have looked to its plain and unambiguous language, which demonstrates that it was intended to be part of the District Court order.  *See WMATA v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C. Cir. 1980) ("Under general contract law, the plain and unambiguous meaning of an instrument is controlling, and the Court determines the intention of the parties from the language used by the parties to express their agreement.").[11]

---

[11] The Stipulated Order is a consent decree—a "written reflection of the parties' bargain resolving their case, [that] should be interpreted as a contract." *Pigford v. Vilsack*, 777 F.3d 509, 514 (D.C. Cir. 2015); *see also ITT Cont'l Baking*, 420 U.S. at 238 (same).  Indeed, the government repeatedly invoked the District Court's power to enter the Stipulated Order as a consent decree in its Consent Motion.  (*See, e.g.*, A91, A94.)

Part XV of Attachment A, which the District Court entirely ignored in denying Meta's motion to enforce, allows the Commission to obtain discovery from Meta "without further leave of court, using any of the procedures prescribed by [specified] Federal Rules of Civil Procedure." (A230.) Because the Federal Rules govern proceedings in "United States district courts," Fed. R. Civ. P. 1, Attachment A was referring to the District Court itself. The Commission could not authorize such discovery. Therefore, this provision of Attachment A necessarily was an exercise of the District Court's authority. The government has acknowledged as much, representing that the *Stipulated Order* "authorizes the [FTC] and [DOJ] to use discovery devices to request certain documents and information" from Meta. (A611.)

Moreover, the use of the phrase "further leave of Court" makes no sense unless the District Court authorized the discovery in the first instance and therefore confirms that this provision of Attachment A arises from the District Court's authority. *See In re Cendant Corp. Sec. Litig.*, 569 F. Supp. 2d 440, 447 (D.N.J. 2008) (citing *Black's Law Dictionary* 675 (6th ed. 1990)) ("Further is defined as 'additional' and 'is equivalent to … something beyond what has been said.'"). The District Court was able to order discovery in Attachment A only because Attachment A carries the force of a court order.

Similarly, in Attachment A, "the Commission waive[d] all rights to appeal or otherwise challenge or contest the validity of this Order." (A211.) Absent the Commission's waiver, Attachment A could give rise to an appeal only if it were ordered by a federal district court. If Attachment A were not a court order (and solely an administrative order), it could give rise to a petition for review only *by Meta*. *See* 15 U.S.C. § 45(c). Accordingly, the Commission's waiver of the right to appeal Attachment A confirms—and is an unambiguous admission—that Attachment A carries the force of a District Court order. Because waiver "is an intentional relinquishment of a ***known right***," a party cannot waive a right that does not exist. *Holt v. Winpisinger*, 811 F.2d 1532, 1541 n.67 (D.C. Cir. 1987). The only right the FTC could waive here was the right to challenge a federal court order.

Similarly, the plain language reference to "this Court" is susceptible to only one reading—that it refers to the District Court and not the Commission. *See supra* Point I.

For all of the foregoing reasons, the plain language of Attachment A demonstrates that it is a part of the relief the District Court imposed in the Stipulated Order. *See Pigford*, 777 F.3d at 514–15 ("In interpreting a settlement agreement, the use of aids to construction, including the circumstances surrounding

the formation of the consent order, is permitted.").[12]  Examining this language,

another federal court concluded that Attachment A is a "***stipulation between the***

***FTC and Facebook in a judicial enforcement proceeding***"—i.e., part of the

Stipulated Order.  *See Facebook, Inc. v. Brandtotal, Ltd.*, 2021 WL 2354751, at *8

(N.D. Cal. June 9, 2021).

### B.  Fundamental Contract Principles Further Confirm that Attachment A Is Part of the Stipulated Order

Attachment A and the rest of the Stipulated Order form a single, integrated

contract, and the Stipulated Order repeatedly references Attachment A.  (A204–

A206.)  When "a writing refers to another document, that other document …

becomes constructively a part of the writing, and in that respect the two ***form a***

***single instrument***."  11 *Williston on Contracts* § 30:25 (4th ed. 2024).

Indeed, Attachment A is ***physically attached*** to the Stipulated Order—and

thus forms an integrated part of the Stipulated Order as a matter of law.  *See*

*Levelle, Inc. v. Scottsdale Ins. Co.*, 539 F. Supp. 2d 373, 376 (D.D.C. 2008); *see*

*also Restatement* (*Second*) *of Contracts* § 132 (1981) ("It is sufficient … that the

---

[12] In these respects, Attachment A is unlike the agreement at issue in *United States v. Twitter, Inc.*, 2023 WL 8007994 (N.D. Cal. Nov. 16, 2023), on which the District Court relied.  (A707.)  In *Twitter*, the administrative order expressly stated that the ***Commission*** retained jurisdiction over the matter.  2023 WL 8007994, at *6.

party to be charged physically attaches one document to the other" for purposes of the Statute of Frauds).

Attachment A's terms were ordered by the District Court by virtue of their inclusion within the Stipulated Order. Attachments "are an intrinsic part of the decree and are to be given the same effect as the main document." *Brill v. Wing*, 937 F. Supp. 170, 175–76 (N.D.N.Y. 1996). Neither the District Court nor the government below cited any contrary legal principle—much less any authority that allows severance of an attachment from a contract.

Indeed, the government concedes that Attachment A is incorporated into the Stipulated Order, insisting only that the incorporation was for "a limited purpose." (A538–A539 (discussing those "provisions of the Stipulated Order in which the parties incorporate the 2020 Administrative Order for a limited purpose").) But it is irrelevant under *Kokkonen* why, or for what purpose, Attachment A is incorporated. All that matters is that it is incorporated, which the government concedes.

Having conceded that Attachment A is incorporated into the Stipulated Order, the government gives outsized importance to the parties' decision to include much of the agreed relief in an attachment to be entered as an administrative order by the FTC—after its approval and entry by the District Court. Both steps were necessary: The District Court had to first review and approve the entire settlement,

29

including Attachment A, and enter the Stipulated Order and Attachment A on its own docket.  And, entry by the FTC was required "so the FTC [could] replace the 2012 Order with … Attachment A to the Stipulated Order" (A91), and to allow the government to continue to enforce Meta's compliance through a civil penalty action in federal court.  (A230.)  Providing for Attachment A to coexist on the FTC's docket for these practical reasons did not void or supplant the District Court's entry of Attachment A—or its incorporation into the Stipulated Order.

### C.    Both Parties Repeatedly Took the Position That Attachment A Was Part of the Court's Order Both Before and After Entry of the Stipulated Order

In seeking the District Court's approval of the parties' settlement, the government treated the Stipulated Order and Attachment A as part of a single, integrated agreement, noting that "**[*t*]***he proposed settlement has two main components***: a civil penalty award and injunctive relief imposing new compliance terms on [Meta]." (A92.)  The government urged the District Court to approve the civil penalty in the Stipulated Order and the injunctive relief in the Stipulated Order's Attachment A "as a whole." (A94.)

Meta likewise stated that "the proposed administrative decision and order [is] incorporated in the Stipulated Order." (A165.)  In response to amici, Meta considered the injunctive provisions found only in Attachment A to be part of the Stipulated Order and argued that procedural rules governing FTC administrative

30

settlements were inapplicable because Attachment A was part of a "proposed judicial decre[e]" and a "federal court order."  (A178, A183–A184.)

