ORAL ARGUMENT NOT YET SCHEDULED

**No. 23-5280**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

FACEBOOK, INC., a corporation,

*Defendant-Appellant.*

———————

**RESPONSE BRIEF OF PLAINTIFF-APPELLEE**

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA (NO. 1:19-CV-02184-TJK)

———————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*
  *Civil Division*
ARUN G. RAO
  *Deputy Assistant Attorney General*
AMANDA N. LISKAMM
  *Director, Consumer Protection Branch*
LISA K. HSIAO
  *Senior Deputy Director, Civil Litigation*
ZACHARY A. DIETERT
  *Assistant Director*
ZACHARY L. COWAN
SCOTT P. KENNEDY
  *Trial Attorneys*
  *Consumer Protection Branch*
  *U.S. Department of Justice*
  *450 5th Street, N.W.*
  *Washington, D.C. 20530*
  *(202) 353-7728*
  *Zachary.L.Cowan@usdoj.gov*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A.     Parties and Amici

Defendant-Appellant is Meta Platforms, Inc. Plaintiff-Appellee is the United States of America. With respect to the rulings under review, there were no amici in the district court, and the undersigned is unaware of any amici appearing before this Court.

The following entities previously participated as amici curiae in connection with the approval of the final Stipulated Order resolving this lawsuit for civil penalties and injunctive relief: Center for the Legalization of Privacy, Electronic Privacy Information Center, Public Citizen, Inc., Campaign for A Commercial-Free Childhood, Common Sense Media, and United States Public Interest Research Group, Inc.

## B.     Rulings Under Review

Defendant-Appellant appeals a memorandum opinion and order issued on November 27, 2023, by the Honorable Judge Timothy J. Kelly, denying Defendant-Appellant's Motion to Enforce the Stipulated Order and to Enjoin the Administrative Reopening Proceeding of the Federal Trade Commission. *See United States v. Facebook, Inc.*, No. 19-cv-02184, 2023 WL 8190858 (D.D.C. Nov. 27, 2023) (A697-714).

### C.    Related Cases

This case has not previously been before this Court. In *Meta Platforms, Inc. v. FTC et al.,* Meta filed a new lawsuit in the U.S. District Court for the District of Columbia to enjoin the same administrative proceeding at issue in this case. Meta moved for a preliminary injunction, which was denied by the district court. *See Meta Platforms, Inc. v. FTC*, No. 23-cv-3562, 2024 WL 1121424 (D.D.C. Mar. 15, 2024). Meta appealed to this Court and moved for an injunction pending appeal, which was also denied. *See Meta Platforms, Inc. v. FTC*, No. 24-5054, 2024 WL 1549732 (D.C. Cir. Mar. 29, 2024). The appeal is held in abeyance pending further order of this Court.

*/s/ Zachary L. Cowan*
Zachary L. Cowan

## TABLE OF CONTENTS

INTRODUCTION .......... 1

STATEMENT OF THE ISSUE .......... 3

STATUTES AND REGULATIONS .......... 4

STATEMENT OF THE CASE .......... 4

I. Regulatory Background .......... 4

II. Factual Background .......... 5

A. The FTC Issues The 2012 Administrative Order To Resolve Meta's Alleged Data Privacy Misrepresentations To Users .......... 5

B. The District Court Enters A Stipulated Order To Resolve Meta's Alleged Violations Of The 2012 Administrative Order .......... 6

C. The FTC Reopens The 2012 Administrative Order And Issues The Modified 2020 Administrative Order .......... 8

D. The FTC Orders Meta To Show Cause Why It Should Not Reopen Administrative Proceedings Because Of Risks To The Public .......... 9

III. Procedural History .......... 10

SUMMARY OF THE ARGUMENT .......... 12

STANDARD OF REVIEW .......... 16

ARGUMENT .......... 16

I. The District Court Correctly Interpreted Its Own Order .......... 16

A. The Stipulated Order Does Not Limit The FTC's Authority To Modify Its Own Administrative Order .......... 16

B. The 2020 Administrative Order Expressly Contemplates Future Modifications By The FTC .......... 20

C. Extrinsic Evidence Confirms The FTC Retained Its Statutory Authority To Modify The 2020 Administrative Order .......... 24

II.     Finality Doctrines Do Not Bar The FTC From Exercising Its Authority To Modify Its Own Administrative Order ...................................................27

    A.     The FTC Is Not Judicially Estopped From Modifying The 2020 Administrative Order ...................................................28

    B.     *Res Judicata* Does Not Bar The FTC From Modifying The 2020 Administrative Order ...................................................28

III.     Meta's New Arguments Also Fail ...................................................30

    A.     Meta Forfeited Its New Arguments By Failing To Raise Them In Its Initial Motion to Enforce ...................................................30

    B.     The District Court Did Not Assume Jurisdiction Over The FTC's Order By Approving The Overall Settlement ...................................................31

    C.     The FTC Act Authorizes The FTC To Modify The 2020 Administrative Order ...................................................33

IV.     Meta Is Not Entitled To Injunctive Relief ...................................................36

    A.     Meta Will Not Suffer Irreparable Harm Absent An Injunction Because It Can Seek Judicial Review Of A Final FTC Decision ...................................................36

    B.     The Balance Of The Equities And Public Interest Favor Allowing The FTC's Administrative Proceedings To Continue ...................................................38

CONCLUSION ...................................................40

# TABLE OF AUTHORITIES

**Cases:**

*Am. Drug Corp. v. FTC,*
  149 F.2d 608 (8th Cir. 1945) .............................................................. 35-36

*Barber v. Thomas,*
  560 U.S. 474 (2010) ............................................................................. 22

*Chaplaincy of Full Gospel Churches v. England,*
  454 F.3d 290 (D.C. Cir. 2006) .......................................................... 37-38

*Dolcin Corp. v. FTC,*
  219 F.2d 742 (D.C. Cir. 1954) ............................................................. 21

*Dr. Pepper/Seven-Up Companies, Inc. v. FTC,*
  991 F.2d 859 (D.C. Cir. 1993) ............................................................. 35

*Dr. Pepper/Seven-Up Companies, Inc. v. FTC,*
  798 F. Supp. 762 (D.D.C. 1992) .......................................................... 35

*Elmo Co. v. FTC,*
  389 F.2d 550 (D.C. Cir. 1967) ................................................. 15, 35, 38

*Elmo Div. of Drive-X Co. v. Dixon,*
  348 F.2d 342 (D.C. Cir. 1965) ............................................................. 18

*Facebook, Inc. v. Brandtotal Ltd.,*
  No. 20-cv-7182, 2021 WL 2354751 (N.D. Cal. June 9, 2021) .............. 27

*FDIC v. Bank of New York,*
  479 F. Supp. 2d 1 (D.D.C. 2007) ......................................................... 37

*FTC v. Endo Pharms. Inc.,*
  No. 16-cv-1440, 2017 WL 4583802 (E.D. Pa. Aug. 21, 2017) ............. 22

*\*FTC v. Ruberoid Co.,*
  343 U.S. 470 (1952) ..................................................................... 18, 21

*\*Authorities upon which we chiefly rely are marked with asterisks.*

*FTC v. Surescripts, LLC,*
    No. 19-cv-1080, 2020 WL 2571627 (D.D.C. May 21, 2020) ...............................22

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.,*
    651 F.3d 1355 (Fed. Cir. 2011) ................................................................37

*\*George Banta Co., Inc., v. NLRB,*
    686 F.2d 10 (D.C. Cir. 1982)........................................................... 18, 22

*John Doe Co. v. CFPB,*
    849 F.3d 1129 (D.C. Cir. 2017) ........................................................36-37

*Keepseagle v. Perdue,*
    856 F.3d 1039 (D.C. Cir. 2017) ...................................................... 14, 30

*\*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ..........................................................14, 16, 19, 31-32

*Meta Platforms, Inc. v. FTC,*
    No. 24-5054, 2024 WL 1549732 (D.C. Cir. Mar. 29, 2024)...................................11

*Meta Platforms, Inc. v. FTC,*
    No. 23-cv-3562, 2024 WL 1121424 (D.D.C. Mar. 15, 2024) ..............................11

*\*Pigford v. Veneman,*
    292 F.3d 918 (D.C. Cir. 2002) ................................................... 14, 20, 31-32

*\*Pigford v. Vilsack,*
    777 F.3d 509 (D.C. Cir. 2015) ....................................12, 16-17, 19-20, 32

*Segar v. Mukasey,*
    508 F.3d 16 (D.C. Cir. 2007)......................................................................20

*United States v. ITT Cont'l Baking Co.,*
    420 U.S. 223 (1975) .................................................................... 21, 35

*United States v. Louisiana-Pac. Corp.,*
    754 F.2d 1445 (9th Cir. 1985) ..................................................... 5, 29

*\*United States v. Twitter, Inc.,*
    No. 22-cv-3070, 2023 WL 8007994 (N.D. Cal. Nov. 16, 2023)........ 17-19, 25, 27

*United States v. Volvo Powertrain Corp.*,
  758 F.3d 330 (D.C. Cir. 2014) ..................................................16, 24-25

*Winter v. NRDC*,
  555 U.S. 7 (2008) ................................................................................38

**Statutes:**

Federal Trade Commission Act
  15 U.S.C. § 45(a) ................................................................................ 4
  *15 U.S.C. § 45(b) .................................2-5, 14-15, 18, 20-21, 29, 32-38
  15 U.S.C. § 45(c) ...............................................5, 15, 32, 34, 37
  15 U.S.C. § 45(d) ...............................................................5, 34
  15 U.S.C. § 45(*l*) ..........................................4, 6, 17, 26, 34-35
  15 U.S.C. § 53(b) ...............................................................17

**Other Authorities:**

Federal Rules of Civil Procedure
  Fed. R. Civ. P. 1 ...............................................................24
  Fed. R. Civ. P. 65(d)(1)(C) ...............................................33

Federal Trade Commission Rules of Practice
  16 C.F.R. § 2.32 ...........................................................33, 35
  16 C.F.R. § 2.51(b) ...........................................................5, 21
  *16 C.F.R. § 3.72(b) ...........................................................9, 21, 34
  16 C.F.R. § 3.72(b)(1) ..........................................................5
  16 C.F.R. § 3.72(b)(2) ..........................................................5

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| A | Appendix |
| DOJ | U.S. Department of Justice |
| FTC Act | Federal Trade Commission Act |
| FTC or Commission | U.S. Federal Trade Commission |
| Meta | Meta Platforms, Inc. |

## INTRODUCTION

Meta Platforms, Inc.'s ("Meta") attempt to enjoin a Federal Trade Commission ("FTC" or "Commission") administrative proceeding relies on a misguided premise. By mischaracterizing a district court order that resolved a civil penalty lawsuit, Meta would block the FTC from exercising its statutory authority to reopen its own proceedings and revisit whether an administrative order is sufficient to protect the public from alleged unfair and deceptive conduct by Meta. The district court emphatically rejected Meta's misreading of that order and its attempt to block the FTC's proceeding. This Court should affirm the district court and likewise reject Meta's meritless contentions.

This appeal arises out of a 2019 lawsuit for civil penalties filed by the United States against Meta upon a referral from the FTC.[1] The United States' complaint alleged that Meta misrepresented its data privacy practices to its users, violating an administrative order that the FTC had entered in 2012 ("2012 Administrative Order"). Alongside the complaint, the United States filed a proposed Stipulated Order resolving the allegations. Under the terms of the Stipulated Order, Meta agreed to pay a $5 billion civil penalty. Meta also gave the FTC its "consent" for "reopening" the administrative proceeding and "modifying" the 2012 Administrative Order with a revised administrative order, the terms of which were reflected in "Attachment A" to the Stipulated Order. A206. In April 2020, the district court entered the Stipulated Order.