The government also expressly acknowledged that the injunctive relief set out in Attachment A would be "***imposed***" by the District Court.  (A89 ("[T]he Stipulated Order … imposes significant injunctive relief, primarily in the form of an amended administrative order that will be entered by the FTC.").)  This could be the case only if Attachment A is part of the Stipulated Order.

Indeed, up until May 3, 2023, when the FTC issued the OTSC—***the government continued to assert that Attachment A's terms were ordered by the District Court and were part of the Stipulated Order***.  The District Court entirely ignored these statements in its decision.  These acknowledgements are fatal to the government's interpretation of the Stipulated Order and Attachment A.

The relevant statements regarding the interplay between the Stipulated Order and Attachment A were made by the government as part of the FTC's formal efforts to monitor Meta's compliance, and thus go to the intent of the parties.  *See Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 278–79 (D.D.C. 2021) (holding that "courts may look to evidence of 'course of performance' for interpretative assistance even when the contractual language contains no ambiguity," and that such evidence is "the best indication of what [the parties] intended the writing to mean.").

31

Specifically, in requests under Part XV of Attachment A, the FTC and DOJ treated the Stipulated Order and Attachment A as one and the same, and confirmed that Attachment A's requirements are the Stipulated Order's requirements:

> As you know, ***the Stipulated Order*** for Civil Penalty, Monetary Judgment, and Injunctive Relief ***entered by the United States District Court*** for the District of Columbia on April 23, 2020 (Dkt. No. 35) (the "Order"), ***authorizes the [FTC] and [DOJ] to use discovery devices*** to request certain documents and information … concerning Meta's compliance with the Order, including ***the Order's prohibition against misrepresentations*** concerning the extent to which Meta maintains the privacy or security of Covered Information, as that term is defined in the Order, and ***the Order's provisions concerning a mandated privacy program.*** *Id.* at 4 and Attachment A, Sections I, VII and XV.

(A611.)  The FTC's authorization to "use discovery devices," "the Order's prohibition against misrepresentations," and "the Order's provisions concerning a mandated privacy program" are all ***contained solely in Attachment A***.  The FTC's letter thus acknowledged that the Stipulated Order (defined in the FTC's letter as the "Order") prohibited misrepresentations and mandated a privacy program while granting the FTC and DOJ the authority to take discovery with respect to Meta's compliance with those provisions found in Attachment A.

### D.  <u>The Government Is Judicially Estopped from Arguing that the District Court Did Not Impose the Relief Contained in Attachment A</u>

The government cannot easily escape its prior reading of the Stipulated Order and the relief that order imposed through Attachment A.  Having sought and

obtained the injunctive relief granted by the District Court with its entry of the

Stipulated Order, the government is judicially estopped from contending now that

the District Court did not order that relief—an argument that the District Court

failed to address entirely in denying Meta's motion to enforce.  *See Cnty. of San*

*Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 73 (D.D.C. 2008).

### III.    The District Court Has Jurisdiction Because It Approved Attachment A and Imposed the Injunctive Relief Therein

Attachment A is part of a settlement that was approved by the District Court

and entered as a consent decree.  The result of the District Court's judicial acts in

approving the consent decree is that Attachment A became part of the District

Court's order and operates as a federal court injunction.

The District Court plainly had a "duty to protect [its] legitimately conferred

jurisdiction to the extent necessary to provide full justice to litigants."  *Laker*

*Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir.

1984).

### A.    The District Court's Approval of the Consent Decree Confirms That Attachment A Was Ordered by the District Court

The District Court's review and approval of Attachment A confirms that its

provisions were "impose[d]" on Meta as an integral part of the Stipulated Order.

"[O]nce approved, the prospective provisions of a consent decree operate as an

injunction."  *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1145

(6th Cir. 1997) (explaining that "a consent decree has attributes of both a contract and of a judicial act and is essentially a settlement agreement subject to continued judicial policing"); *FTC v. Enforma Nat. Prod., Inc.*, 362 F.3d 1204, 1218 (9th Cir. 2004) ("[A] consent decree is no more than a settlement that contains an injunction"). The legal effect of the District Court's approval of the consent decree, including Attachment A, was to give it the force of a district court injunction.[13] Put another way, approval of a consent decree makes the court "a partner in enforcement" of the parties' settlement. *United States ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1236 (D.C. Cir. 2012); *see Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983) (holding that "[j]udicial approval of a settlement agreement places the power and prestige of the court behind the compromise struck by the parties" and "[t]he injunctive quality of consent decrees compels the court to … protect the integrity of the decree with its contempt powers").

The District Court expressly considered Attachment A's injunctive terms—which it emphasized were "[a]s important" as the $5 billion penalty—in approving

---

[13] Notably, in connection with the proceeding at issue, the FTC invoked the District Court's authority under Sections 5(l) and 13(b) of the FTC Act, which authorize only district courts—and not the FTC—to impose injunctive relief. *See* 15 U.S.C. §§ 45(l), 53(b)

The Commission necessarily invoked the District Court's jurisdiction because the FTC lacks power independently to "impose" Attachment A's terms. That is because it has no authority to enforce its orders, adjudicate whether they have been violated, or to impose relief for such violations. *See infra* Point V.C.

the Stipulated Order.  (A195–A196.)  In satisfying itself of "the settlement's overall fairness," the District Court properly considered the principal forms of consideration "in the context of the overall provisions of the consent decree," *United States v. Trucking Emps., Inc.*, 561 F.2d 313, 317 (D.C. Cir. 1977), including Attachment A.  (*See*, *e.g.*, A192 (acknowledging that Meta agreed to the injunctive relief in Attachment A and a civil penalty "[i]n exchange" for a release in the Stipulated Order).)

This result is confirmed by the District Court's decision approving the consent decree.  There, the District Court expressly stated that it was "impos[ing] a $5 billion civil money penalty on Facebook and ***impos[ing] injunctive relief in the form of an amended administrative order to be entered by the FTC***."  (A191.)

### B.    The Stipulated Order and Attachment Are Inseparable Parts of the Consent Decree

The District Court erred in failing to recognize the legal effect of its approval of the consent decree, including Attachment A.  When a court enters a consent decree pursuant to the settlement of the parties, the settlement and the consent decree are mutually dependent and inseparable.  "[I]t is the parties' agreement that serves as the source of the court's authority to enter any [consent] judgment at all." *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 522 (1986).  Thus, when the government moved the District Court to enter a consent decree to resolve the action, the government

35

invoked a judicial power that "depends centrally on the parties' mutually agreed resolution of [their] legal dispute." *Salazar*, 896 F.3d at 498.

A district court can enter a consent decree only after the court—as here—has "satisf[ied] itself of the settlement's overall fairness to beneficiaries and consistency with the public interest." *In re Idaho Conservation League*, 811 F.3d 502, 515 (D.C. Cir. 2016). Because the settlement embodies the parties' compromises, the court must either accept or reject the settlement *as a whole*. As this Court has recognized, the "essential parts of the parties' settlement agreement" underlying a proposed consent decree rise or fall together. *Nat'l Ass'n of Realtors v. United States*, 97 F.4th 951, 957 n.5 (D.C. Cir. 2024) (reasoning that because private party "agreed to enter the Proposed Consent Judgment on the condition that DOJ issue [a] closing letter," "the closing letter likely became unenforceable when the Proposed Consent Judgment was lawfully withdrawn because both documents were essential parts of the parties' settlement agreement").