---

[1] Meta Platforms, Inc. was formerly known as Facebook, Inc. For ease of reference, this brief simply refers to the company as "Meta."

A203-10. A few days later, the FTC determined it was in the public interest to modify the 2012 Administrative Order and exercised its statutory authority to modify it to reflect the terms included in Attachment A ("2020 Administrative Order"). A380.

Subsequently, the FTC learned of additional conduct by Meta that may have violated the 2020 Administrative Order and further jeopardized users' data privacy. In light of its concerns, and pursuant to Section 5(b) of the FTC Act, 15 U.S.C. § 45(b), on May 3, 2023, the FTC ordered Meta to show why the 2020 Administrative Order should not be modified to include additional safeguards to protect the public. A307-19. Instead of responding to the FTC, Meta moved for an injunction in the district court, claiming the FTC's administrative proceeding is barred by the settlement that resolved the civil penalty lawsuit. In a "motion to enforce" the Stipulated Order, Meta claimed the district court in 2020 had asserted jurisdiction over not only the prior lawsuit, but also future administrative proceedings that implicate Meta's data privacy practices.

The district court rejected Meta's arguments. Reviewing the Stipulated Order, the court recognized that the FTC's administrative proceedings were separate from the court's judicial proceedings, so "the FTC's proposed changes to its administrative order do not fall within the court's jurisdiction." A703. Meta's claims to the contrary were "attempts to retroactively characterize" the relationship between the two proceedings. *Id.* Meta appealed and sought an injunction pending appeal. This Court denied Meta's request for preliminary relief, noting that Meta had not shown its appeal was likely to succeed on the merits. *See* Order (D.C. Cir. Mar. 12, 2024).

Meta now purports to raise several "independent" grounds to enjoin the FTC's proceedings. All of its arguments fail for essentially the same reasons found by the district court. In Section 5(b) of the FTC Act, Congress expressly empowered the FTC to modify administrative orders whenever changes in law or fact or the public interest require a modification. 15 U.S.C. § 45(b). The Stipulated Order nowhere curtails the FTC's statutory authority to revisit its own orders. Nor did it require future proceedings related to the FTC's 2020 Administrative Order to occur before the district court. Simply put, Meta did not buy itself out of the FTC's statutory enforcement scheme. For these reasons, and for reasons further explained below, this Court should affirm the district court's denial of Meta's motion to enjoin the FTC's administrative proceedings.

## STATEMENT OF THE ISSUE

Federal courts are courts of limited jurisdiction. A district court may enforce a consent decree only where the parties' agreement or a court order dismissing the action reserves jurisdiction to enforce compliance. Even where the court does retain jurisdiction, its jurisdiction is limited by the explicit terms of the parties' agreement.

This appeal presents the issue of whether the district court properly refused to enjoin an FTC administrative proceeding relating to alleged misconduct by Meta, based on a prior judicial consent decree whose terms did not reserve jurisdiction over the FTC's administrative proceedings and that explicitly provided that the FTC may conduct its administrative proceedings without involving the court.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

## I.      Regulatory Background

The FTC Act declares unlawful all "unfair or deceptive acts or practices in or affecting commerce," and it directs the FTC to stop corporations from using these unlawful acts and practices. 15 U.S.C. § 45(a).[2] Congress gave the FTC several statutory tools to meet this directive. Pertinent here, where the FTC believes a corporation has engaged in unfair or deceptive acts or practices, it may serve an administrative complaint stating the allegations. *Id.* § 45(b). After providing an opportunity to be heard, the FTC may issue an administrative order requiring the "corporation to cease and desist from using . . . such act or practice." *Id.*

Congress also created several administrative and judicial avenues for the FTC to deter and halt violations of administrative orders. For example, under Section 5(*l*) of the FTC Act, when the FTC has reason to believe a corporation violated an administrative order, it may seek civil penalties by referring a complaint to the U.S. Department of Justice ("DOJ") to file in federal court. 15 U.S.C. § 45(*l*). Additionally, under Section 5(b), the FTC may "reopen and alter, modify, or set aside, in whole or in part, any" administrative order when it is of the "opinion" that "conditions of fact or

---

[2] In quotations, emphases were added, and internal alterations, citations, and footnotes were omitted.

law have so changed as to require such action or if the public interest shall so require." *Id.* § 45(b). These judicial and administrative avenues—which require different showings—are not mutually exclusive. Occasionally, the FTC conducts both judicial and administrative proceedings related to the same order. *See, e.g., United States v. Louisiana-Pac. Corp.*, 754 F.2d 1445, 1450 (9th Cir. 1985). Moreover, a corporation can also request that the FTC reopen and modify administrative orders—it is not just the FTC that can seek reopening. *See* 15 U.S.C. § 45(b); 16 C.F.R. § 2.51(b).

Before modifying an administrative order, the FTC provides "notice and opportunity for hearing," 15 U.S.C. § 45(b), via "an order to show cause, stating the changes it proposes to make in the decision and the reasons they are deemed necessary," 16 C.F.R. § 3.72(b)(1). The defendant may file an answer. If a show-cause order is unopposed, or if the pleadings "do not raise issues of fact to be resolved, the Commission . . . may decide the matter on the order to show cause and answer." *Id.* § 3.72(b)(2) "When the pleadings raise substantial factual issues," the FTC provides for appropriate hearings. *Id.* If the FTC modifies an order, the defendant may seek review in a court of appeals, 15 U.S.C. § 45(b), (c), whose jurisdiction is "exclusive," *id.* § 45(d).

## II.     Factual Background

### A.     The FTC Issues The 2012 Administrative Order To Resolve Meta's Alleged Data Privacy Misrepresentations To Users

In 2012, the FTC issued an administrative complaint against Meta, alleging that Meta had engaged in unfair and deceptive data privacy practices in violation of the FTC

Act. Among other things, Meta had allegedly misled its users, promising they could restrict Meta from sharing their non-public information, when in fact Meta could share their information with third-party developers. A69-87.

Meta settled that complaint by consenting to the 2012 Administrative Order. A63-68. Among other things, the 2012 Administrative Order barred Meta from misrepresenting its data privacy practices, required Meta to obtain users' consent before sharing their information with third parties, and ordered Meta to maintain a comprehensive privacy program. A65-67.

### B.    The District Court Enters A Stipulated Order To Resolve Meta's Alleged Violations Of The 2012 Administrative Order

In 2019, believing that Meta had violated the 2012 Administrative Order, the FTC referred a complaint to the DOJ for civil penalties and injunctive relief under Section 5(*l*) of the FTC Act, 15 U.S.C. § 45(*l*). The complaint alleged that Meta had again misled users about its information sharing with third parties and failed to maintain the requisite privacy program to address privacy risks. A55-60.

After extensive negotiations, Meta, the FTC, and the DOJ reached a new settlement. In July 2019, the DOJ filed a complaint on behalf of the United States, as well as a consent motion for entry of Stipulated Order, in the U.S. District Court for the District of Columbia before the Honorable Timothy J. Kelly. A13-62, A89-95. The consent motion stated that the parties had reached a settlement that was memorialized in a proposed Stipulated Order. The United States explained that the Stipulated Order

"requires [Meta] to pay a $5 billion civil penalty and imposes significant injunctive relief, primarily in the form of an amended administrative order that will be entered by the FTC." A89. In particular, "the Stipulated Order requires [Meta] to consent to the reopening of the FTC's earlier administrative proceeding against it so the FTC can replace the 2012 [Administrative] Order with an Amended Order." A91.

This appeal principally arises out of Sections II and IV of that Stipulated Order. Section II stated that Meta "shall consent" to: (1) "reopening" the FTC's 2012 administrative proceeding; (2) "waiver" of its procedural rights under the FTC's Rules of Practice; and (3) "modifying" the 2012 Administrative Order to replace it with a revised administrative order, the content of which was attached to the Stipulated Order as "Attachment A." A206. Section IV declared that the district court "shall retain jurisdiction . . . for purposes of construction, modification, and enforcement of this Stipulated Order." A207.

Before the district court entered the proposed Stipulated Order, certain amici curiae moved to intervene, contending the court should "reject the Stipulated Order" because it did not "go far enough." *See* A197. The United States and Meta separately responded, explaining why the proposed settlement was fair, reasonable, and in the public interest. In its response, the United States recognized that the settlement included two distinct orders—an "Amended FTC Order" and a "Stipulated Order"— which would operate "in conjunction" to ensure Meta's future compliance with the law. A155. The "Amended FTC Administrative Order" in particular would require Meta to

7

"implement safeguards to control" for data privacy risks. A144. Similarly, in Meta's response, it likewise recognized that there were two orders: a "Stipulated Order" and a "proposed administrative decision and order." A165. The Stipulated Order would become effective once "entered by the Court," whereas the proposed FTC administrative order would become "final and effective upon the date of its publication on the FTC's website (ftc.gov) as a final order." A165.

On April 23, 2020, the district court denied the motions to intervene, granted the United States' consent motion, and entered the Stipulated Order. *See* A8-9. In an accompanying memorandum opinion, the court recognized that the Stipulated Order "impose[d] a $5 billion fine to deter similar conduct by [Meta] in the future." A195. Furthermore, "the injunctive relief in the amended administrative order to be entered by the FTC contain[ed] new measures aimed at ensuring that [Meta] complies with its legal obligations going forward." A196. Despite Meta's alleged "underhanded conduct," the court found that the Stipulated Order was "fair, reasonable, and in the public interest." A193. In closing, the court noted it "may not apply quite the same deference" if Meta subsequently "reneged on its promises and continued to violate the law or the terms of the amended administrative order." A201.

### C. The FTC Reopens The 2012 Administrative Order And Issues The Modified 2020 Administrative Order

On April 27, 2020—four days after the district court entered the Stipulated Order—the FTC conducted its own administrative process. The FTC recognized that

Meta had been accused of misrepresenting its data privacy practices and had agreed to "resolving" those allegations by "consent[ing] to . . . modifying the 2012 [Administrative] Order with [a] new Decision and Order set forth below." A380. In light of these facts, the FTC "determined that it [was] in the public interest to reopen" its prior proceeding and exercised its statutory authority to "issue a new order" that mirrored the terms of Attachment A. *Id.* (citing 16 C.F.R. § 3.72(b)). Two commissioners dissented. *Id.* Meta did not object.

This 2020 Administrative Order required Meta to: (1) expand its privacy program; (2) exercise more oversight over third-party apps; (3) implement greater data security protections for user information; and (4) hire an independent assessor to conduct an assessment of the privacy program. A385-394.

### D.    The FTC Orders Meta To Show Cause Why It Should Not Reopen Administrative Proceedings Because Of Risks To The Public

As required, Meta retained an independent assessor to review its privacy program. In July 2021, the assessor produced an initial report, finding gaps and weaknesses in Meta's privacy program. A310. Based largely on the report's findings, FTC staff concluded there were deficiencies presenting substantial risks to the public. *Id.* On May 3, 2023, the FTC issued an order to show cause why it should not modify the 2020 Administrative Order to "strengthen and enhance the [2020 Administrative] Order's protections." A318.