Likewise, Attachment A and the Stipulated Order are indivisible. Meta agreed to submit to the injunctive relief in Attachment A "[i]n exchange" for the release from liability *in the Stipulated Order*. (A192.) Viewing Attachment A "on its own"—that is, independent of the Stipulated Order—would make it, at most, "a unilateral promise unsupported by consideration or partial performance,

which typically would be unenforceable as a matter of contract law." *Nat'l Ass'n of Realtors*, 97 F.4th at 957 n.5.

Accordingly, the government presented the settlement—including Attachment A—"as a whole" to the District Court for approval. (A94.) The District Court acknowledged that it "'approved' Attachment A insofar as it needed to satisfy itself of the settlement's overall fairness." (A709.)

### C. The District Court Has Jurisdiction Over Attachment A Because It Ordered Meta to Consent to Its Entry

In erroneously concluding that it did not retain jurisdiction over Attachment A, the District Court held that it "directed Defendant to … 'consent to' the FTC's reopening of its administrative proceedings and modification of its 2012 administrative order with Attachment A," but "did not order Defendant to comply with the terms of Attachment A." (A698, A706.) Following its substantive review and approval of Attachment A's terms, the District Court indisputably ordered Meta to consent to the imposition of an FTC order containing Attachment A. This provision contained in the Stipulated Order alone is sufficient without more to establish that the District Court retained jurisdiction over Attachment A.

As the District Court recognized, the enforceability of Attachment A against Meta depends *entirely* on the Stipulated Order's requirement that Meta consent to the FTC's entry of Attachment A. Meta could have walked away from Attachment A had the District Court not approved and entered the Stipulated Order. *See*, *e.g.*,

*Collins v. Thompson*, 679 F.2d 168, 172 (9th Cir. 1982) (holding that "[j]udicial approval of a consent decree is clearly a condition subsequent" to its enforceability). The Commission conceded that it "could not amend its 2012 administrative order with Facebook with the updated consumer protections until the federal court entered its order." (A404.) Therefore, the District Court erred by analyzing Attachment A as a "related settlement agreement" that is insufficiently connected to the Stipulated Order to be "part of" the order. (A710.)

Attachment A is therefore unlike the settlements in the cases relied on by the District Court, over which the court did not retain jurisdiction. In *Kokkonen*, the related agreement was a private settlement whose legal force did not depend on court approval. *See Kokkonen*, 511 U.S. at 377 (noting that the stipulation of dismissal "did not so much as refer to the settlement agreement");[14] *see also DC Soccer, LLC v. CapX Off. Sols., LLC.*, 2021 WL 1061206, at *1 (D.D.C. Mar. 18, 2021) (involving private settlement not dependent on court approval, which was not "mentioned at all in the stipulation of dismissal"); *Dailey v. Park*, 468 F. Supp. 2d 209, 213–14 (D.D.C. 2007) (involving "privately created agreement" whose "validity … was not conditioned on court approval").

---

[14] Nor in *Kokkonen* did the stipulation of dismissal that was "so ordered" by the district court contain a retention-of-jurisdiction provision. *See* 511 U.S. at 377.

The District Court acknowledged this fundamental distinction in quoting *Dailey*'s reasoning that "[w]ithout a formal judicial act, the parties' agreement remains a ***privately created*** agreement between two parties who happen to be litigating a wholly different issue in this court." (A706) (quoting 468 F. Supp. 2d at 213). Here, Meta's agreement to Attachment A would not exist absent the "formal judicial act" of "ratification [and] approval" of the Stipulated Order, *Dailey*, 468 F. Supp. 2d at 213–14. *See supra* at 41–42. Thus, Attachment A is a creature of the Stipulated Order, and is not "privately created" and disconnected from the District Court's order.

## D.      The District Court Misapplied *Kokkonen*

In concluding that Attachment A is legally distinct from the Stipulated Order, the District Court latched onto a single sentence in *Kokkonen*, 511 U.S. at 375, and misapplied it here. In particular, the District Court misapplied *Kokkonen*'s reasoning that "[t]he judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order" to the District Court's consideration of Attachment A in approving the Stipulated Order. (A709.)

39

That reasoning is inapplicable here because *Kokkonen* involved a stipulation of voluntary dismissal[15] and a distinct settlement agreement—and ***not*** a consent decree. The district court in *Kokkonen* "approv[ed]" the parties' "Stipulation and Order of Dismissal" only through the ministerial act of "so order[ing]" it. *Kokkonen*, 511 U.S. at 377. Thus, "the ***only*** order [by the district court in *Kokkonen*] was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement." *Id.* at 380.[16] Unlike parties seeking approval of a consent decree, the parties in *Kokkonen* did not seek to clothe their private settlement with the authority of a district court judgment— but instead sought only dismissal.

The Supreme Court has since emphasized this fundamental distinction between private settlements and consent decrees: "Private settlements do not entail the judicial approval and oversight involved in consent decrees." *Buckhannon Bd.*

---

[15] *Kokkonen* involved Rule 41(a)(1)(ii), predecessor to the substantively identical Rule 41(a)(1)(A)(ii).

[16] The question in *Kokkonen* was whether the district court had subject matter jurisdiction over a dispute concerning a settlement between private parties. *See* 511 U.S. at 376–77. Here, the District Court has federal question jurisdiction because the U.S. government is a party. *See Franklin-Mason v. Mabus*, 742 F.3d 1051, 1055 (D.C. Cir. 2014) ("*Kokkonen* is easily distinguishable because, unlike here, no governmental entity was involved."). Thus, it is "unnecessary to reach the issues of exactly what must be stated or included in a stipulation of dismissal in order to retain federal jurisdiction under *Kokkonen* over a settlement agreement." *Madison Hotel*, 97 F.3d at 1483.

& *Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 n.7 (2001) (citing *Kokkonen*, 511 U.S. 375).

Unlike the unadorned dismissal in *Kokkonen*, the District Court's disposition—approval and entry of the Stipulated Order, including Attachment A—is "flouted [and] imperiled by" the FTC's assertion of authority to modify Attachment A unilaterally. *Kokkonen*, 511 U.S. at 380; *see also Pigford*, 292 F.3d at 925. Meta's "obligation to comply with the terms of" Attachment A arose from the Stipulated Order, *Schweizer*, 677 F.3d at 1235 (quoting *Kokkonen*, 511 U.S. at 381), and constituted some of the consideration that Meta agreed to "[i]n exchange" for a release in the Stipulated Order. (A192.) Indeed, in 2020 the government urged the District Court to reject the arguments of amici that the Stipulated Order should not be approved because it did not impose more onerous injunctive relief (including terms proposed by the FTC in the OTSC proceeding). *See infra* at Point IV. To allow the FTC to impose some of those terms now clearly flouts and imperils the District Court's approval of the parties' settlement— and contravenes the requirement that the District Court approve the parties' settlement in whole.