The FTC's show-cause order discussed FTC staff's investigation into Meta's

9

compliance with the 2020 Administrative Order. After reviewing that investigation, the FTC found that it had "reason to believe" Meta had: (1) failed to implement an effective privacy program as required; (2) misrepresented third-party information sharing; and (3) misrepresented privacy protections in a children's application. A317-18. Meta was given thirty days—until June 2, 2023—to respond to these allegations. A319.

### III. Procedural History

Instead of responding to the FTC's show-cause order, on May 31, 2023, Meta filed a motion in the district court to "enforce" the Stipulated Order and enjoin the FTC's administrative proceedings. A233-34. Relying on the district court's retention of jurisdiction over the Stipulated Order, Meta claimed that the FTC is powerless to modify its own 2020 Administrative Order.

On October 17, 2023, the district court held a hearing on Meta's motion. A622. The court recognized that, while "clearly, both sides [had] envisioned" the FTC would go through its normal process" and modify the 2012 Administrative Order after the Stipulated Order was entered, the court did not "substantively order the contents of Attachment A" as part of the Stipulated Order. A625. Thus, the 2020 Administrative Order was not "part of [the Stipulated] Order for jurisdictional purposes." *Id.*

On November 27, 2023, the district court issued a memorandum opinion and order denying Meta's motion. A697-714. The court explained that its "jurisdiction to enforce consent decrees . . . is constrained by the [decree's] terms." A705. While the Stipulated Order directed Meta to "consent to" modifying the 2012 Administrative

Order as reflected in Attachment A, it "did not order [Meta] to comply with the terms of Attachment A, nor order the FTC to do anything." A706. Rather, the obligations identified in Attachment A "were imposed later, when the FTC issued its 2020 Administrative Order." A703. Moreover, while the court retained jurisdiction to enforce the Stipulated Order, "that jurisdiction does not extend to Attachment A, or the FTC's 2020 Administrative Order." A706. Therefore, Meta's challenges to the FTC's proceedings "do not fall within the court's retained jurisdiction." A710.

Meta appealed, A715, and then moved the district court for an injunction pending appeal, which was denied on January 12, 2024, A12. Meta then moved this Court for an injunction pending appeal. On March 12, 2024, the Court denied that motion, holding that Meta had failed to establish any of the elements necessary for an injunction. *See* Order (D.C. Cir. Mar. 12, 2024). Meta was unlikely to succeed on the merits because the Stipulated Order merely commanded Meta to "consent to the FTC's entry of Attachment A as an administrative order." *Id.* at 2. Meta failed to show any irreparable injury based on allegedly being denied a "bargained-for forum" or "forced to relitigate a settled matter." *Id.* at 1. Finally, the balance of the equities and public interest weighed in favor of "moving forward with the FTC proceeding." *Id.* at 2.[3]

---

[3] Meta also filed a new lawsuit to enjoin the FTC's proceedings, raising constitutional challenges. In that case, Meta sought a preliminary injunction, which was denied by the district court. *See Meta Platforms, Inc. v. FTC*, No. 23-cv-3562, 2024 WL 1121424 (D.D.C. Mar. 15, 2024). Meta appealed to this Court and again moved for an injunction pending appeal, which was denied. *See Meta Platforms, Inc. v. FTC*, No. 24-5054, 2024 WL 1549732 (D.C. Cir. Mar. 29, 2024).

## SUMMARY OF THE ARGUMENT

**I.** The district court properly applied binding precedent, reviewed the terms of the Stipulated Order, and concluded that it did not retain jurisdiction over the FTC's administrative proceeding. Meta's contrary arguments misconstrue the Stipulated Order, the 2020 Administrative Order, and the events preceding both orders.

**A.** A district court may "enforce its consent decrees . . . only if the parties' agreement or the court order dismissing the action reserves jurisdiction to enforce compliance." *Pigford v. Vilsack*, 777 F.3d 509, 514 (D.C. Cir. 2015) (*Pigford II*). Below, the district court correctly recognized that the Stipulated Order "did not order [Meta] to comply with the terms of Attachment A," A706, which "were imposed later, when the FTC issued its 2020 Administrative Order," A703. Instead, the Stipulated Order merely provided that Meta "shall consent" to the FTC "reopening" its administrative proceeding and "modifying" the 2012 Administrative Order as "set forth in Attachment A." A206. Similarly, while the court retained jurisdiction to enforce the *Stipulated Order*, it never assumed jurisdiction to enforce the *2020 Administrative Order*. Nowhere does the Stipulated Order purport to limit the FTC's statutory authority to modify FTC orders, indicating the parties did not intend to preclude future FTC order modifications.

**B.** Moreover, the terms of the 2020 Administrative Order show that the parties contemplated future administrative modifications without judicial involvement. The 2020 Administrative Order expressly invokes FTC's statutory and regulatory authority to modify its administrative orders and provides that Meta may seek modification based

12

on certain developments. *See* A385-86. Meta selectively excerpts and generates *post hoc* inferences about other provisions, but none of those provisions rebut this clear reservation of the FTC's statutory authority to modify its own administrative orders.

**C.** Because the Stipulated Order plainly does not bar the FTC from modifying its own order, this Court need not consider extrinsic evidence. Regardless, extrinsic evidence shows that the parties and the district court understood that the FTC would retain its statutory authority to modify its own order. During judicial proceedings, the parties and the court repeatedly noted that there would be two distinct orders: a Stipulated Order entered by the court, and a 2020 Administrative Order entered by the FTC. Moreover, before issuing the 2020 Administrative Order, the FTC determined that an FTC order modification was in the public interest. A380.

**II.** Meta also attempts to halt the FTC's administrative proceedings by invoking judicial estoppel and *res judicata*. Neither doctrine prevents the FTC from exercising its statutory authority to modify its own order.

**A.** Judicial estoppel prevents a succeeding party from taking a contradictory legal position after its interests change. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Contrary to Meta's assertions, the United States and FTC have never claimed that the FTC ceded its statutory authority to modify the 2020 Administrative Order. The government has not changed its position, so Meta's claim of judicial estoppel fails.

**B.** Meta's invocation of *res judicata* also fails. Courts do not apply *res judicata* "when a statutory purpose to the contrary is evident." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*,

13

501 U.S. 104, 107-108 (1991). Congress expressly authorized the FTC to modify its administrative orders whenever "conditions of fact or of law have so changed as to require such action or if the public interest shall so require." 15 U.S.C. § 45(b). The FTC may therefore modify its orders as contemplated by the FTC Act.

**III.** Meta also raises new challenges that were not asserted in its initial motion to enforce before the district court. These arguments were forfeited and are also meritless.

**A.** Issues and legal theories that were not raised before the district court will generally not be heard on appeal. *See Keepseagle v. Perdue*, 856 F.3d 1039, 1053 (D.C. Cir. 2017). There is no excuse for Meta's failure to raise its arguments below. Meta is a large company with sophisticated counsel, and Meta presented numerous theories in the district court. It cannot belatedly raise new challenges.

**B.** Regardless, Meta's new challenges fail. Although the district court found that the entirety of the settlement was reasonable—including the proposed administrative order that was later issued by the FTC—under binding Supreme Court precedent, "mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of [a court's] order." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). Meta's attempts to distinguish *Kokkonen* fail. While *Kokkonen* involved a private settlement, this Court has also applied *Kokkonen* to consent decrees. *See Pigford v. Veneman*, 292 F.3d 918, 924 (D.C. Cir. 2002) (*Pigford I*). Furthermore, a future administrative modification would not imperil the Stipulated Order in any way.

**C.** Meta's claim that the FTC lacks authority to modify an administrative order

14

that was entered by consent must also fail. The FTC Act authorizes the FTC to modify "any" administrative order "after notice and opportunity for hearing." 15 U.S.C. § 45(b). Meta knew it was operating within this statutory framework, as the company waived its procedural rights when it consented to the 2020 Administrative Order. *See* A206, 380. Moreover, this Court has previously upheld the FTC's reopening of a consent order. *See Elmo Co. v. FTC*, 389 F.2d 550, 551-52 (D.C. Cir. 1967).

**IV.** Finally, Meta claims this Court should issue an injunction because it will suffer irreparable harm absent an injunction and because the balance of the equities and public interest weighs in favor of an injunction. Meta is wrong on both fronts.

**A.** Meta will not suffer irreparable harm absent an injunction. "The expense and annoyance of litigation, including an FTC proceeding, does not constitute irreparable injury." Order (D.C. Cir. Mar. 12, 2024). Meta has not shown that being forced to litigate in multiple fora would cause it hardship. Also, Meta has a remedy for any final FTC modification: a court of appeals may set aside the decision. 15 U.S.C. § 45(b), (c).

**B.** Moreover, the equities and public interest weigh in favor of letting the FTC's proceedings continue. Meta's alleged equities are intertwined with its misreading of the Stipulated Order. By contrast, the FTC's proceedings "implicate important public interests," including ensuring Meta has an effective privacy program to protect its users. Order (D.C. Cir. Mar. 12, 2024). To the extent that Meta articulates any cognizable harm, that harm is far outweighed by the risk to the public from allowing Meta's alleged misconduct to continue unchecked. The Court should not halt the FTC's proceedings.

15

## STANDARD OF REVIEW

A consent decree reflects the parties' bargain to resolve a lawsuit, so courts interpret the terms of that bargain using "general principles of contract law." *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 339 (D.C. Cir. 2014). This Court conducts *de novo* review of the decree's terms, asking "what a reasonable person in the position of the parties would have thought the language meant." *Id.* at 337, 339. A party cannot escape the clear meaning of a consent decree by later offering a differing interpretation of the decree's terms. *See Pigford II*, 777 F.3d at 517.

## ARGUMENT

### I.    The District Court Correctly Interpreted Its Own Order

To persuade this Court to take the extraordinary step of enjoining the FTC from exercising its statutory authority to modify its own administrative order, Meta advocates a strained reading of the Stipulated Order that is inconsistent with its text, the parties' intentions, and the events that led the FTC to issue the 2020 Administrative Order. The Court should reject Meta's misreading.

### A.    The Stipulated Order Does Not Limit The FTC's Authority To Modify Its Own Administrative Order

"Federal courts are courts of limited jurisdiction." *Kokkonen*, 511 U.S. at 377. In *Kokkonen*, the Supreme Court held that "enforcement of [a] settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.* at 378. As a result, a district court may "enforce its consent decrees . . . only if the parties' agreement or the court order dismissing the

action reserves jurisdiction to enforce compliance." *Pigford II*, 777 F.3d at 514. Moreover, even if a consent decree "does retain jurisdiction in the district court to enforce its terms, the court still lacks a free-ranging 'ancillary' jurisdiction, and is limited by the explicit terms of the parties' agreement." *Id.*

Below, the district court properly applied binding precedent, reviewing the terms of its Stipulated Order and rejecting Meta's "attempts to retroactively characterize" that judicial order as subsuming the FTC's administrative proceedings. A703. Nevertheless, Meta insists, wrongly, that that the district court assumed jurisdiction over the "obligations" imposed by the 2020 Administrative Order and that those obligations were "ordered by the court or made part of the Stipulated Order." *See* Br. at 24.