This Court's holding in *Pigford* that a court cannot unilaterally modify a consent decree without express authorization applies *a fortiori* here. *See* 292 F.3d at 923–24. In *Pigford*, the plaintiffs argued that district court's retained

jurisdiction to interpret or enforce a consent decree permitted it to extend deadlines expressly set forth in the decree.  This Court rejected that argument, reasoning that it "would not only deny the Department the benefit of its bargain, but would also discourage settlements." *Id.* at 925.  Here, unilateral modification of Attachment A *by the FTC* would "deny [Meta] the benefit of its bargain." *Id*.

### E.    Treating Attachment A as Separate from the Stipulated Order Would Violate Rule 65(d)(1)(C)

Separating Attachment A from the Stipulated Order creates another problem—a violation of Rule 65(d)(1)(C).  That rule requires that "[e]very order granting an injunction must … describe in reasonable detail—*and not by referring to the complaint or other document*—the act or acts restrained or required." These "are no mere technical requirements," *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).  Someone reading the court's order must be able to "ascertain *from the document itself* exactly what conduct is prohibited." *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 362 (6th Cir. 2022).  Here, the District Court ignored that— regardless of whether the District Court ordered Attachment A's terms—it imposed mandatory injunctive relief in Part III of the Stipulated Order, requiring Meta to provide the DOJ with corresponding rights under nearly a dozen specifically enumerated portions of Attachment A.  If Attachment A could be modified independently of the Stipulated Order, the Stipulated Order would violate Rule 65(d)(1)(C), which does not allow an injunction to incorporate a document

42

that is subject to even the possibility of future modification. *See Dunn v. N.Y. State Dep't of Lab.*, 47 F.3d 485, 489 (2d Cir. 1995). Under the Commission's proposed rewrite of Attachment A, Meta's obligations under Part III of the Stipulated Order no longer make sense because all of the referenced provisions of Attachment A would change. The possibility of such unintelligible (and conflicting) obligations demonstrates that Attachment A is not an independent document and cannot be modified independently of the Stipulated Order.

## IV.   The Res Judicata Effect of the Stipulated Order Bars the FTC from Modifying It

The District Court ignored that the res judicata effect of the Stipulated Order is an independent obstacle to modification of Attachment A by the FTC. "Court-approved settlement agreements … have res judicata effect." *Est. of Boyland v. USDA*, 913 F.3d 117, 126 (D.C. Cir. 2019) (quoting *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1141 (9th Cir. 2013)). Here, the District Court "approved" Attachment A as part of approving the Stipulated Order. (A709 (acknowledgement by the District Court that it "'approved' Attachment A insofar as it needed to satisfy itself of the settlement's overall fairness"). It entered the Stipulated Order including Attachment A as a final judgment on the government's civil complaint—there was no administrative complaint or claim to settle. The government emphasized that its federal court complaint was the foundation for the injunctive relief ordered by the District Court—arguing against more restrictive injunctive provisions urged by

43

amici (including many provisions reflected in the order that the FTC has proposed to impose on Meta) because they "would reach well beyond the parameters of **complaint that the Court would be resolving**."  (A149.)

By its terms, the Stipulated Order "resolve[d]" all claims for violations of the 2012 Order, and "all consumer-protection claims known by the FTC" prior to June 12, 2019.  (A203–A204.)  And the Commission's one-page order entering Attachment A also relies on both the federal court complaint and the Stipulated Order "resolving [the] complaint."  (A380.)  In 2020, the government specifically argued to the District Court that the settlement would be subject to the "doctrine of res judicata."  (A152–A153.)

Under these circumstances, the Stipulated Order, including Attachment A, should be "treated as final judgment[t] on the merits and accorded *res judicata* effect."  *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 947 (D.C. Cir. 1983).  As such, not even a court could "impose entirely new injunctive relief" in "the guise of modification."  *Salazar*, 896 F.3d at 498. Doing so would "deny the enjoined party the contractual bargain it struck in agreeing to the consent decree" and "destroy the predictability and stability that final judgments are meant to provide."  *Id*.  Nor can an agency such as the FTC "unilaterally order the elimination of rights determined in federal courts simply

44

because the consent decree was to be enforced through [administrative]

machinery." *Morris v. Travisono*, 509 F.2d 1358, 1361 (1st Cir. 1975).

Under Rule 60(b), relief from a final judgment such as the Stipulated Order

can be granted only under specified "extraordinary circumstances." *PETA v. U.S.

Dep't of HHS*, 901 F.3d 343, 355 (D.C. Cir. 2018). The FTC, like any private

litigant, is bound by these finality principles including the doctrine of res judicata

and Rule 60(b).

## V.   The Commission Lacks Any Authority to Modify or Enforce Attachment A

In backstopping its erroneous conclusion that Attachment A is ***not*** "part of

the Stipulated Order," the District Court wrongly held that (i) the "FTC's statutory

authority to modify its own administrative orders" applies to Attachment A and

(ii) "nothing in Attachment A … or the Stipulated Order … expressly limits the

FTC's statutory authority to modify its own administrative orders." (A707–A708.)

Contrary to the District Court's conclusions, the Commission has acknowledged

that its statutory modification authority ***does not*** extend to consent orders.

Moreover, even if this statutory authority applied, it was clearly limited by the

parties' agreement, which precludes unilateral modification under Section 5(b) of

the FTC Act. Regardless, Section 5(b) does not allow the Commission to enforce

its own orders, as the OTSC seeks to do.

45

A.    <u>Section 5(b) Does Not Authorize Modification of
Consent Orders and Rule 2.32(c) Does Not Apply</u>

Section 5(b) authorizes the FTC to issue cease and desist orders "upon"

administrative hearings and to "alter, modify or set aside" orders "made or issued"

by the FTC "under this section."  15 U.S.C. § 45(b).  The FTC has determined—

through formal rulemaking—that Section 5(b)'s modification authority only

provides for the alteration, modification, or setting aside of "Commission orders

issued on a litigated or stipulated record," not consent orders.  16 C.F.R. § 2.32(c).

To fill this statutory void, Rule 2.32(c) requires that "every agreement in

settlement of a Commission complaint … shall provide" that respondents agree the

order is modifiable "in the same manner" as Section 5(b) provides for litigated

orders.  Rule 2.32(c) is consistent with "black-letter contract law" in requiring

consent before one party is entitled to "unilaterally modify" an agreement.  *Medley*

*v. Dish Network, LLC*, 958 F.3d 1063, 1070 (11th Cir. 2020).

The regulation requiring ***express agreement*** that consent orders can be

modified "in the same manner provided by statute" would "mak[e] little sense" if

the statute provided for modification of consent orders.  *Nat'l Fed'n of Indep. Bus.*

*v. Sebelius*, 567 U.S. 519, 546 (2012) (rejecting argument that "assessable

penalties are themselves taxes" where statute "requires assessable penalties to be

assessed and collected 'in the same manner as taxes'").  Indeed, that construction

would violate the cardinal rule that interpretation must not "render the regulation

entirely superfluous." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 668–69 (2007).  This rule "applies with special force" where, as here, it would "render an entire subparagraph meaningless." *Pulsifer v. United States*, 144 S. Ct. 718, 732 (2024) (quoting *Nat'l Ass'n of Mfrs. v. DOD*, 583 U.S. 109, 128 (2018)).