As the district court explained, the plain language of the Stipulated Order "did not order [Meta] to comply with the terms of Attachment A." A706. Rather, it provided that Meta "shall consent" to the FTC "reopening" its administrative proceeding and "modifying" the 2012 Administrative Order as "set forth in Attachment A." A206.[4] The court held this was the "only injunctive relief it ordered" with respect to Attachment A. A707; *see* Order at 2 (D.C. Cir. Mar. 12, 2024) (preliminarily reaching the same conclusion as the district court); *United States v. Twitter, Inc.,* No. 22-cv-3070, 2023 WL 8007994, at *6 (N.D. Cal. Nov. 16, 2023) (holding that a judicial command

---

[4] The district court ordered Meta to "consent to" the modification pursuant to Sections 5($l$) and 13(b) of the FTC Act, 15 U.S.C. §§ 45($l$), 53(b). This was part of the injunctive relief included in the Stipulated Order. *See* Br. at 2-3, 34 n. 13.

within a Stipulated Order to "consent to" an FTC order modification did "not mean that the administrative order became a court order").

Furthermore, the Stipulated Order in no way limits the FTC's authority to modify its own administrative orders. As the district court observed, the Stipulated Order was drafted "against a statutory backdrop" allowing for administrative modification. A707; *see* 15 U.S.C. § 45(b). The Stipulated Order contains no "express statement" prohibiting modification, indicating the parties did not intend to preclude the FTC from later modifying the 2020 Administrative Order. *George Banta Co., Inc., v. NLRB*, 686 F.2d 10, 20 (D.C. Cir. 1982); *see FTC v. Ruberoid Co.*, 343 U.S. 470, 476 (1952). Had the parties intended to preclude modification in the future, they would have said so—just as they did with respect to other FTC rights. *See, e.g.,* A203-04 (Stipulated Order releasing certain "claims known by the FTC").[5]

Meta also relies on Section IV of the Stipulated Order, *see* Br. at 20, which provides that the court "shall retain jurisdiction . . . for purposes of construction, modification, and enforcement of this Stipulated Order," A207. But Section IV reserved jurisdiction to enforce the *Stipulated Order*, which "does not extend" to obligations that were later imposed by the *2020 Administrative Order*. A706; *see Twitter,*

---

[5] This case is thus unlike the one cited by Meta, *see* Br. at 49, where the FTC *did* limit its statutory authority, *see Elmo Div. of Drive-X Co. v. Dixon,* 348 F.2d 342, 346 n. 7 (D.C. Cir. 1965) (consent order stipulating that the FTC could file a new complaint "*only after*" a "determination that there [had] been a change of law or fact" required the FTC to hold a reopening hearing before issuing such a complaint).

*Inc.,* 2023 WL 8007994, at *6 (another court similarly recognizing that it had "retained jurisdiction for purposes of construction, modification, and enforcement of [a] Stipulated Order," but "the obligations that [the defendant sought] to be relieved of come from the FTC's administrative order, not [the] court's stipulated order"). As the district court explained, the obligations within Attachment A "had to be adopted and issued by the FTC to be effective." A708.

Examining the Stipulated Order as a whole, there are three more reasons that Meta's obligations under the FTC's order cannot be part of the Stipulated Order. *First,* while the Stipulated Order referred to Attachment A, these references were to specific provisions and for limited purposes. *See, e.g.,* A204 (Meta admitting allegations "as specifically stated . . . in Attachment A."). Wholesale incorporation of the 2020 Administrative Order into the Stipulated Order would improperly render these more-limited references superfluous. *See Pigford II,* 777 F.3d at 515.

In an attempt to evade this fact, Meta claims "it is irrelevant under *Kokkonen* why, or for what purpose, Attachment A is incorporated." Br. at 29; *see also id.* at 19, 24, 28-30 (suggesting *any* incorporation or inclusion of a document within a consent decree renders it enforceable by a district court). Meta misconstrues *Kokkonen.* As the Supreme Court clearly explained—and this Court later affirmed—to enforce a settlement, the decree must specifically incorporate the "*parties' obligation to comply* with the terms of [a] settlement agreement." Kokkonen, 511 U.S. at 381; *see Pigford II,* 777 F.3d at 514 (recognizing a court must "reserve[] jurisdiction to enforce *compliance*" of a consent

19

decree); *Pigford I*, 292 F.3d at 923-24 (holding a district court could not "enforce" consent decree terms that it "approved" because they were outside the consent decree's negotiated "enforcement clause"). Consistent with applicable precedent, the district court rightly held that "the obligations imposed" on Meta "reflected in" Attachment A "were not ordered by the [district court] or made part of the Stipulated Order—they were imposed later, when the FTC issued its 2020 Administrative Order." A703.

*Second*, Meta's misreading is "inconsistent with the stipulated purpose" to resolve certain claims predating settlement. *Segar v. Mukasey*, 508 F.3d 16, 24 (D.C. Cir. 2007). While the Stipulated Order released certain claims related to conduct "prior to June 12, 2019," it "specifically reserve[d] all other claims," including for alleged misconduct occurring after that date. A203-04. Meta's reading eviscerates this reservation, barring the FTC from exercising its statutory authority under Section 5(b) of the FTC Act to modify the 2020 Administrative Order to address future developments—including alleged misconduct by Meta that may "present substantial risks to the public." A310.

*Finally*, if Meta's obligations under the 2020 Administrative Order were entirely subsumed by the Stipulated Order, there would be no reason to put those terms in an "Attachment" at all. Instead, those obligations would appear in the body of the Stipulated Order. This Court should reject Meta's untenable interpretation.

## B.    The 2020 Administrative Order Expressly Contemplates Future Modifications By The FTC

Meta also attempts to manufacture ambiguity through the FTC's own order.

Meta cannot contort the 2020 Administrative Order, the terms of which were attached for limited purposes specified in the Stipulated Order, *see supra* at 19, to bootstrap interpretations "precluded by the words of the order itself." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 n. 12 (1975).

Moreover, the express terms of the FTC's order show that the parties contemplated potential future administrative modifications without judicial involvement. The FTC Act and the FTC's Rules of Practice authorize the FTC to modify its orders. 15 U.S.C. § 45(b); 16 C.F.R. §§ 2.51(b), 3.72(b). Consistent with this, the 2020 Administrative Order states that Meta "may seek modification of this Part pursuant to 15 U.S.C. § 45(b) and 16 C.F.R. § 2.51(b) to address relevant developments that affect compliance." A385-86. This provision confirms "Attachment A was not part of the Stipulated Order, because . . . the FTC could modify its administrative order without the court's consent." A708; *cf.* Br. at 19-20 (Meta contending that where a district court has "continuing jurisdiction over" an order, its "jurisdiction is exclusive").

Contrary to Meta's assertions, *see* Br. at 50-51, an administrative order does not need to specify every instance in which it could be modified, as statutory provisions are "implicit in every order issued under the authority of the [FTC] Act, just as if the order set them out." A708; *see Ruberoid*, 343 U.S. at 76 (same); *Dolcin Corp. v. FTC*, 219 F.2d 742, 750 (D.C. Cir. 1954) (same). Accordingly, the fact that the 2020 Administrative Order specified certain instances for which *Meta* "may seek modification" does not mean that the *FTC* may not otherwise exercise its statutory modification authority.

21

*Accord George Banta Co.*, 686 F.2d at 20 (recognizing a waiver of a statutory right must be "explicit" and "even explicit language will not be read expansively").

Meta attempts to rebut this *unambiguous* reservation of the FTC's modification power by selectively excerpting and generating *post hoc* inferences about various other provisions. *See* Br. at 18-29. These provisions cannot bear the weight Meta places on them. For example, Meta selectively cites the 2020 Administrative Order Finding: "This Court has jurisdiction over this matter." A211. But context matters. The 2020 Administrative Order is captioned "*In the Matter of Facebook, Inc.*," with the forum identified as "United States of America Federal Trade Commission." *Id.* Immediately preceding the Finding is the sentence: "After due consideration, the *Commission* issues its Complaint, makes the following Findings, and issues the following Order[.]" *Id.* The first Finding is: "*This* Court has jurisdiction over this matter." *Id.* Context reveals that the phrase "This Court" "refers to the tribunal entering the order, the FTC." A709.[6]

Meta also notes that the 2020 Administrative Order elsewhere refers to the FTC as the "Commission" and the district court as a "court." *See* Br. at 21-23. Again, context matters. While words are generally presumed to have the same meaning throughout a document, this presumption "yields readily to indications that the same phrase used in different parts . . . means different things." *Barber v. Thomas*, 560 U.S. 474, 484 (2010).

---

[6] The FTC is referred to as an administrative court during quasi-judicial proceedings. *See, e.g., FTC v. Surescripts, LLC*, No. 19-cv-1080, 2020 WL 2571627, at *5 (D.D.C. May 21, 2020); *FTC v. Endo Pharms. Inc.*, No. 16-cv-1440, 2017 WL 4583802, at *3 (E.D. Pa. Aug. 21, 2017).

Neither order declares that the district court would exercise jurisdiction over FTC proceedings, which would be highly unusual and contrary to the statutory scheme set up by Congress. And the 2020 Administrative Order expressly recognizes that the FTC could modify the 2020 Administrative Order without judicial consent. Accordingly, full context makes clear that "This Court" refers to the FTC.[7]

Next, Meta claims that the FTC's "waiver of the right to appeal" within the 2020 Administrative Order is an "unambiguous admission" that the FTC order's terms are part of the Stipulated Order. *See* Br. at 27. Meta claims it is "unambiguous" because the FTC would not "waive a right that does not exist," and the FTC cannot appeal its own administrative order. *Id.* But Meta selectively quotes the waiver, which provides in full that *both* "Respondent [*i.e.,* Meta] and the Commission waive all rights to appeal or *otherwise challenge or contest* the validity of this order." A211.[8] This waiver ensured that neither party would contest the validity of the 2020 Administrative Order—whether in a judicial appeal (such as this one), or in any other proceeding. In no way does this waiver suggest—much less unambiguously prove—that Meta's obligations under the 2020 Administrative Order were part of the Stipulated Order.

---

[7] In any event, as the district correctly observed, there is no need to determine whether "This Court" refers to the FTC, or even whether it "may be a scrivener's error," because "whatever the phrase was supposed to mean," context makes abundantly clear that "it does not mean" the district court. *See* A708-09.

[8] The 2020 Administrative Order contains a materially identical waiver to the Stipulated Order. *See* A204. Again, Meta's misreading improperly renders the waiver within the 2020 Administrative Order as duplicative and superfluous. *Supra* at 19.

Lastly, Meta relies on the discovery provision of the 2020 Administrative Order, claiming that because the parties invoked the Federal Rules of Civil Procedure, they must have meant for the district court to assume exclusive control over all the terms within the 2020 Administrative Order. *See* Br. at 26. Quoting Rule 1, Meta notes that the Federal Rules generally "govern proceedings in United States district courts." *Id.* But the parties adopted by agreement only certain "*procedures* prescribed" by certain enumerated federal rules. A230. While Rule 1 references proceedings in "United States district courts," that rule was not included in the "procedures" adopted by the parties. *Id.* (referencing "Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69"). In fact, the parties recognized that discovery would occur without any additional judicial intervention. *Id.* And the FTC expressly reserved its administrative discovery procedures under the FTC Act, further confirming the court did not retain jurisdiction. *Id.* (reserving the FTC's "lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1").

## C.    Extrinsic Evidence Confirms The FTC Retained Its Statutory Authority To Modify The 2020 Administrative Order

Meta also misleadingly excerpts statements made by the parties and the district court when the Stipulated Order was entered, claiming everyone believed the obligations in the 2020 Administrative Order were part of the Stipulated Order. *See* Br. at 23-24, 30-33. These statements are extrinsic evidence, and "a court may not look to extrinsic evidence of the parties' subjective intent unless the document itself is

ambiguous." *Volvo Powertrain Corp.*, 758 F.3d at 340. The Stipulated Order is unambiguous: it does not bar future administrative modifications to the 2020 Administrative Order. *See supra* at 16-24. Accordingly, this Court should not resort to extrinsic evidence.