Thus, for Section 5(b) to allow the Commission to modify Attachment A, it must either have been "issued on a litigated or stipulated record" or otherwise be subject to Rule 2.32(c).  Neither is true.

First, Attachment A was plainly not a Commission order "issued on a litigated or stipulated record."  Attachment A itself makes clear that Meta "neither admit[ted] nor denie[d] any of the allegations in the Complaint" (A212), and in approving the settlement, the District Court noted it "may not even assume that Facebook violated the FTC Act or the 2012 Order in the first place" (A198).  The order was stipulated; the record on which it was issued was not.  The government has never argued otherwise.

Second, as the government has conceded, Rule 2.32(c) did not and does not apply.  That provision (part of subpart C's "consent order procedures") affects only "agreement[s] in settlement of a *Commission* complaint."  Consistent with Attachment A being part of the relief resolving a federal court complaint—and not an administrative complaint—*the Commission did not require Meta to consent to Attachment A's modification*.  As the government correctly argued to the District

47

Court in 2020, subpart C's consent order procedures are inapplicable to Attachment A because "there was no ***administrative*** complaint to settle; rather, the proposed settlement would resolve a complaint filed in ***this*** Court by the United States." (A133 (emphases in original).) Consistent with the government's concession that the parties' 2019 settlement was not subject to Rule 2.32, it did not once cite the regulation in opposing Meta's motion to enforce.

Nor did Meta agree that the Commission can unilaterally modify Attachment A. The government has not pointed to ***any*** instance in which the Commission has modified a consent order without such consent. With good reason—Section 5(b) does not authorize it to do so. The District Court did not conclude otherwise; it simply ignored these points altogether.

### B. Even if Section 5(b) Did Authorize Modification of Consent Orders, No Such Authority Was Incorporated into Attachment A

Even if Section 5(b) could, contrary to the Commission's longstanding formal interpretation, be applied to reach consent orders, the parties' agreement is clear that the FTC may not unilaterally modify it.

As described above, the government did not argue and the District Court did not find that Meta consented to the unilateral modification of Attachment A. Rather, the District Court concluded that Section 5(b) was ***an implied term*** because statutory rights often require express waiver. (A707–A708 (citing *George Banta*

*Co., Inc., Banta Div. v. NLRB*, 686 F.2d 10, 20 (D.C. Cir. 1982)).)  Even if Section

5(b) applied, it was not affirmatively incorporated in the settlement.[17]

The District Court's ruling conflicts with this Court's decision in *Elmo*.  *See*

348 F.2d at 345.  In *Elmo*, a Commission consent order provided that it "could be"

modified under the Commission's former order modification rule but was silent

about whether the Commission could issue a new administrative complaint.  *Id.* at

343.  When the Commission did the latter, the company obtained an injunction

against the new complaint proceeding as inconsistent with the consent order's

modification provision.  *Id.*  This Court held that the Commission could not

proceed by administrative complaint—***even where the consent order contained no***

***express waiver***—because it could not "unilaterally obliterate a part of the

consideration—indeed an important part—by which it secured [Elmo's] assent to

be bound by a cease and desist order."  *Id.* at 346.  So too here.  If anything,

Attachment A more clearly precludes unilateral modification by the Commission

than the order in *Elmo* precluded a successive complaint proceeding.

---

[17] A statutory provision "should be implied as a contract term only if the
term is so central to the bargained-for exchange between the parties, or to the
enforceability of the contract as a whole, that it must be deemed to be a term of the
contract."  *Amfac Resorts, LLC v. Dep't of Interior*, 142 F. Supp. 2d 54, 73–74
(D.D.C. 2001) (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 188–89
(1992)).

Even assuming arguendo that Section 5(b) reaches consent orders, a requirement that the Commission and its contractual counterparties must explicitly *opt out* of Section 5(b) is directly contrary to Rule 2.32(c)'s requirement that they expressly *opt in*.  If silence were sufficient for the Commission to modify a consent order (as the District Court suggested), that would "render … meaningless" Rule 2.32(c)'s requirement that respondents explicitly agree that their consent orders are subject to potential modification.  *Pulsifer*, 144 S. Ct. at 732.

Either way, Attachment A's plain language unambiguously precludes unilateral modification.  Indeed, the first finding in Attachment A—which was initially entered by the District Court—expressly provides: "This Court has jurisdiction over this matter."  (A211; *see supra* Point I.)  Moreover, Parts II–III of Attachment A provide that Meta "may seek modification … to address relevant developments that affect compliance with this Part, including, but not limited to, technological changes."  (A216.)  The District Court suggested that these targeted provisions show that all of Attachment A can be modified by the Commission without court involvement.  On the contrary, they show only that the District Court authorized the parties to modify certain injunctive provisions without further court

50

approval—as consent decrees routinely do.[18]  The District Court ignored that if Attachment A were freely modifiable under Section 5(b), these provisions—giving Meta rights to seek modification that it already enjoyed—would be entirely superfluous.  *See Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 620 (D.C. Cir. 2023) (rejecting interpretation under which provision "serves no purpose").  Sophisticated parties conducted months of negotiations over a $5 billion settlement and specifically identified two provisions that would be subject to potential modification under particular circumstances.  These limited provisions preclude any plausible argument that the entire agreement could unilaterally be rewritten.  *See Martinsville Nylon Emps. Council Corp. v. NLRB*, 969 F.2d 1263, 1267 (D.C. Cir. 1992) (holding that "intensely interested parties … advised by specialized counsel … ought not be presumed to have included in their agreement a meaningless provision").

In any event, any ambiguity must be resolved in ***Meta's*** favor as the enjoined party.  *United States ex rel. Yelverton v. Fed. Ins. Co.*, 831 F.3d 585, 587 (D.C. Cir. 2016).  This is particularly true where the same parties made a modification right explicit in 2011.  (A411; *see also supra* at 9.)  Indeed, even if

---

[18] *See, e.g.*, *United States v. Civic Dev. Grp., LLC*, No. 2:07-cv-4593-FSH-PS (D.N.J. Mar. 29, 2010) (Dkt. No. 93) at 8; *EEOC v. Morgan Stanley & Co.*, 256 F.R.D. 124, 131 (S.D.N.Y. 2004).

the parties had been silent with respect to modification, the absence of a unilateral or administrative modification right in the parties' 2019 agreement after the inclusion of such a right in their 2011 agreement must be interpreted as intentional. *See*, *e.g.*, *Hoffman v. L&M Arts*, 838 F.3d 568, 582 (5th Cir. 2016) (holding that earlier agreement's "explicit requirement … suggests that the absence of" a similar term in later agreement "was intentional"); *Slaughter v. Nat'l R.R. Passenger Corp.*, 460 F. Supp. 3d 1, 10 (D.D.C. 2020) (same).

## C.   Section 5(b) Does Not Allow the Commission to Enforce Its Own Orders

The District Court's statements about the Commission's statutory modification authority also overlook that the Commission has no authority to enforce its own orders or to adjudicate whether they have been violated—as the Commission recently acknowledged.  *See In re Intuit Inc.*, 2024 WL 382358, at *56 (FTC Jan. 22, 2024) (confirming that Commission orders are "enforceable only by order of the district court").