Regardless, extrinsic evidence confirms the opposite of what Meta contends: the parties and the district court understood that the FTC retained its authority to modify its own orders. When the FTC issued the 2020 Administrative Order, the FTC made its own determination that it was "in the public interest . . . to issue a new order." A380. Two commissioners dissented. *See id.* Meta did not object.[9]

None of Meta's excerpts suggest the parties or the court believed that the obligations in the 2020 Administrative Order were subsumed by the Stipulated Order. To the contrary, everyone understood that the FTC would enter the modified administrative order. In its consent motion, for example, the government explained that the Stipulated Order "requires [Meta] to *consent* to the reopening of the FTC's earlier administrative proceeding against it so the *FTC can replace* the 2012 Order with an Amended Order." A91. Moreover, both the consent motion and district court noted

---

[9] Meta makes much of the fact that the FTC modified its own order after the Stipulated Order was entered, *see* Br. at 29-30, 38, but this timing makes sense. While the FTC understood it had "final approval to modify" the 2012 Administrative Order, *see* A404, Meta in the Stipulated Order waived its procedural rights to contest modification, *see* A206. Sensibly, the modification followed Meta's waiver of the right to contest modification. *Accord Twitter*, 2023 WL 8007994, at *6 (similarly recognizing that a party's consent to modification "sped up the issuance of the administrative order, but [did] not mean that the administrative order became a court order").

that the Stipulated Order provides "significant injunctive relief, primarily in the form of an amended administrative order *that will be entered by the FTC.*" A89; *see* A196 (district court recognizing that "the injunctive relief in the amended administrative order to be entered by the FTC contains new measures aimed at ensuring that Facebook complies with its legal obligations going forward").[10]

Meta also seeks to contort the district court's observation that it might show less "deference" to a future "proposed resolution" if Meta "continued to violate the law or the terms of the amended administrative order." A201; *see* Br. at 23-24. But that statement does not indicate any intent to assume control over the FTC's administrative process or foreclose lawful FTC action with respect to the 2020 Administrative Order. Indeed, Judge Kelly explained what he meant by this statement during the hearing on Meta's motion to enforce: that the government "might proceed" as it did "the first time," *i.e.,* with a new lawsuit against Meta for violating the 2020 Administrative Order. A630-31; *cf.* Br. at 24 n. 9 (conceding the government could have brought a new civil penalty action in the district court "pursuant to Section 5(*l*) of the FTC Act"). This

---

[10] Meta claims that the DOJ's and FTC's reference to the Stipulated Order in a discovery letter is evidence that the 2020 Administrative Order is "part of the Court's Order." *See* Br. at 30-32. As the United States explained to the district court before the court entered its order, the "Stipulated Order" and "Amended FTC Order" operate "in conjunction" to allow the DOJ "to obtain information related to [Meta]'s privacy practices." A155. Citing the Stipulated Order in the DOJ's joint discovery letter with the FTC thus made sense. *See* A611.

observation was not intended to "say" or "imply" what Meta now claims. A630-31.[11]

Finally, Meta's selective quotation of the word "incorporated" from its own briefing, *see* Br. at 30, does not show it believed the 2020 Administrative Order was wholly incorporated. Indeed, in that same sentence, Meta went on to recognize that the FTC's order would become "final and effective upon the date of its publication on the Commission's website (ftc.gov) as a final order." A165. Meta clearly understood the operative event giving legal force to the terms of Attachment A would be an administrative order entered by the FTC—not an order entered by the district court.

<p style="text-align:center">*    *    *</p>

In sum, the district court correctly rejected Meta's attempts to retroactively characterize the 2020 Administrative Order as subsumed by the Stipulated Order.

## II. Finality Doctrines Do Not Bar The FTC From Exercising Its Authority To Modify Its Own Administrative Order

Meta next invokes the doctrines of judicial estoppel, *see* Br. at 32-33, and *res judicata*, *see id.* at 43-45, to contend that the FTC cannot modify the 2020 Administrative Order. Neither doctrine prevents the FTC from exercising its statutory authority to modify its own orders to protect the public.

---

[11] Meta notes a different court characterized the 2020 Administrative Order as "a stipulation . . . in a judicial enforcement proceeding." *Facebook, Inc. v. Brandtotal Ltd.*, No. 20-cv-7182, 2021 WL 2354751, at *8 (N.D. Cal. June 9, 2021). That court also said the 2020 Administrative Order "*resembles* a consent decree," *id.*, suggesting it did not in fact believe it was *part* of a judicial consent decree. Moreover, in another case that was very similar to this one, a district court reached the same interpretive conclusion as the district court below. *See Twitter*, 2023 WL 8007994, at *6.

### A.    The FTC Is Not Judicially Estopped From Modifying The 2020 Administrative Order

The FTC is not judicially estopped from modifying the 2020 Administrative Order. Judicial estoppel prevents a party from assuming a position in a legal proceeding, succeeding in maintaining that position, and then taking a contradictory position once its "interests have changed." *New Hampshire*, 532 U.S. at 749.

As the numerous statements identified in this brief illustrate, *supra* at 6-8, 24-27, neither the United States nor the FTC claimed that Meta's obligations under the 2020 Administrative Order were subsumed in the Stipulated Order. Nor did the government claim that the FTC would cede its statutory authority under the FTC Act. Instead, *both* parties recognized that there were two distinct orders—a Stipulated Order to be entered by the district court, and a 2020 Administrative Order to be entered by the FTC. *See, e.g.,* A155, A165. The district court properly rejected Meta's misconstruction of the parties' prior positions. *See* A709 (refuting Meta's misreading of "the parties' comments during this litigation"); *see also* A703 (holding Meta had "attempt[ed] to retroactively characterize Attachment A as part of" the Stipulated Order"). The government has not changed its position, so Meta's attempt to invoke judicial estoppel falls flat.

### B.    *Res Judicata* Does Not Bar The FTC From Modifying The 2020 Administrative Order

Meta next claims *res judicata* poses an "independent obstacle" that "bars the FTC from modifying" the 2020 Administrative Order. *See* Br. at 43. Meta is incorrect. The FTC—not the district court—entered the 2020 Administrative Order, *see supra* at 16-

28

27, and therefore the FTC may modify that administrative order as provided by Section 5(b) of the FTC Act, 15 U.S.C. § 45(b).[12]

Courts do not apply *res judicata* principles to "determinations of administrative bodies" where "a statutory purpose to the contrary is evident." *Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 107-108. As relevant here, Section 5(b) of the FTC Act provides that the FTC "may at any time, after notice and opportunity for hearing, reopen and alter, modify, or set aside, in whole or in part," any administrative order whenever "conditions of fact or of law have so changed as to require such action or if the public interest shall so require." 15 U.S.C. § 45(b). Thus, Congress clearly did not intend to import *res judicata* principles to FTC administrative orders, as the FTC Act "specifically allows the Commission to modify its order after it has become final." *Int'l Union of Mine, Mill & Smelter Workers, Locs. No. 15 v. Eagle-Picher Mining & Smelting Co.*, 325 U.S. 335, 342 (1945); *see Louisiana-Pac. Corp.*, 754 F.2d at 1447 n.1 (similar).[13]

As the district court reasoned, "nothing in Attachment A—or the Stipulated

---

[12] Contrary to Meta's assertions, *see* Br. at 44, the United States never claimed that *res judicata* bars the FTC from modifying the 2020 Administrative Order. While the United States noted that the Stipulated Order included a "release of [certain] known and unknown violations of the 2012 [Administrative] Order," A152-53, this release does not preclude future modifications based on other allegations, *see supra* at 18, 20.

[13] Meta complains it would not have agreed to an FTC order that the FTC could "unilaterally modify," *see* Br. at 36-37, 41, but the FTC's authority to modify an administrative order is provided by the FTC Act, *see* 15 U.S.C. § 45(b). By settling a civil penalty lawsuit with the United States, Meta did not purchase the right to evade the regulatory scheme that applies to all other companies.

Order, for that matter—expressly limited the FTC's statutory authority to modify its own administrative orders." A707. Accordingly, the FTC retains its authority to modify its own orders as contemplated by Congress.

## III.    Meta's New Arguments Also Fail

On appeal, Meta also raises several new challenges that it did not assert in its initial motion to enforce. First, Meta contends that the district court retained jurisdiction over the 2020 Administrative Order by considering "the settlement's overall fairness" before entering the Stipulated Order. *See* Br. at 33-37. Second, Meta claims that the FTC cannot further modify the 2020 Administrative Order because that order was not issued "upon" hearing. *Id.* at 45-52. Meta forfeited these arguments by failing to raise them below. The arguments are also meritless.

### A.    Meta Forfeited Its New Arguments By Failing To Raise Them In Its Initial Motion to Enforce

Meta did not raise its new challenges in its initial motion, so it cannot do so now. "It is well settled that issues and legal theories not asserted at the district court level ordinarily will not be heard on appeal." *Keepseagle*, 856 F.3d at 1053. Otherwise, this Court would be required to weigh "complex issues on appeal without prior consideration by the trial court." *Id.* at 1044; *cf.* Br. at 48 (Meta faulting the district court for "ignor[ing]" contentions it did not raise below). There is no excuse for Meta's failure. Meta is a sophisticated litigant that pursued numerous other contentions below. *See* A235-90, 574-606. Meta cannot belatedly raise new theories because its prior

challenges were unsuccessful in the district court.[14]

### B.  The District Court Did Not Assume Jurisdiction Over The FTC's Order By Approving The Overall Settlement

Furthermore, Meta's new arguments lack merit. To start, the district court explained that it had considered the prospective 2020 Administrative Order in order "to satisfy itself of the settlement's overall fairness," A709, but it did not "substantively order" Meta to comply with those terms, A624-25. Under *Kokkonen*, a court's "enforcement jurisdiction" is limited to the "obligations" contained in a consent decree. A706-07. "The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of [a court's] order." A709 (quoting *Kokkonen*, 511 U.S. at 381). Accordingly, the district court's awareness and approval of the envisioned 2020 Administrative Order does not divest the FTC of its statutory authority to decide whether a modification is appropriate. *See* A706.

Meta claims that *Kokkonen* is inapplicable to this case because *Kokkonen* involved a "privately created" "stipulation of voluntary dismissal," whereas this case involves a "consent decree." *See* Br. at 38-41. But this Court has already applied *Kokkonen* to consent decrees, recognizing a district court may "approve[]"as "fair, adequate and

---

[14] When seeking an injunction pending appeal, Meta asserted that it raised its new theories before the district court. To the contrary, Meta claimed that the district court had reviewed both orders as a "single, integrated document" within "the court's exclusive jurisdiction," A588-89, and that the failure to acknowledge the FTC's reopening authority within the 2020 Administrative Order demonstrates that the obligations contained in Attachment A were part of the district court's "final judgment," A592, 594. Its new theories are materially different.

reasonable" a decree that also limits its "enforcement authority." *Pigford I*, 292 F.3d at 921, 924-25. In other words, regardless of whether a judicial order relates to a private settlement or to a consent decree, a court remains "constrained by the terms of the decree and related order." *Id.* at 924; *see Pigford II*, 777 F.3d at 514 (similar). The terms of the Stipulated Order left the FTC free to engage in future administrative proceedings involving Meta—and indeed, it contemplated that the FTC would issue any modified administrative order in 2020 pursuant to its own procedures.[15]

For similar reasons, Meta is incorrect that this case differs from *Kokkonen* because the Stipulated Order is "flouted and imperiled by the FTC's assertion of authority to modify [the 2020 Administrative Order] unilaterally." *See* Br. at 41-42. The Stipulated Order merely obtained Meta's "consent" for a particular FTC modification "against a statutory backdrop" allowing for future modifications. A707. An additional modification would neither flout nor imperil the Stipulated Order.[16]

---

[15] Hoping to further distinguish *Kokkonen*, Meta also claims the district court has "federal question jurisdiction" over the FTC's modification proceedings—even if the lower court is not enforcing its Stipulated Order. *See* Br. at 40 n. 16. But the FTC Act "divests district courts of their ordinary jurisdiction over" FTC proceedings. *Axon Enter. v. FTC*, 598 U.S. 175, 185 (2023). Instead, Meta may seek judicial review in the court of appeals following any potential adverse final Commission decision. *See* 15 U.S.C. § 45(b), (c); *see also* A710.