The Commission has conceded that its OTSC proceeding seeks to enforce compliance with Attachment A as a Commission order.  The OTSC is expressly styled as an "enforcement action" based on order "non-compliance" (A318), and the Commission has represented publicly that it "proposed changes to the agency's 2020 privacy order with Facebook, Inc. after alleging that the company has failed

52

to fully comply with the order," *see* Congressional Budget Justification FY 2025,

FTC, at 27 (2024).

Congress has denied the Commission any authority to enforce its own orders

or "to determine whether they have been violated." *United States v. J. B. Williams*

*Co.*, 498 F.2d 414, 422 (2d Cir. 1974); *accord United States v. Daniel Chapter*

*One*, 896 F. Supp. 2d 1, 14 (D.D.C. 2012).  As the Supreme Court has held, the

power "to adjudicate questions concerning [an FTC] order's violation" falls within

the "enforcement responsibility of the courts."  *FTC v. Morton Salt Co.*, 334 U.S.

37, 54 (1948).  When its own orders are at issue the Commission cannot be "judge

as well as prosecutor," *J. B. Williams*, 498 F.2d at 429.  Because the OTSC is

plainly premised on assertions that Meta violated prior Commission orders, only a

federal court can adjudicate Meta's compliance or impose relief for any

noncompliance.  *See id.* at 422.

## VI.    **Meta Is Entitled to Injunctive Relief**

There appears to be no disagreement that if Attachment A is part of the

District Court's Stipulated Order or subject to its retained jurisdiction, the FTC

proceeding must be enjoined.  As the Supreme Court has held, where a proceeding

purports to impair a consent decree or a court's jurisdiction, the proper response is

to "apply to the court that approved a settlement for an injunction requiring

dismissal of [the] rival action." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 n.* (2002).  No other showing is required.

Here, the FTC proceeding threatens the District Court's jurisdiction and the finality and preclusive effect of its judgment.  That is sufficient, without more, for an injunction to issue.  *See United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) (reiterating "the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained").  "The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004); *accord Gomez v. Biden*, 2021 WL 1037866, at *3 (D.D.C. Feb. 19, 2021).

Below, Meta also sought preliminary injunctive relief—and addressed the traditional injunction factors—but only for the narrow purpose of ensuring that it would not be required to respond to the OTSC before the District Court ruled on its motion to enforce.  (A605 ("[T]o the extent necessary, the Court should preliminarily enjoin the Commission's proceeding before Meta's current November 30 response deadline so that Meta is protected from irreparable harm during the pendency of the present motion.").)  That request was mooted because

54

the District Court ultimately resolved that motion before Meta was required to respond to the Commission's OTSC. Those factors are therefore inapplicable on appeal. But even if they applied, Meta has met them. *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009) (setting out the four-pronged standard for a preliminary injunction).

First, requiring a party to relitigate a matter that was finally decided constitutes irreparable harm. *See FDIC v. Bank of N.Y.*, 479 F. Supp. 2d 1, 19 (D.D.C. 2007); *WMATA v. Loc. 689, Amalgamated Transit Union*, 113 F. Supp. 3d 121, 129 (D.D.C. 2015) (holding that a party demonstrated irreparable harm by establishing that it "could be subject to inconsistent determinations"). So, too, does forcing a party to litigate in a forum other than that for which it expressly bargained. *See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, Inc., 651 F.3d 1355, 1363 (Fed. Cir. 2011).

Second, there is "generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Nor can the government "suffer harm from an injunction that merely ends an unlawful practice," *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015), or from its "inability to avail itself of a forum it knowingly bargained away"— here, by agreeing to this Court's exclusive jurisdiction over enforcement and

modification of the Stipulated Order. *See Gen. Protecht Grp., Inc.*, 651 F.3d at 1365.

## CONCLUSION

For the foregoing reasons, the order of the District Court should be reversed.

Dated: May 13, 2024

*/s/ James P. Rouhandeh*
_____
James P. Rouhandeh
Michael Scheinkman
David B. Toscano
Marc J. Tobak
John A. Atchley III
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com
david.toscano@davispolk.com
marc.tobak@davispolk.com
john.atchley@davispolk.com

Paul J. Nathanson
DAVIS POLK & WARDWELL LLP
901 15th Street, NW
Washington, DC 20005
Tel: (202) 962-7000
paul.nathanson@davispolk.com

*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(2)(A) because this document contains 12,683 words excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

This document complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5), and 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman Font.

Dated: May 13, 2024

*/s/ James P. Rouhandeh*

_____
James P. Rouhandeh
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com

*Counsel for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2024, true and correct copies of the

foregoing were filed using the Court's CM/ECF System and served on counsel of

record by FedEx at the following address:

Zachary L. Cowan
Consumer Protection Branch
U.S. Department of Justice
450 5th Street, N.W.
Washington, D.C. 20530


Dated: May 13, 2024             */s/ James P. Rouhandeh*

                                _____
                                James P. Rouhandeh
                                DAVIS POLK & WARDWELL LLP
                                450 Lexington Avenue
                                New York, New York 10017
                                rouhandeh@davispolk.com

                                *Counsel for Defendant-Appellant*

58

## STATUTES AND REGULATIONS

## TABLE OF CONTENTS

**Page**

FTC Act § 5, 15 U.S.C. § 45.................................................................. Add.1

FTC Act § 13(b), 15 U.S.C. § 53(b) [EXCERPT].............................. Add.10

16 C.F.R § 2.32 ................................................................... Add.11

Fed. R. Civ. P. 60(b) [EXCERPT]....................................... Add.12

Fed. R. Civ. P. 65(d)(1) [EXCERPT] ................................. Add.12

## FTC Act § 5, 15 U.S.C. § 45

§ 45. Unfair methods of competition unlawful; prevention by Commission

**(a) Declaration of unlawfulness; power to prohibit unfair practices; inapplicability to foreign trade**

**(1)** Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.

**(2)** The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations, except banks, savings and loan institutions described in section 57a(f)(3) of this title, Federal credit unions described in section 57a(f)(4) of this title, common carriers subject to the Acts to regulate commerce, air carriers and foreign air carriers subject to part A of subtitle VII of Title 49, and persons, partnerships, or corporations insofar as they are subject to the Packers and Stockyards Act, 1921, as amended, except as provided in section 406(b) of said Act, from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce.

**(3)** This subsection shall not apply to unfair methods of competition involving commerce with foreign nations (other than import commerce) unless--

    **(A)** such methods of competition have a direct, substantial, and reasonably foreseeable effect--

        **(i)** on commerce which is not commerce with foreign nations, or on import commerce with foreign nations; or

        **(ii)** on export commerce with foreign nations, of a person engaged in such commerce in the United States; and

    **(B)** such effect gives rise to a claim under the provisions of this subsection, other than this paragraph.

If this subsection applies to such methods of competition only because of the operation of subparagraph (A)(ii), this subsection shall apply to such conduct only for injury to export business in the United States.

**(4)(A)** For purposes of subsection (a), the term "unfair or deceptive acts or practices" includes such acts or practices involving foreign commerce that--

      **(i)** cause or are likely to cause reasonably foreseeable injury within the United States; or

      **(ii)** involve material conduct occurring within the United States.

**(B)** All remedies available to the Commission with respect to unfair and deceptive acts or practices shall be available for acts and practices described in this paragraph, including restitution to domestic or foreign victims.