[16] Because courts do not exercise free-ranging ancillary jurisdiction, even if the Stipulated Order did somehow order the FTC to make a one-time modification to the 2012 Administrative Order, *see* Br. at 37, this one-time direction would not preclude the FTC from later exercising its authority to modify the 2020 Administrative Order. Absent a provision expressly barring this exercise of statutory authority, there is no basis to infer such a limitation from a one-time direction.

Finally, Meta asserts that the "possibility of future modification" might result in "unintelligible (and conflicting) obligations" between the 2020 Administrative Order and the Stipulated Order, violating Federal Rule of Civil Procedure 65(d)(1)(C). *See* Br. at 42-43.[17] The district court *did* address this particular claim: it held that "nothing about [any] potential inconsistency is certain," and the mere possibility of an inconsistency does not warrant "an injunction prohibiting the FTC from reopening its proceedings" in order to protect the public as contemplated by the FTC Act. A711-12.

## C.     The FTC Act Authorizes The FTC To Modify The 2020 Administrative Order

Meta also wrongly claims the FTC cannot modify the 2020 Administrative Order under Section 5(b) of the FTC Act, 15 U.S.C. § 45(b). According to Meta, Section 5(b) provides that the FTC's modification authority only applies to administrative orders issued "upon" an administrative hearing and "not [to] consent orders." *See* Br. at 46. Because of this alleged "statutory void," Meta claims that the FTC implemented FTC Rule of Practice 2.32, which only authorizes the FTC to modify a consent decree where "respondents agree the order is modifiable in the same manner as Section 5(b) provides for litigated orders." *See id.* So the argument goes, because the 2020 Administrative Order was not issued "upon" hearing as required by Section 5(b), and because Meta did

---

[17] The only possible inconsistency Meta identifies is that, under the Stipulated Order, Meta "agree[d]" that the DOJ would have certain "rights" that the FTC would also have—if the FTC ultimately decided to enter the 2020 Administrative Order. A206. The DOJ's rights include receiving "copies" of relevant documents and the "same right" as the FTC to approve Meta's independent assessor. *Id.*

not "agree" the order was modifiable, the FTC is powerless to modify its order. *See id.* at 47. Meta's argument fails on multiple fronts.

As a threshold matter—and as the district court recognized—a motion to enforce a court order is not a proper vehicle to bring statutory challenges to an agency proceeding. *See* A709-10. Rather, arguments about the FTC's authority to pursue an administrative proceeding must be made to the FTC itself and, if rejected, to a court of appeals on review of the final administrative decision. *See* 15 U.S.C. § 45(c), (d).

Additionally, Meta's contention misconstrues Section 5(b) of the FTC Act. The 2020 Administrative Order was an administrative modification to the 2012 Administrative Order. *See* A380. Section 5(b) provides that the FTC may modify "any" FTC order "after notice and *opportunity* for hearing." 15 U.S.C. § 45(b).[18] In the Stipulated Order, Meta waived its opportunity for hearing on this statutory modification under FTC Rule 3.72, 16 C.F.R. § 3.72(b), which implements Section 5(b) by providing procedures for hearings on modifications, *see* A206. Moreover, the FTC relied on Rule 3.72 when issuing the 2020 Administrative Order. *See* A380. The parties understood the statutory framework in which they were operating, and the modification to the 2020

---

[18] Meta relatedly claims that the FTC may not "enforce" its own orders under the FTC Act. *See* Br. at 52-53. While the FTC Act contemplates that the FTC may file a judicial action to seek civil penalties for violations of an administrative order, 15 U.S.C. § 45(*l*), it also authorizes the FTC to modify its own orders where changes in fact or law, or the public interest, requires, *id.* § 45(b). The FTC identified "the public interest and changed conditions of fact" as potential bases for modification. A307.

Administrative Order was entirely consistent with Section 5(b) and applicable regulations.

Moreover, Meta misconstrues Rule 2.32, which does not limit the FTC's modification authority at all. Rather, Rule 2.32 specifies "much of the content of settlement agreements" to resolve FTC administrative complaints. *Dr. Pepper/Seven-Up Companies, Inc. v. FTC*, 798 F. Supp. 762, 770 (D.D.C. 1992), *rev'd in part,* 991 F.2d 859 (D.C. Cir. 1993). It does not apply to consent agreements relating to modifications of prior FTC orders—as Meta itself concedes. *See* Br. at 47-48. In any event, requiring settling parties to concede a consent order is modifiable "in the same manner" as other orders is sensible, and helps foreclose arguments like the one Meta seeks to make now.

Finally, this Court and the Supreme Court have already recognized that "FTC consent orders are as enforceable as adjudicated orders" under the FTC Act. *Dr. Pepper/Seven-Up Companies, Inc. v. FTC*, 991 F.2d 859, 863 (D.C. Cir. 1993); *see ITT Cont'l Baking Co.*, 420 U.S. at 243.[19] Indeed, this Court previously upheld the FTC's administrative reopening of a consent order. *See Elmo Co.*, 389 F.2d at 551-52 (affirming the FTC's reopening of a consent order based on its "finding that the public interest warrants re-opening" consistent with Section 5(b) of the FTC Act); *see also Am. Drug*

---

[19] Meta concedes that FTC orders entered by consent may be enforced "through a civil penalty action under Section 5(*l*) of the FTC Act," *see* Br. at 24 n. 9, while also claiming that FTC consent orders exist in a "statutory void" and are thus unmodifiable under Section 5(b) of the FTC Act, *see* Br. at 46. Meta's position that FTC consent orders trigger *some* provisions of the FTC Act, but not others, is indefensible.

*Corp. v. FTC*, 149 F.2d 608, 608-09 (8th Cir. 1945) (recognizing that Section 5(b) "clearly gives the Commission the power" to modify an FTC order that was entered by consent).

<p style="text-align:center">*    *    *</p>

In sum, the district court properly declined to enjoin the FTC's administrative proceedings. Meta's new and recycled arguments to the contrary are irreconcilable with the plain text of both orders, the FTC Act, and precedent.

## IV.    Meta Is Not Entitled To Injunctive Relief

Meta also claims that this Court should issue an injunction because it will allegedly suffer "irreparable harm" absent an injunction and because the "public interest" weighs in favor of an injunction. *See* Br. at 53-56. This Court has already considered and rejected similar contentions when denying Meta's motion for an injunction pending appeal. *See* Order (D.C. Cir. Mar. 12, 2024). For reasons this Court has already explained—and as further outlined below—the Court should deny Meta's request to enjoin the FTC's administrative proceedings.

### A.    Meta Will Not Suffer Irreparable Harm Absent An Injunction Because It Can Seek Judicial Review Of A Final FTC Decision

Meta wrongly claims it will be irreparably injured by having to "relitigate a matter that was finally decided." *See* Br. at 55. "But the expense and annoyance of litigation, including in an FTC proceeding, does not constitute irreparable injury." Order at 1 (D.C. Cir. Mar. 12, 2024); *see John Doe Co. v. CFPB*, 849 F.3d 1129, 1135 (D.C. Cir. 2017). Moreover, contrary to Meta's assertions, no court has adjudicated and "finally decided"

<p style="text-align:center">36</p>

the issue of jurisdiction in Meta's favor. *See FDIC v. Bank of New York*, 479 F. Supp. 2d 1, 19 (D.D.C.), *aff'd,* 508 F.3d 1 (D.C. Cir. 2007). Indeed, the district court ruled *against* Meta, holding it lacks jurisdiction over the FTC's proceedings. *See* Order at 1 (D.C. Cir. Mar. 12, 2024) (holding Meta "has not demonstrated irreparable harm based on its arguments that, absent an injunction, it will be . . . forced to relitigate a settled matter").

Meta also asserts it will suffer irreparable injury by being deprived of the forum "for which it expressly bargained." *See* Br. at 55. But there simply was no bargain struck to litigate all future matters related to the 2020 Administrative Order in federal court. *See supra* at 16-27. Nor does the law support Meta's contention of irreparable harm. The out-of-circuit case Meta cites holds that deprivation of a bargained-for forum could be irreparable where "litigating simultaneously" in two fora causes "financial and business hardship." *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1363 (Fed. Cir. 2011). Here, Meta has not shown that merely being forced to litigate in multiple fora would cause it financial hardship or disrupt its business. Indeed, Meta itself has initiated multiple actions in the district court. *See* Order at 1 (D.C. Cir. Mar. 12, 2024) (holding Meta "has not demonstrated irreparable harm based on its arguments that, absent an injunction, it will be denied its bargained-for forum").

Finally, Meta has an adequate remedy for any adverse final FTC decision: a court may set aside any potential modification. 15 U.S.C. § 45(b), (c). Vacatur of any modification, "even at the appeal-from-final-judgment stage, would fully vindicate" Meta's rights. *John Doe Co.*, 849 F.3d at 1135; *see Chaplaincy of Full Gospel Churches v.*

*England*, 454 F.3d 290, 297-98 (D.C. Cir. 2006) ("The possibility that adequate . . . corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm."). Accordingly, Meta will not suffer irreparable harm absent an injunction.

### B.    The Balance Of The Equities And Public Interest Favor Allowing The FTC's Administrative Proceedings To Continue

Meta also cannot show that the equities and public interest favor its requested relief. Meta's alleged equities are premised upon its incorrect reading of the Stipulated Order, including purportedly protecting the court's jurisdiction, settlement agreements, the finality of judgments, and halting unlawful agency actions. *See* Br. at 55-56. As discussed, Meta's claims are meritless, so these contentions likewise fall flat.

Even if these equities somehow weighed in favor of an injunction, the public benefits most from permitting the proceedings to continue. *See Winter v. NRDC*, 555 U.S. 7, 24 (2008) (noting courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction"). Congress directed the FTC to stop deceptive conduct, knowing an administrative order could prove insufficient to "stop the deception." *Elmo Co.*, 389 F.2d at 552. Congress thus authorized the FTC to modify its orders to protect the public. *See* 15 U.S.C. § 45(b).

The show-cause order "asserts reason to believe that, among other things, [Meta] failed to establish and implement an effective privacy program as mandated by the 2020 FTC order." Order at 2 (D.C. Cir. Mar. 12, 2024). These "concerns implicate important

public interests," and Meta fails to show they are "outweighed by any cognizable harm to [it] or the public from moving forward with the [administrative] proceeding." *Id.* Therefore, the balance of the equities and public interest favor allowing the FTC's administrative proceedings to continue.