**(b) Proceeding by Commission; modifying and setting aside orders**

Whenever the Commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition or unfair or deceptive act or practice in or affecting commerce, and if it shall appear to the Commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue and serve upon such person, partnership, or corporation a complaint stating its charges in that respect and containing a notice of a hearing upon a day and at a place therein fixed at least thirty days after the service of said complaint. The person, partnership, or corporation so complained of shall have the right to appear at the place and time so fixed and show cause why an order should not be entered by the Commission requiring such person, partnership, or corporation to cease and desist from the violation of the law so charged in said complaint. Any person, partnership, or corporation may make application, and upon good cause shown may be allowed by the Commission to intervene and appear in said proceeding by counsel or in person. The testimony in any such proceeding shall be reduced to writing and filed in the office of the Commission. If upon such hearing the Commission shall be of the opinion that the method of competition or the act or practice in question is prohibited by this subchapter, it shall make a report in writing in which it shall state its findings as to the facts and shall issue and cause to be served on such person, partnership, or corporation an order requiring such person, partnership, or corporation to cease and desist from using such method of competition or such act or practice. Until the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time, or, if a petition for review has been filed within such time then until the record in the proceeding has been filed in a court of appeals of the United States, as hereinafter provided, the Commission may at any time, upon such notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any report or any order made or issued by it under this section. After the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time, the Commission may at any time, after notice and opportunity for hearing, reopen and

Add.2

alter, modify, or set aside, in whole or in part, any report or order made or issued by it under this section, whenever in the opinion of the Commission conditions of fact or of law have so changed as to require such action or if the public interest shall so require, except that (1) the said person, partnership, or corporation may, within sixty days after service upon him or it of said report or order entered after such a reopening, obtain a review thereof in the appropriate court of appeals of the United States, in the manner provided in subsection (c) of this section; and (2) in the case of an order, the Commission shall reopen any such order to consider whether such order (including any affirmative relief provision contained in such order) should be altered, modified, or set aside, in whole or in part, if the person, partnership, or corporation involved files a request with the Commission which makes a satisfactory showing that changed conditions of law or fact require such order to be altered, modified, or set aside, in whole or in part. The Commission shall determine whether to alter, modify, or set aside any order of the Commission in response to a request made by a person, partnership, or corporation under paragraph1 (2) not later than 120 days after the date of the filing of such request.

## (c) Review of order; rehearing

Any person, partnership, or corporation required by an order of the Commission to cease and desist from using any method of competition or act or practice may obtain a review of such order in the court of appeals of the United States, within any circuit where the method of competition or the act or practice in question was used or where such person, partnership, or corporation resides or carries on business, by filing in the court, within sixty days from the date of the service of such order, a written petition praying that the order of the Commission be set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Commission, and thereupon the Commission shall file in the court the record in the proceeding, as provided in section 2112 of Title 28. Upon such filing of the petition the court shall have jurisdiction of the proceeding and of the question determined therein concurrently with the Commission until the filing of the record and shall have power to make and enter a decree affirming, modifying, or setting aside the order of the Commission, and enforcing the same to the extent that such order is affirmed and to issue such writs as are ancillary to its jurisdiction or are necessary in its judgement to prevent injury to the public or to competitors pendente lite. The findings of the Commission as to the facts, if supported by evidence, shall be conclusive. To the extent that the order of the Commission is affirmed, the court shall thereupon issue its own order commanding obedience to the terms of such order of the Commission. If either party shall apply to the court for leave to adduce additional evidence, and shall

Add.3

show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts, or make new findings, by reason of the additional evidence so taken, and it shall file such modified or new findings, which, if supported by evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of its original order, with the return of such additional evidence. The judgment and decree of the court shall be final, except that the same shall be subject to review by the Supreme Court upon certiorari, as provided in section 1254 of Title 28.

### (d) Jurisdiction of court

Upon the filing of the record with it the jurisdiction of the court of appeals of the United States to affirm, enforce, modify, or set aside orders of the Commission shall be exclusive.

### (e) Exemption from liability

No order of the Commission or judgement of court to enforce the same shall in anywise relieve or absolve any person, partnership, or corporation from any liability under the Antitrust Acts.

### (f) Service of complaints, orders and other processes; return

Complaints, orders, and other processes of the Commission under this section may be served by anyone duly authorized by the Commission, either (a) by delivering a copy thereof to the person to be served, or to a member of the partnership to be served, or the president, secretary, or other executive officer or a director of the corporation to be served; or (b) by leaving a copy thereof at the residence or the principal office or place of business of such person, partnership, or corporation; or (c) by mailing a copy thereof by registered mail or by certified mail addressed to such person, partnership, or corporation at his or its residence or principal office or place of business. The verified return by the person so serving said complaint, order, or other process setting forth the manner of said service shall be proof of the same, and the return post office receipt for said complaint, order, or other process mailed by registered mail or by certified mail as aforesaid shall be proof of the service of the same.

**(g) Finality of order**

An order of the Commission to cease and desist shall become final—

**(1)** Upon the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time; but the Commission may thereafter modify or set aside its order to the extent provided in the last sentence of subsection (b).

**(2)** Except as to any order provision subject to paragraph (4), upon the sixtieth day after such order is served, if a petition for review has been duly filed; except that any such order may be stayed, in whole or in part and subject to such conditions as may be appropriate, by—

    **(A)** the Commission;

    **(B)** an appropriate court of appeals of the United States, if (i) a petition for review of such order is pending in such court, and (ii) an application for such a stay was previously submitted to the Commission and the Commission, within the 30-day period beginning on the date the application was received by the Commission, either denied the application or did not grant or deny the application; or

    **(C)** the Supreme Court, if an applicable petition for certiorari is pending.

**(3)** For purposes of subsection (m)(1)(B) and of section 57b(a)(2) of this title, if a petition for review of the order of the Commission has been filed—

**(A)** upon the expiration of the time allowed for filing a petition for certiorari, if the order of the Commission has been affirmed or the petition for review has been dismissed by the court of appeals and no petition for certiorari has been duly filed;

**(B)** upon the denial of a petition for certiorari, if the order of the Commission has been affirmed or the petition for review has been dismissed by the court of appeals; or

**(C)** upon the expiration of 30 days from the date of issuance of a mandate

Add.5

of the Supreme Court directing that the order of the Commission be affirmed or the petition for review be dismissed.

**(4)** In the case of an order provision requiring a person, partnership, or corporation to divest itself of stock, other share capital, or assets, if a petition for review of such order of the Commission has been filed--

> **(A)** upon the expiration of the time allowed for filing a petition for certiorari, if the order of the Commission has been affirmed or the petition for review has been dismissed by the court of appeals and no petition for certiorari has been duly filed;

> **(B)** upon the denial of a petition for certiorari, if the order of the Commission has been affirmed or the petition for review has been dismissed by the court of appeals; or

> **(C)** upon the expiration of 30 days from the date of issuance of a mandate of the Supreme Court directing that the order of the Commission be affirmed or the petition for review be dismissed.