## CONCLUSION

For the foregoing reasons, the government respectfully asks this Court to affirm the district court's order denying Meta's Motion to Enforce the Stipulated Order and to Enjoin the Administrative Reopening Proceeding of the Federal Trade Commission.

Dated: June 12, 2024

Respectfully Submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

ARUN G. RAO
  *Deputy Assistant Attorney General*

AMANDA N. LISKAMM
  *Director, Consumer Protection Branch*

LISA K. HSIAO
  *Senior Deputy Director, Civil Litigation*

ZACHARY A. DIETERT
  *Assistant Director*

*/s/ Zachary L. Cowan*
ZACHARY L. COWAN
SCOTT P. KENNEDY
  *Trial Attorneys*
  *Consumer Protection Branch*
  *U.S. Department of Justice*
  *450 5th Street, N.W.*
  *Washington, D.C. 20530*
  *(202) 353-7728*
  *Zachary.L.Cowan@usdoj.gov*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify that this response complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,468 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), according to the word count of Microsoft Word.

*/s/ Zachary L. Cowan*
Zachary L. Cowan

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2024, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Zachary L. Cowan*
Zachary L. Cowan

# ADDENDUM

## TABLE OF CONTENTS

Federal Trade Commission Act .................................................................1
   15 U.S.C. § 45 ............................................................................1
   15 U.S.C. § 53 [Excerpt] .............................................................9

Federal Trade Commission Rules of Practice ...........................................10
   16 C.F.R. § 2.32 .........................................................................10
   16 C.F.R. § 2.51 [Excerpt] .........................................................11
   16 C.F.R. § 3.72 [Excerpt] .........................................................12

Federal Rules of Civil Procedure ..............................................................14
   Fed. R. Civ. P. 1 ........................................................................14
   Fed. R. Civ. P. 60 [Excerpt] .......................................................15
   Fed. R. Civ. P. 65 [Excerpt] .......................................................16

## Federal Trade Commission Act
## 15 U.S.C. § 45

### § 45. Unfair methods of competition unlawful; prevention by Commission

### (a) Declaration of unlawfulness; power to prohibit unfair practices; inapplicability to foreign trade

**(1)** Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.

**(2)** The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations, except banks, savings and loan institutions described in section 57a(f)(3) of this title, Federal credit unions described in section 57a(f)(4) of this title, common carriers subject to the Acts to regulate commerce, air carriers and foreign air carriers subject to part A of subtitle VII of Title 49, and persons, partnerships, or corporations insofar as they are subject to the Packers and Stockyards Act, 1921, as amended, except as provided in section 406(b) of said Act, from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce.

**(3)** This subsection shall not apply to unfair methods of competition involving commerce with foreign nations (other than import commerce) unless--

**(A)** such methods of competition have a direct, substantial, and reasonably foreseeable effect--

**(i)** on commerce which is not commerce with foreign nations, or on import commerce with foreign nations; or

**(ii)** on export commerce with foreign nations, of a person engaged in such commerce in the United States; and

**(B)** such effect gives rise to a claim under the provisions of this subsection, other than this paragraph.

If this subsection applies to such methods of competition only because of the operation of subparagraph (A)(ii), this subsection shall apply to such conduct only for injury to export business in the United States.

**(4)(A)** For purposes of subsection (a), the term "unfair or deceptive acts or practices" includes such acts or practices involving foreign commerce that--

**(i)** cause or are likely to cause reasonably foreseeable injury within the United States; or

**(ii)** involve material conduct occurring within the United States.

**(B)** All remedies available to the Commission with respect to unfair and deceptive acts or practices shall be available for acts and practices described in this paragraph, including restitution to domestic or foreign victims.

## (b) Proceeding by Commission; modifying and setting aside orders

Whenever the Commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition or unfair or deceptive act or practice in or affecting commerce, and if it shall appear to the Commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue and serve upon such person, partnership, or corporation a complaint stating its charges in that respect and containing a notice of a hearing upon a day and at a place therein fixed at least thirty days after the service of said complaint. The person, partnership, or corporation so complained of shall have the right to appear at the place and time so fixed and show cause why an order should not be entered by the Commission requiring such person, partnership, or corporation to cease and desist from the violation of the law so charged in said complaint. Any person, partnership, or corporation may make application, and upon good cause shown may be allowed by the Commission to intervene and appear in said proceeding by counsel or in person. The testimony in any such proceeding shall be reduced to writing and filed in the office of the Commission. If upon such hearing the Commission shall be of the opinion that the method of competition or the act or practice in question is prohibited by this subchapter, it shall make a report in writing in which it shall state its findings as to the facts and shall issue and cause to be served on such person, partnership, or corporation an order requiring such person, partnership, or corporation to cease and desist from using such method of competition or such act or practice. Until the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time, or, if a petition for review has been filed within such time then until the record in the proceeding has been filed in a court of appeals of the United States, as hereinafter provided, the Commission may at any time, upon such notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any report or any order made or issued by it under this section. After the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time, the Commission may at any time, after notice and opportunity for hearing, reopen and alter, modify, or set aside, in whole or in part, any report or order made or issued by it under this section, whenever in the opinion of the

Commission conditions of fact or of law have so changed as to require such action or if the public interest shall so require, except that (1) the said person, partnership, or corporation may, within sixty days after service upon him or it of said report or order entered after such a reopening, obtain a review thereof in the appropriate court of appeals of the United States, in the manner provided in subsection (c) of this section; and (2) in the case of an order, the Commission shall reopen any such order to consider whether such order (including any affirmative relief provision contained in such order) should be altered, modified, or set aside, in whole or in part, if the person, partnership, or corporation involved files a request with the Commission which makes a satisfactory showing that changed conditions of law or fact require such order to be altered, modified, or set aside, in whole or in part. The Commission shall determine whether to alter, modify, or set aside any order of the Commission in response to a request made by a person, partnership, or corporation under paragraph1 (2) not later than 120 days after the date of the filing of such request.

## (c) Review of order; rehearing

Any person, partnership, or corporation required by an order of the Commission to cease and desist from using any method of competition or act or practice may obtain a review of such order in the court of appeals of the United States, within any circuit where the method of competition or the act or practice in question was used or where such person, partnership, or corporation resides or carries on business, by filing in the court, within sixty days from the date of the service of such order, a written petition praying that the order of the Commission be set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Commission, and thereupon the Commission shall file in the court the record in the proceeding, as provided in section 2112 of Title 28. Upon such filing of the petition the court shall have jurisdiction of the proceeding and of the question determined therein concurrently with the Commission until the filing of the record and shall have power to make and enter a decree affirming, modifying, or setting aside the order of the Commission, and enforcing the same to the extent that such order is affirmed and to issue such writs as are ancillary to its jurisdiction or are necessary in its judgement to prevent injury to the public or to competitors pendente lite. The findings of the Commission as to the facts, if supported by evidence, shall be conclusive. To the extent that the order of the Commission is affirmed, the court shall thereupon issue its own order commanding obedience to the terms of such order of the Commission. If either party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may

seem proper. The Commission may modify its findings as to the facts, or make new findings, by reason of the additional evidence so taken, and it shall file such modified or new findings, which, if supported by evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of its original order, with the return of such additional evidence. The judgment and decree of the court shall be final, except that the same shall be subject to review by the Supreme Court upon certiorari, as provided in section 1254 of Title 28.

**(d) Jurisdiction of court**

Upon the filing of the record with it the jurisdiction of the court of appeals of the United States to affirm, enforce, modify, or set aside orders of the Commission shall be exclusive.

**(e) Exemption from liability**

No order of the Commission or judgement of court to enforce the same shall in anywise relieve or absolve any person, partnership, or corporation from any liability under the Antitrust Acts.

**(f) Service of complaints, orders and other processes; return**

Complaints, orders, and other processes of the Commission under this section may be served by anyone duly authorized by the Commission, either (a) by delivering a copy thereof to the person to be served, or to a member of the partnership to be served, or the president, secretary, or other executive officer or a director of the corporation to be served; or (b) by leaving a copy thereof at the residence or the principal office or place of business of such person, partnership, or corporation; or (c) by mailing a copy thereof by registered mail or by certified mail addressed to such person, partnership, or corporation at his or its residence or principal office or place of business. The verified return by the person so serving said complaint, order, or other process setting forth the manner of said service shall be proof of the same, and the return post office receipt for said complaint, order, or other process mailed by registered mail or by certified mail as aforesaid shall be proof of the service of the same.

**(g) Finality of order**

An order of the Commission to cease and desist shall become final--

    **(1)** Upon the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time; but the Commission may

Add. 4

thereafter modify or set aside its order to the extent provided in the last sentence of subsection (b).

**(2)** Except as to any order provision subject to paragraph (4), upon the sixtieth day after such order is served, if a petition for review has been duly filed; except that any such order may be stayed, in whole or in part and subject to such conditions as may be appropriate, by--

**(A)** the Commission;

**(B)** an appropriate court of appeals of the United States, if (i) a petition for review of such order is pending in such court, and (ii) an application for such a stay was previously submitted to the Commission and the Commission, within the 30-day period beginning on the date the application was received by the Commission, either denied the application or did not grant or deny the application; or

**(C)** the Supreme Court, if an applicable petition for certiorari is pending.

**(3)** For purposes of subsection (m)(1)(B) and of section 57b(a)(2) of this title, if a petition for review of the order of the Commission has been filed--

**(A)** upon the expiration of the time allowed for filing a petition for certiorari, if the order of the Commission has been affirmed or the petition for review has been dismissed by the court of appeals and no petition for certiorari has been duly filed;

**(B)** upon the denial of a petition for certiorari, if the order of the Commission has been affirmed or the petition for review has been dismissed by the court of appeals; or

**(C)** upon the expiration of 30 days from the date of issuance of a mandate of the Supreme Court directing that the order of the Commission be affirmed or the petition for review be dismissed.

**(4)** In the case of an order provision requiring a person, partnership, or corporation to divest itself of stock, other share capital, or assets, if a petition for review of such order of the Commission has been filed--

**(A)** upon the expiration of the time allowed for filing a petition for certiorari, if the order of the Commission has been affirmed or the petition for review has

been dismissed by the court of appeals and no petition for certiorari has been duly filed;

**(B)** upon the denial of a petition for certiorari, if the order of the Commission has been affirmed or the petition for review has been dismissed by the court of appeals; or

**(C)** upon the expiration of 30 days from the date of issuance of a mandate of the Supreme Court directing that the order of the Commission be affirmed or the petition for review be dismissed.

## (h) Modification or setting aside of order by Supreme Court

If the Supreme Court directs that the order of the Commission be modified or set aside, the order of the Commission rendered in accordance with the mandate of the Supreme Court shall become final upon the expiration of thirty days from the time it was rendered, unless within such thirty days either party has instituted proceedings to have such order corrected to accord with the mandate, in which event the order of the Commission shall become final when so corrected.

## (i) Modification or setting aside of order by Court of Appeals

If the order of the Commission is modified or set aside by the court of appeals, and if (1) the time allowed for filing a petition for certiorari has expired and no such petition has been duly filed, or (2) the petition for certiorari has been denied, or (3) the decision of the court has been affirmed by the Supreme Court, then the order of the Commission rendered in accordance with the mandate of the court of appeals shall become final on the expiration of thirty days from the time such order of the Commission was rendered, unless within such thirty days either party has instituted proceedings to have such order corrected so that it will accord with the mandate, in which event the order of the Commission shall become final when so corrected.