**(h) Modification or setting aside of order by Supreme Court**

If the Supreme Court directs that the order of the Commission be modified or set aside, the order of the Commission rendered in accordance with the mandate of the Supreme Court shall become final upon the expiration of thirty days from the time it was rendered, unless within such thirty days either party has instituted proceedings to have such order corrected to accord with the mandate, in which event the order of the Commission shall become final when so corrected.

**(i) Modification or setting aside of order by Court of Appeals**

If the order of the Commission is modified or set aside by the court of appeals, and if (1) the time allowed for filing a petition for certiorari has expired and no such petition has been duly filed, or (2) the petition for certiorari has been denied, or (3) the decision of the court has been affirmed by the Supreme Court, then the order of the Commission rendered in accordance with the mandate of the court of appeals shall become final on the expiration of thirty days from the time such order of the Commission was rendered, unless within such thirty days either party has instituted proceedings to have such order corrected so that it will accord with the mandate, in which event the order of the Commission shall become final when so corrected.

Add.6

**(j) Rehearing upon order or remand**

If the Supreme Court orders a rehearing; or if the case is remanded by the court of appeals to the Commission for a rehearing, and if (1) the time allowed for filing a petition for certiorari has expired, and no such petition has been duly filed, or (2) the petition for certiorari has been denied, or (3) the decision of the court has been affirmed by the Supreme Court, then the order of the Commission rendered upon such rehearing shall become final in the same manner as though no prior order of the Commission had been rendered.

**(k) "Mandate" defined**

As used in this section the term "mandate", in case a mandate has been recalled prior to the expiration of thirty days from the date of issuance thereof, means the final mandate.

**(l) Penalty for violation of order; injunctions and other appropriate equitable relief**

Any person, partnership, or corporation who violates an order of the Commission after it has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $10,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the Attorney General of the United States. Each separate violation of such an order shall be a separate offense, except that in a case of a violation through continuing failure to obey or neglect to obey a final order of the Commission, each day of continuance of such failure or neglect shall be deemed a separate offense. In such actions, the United States district courts are empowered to grant mandatory injunctions and such other and further equitable relief as they deem appropriate in the enforcement of such final orders of the Commission.

**(m) Civil actions for recovery of penalties for knowing violations of rules and cease and desist orders respecting unfair or deceptive acts or practices; jurisdiction; maximum amount of penalties; continuing violations; de novo determinations; compromise or settlement procedure**

> **(1)(A)** The Commission may commence a civil action to recover a civil penalty in a district court of the United States against any person, partnership, or corporation which violates any rule under this subchapter respecting unfair or deceptive acts or practices (other than an interpretive rule or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of subsection (a)(1)) with

Add.7

actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule. In such action, such person, partnership, or corporation shall be liable for a civil penalty of not more than $10,000 for each violation.

**(B)** If the Commission determines in a proceeding under subsection (b) that any act or practice is unfair or deceptive, and issues a final cease and desist order, other than a consent order, with respect to such act or practice, then the Commission may commence a civil action to obtain a civil penalty in a district court of the United States against any person, partnership, or corporation which engages in such act or practice--

>  **(1)** after such cease and desist order becomes final (whether or not such person, partnership, or corporation was subject to such cease and desist order), and

>  **(2)** with actual knowledge that such act or practice is unfair or deceptive and is unlawful under subsection (a)(1) of this section.

In such action, such person, partnership, or corporation shall be liable for a civil penalty of not more than $10,000 for each violation.

**(C)** In the case of a violation through continuing failure to comply with a rule or with subsection (a)(1), each day of continuance of such failure shall be treated as a separate violation, for purposes of subparagraphs (A) and (B). In determining the amount of such a civil penalty, the court shall take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require.

>  **(2)** If the cease and desist order establishing that the act or practice was unfair or deceptive was not issued against the defendant in a civil penalty action under paragraph (1)(B) the issues of fact in such action against such defendant shall be tried de novo. Upon request of any party to such an action against such defendant, the court shall also review the determination of law made by the Commission in the proceeding under subsection (b) that the act or practice which was the subject of such proceeding constituted an unfair or deceptive act or practice in violation of subsection (a).

>  **(3)** The Commission may compromise or settle any action for a civil penalty if such compromise or settlement is accompanied by a public

Add.8

statement of its reasons and is approved by the court.

**(n) Standard of proof; public policy considerations**

The Commission shall have no authority under this section or section 57a of this title to declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition. In determining whether an act or practice is unfair, the Commission may consider established public policies as evidence to be considered with all other evidence. Such public policy considerations may not serve as a primary basis for such determination.

## FTC Act § 13(b), 15 U.S.C. § 53(b)

§ 53. False advertisements; injunctions and restraining orders

**(b) Temporary restraining orders; preliminary injunctions**

Whenever the Commission has reason to believe--

**(1)** that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and

**(2)** that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public—

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: Provided, however, That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: Provided further, That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction. Any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28. In addition, the court may, if the court determines that the interests of justice require that any other person, partnership, or corporation should be a party in such suit, cause such other person, partnership, or corporation to be added as a party without regard to whether venue is otherwise proper in the district in which the suit is brought. In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found.

Add.10

**16 C.F.R § 2.32**

§ 2.32 Agreement.

Every agreement in settlement of a Commission complaint shall contain, in addition to an appropriate proposed order, either an admission of the proposed findings of fact and conclusions of law submitted simultaneously by the Commission's staff or an admission of all jurisdictional facts and an express waiver of the requirement that the Commission's decision contain a statement of findings of fact and conclusions of law. Every agreement also shall waive further procedural steps and all rights to seek judicial review or otherwise to challenge or contest the validity of the order. In addition, where appropriate, every agreement in settlement of a Commission complaint challenging the lawfulness of a proposed merger or acquisition shall also contain a hold-separate or asset-maintenance order. The agreement may state that the signing thereof is for settlement purposes only and does not constitute an admission by any party that the law has been violated as alleged in the complaint. Every agreement shall provide that:

  **(a)** The complaint may be used in construing the terms of the order;

  **(b)** No agreement, understanding, representation, or interpretation not contained in the order or the aforementioned agreement may be used to vary or to contradict the terms of the order;

  **(c)** The order will have the same force and effect and may be altered, modified or set aside in the same manner provided by statute for Commission orders issued on a litigated or stipulated record;

  **(d)** Except as provided by order of the Commission, any order issued pursuant to the agreement will become final upon service;

  **(e)** The agreement will not become a part of the public record unless and until it is accepted by the Commission; and

  **(f)** If the Commission accepts the agreement, further proceedings will be governed by § 2.34.

## Fed. R. Civ. P. 60(b)

Rule 60. Relief from a Judgment or Order

**(b)** Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

**(1)** mistake, inadvertence, surprise, or excusable neglect;

**(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

**(4)** the judgment is void;

**(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

**(6)** any other reason that justifies relief.

## Fed. R. Civ. P. 65(d)(1)

Rule 65. Injunctions and Restraining Orders

**(d)** Contents and Scope of Every Injunction and Restraining Order.

**(1)** Contents. Every order granting an injunction and every restraining order must:

**(A)** state the reasons why it issued;

**(B)** state its terms specifically; and

**(C)** describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.

Add.12