## (j) Rehearing upon order or remand

If the Supreme Court orders a rehearing; or if the case is remanded by the court of appeals to the Commission for a rehearing, and if (1) the time allowed for filing a petition for certiorari has expired, and no such petition has been duly filed, or (2) the petition for certiorari has been denied, or (3) the decision of the court has been affirmed by the Supreme Court, then the order of the Commission rendered upon such rehearing shall become final in the same manner as though no prior order of the Commission had been rendered.

**(k)** "Mandate" defined

As used in this section the term "mandate", in case a mandate has been recalled prior to the expiration of thirty days from the date of issuance thereof, means the final mandate.

**(l) Penalty for violation of order; injunctions and other appropriate equitable relief**

Any person, partnership, or corporation who violates an order of the Commission after it has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $10,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the Attorney General of the United States. Each separate violation of such an order shall be a separate offense, except that in a case of a violation through continuing failure to obey or neglect to obey a final order of the Commission, each day of continuance of such failure or neglect shall be deemed a separate offense. In such actions, the United States district courts are empowered to grant mandatory injunctions and such other and further equitable relief as they deem appropriate in the enforcement of such final orders of the Commission.

**(m) Civil actions for recovery of penalties for knowing violations of rules and cease and desist orders respecting unfair or deceptive acts or practices; jurisdiction; maximum amount of penalties; continuing violations; de novo determinations; compromise or settlement procedure**

**(1)(A)** The Commission may commence a civil action to recover a civil penalty in a district court of the United States against any person, partnership, or corporation which violates any rule under this subchapter respecting unfair or deceptive acts or practices (other than an interpretive rule or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of subsection (a)(1)) with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule. In such action, such person, partnership, or corporation shall be liable for a civil penalty of not more than $10,000 for each violation.

**(B)** If the Commission determines in a proceeding under subsection (b) that any act or practice is unfair or deceptive, and issues a final cease and desist order, other than a consent order, with respect to such act or practice, then the Commission may commence a civil action to obtain a civil penalty in a district court of the United

States against any person, partnership, or corporation which engages in such act or practice--

**(1)** after such cease and desist order becomes final (whether or not such person, partnership, or corporation was subject to such cease and desist order), and

**(2)** with actual knowledge that such act or practice is unfair or deceptive and is unlawful under subsection (a)(1) of this section.

In such action, such person, partnership, or corporation shall be liable for a civil penalty of not more than $10,000 for each violation.

**(C)** In the case of a violation through continuing failure to comply with a rule or with subsection (a)(1), each day of continuance of such failure shall be treated as a separate violation, for purposes of subparagraphs (A) and (B). In determining the amount of such a civil penalty, the court shall take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require.

**(2)** If the cease and desist order establishing that the act or practice is unfair or deceptive was not issued against the defendant in a civil penalty action under paragraph (1)(B) the issues of fact in such action against such defendant shall be tried de novo. Upon request of any party to such an action against such defendant, the court shall also review the determination of law made by the Commission in the proceeding under subsection (b) that the act or practice which was the subject of such proceeding constituted an unfair or deceptive act or practice in violation of subsection (a).

**(3)** The Commission may compromise or settle any action for a civil penalty if such compromise or settlement is accompanied by a public statement of its reasons and is approved by the court.

## (n) Standard of proof; public policy considerations

The Commission shall have no authority under this section or section 57a of this title to declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition. In determining whether an act or practice is unfair, the Commission may consider established public policies as evidence to be considered with all other evidence. Such public policy considerations may not serve as a primary basis for such determination.

Add. 8

## 15 U.S.C. § 53 [Excerpt]

## § 53. False advertisements; injunctions and restraining orders

\*     \*     \*

**(b)** Temporary restraining orders; preliminary injunctions

Whenever the Commission has reason to believe--

**(1)** that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and

**(2)** that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public--

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: Provided, however, That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: Provided further, That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction. Any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28. In addition, the court may, if the court determines that the interests of justice require that any other person, partnership, or corporation should be a party in such suit, cause such other person, partnership, or corporation to be added as a party without regard to whether venue is otherwise proper in the district in which the suit is brought. In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found.

\*     \*     \*

**Federal Trade Commission Rules of Practice**
**16 C.F.R. § 2.32**

## § 2.32 Agreement.

Every agreement in settlement of a Commission complaint shall contain, in addition to an appropriate proposed order, either an admission of the proposed findings of fact and conclusions of law submitted simultaneously by the Commission's staff or an admission of all jurisdictional facts and an express waiver of the requirement that the Commission's decision contain a statement of findings of fact and conclusions of law. Every agreement also shall waive further procedural steps and all rights to seek judicial review or otherwise to challenge or contest the validity of the order. In addition, where appropriate, every agreement in settlement of a Commission complaint challenging the lawfulness of a proposed merger or acquisition shall also contain a hold-separate or asset-maintenance order. The agreement may state that the signing thereof is for settlement purposes only and does not constitute an admission by any party that the law has been violated as alleged in the complaint. Every agreement shall provide that:

(a) The complaint may be used in construing the terms of the order;

(b) No agreement, understanding, representation, or interpretation not contained in the order or the aforementioned agreement may be used to vary or to contradict the terms of the order;

(c) The order will have the same force and effect and may be altered, modified or set aside in the same manner provided by statute for Commission orders issued on a litigated or stipulated record;

(d) Except as provided by order of the Commission, any order issued pursuant to the agreement will become final upon service;

(e) The agreement will not become a part of the public record unless and until it is accepted by the Commission; and

(f) If the Commission accepts the agreement, further proceedings will be governed by § 2.34.

**16 C.F.R. § 2.51 [Excerpt]**

**§ 2.51 Requests to reopen.**

(a) Scope. Any person, partnership, or corporation subject to a Commission decision containing a rule or order which has become effective, or an order to cease and desist which has become final, may file with the Secretary a request that the Commission reopen the proceeding to consider whether the rule or order, including any affirmative relief provision contained therein, should be altered, modified, or set aside in whole or in part.

(b) Contents. A request under this section shall contain a satisfactory showing that changed conditions of law or fact require the rule or order to be altered, modified or set aside, in whole or in part, or that the public interest so requires.

(1) This requirement shall not be deemed satisfied if a request is merely conclusory or otherwise fails to set forth by affidavit(s) specific facts demonstrating in detail:

(i) The nature of the changed conditions and the reasons why they require the requested modifications of the rule or order; or

(ii) The reasons why the public interest would be served by the modification.

(2) Each affidavit shall set forth facts that would be admissible in evidence and shall show that the affiant is competent to testify to the matters stated therein. All information and material that the requester wishes the Commission to consider shall be contained in the request at the time of filing.

\*　　\*　　\*

## 16 C.F.R. § 3.72 [Excerpt]

**§ 3.72 Reopening.**

\*     \*     \*

(b) After decision has become final.

(1) Whenever the Commission is of the opinion that changed conditions of fact or law or the public interest may require that a Commission decision containing a rule or order which has become effective, or an order to cease and desist which has become final by reason of court affirmance or expiration of the statutory period for court review without a petition for review having been filed, or a Commission decision containing an order dismissing a proceeding, should be altered, modified, or set aside in whole or in part, the Commission will, except as provided in § 2.51, serve upon each person subject to such decision (in the case of proceedings instituted under § 3.13, such service may be by publication in the Federal Register) an order to show cause, stating the changes it proposes to make in the decision and the reasons they are deemed necessary. Within thirty (30) days after service of such order to show cause, any person served may file an answer thereto. Any person not responding to the order within the time allowed may be deemed to have consented to the proposed changes.

(2) Whenever an order to show cause is not opposed, or if opposed but the pleadings do not raise issues of fact to be resolved, the Commission, in its discretion, may decide the matter on the order to show cause and answer thereto, if any, or it may serve upon the parties (in the case of proceedings instituted under § 3.13, such service may be by publication in Federal Register) a notice of hearing, setting forth the date when the cause will be heard. In such a case, the hearing will be limited to the filing of briefs and may include oral argument when deemed necessary by the Commission. When the pleadings raise substantial factual issues, the Commission will direct such hearings as it deems appropriate, including hearings for the receipt of evidence by it or by an Administrative Law Judge. Unless otherwise ordered and insofar as practicable, hearings before an Administrative Law Judge to receive evidence shall be conducted in accordance with subparts B, C, D, and E of part 3 of this chapter. Upon conclusion of hearings before an Administrative Law Judge, the record and the Administrative Law Judge's recommendations shall be certified to the Commission for final disposition of the matter.

(3) Termination of existing orders--

(i) Generally. Notwithstanding the foregoing provisions of this rule, and except as provided in paragraphs (b)(3)(ii) and (iii) of this section, an order issued by the Commission before August 16, 1995, will be deemed, without further notice or proceedings, to terminate 20 years from the date on which the order was first issued, or on January 2, 1996, whichever is later.

(ii) Exception. This paragraph applies to the termination of an order issued before August 16, 1995, where a complaint alleging a violation of the order was or is filed (with or without an accompanying consent decree) in federal court by the United States or the Federal Trade Commission while the order remains in force, either on or after August 16, 1995, or within the 20 years preceding that date. If more than one complaint was or is filed while the order remains in force, the relevant complaint for purposes of this paragraph will be the latest filed complaint. An order subject to this paragraph will terminate 20 years from the date on which a court complaint described in this paragraph was or is filed, except as provided in the following sentence. If the complaint was or is dismissed, or a federal court rules or has ruled that the respondent did not violate any provision of the order, and the dismissal or ruling was or is not appealed, or was or is upheld on appeal, the order will terminate according to paragraph (b)(3)(i) of this section as though the complaint was never filed; provided, however, that the order will not terminate between the date that such complaint is filed and the later of the deadline for appealing such dismissal or ruling and the date such dismissal or ruling is upheld on appeal. The filing of a complaint described in this paragraph will not affect the duration of any order provision that has expired, or will expire, by its own terms. The filing of a complaint described in this paragraph also will not affect the duration of an order's application to any respondent that is not named in the complaint.

(iii) Stay of Termination. Any party to an order may seek to stay, in whole or part, the termination of the order as to that party pursuant to paragraph (b)(3)(i) or (ii) of this section. Petitions for such stays shall be filed in accordance with the procedures set forth in § 2.51 of these rules. Such petitions shall be filed on or before the date on which the order would be terminated pursuant to paragraph (b)(3)(i) or (ii) of this section. Pending the disposition of such a petition, the order will be deemed to remain in effect without interruption.

(iv) Orders not terminated. Nothing in § 3.72(b)(3) is intended to apply to in camera orders or other procedural or interlocutory rulings by an Administrative Law Judge or the Commission.

**Federal Rules of Civil Procedure**
**Fed. R. Civ. P. 1**

## Rule 1. Scope and Purpose

These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.

## Fed. R. Civ. P. 60 [Excerpt]

**Rule 60. Relief From a Judgment or Order**

<p style="text-align:center">*       *       *</p>

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

**(1)** mistake, inadvertence, surprise, or excusable neglect;

**(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

**(4)** the judgment is void;

**(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

**(6)** any other reason that justifies relief.

<p style="text-align:center">*       *       *</p>

## Fed. R. Civ. P. 65 [Excerpt]

**Rule 65. Injunctions and Restraining Orders**

*     *     *

**(d) Contents and Scope of Every Injunction and Restraining Order.**

> **(1)** ***Contents.*** Every order granting an injunction and every restraining order must:
>
>> **(A)** state the reasons why it issued;
>>
>> **(B)** state its terms specifically; and
>>
>> **(C)** describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.

*     *     *