ORAL ARGUMENT NOT YET SCHEDULED
No. 23-5280

# In the United States Court of Appeals for the District of Columbia Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*

v.

FACEBOOK, INC.,

a corporation,

*Defendant-Appellant.*

**REPLY BRIEF OF DEFENDANT-APPELLANT**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA NO. 1:19-CV-02184-TJK

James P. Rouhandeh
Michael Scheinkman
David B. Toscano
Marc J. Tobak
John A. Atchley III
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com
david.toscano@davispolk.com
marc.tobak@davispolk.com
john.atchley@davispolk.com

Paul J. Nathanson
DAVIS POLK & WARDWELL LLP
901 15th Street, NW
Washington, DC 20005
Tel: (202) 962-7000
paul.nathanson@davispolk.com


*Counsel for Defendant-Appellant Meta Platforms, Inc.*

# TABLE OF CONTENTS

PAGE

SUMMARY OF ARGUMENT ............................................................... 1

ARGUMENT .......................................................................................... 4

I.    The District Court Imposed the Relief in Attachment A as Part of the Stipulated Order Over Which It Retained Jurisdiction ....... 4

    A.    The Government Now Concedes that the District Court Imposed Attachment A .................................. 4

    B.    The Parties Intended that Attachment A Be Part of the Stipulated Order .................................................. 6

    C.    The Stipulated Order and Attachment A Are Not "Separate" or "Distinct" ................................................. 8

II.    The District Court Retained Jurisdiction Over Attachment A and Incorporated It into the Stipulated Order .............. 10

    A.    The District Court Expressly Retained Jurisdiction Over the Stipulated Order and Attachment A ........................... 11

    B.    The Plain Language of Attachment A Reflects Its Inclusion as Part of the Stipulated Order ............................ 13

III.    The Stipulated Order and Attachment A Are Inseparable Parts of the Consent Decree Approved by the Consent Decree .......... 15

    A.    The District Court Misapplied *Kokkonen* ................................. 15

    B.    Meta's Arguments Are Properly Before This Court ................ 20

IV.    The Res Judicata Effect of the Stipulated Order Bars the FTC from Modifying It ............................. 21

V.    The Commission Lacks Any Statutory Authority to Modify or Enforce Attachment A .................................. 22

    A.    Section 5(b) Does Not Authorize Modification of Consent Orders ...................................................................... 23

    B.    Section 5(b) Does Not Allow the Commission to Enforce Its Own Orders .................................... 26

VI.    Meta Is Entitled to an Injunction ........................................................ 27

CONCLUSION ........................................................................................ 28

CERTIFICATE OF COMPLIANCE .................................................................29

CERTIFICATE OF SERVICE ..........................................................................30

# TABLE OF AUTHORITIES

P<small>AGE</small>(S)

C<small>ASES</small>

*Am. Drug Corp. v. FTC*,
  149 F.2d 608 (8th Cir. 1945) ................................................................. 24

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
  501 U.S. 104 (1991) ............................................................................ 22

*\*Bd. of Trs. of Hotel & Rest. Emps. Loc. 25 v. Madison Hotel, Inc.*,
  97 F.3d 1479 (D.C. Cir. 1996) ........................................................ 10–11

*Blackmon-Malloy v. U.S. Capitol Police Bd.*,
  575 F.3d 699 (D.C. Cir. 2009) ............................................................ 21

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*,
  532 U.S. 598 (2001) ............................................................................ 17

*Cemex Inc. v. Dep't of the Interior*,
  560 F. Supp. 3d 268 (D.D.C. 2021) ....................................................... 6

*CFTC v. Schor*,
  478 U.S. 833 (1986) ............................................................................ 27

*Clarian Health W., LLC v. Hargan*,
  878 F.3d 346 (D.C. Cir. 2017) ............................................................ 21

*Collins v. Yellen*,
  594 U.S. 220 (2021) ............................................................................ 26

*Dr. Pepper/Seven-Up Cos., Inc. v. FTC*,
  991 F.2d 859 (D.C. Cir. 1993) ............................................................ 24

*Elmo Co. v. FTC*,
  389 F.2d 550 (D.C. Cir. 1967) ............................................................ 24

*FTC v. Cement Inst.*,
  333 U.S. 683 (1948) ............................................................................ 13

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*FTC v. Morton Salt Co.*,
  334 U.S. 37 (1948) ........................................................................ 26

*In re Idaho Conservation League*,
  811 F.3d 502 (D.C. Cir. 2016) ...................................................... 17

*Keepseagle v. Perdue*,
  856 F.3d 1039 (D.C. Cir. 2017) .................................................... 21

*\*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ...................................... 2–3, 10–11, 15–18, 20

*In re Lipitor Antitrust Litig.*,
  868 F.3d 231 (3d Cir. 2017) ............................................................ 6

*Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*,
  478 U.S. 501 (1986) ...................................................................... 24

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) ...................................................................... 25

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012) ...................................................................... 25

*\*Pigford v. Veneman*,
  292 F.3d 918 (D.C. Cir. 2002) ....................................... 11, 16, 19

*Pigford v. Vilsack*,
  777 F.3d 509 (D.C. Cir. 2015) .................................................. 19–20

*Pulsifer v. United States*,
  604 U.S. 124 (2024) .................................................................. 25–26

*Smith v. Spizzirri*,
  601 U.S. 472 (2024) ...................................................................... 23

*United States v. J. B. Williams Co.*,
  498 F.2d 414 (2d Cir. 1974) .......................................................... 26

*WMATA v. Mergentime Corp.*,
  626 F.2d 959 (D.C. Cir. 1980) ...................................................... 13

S<small>TATUTES</small> & R<small>ULES</small>

\*FTC Act § 5, 15 U.S.C. § 45 ............................................................ 10, 14, 22–27

\*16 C.F.R. § 2.32(c) .......................................................................... 24–25

O<small>THER</small> A<small>UTHORITIES</small>

FTC, *Annual Report of the Federal Trade Commission for the Fiscal Year Ended June 30, 1954*, 1954 WL 47708 (Jan. 1, 1954) ...................................................... 23

*In re Intuit Inc.*,
    2024 WL 382358 (FTC Jan. 22, 2024) ............................................................ 27

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| A | Appendix |
| Add. | Addendum |
| DOJ | United States Department of Justice |
| ECF | Electronic Case Filing |
| FTC | Federal Trade Commission |
| OTSC | FTC Order to Show Cause Why the Commission Should Not Modify the Order and Enter the Proposed New Order, dated May 3, 2023 |

## SUMMARY OF ARGUMENT[1]

The government's brief confirms that the District Court retained exclusive jurisdiction over the "construction, modification, and enforcement" of Attachment A to the Stipulated Order.

Meta's brief demonstrated that Attachment A is an inextricable part of the consent decree entered by the District Court, through which the District Court spoke and over which it expressly retained jurisdiction. Meta also demonstrated that the Stipulated Order's command that Meta consent to the imposition of Attachment A's injunctive terms is independently sufficient to imbue these terms with judicial authority.

In response, the government makes concessions from which both points necessarily follow. First, it acknowledges that its consent motion asking the District Court to enter the Stipulated Order expressly stated that "[*t*]*he Stipulated Order … **imposes** significant injunctive relief*, primarily in the form of an amended administrative order." And when the District Court entered the Stipulated Order, it confirmed it was "impos[ing]" the relief in Attachment A. Second, the government acknowledges the "District Court ordered Meta to consent to" the entry of this relief by the FTC. Having acknowledged that the District Court

---

[1] Unless otherwise indicated, emphasis is added and internal citations and quotation marks are omitted. Meta's principal brief is cited as "Br." and the government's brief is cited as "Gov't Br."

1

"imposed" Attachment A's relief and that the FTC's subsequent entry of Attachment A on its administrative docket depended on the District Court's authority, the government does not and cannot explain why the District Court is supposedly now powerless to exercise jurisdiction over an extrajudicial proceeding to modify its order or why the express reservations of jurisdiction in the Stipulated Order (and in Attachment A) do not control.

Meta has demonstrated that in the Stipulated Order, the District Court unambiguously reserved jurisdiction to modify and enforce the Stipulated Order— including the injunctive relief it imposed in Attachment A.  Attachment A itself includes a separate, express reservation of District Court jurisdiction, stating "[t]his Court has jurisdiction over this matter."  Contending that "[t]his Court" means the Commission, the government ignores that not only is the language unambiguous, it is set out in a document first entered by the District Court on its docket.

Similarly, the government misapplies *Kokkonen* by arguing that a judge's "mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of [a court's] order."  But that language does not apply to consent decrees.  The District Court was not "merely aware" of the injunctive relief in Attachment A—it:

- considered Attachment A's terms in assessing the settlement's overall fairness;

- analyzed that relief in a lengthy, considered opinion;

2

- concluded that those terms were reasonable and in the public interest;

- stated that it was imposing that injunctive relief;

- ordered Meta to consent to the FTC's entry of those terms;

- expressly referenced Attachment A in the Stipulated Order;

- physically attached Attachment A to the Stipulated Order, entering both on its docket as a single entry; and

- expressly retained jurisdiction over it.

Unwilling to address, let alone rebut, Meta's arguments, the government accuses Meta of a ploy to avoid any attempt to enforce the terms of the injunction. And because Meta paid a $5 billion civil penalty pursuant to the Stipulated Order, the government accuses Meta of trying to "buy itself out of the FTC's statutory enforcement scheme." Nothing could be further from the truth. The very purpose of Meta's enforcement motion is to show that the government can enforce Attachment A **before the District Court** if it believes there has been a violation. (The FTC elsewhere has acknowledged that only federal courts can enforce its orders.) Meta is not running from enforcement. In *Kokkonen* and its progeny, the party accused of violating the settlement agreement usually argues that the federal court lacks jurisdiction. Here, in stark contrast, the FTC, purporting to seek enforcement of the parties' settlement, is seeking to avoid—and displace—the federal courts.

3

# ARGUMENT

## I.    The District Court Imposed the Relief in Attachment A as Part of the Stipulated Order Over Which It Retained Jurisdiction

### A.    The Government Now Concedes that the District Court Imposed Attachment A

The government now acknowledges for the first time in this litigation (Gov't Br. 7, 17 n.4) that the Stipulated Order itself imposed the injunctive relief contained in Attachment A. Specifically, it concedes that its Consent Motion asking the District Court to enter the Stipulated Order expressly stated that "*the Stipulated Order … **imposes** significant injunctive relief*, primarily in the form of an amended administrative order." (*Id.* at 7.) This statement is unambiguous. All parties agreed that the District Court would order the injunctive relief contained in the amended administrative order—***as part of the Stipulated Order***.

And the District Court did exactly as the parties asked, explaining at the time that the Stipulated Order would "impose" the injunctive relief contained in the administrative order:

> Before the Court is [the parties'] consent motion to enter ***a proposed stipulated order***. Among other things, ***the order would … impose injunctive relief in the form of*** an amended administrative order to be entered by the FTC that would require Facebook to take a variety of additional measures to protect its users' personal information.

(A186.)[2]  The District Court went on to "grant the Consent Motion for Entry of

Stipulated Order, ECF No. 4, and enter the Stipulated Order" in the precise form

proposed by the parties.  (A201.)  As a result, the injunctive relief contained in

Attachment A was ordered by the District Court *as part of the Stipulated Order*.

  These unambiguous, contemporaneous statements leave no doubt that the

District Court ordered the relief in Attachment A.[3]  As the parties and the District

Court agreed at the time, *the Stipulated Order itself imposed the injunctive relief*

*that was attached to the administrative order*.[4]  The significance of the

government's concession to this same effect in its brief cannot be understated.

There is no dispute that the District Court expressly retained jurisdiction over the

Stipulated Order.  Accordingly, the retention-of-jurisdiction provision (Part IV of

---

[2] In its 2023 decision, the District Court reversed course, stating that "the obligations imposed on Defendant reflected in [Attachment A] were *not* ordered by the Court or made part of the Stipulated Order—they were *imposed* later, when the FTC issued its 2020 administrative order."  (A703.)

[3] The government does not address either the physical attachment of Attachment A to the Stipulated Order or the District Court's entry of the Stipulated Order, with Attachment A, as a single docket entry—each of which separately confirms Attachment A's incorporation into the Stipulated Order.  (Br. 28–30.) The Stipulated Order also references Attachment A multiple times, further confirming its incorporation.  (*Id.* at 28.)  The government's assertion that "[w]holesale incorporation of [Attachment A] into the Stipulated Order would improperly render these … references superfluous," lacks merit.  (Gov't Br. 19.) There is nothing "superfluous" about internal references within an integrated document.

[4] The amended administrative order and Attachment A are identical— including the "Attachment A" legend.

the Stipulated Order) is itself a sufficient basis to confer federal court jurisdiction over the terms contained in Attachment A.

### B.    The Parties Intended that Attachment A Be Part of the Stipulated Order

As the government concedes now (Gov't Br. 16), it is the parties' intent that controls the interpretation of the Stipulated Order.  *See In re Lipitor Antitrust Litig*., 868 F.3d 231, 265 (3d Cir. 2017) ("[W]hen parties seek to enforce agreements adopted in consent orders, courts construe terms of the settlement based on the intent of the parties.").  The government does not dispute that this Court "may look to evidence of 'course of performance' for interpretative assistance even when the contractual language contains no ambiguity," and that such evidence is "the best indication of what [the parties] intended the writing to mean."  (Br. 31 (quoting *Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 278–79 (D.D.C. 2021)).)

The statements and conduct of the FTC and the DOJ after entry of the Stipulated Order confirm *in multiple ways* that the parties intended that the injunctive relief in Attachment A be "made part of the Stipulated Order" (A703) consistent with the statements they made when seeking the District Court's approval in 2019.

First, during the course of monitoring Meta's compliance with the injunction in 2022, the FTC described the Stipulated Order as including the injunctive relief

6

contained in Attachment A, and then wielded Attachment A as a federal court order.  (Br. 3, 31–32; A611.)  Specifically, in correspondence with Meta, the FTC defined the Stipulated Order as the "Order," and expressly invoked "***the Order's prohibition against misrepresentations***" and "***the Order's provisions concerning a mandated privacy program***."  (A611.)  Those provisions are contained only in Attachment A.  In other words, when it was to the FTC's advantage to clothe Attachment A's injunctive terms with the authority of the District Court by including them as part of the Stipulated Order, the FTC did so unambiguously— as it did when it sought District Court approval in 2019.

Second, the FTC also stated that the Stipulated Order required Meta's "compliance" with Attachment A's injunctive provisions.  (A611.)  Its suggestion now that the Stipulated Order did ***not*** order Meta to comply with Attachment A is revisionist history.  The government's course of performance in monitoring the consent decree cannot be squared with its litigation argument that "the Stipulated Order 'did not order [Meta] to comply with the terms of Attachment A.'"  (Gov't Br. 12 (quoting A706).)

Third, the FTC reminded Meta that "the Stipulated Order … authorizes the [FTC] and [DOJ] to use discovery devices to request certain documents and information."  (A611.)  This unequivocal statement that the Stipulated Order "authorizes" the discovery provided for in Attachment A directly undermines the

7

government's attempt to portray that provision as mere agreed procedures over which "the court did not retain jurisdiction."  (Gov't Br. 24.)

## C.     The Stipulated Order and Attachment A Are Not "Separate" or "Distinct"

Unable to dispute its repeated admissions that the Stipulated Order imposed Attachment A's injunctive relief, the government now contends that the settlement with Meta included two separate and distinct orders—an "Amended FTC Order" and a "Stipulated Order"—which would operate "in conjunction" to ensure Meta's "future compliance with the law."  (Gov't Br. 7–8, 26 n.10.)  The existence of two orders does not detract in any way from the District Court's imposition of the injunctive relief as part of a consent decree over which it expressly retained jurisdiction.  Attachment A's injunctive relief was identical in form and substance when attached to the Stipulated Order and when attached to the amended administrative order.  *See supra* n.3–4.

Moreover, the District Court not only imposed the injunctive relief set out in Attachment A—it also ordered Meta to consent to its entry by the FTC.  (A206.)  The FTC could not have entered Attachment A on its docket had the District Court not compelled Meta's consent to an administrative order that included the relief that the District Court had imposed.  (Br. 37–38.)  The government expressly acknowledges that the District Order "ordered Meta to consent to the modification" and replacement of the 2012 Order with the amended administrative order that

8

included Attachment A.  (Gov't Br. 17 n.4.)  As the government's brief concedes: "[t]his was part of the injunctive relief included in the Stipulated Order."  (*Id.*) Standing alone, these concessions are sufficient to negate the government's contention that "there were two ***distinct*** orders."  (*Id.* at 28).  There was nothing distinct or separate about them.

The FTC also had no choice but to enter Attachment A as agreed.  The critical decision point for the FTC was its 3-2 vote on July 24, 2019 to approve the parties' settlement as memorialized in the Stipulated Order and its Attachment A. (A359.)  After making this decision, the FTC's entry of Attachment A in April 2020 was ministerial and, as reflected in the FTC order to which it was attached (A380), pursuant to the Stipulated Order.  Once the District Court entered the Stipulated Order, the FTC released the claims asserted in the federal court Complaint (among other claims).  The FTC had no ability—or authority—to enter any other relief on those claims.

The District Court did not treat the orders as separate or distinct when it entered the Stipulated Order in 2020.  It said as much in its opinion granting the Consent Motion, when it warned the parties that if the government again alleged Meta had "reneged on its promises and continued to violate the law or the terms of the amended administrative order, the Court may not apply quite the same deference to the terms of a proposed resolution."  (A201.)  The government's claim

9

that this referred only to the possibility of Section 5(l) civil penalty action if Meta violated Attachment A (Gov't Br. 26) makes no sense.  If, as the government argues, the District Court did not retain jurisdiction over Attachment A, only by sheer chance would such a complaint be assigned to Judge Kelly—who expressly framed this warning in terms of his ongoing retention of "jurisdiction over this matter, including to enforce [the Stipulated Order's] terms."  (A201; Br. 23–24.)

Finally, the government asks why, if "Meta's obligations under [Attachment A] were entirely subsumed by the Stipulated Order," it was necessary to include those obligations in an attachment.  (Gov't Br. 20.)  The government itself answered this question in 2019, when it told the District Court that entry of Attachment A by the FTC was required "so the FTC [could] replace the 2012 Order with … Attachment A."  (A91.)[5]

## II.    The District Court Retained Jurisdiction Over Attachment A and Incorporated It into the Stipulated Order

As the Supreme Court and this Court have concluded, jurisdiction to enforce settlements (even private settlements) exists when the parties have either (i) "clearly provid[ed] for retention of federal district court jurisdiction in their stipulations of dismissal," or (ii) "incorporat[ed] the full text of the settlement agreement into those stipulations."  *Bd. of Trs. of Hotel & Rest. Emps. Loc. 25 v.*

---

[5] This also benefited the government by making Attachment A enforceable through civil penalties in federal court under Section 5(l).  (Br. 2, 30.)

*Madison Hotel, Inc.*, 97 F.3d 1479, 1484 n.8 (D.C. Cir. 1996) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)); *Pigford v. Veneman*, 292 F.3d 918, 923–24 (D.C. Cir. 2002) (same).  As Meta explained in its principal brief, the parties did both here, providing two independent bases for jurisdiction. (Br. 18–33.)

### A.  The District Court Expressly Retained Jurisdiction Over the Stipulated Order and Attachment A

The government argues that neither the Stipulated Order nor Attachment A "declare[] that the district court would exercise jurisdiction over FTC proceedings."  (Gov't Br. 23.)  That is a straw man.[6]  The issue is not whether the District Court sought to superintend the FTC's administrative proceedings, but whether the District Court retained jurisdiction ***over the enforcement and modification of its Stipulated Order and Attachment A***.  It is beyond dispute that the District Court expressly retained jurisdiction over the Stipulated Order, and the government now agrees that the injunctive relief contained in Attachment A was ***imposed by the Stipulated Order***.  This concession ends the inquiry.

The District Court expressly retained jurisdiction by "clearly providing for retention of [its] jurisdiction," *Madison Hotel*, 97 F.3d at 1484 n.8, in plain and

---

[6] Likewise, Meta does ***not*** argue that the District Court has "jurisdiction over … future administrative proceedings that implicate Meta's data privacy practices."  (Gov't Br. 2.)

11

unambiguous language in both the Stipulated Order and Attachment A. (A207 ("[T]his Court shall retain jurisdiction in this matter for purposes of construction, modification, and enforcement of this Stipulated Order."); A211 ("This Court has jurisdiction over this matter.").) These provisions must be read in light of the government's belated concession in this litigation that the Stipulated Order "imposes" Attachment A's relief. (*See supra* at 4.) This retention of jurisdiction was expressly intended to (and did) include the injunctive relief in Attachment A because that relief was ordered by the District Court when it entered the Stipulated Order. Indeed, the government does not attempt to explain how the District Court is deprived of exclusive jurisdiction over injunctive relief it imposed in the Stipulated Order.

The government continues, however, to dismiss the District Court's clear reservation of jurisdiction in Attachment A. The government insists that "[t]his Court has jurisdiction over this matter" must be viewed in the "context" of Attachment A as entered ***solely*** by the FTC. (Gov't Br. 22.) From that perspective, "Court" and "Commission" "mean[] different things" when "used in different parts" of Attachment A—such that "[t]his Court" (rather than the defined term, "Commission") anomalously refers to the Commission in one (and only one) place in the order. (*Id.* at 22–23.) Or maybe it is a "scrivener's error." (*Id.* at 23 n.7.) The government's contortions ignore what is plainly obvious on the face of

12

Attachment A.  "This Court has jurisdiction over this matter" is crystal clear in the context of an integrated attachment to the Stipulated Order entered by the District Court on its docket (before the FTC also did so).

In response, the government cites two cases that make passing reference to the FTC proceeding through its own "administrative court."  (*Id.* at 22 n.6.)  Those fleeting references are a far cry from ***the FTC referring to itself as "this Court."***  The government does not contest that the FTC has never previously referred to itself as "this Court," nor does it explain the remarkable coincidence that it did so here, for the first time ever, in an order that happened to have been first entered by the District Court on its own docket.  Nor does the government grapple with Supreme Court precedent holding that the "Commission is not a court."  *FTC v. Cement Inst.*, 333 U.S. 683, 703 n.12 (1948).

### B.    The Plain Language of Attachment A Reflects Its Inclusion as Part of the Stipulated Order

Consistent with its imposition of its terms, the District Court spoke directly through Attachment A.  The government's argument that Attachment A was not part of the Stipulated Order depends on a reading of Attachment A that contravenes its "plain and unambiguous" language, which "is controlling."  *WMATA v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C. Cir. 1980).

First, the government argues that "the parties recognized that discovery [under Attachment A] would occur without any ***additional*** judicial intervention."

13

(Gov't Br. 24.)  Precisely.  As the government concedes, the Commission's ability to seek discovery using the Federal Rules of Civil Procedure is a product of judicial intervention—as is the Commission's ability to do so without seeking additional leave from the Court each time.  Or, as Attachment A plainly states, the "Commission is … authorized to obtain discovery, ***without further leave of court***." (A230.)  The parties' use of the word "further" also makes clear that the District Court is speaking when Attachment A says that the Commission is "authorized" to obtain discovery under the Federal Rules.

Second, the government argues that the FTC's waiver of "all rights to appeal" in Attachment A merely "ensured that neither party would contest the validity of [Attachment A]—whether in a judicial appeal (such as this one), or in any other proceeding."  (Gov't Br. 23.)  But that ignores that the FTC waived its right to appeal "***this Order***," i.e., Attachment A.  (A211.)  Only if Attachment A were ordered by the District Court would the FTC have an appellate right to waive; the FTC lacks a right of appeal with respect to its own orders.  *See* 15 U.S.C. § 45(b)–(c).  And the government does not contest that a party cannot waive nonexistent rights.  (Br. 27.)

Finally, the government argues—referring to two modification provisions in Attachment A ***that confer upon Meta*** the right to seek modification in narrow circumstances (A215–16)—that "the express terms of the FTC's order show that

14

the parties contemplated potential future administrative modifications without judicial involvement." (Gov't Br. 21.)  But these terms only show that the parties provided for possible bilateral modification of certain injunctive provisions without further court approval—as consent decrees routinely do.  (Br. 50–51 & n.18.)  Of course, if the government were correct that Attachment A could be modified in full, these two provisions would be legally meaningless.

In another reference to these same two provisions, the government states that "a prior judicial consent decree … explicitly provided that the FTC may conduct its administrative proceedings without involving the court." (Gov't Br. 3.)  The government is wrong that these provisions authorize the FTC to modify Attachment A unilaterally, as noted above, but the government's attribution of provisions in Attachment A to the "judicial consent decree" entered by the District Court is a further concession that the District Court imposed Attachment A's relief.

## III. The Stipulated Order and Attachment A Are Inseparable Parts of the Consent Decree Approved by the Consent Decree

### A. The District Court Misapplied *Kokkonen*

Meta has shown that the District Court's denial of Meta's motion to enforce the Stipulated Order rests on the misapplication of a single sentence from *Kokkonen*: "The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of [a court's] order." (A709 (quoting *Kokkonen*, 511 U.S. at 381).)  That reasoning has no application to

15

consent decrees, which involve a different and more exhaustive judicial exercise. *Kokkonen*'s skepticism of a judge's "mere awareness and approval" in the context of a private settlement underlying a "so ordered" (A207) voluntary stipulation of dismissal has no force as applied to a judge's approval and entry of a consent decree.  Here, the District Court's approval and entry of the Stipulated Order and its Attachment A involved "'approving' Attachment A insofar as it needed to satisfy itself of the settlement's overall fairness" (A709); ordering Meta to consent to the terms set out in Attachment A "in exchange" for a release in the Stipulated Order (A192); and "impos[ing]" these injunctive terms in the first instance (A186). (Br. Point III.A–D.)

In response, the government insists that the sentence from *Kokkonen* applies to consent decrees because this Court cited **other language** from *Kokkonen* for a **different proposition** in *Pigford*, 292 F.3d at 924, which involved a consent decree. (Gov't Br. 31–32; *see also id.* at 14.)  In fact, *Pigford* cited *Kokkonen* for the same propositions for which Meta cites *Pigford* above.  *See supra* at 10–11.  *Pigford* did not hold that a court's approval of a settlement embodied in a consent decree amounts to nothing more than "mere awareness and approval" of a settlement within the meaning of *Kokkonen*.  Nor, to our knowledge, has any court other than the District Court below.

16

The District Court's holding is unsound for the simple reason that "[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees." (Br. 40–41 (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 n.7 (2001) (citing *Kokkonen*, 511 U.S. 375)).) When a court approves and enters a consent decree—after "satisfy[ing] itself of the settlement's overall fairness to beneficiaries and consistency with the public interest," *In re Idaho Conservation League*, 811 F.3d 502, 515 (D.C. Cir. 2016)—the parties' settlement becomes the court's order. (Br. 33–36.) For instance, here the parties' settlement was a unified deal memorialized in the Stipulated Order, including Attachment A. (*Id.* at 36–37.) There was no private "settlement agreement" ***separate*** from the court's order, which imposed the injunctive relief on Meta and mandated that Meta consent to imposition of Attachment A's injunctive terms on it. (*Id.* at 37–39.) The government does not attempt to rebut any of these points.

To the contrary, the government treats the Stipulated Order and its Attachment A as a unified consent decree. In particular, the government concedes that certain provisions in Attachment A are "explicitly provided" by the "judicial consent decree." (Gov't Br. 3.) As explained above, the government mischaracterizes the substantive effect of these provisions, but accurately attributes them to the "judicial consent decree." *See supra* at 14–15. Because the injunctive

17

relief in Attachment A is "explicitly provided" by the consent decree, it is "part of the [District Court's] order" and "jurisdiction to enforce [Attachment A] therefore exist[s]." *Kokkonen*, 511 U.S. at 381; *see also id.* at 381–82 ("[W]e think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract.").

The government also argues that the Stipulated Order is not "flouted and imperiled by the FTC's assertion of authority to modify [Attachment A] unilaterally." (Gov't Br. 32 (quoting Br. 41–42).) The government argues that "[t]he Stipulated Order ***merely obtained*** Meta's 'consent' for a particular FTC modification 'against a statutory backdrop' allowing for future modifications." (Gov't Br. 32 (quoting A707).) That argument fails for at least three independent reasons. First, the government is wrong that the FTC has statutory authority to modify Attachment A (even if the District Court did not order it). *See infra* at Point V. Second, Attachment A was part of an integrated settlement whose "overall fairness" was approved by the District Court. (Br. 33–37, 41.) Third, the Stipulated Order did not "merely obtai[n]" (Gov't Br. 32) Meta's consent to modification of the 2012 Order. Instead, the Stipulated Order issued a command to Meta, which carried the force of the District Court's authority, to consent to the imposition of Attachment A's injunctive terms. (A206; Br. 37–39, 41.)

18

It is telling that the government's only response to Meta's showing that the District Court retained jurisdiction over Attachment A by virtue of this command (Br. 37–39) fails to even acknowledge the command, and instead denies the express relationship between the District Court's exercise of judicial power and Meta's consent to Attachment A's terms.[7]

Finally, the government mischaracterizes *Pigford* as supposedly "holding a district court could not 'enforce' consent decree terms that it 'approved' because they were outside the consent decree's negotiated 'enforcement clause.'" (Gov't Br. 20.)  But there was no attempt to "enforce" any term of the consent decree in *Pigford*.  292 F.3d at 923 (explaining that the movants "neither alleged a violation [of the consent decree] nor invoked the [decree's] procedures for 'seeking enforcement'").  This was significant because the parties had expressly "agree[d] to limit [the] district court['s] enforcement authority to situations where the decree is violated." *Id.* at 925.  Here, there is no such limitation on the District Court's retention of jurisdiction.  Even with the limitation in the *Pigford* decree, this Court in a later related case upheld the district court's jurisdiction to do "no more than enforce the parties' agreement." *Pigford v. Vilsack*, 777 F.3d 509, 514 (D.C. Cir.

---

[7] The government acknowledges this command elsewhere in its brief (Gov't Br. 7, 10–11, 12, 17, 25), but dodges it in response to Meta's argument about its legal significance.

19

2015).  Enforcing the parties' agreement is exactly what Meta asked the District Court to do here.

### B.    Meta's Arguments Are Properly Before This Court

In partial response to Meta's arguments that the District Court has enforcement jurisdiction because it approved Attachment A as part of the Stipulated Order (Br. 33–42), the government contends that the argument on pages 33–37 of Meta's principal brief is "new," and thus procedurally barred.[8]  (Gov't Br. 30–31 & n.14.)  That contention lacks any merit.

As the District Court acknowledged, Meta's motion below raised the claim that "Attachment A was 'made part of' the Stipulated Order such that the Court retained enforcement jurisdiction over the FTC's 2020 administrative order [i.e., Attachment A]."  (A706.)  In support of this claim, Meta argued:

> The government included Attachment A as part of the Stipulated Order, provided it to the Court as a single, integrated document, asked the Court to deem it adequate and in the public interest, and repeatedly noted that the Stipulated Order "imposed" the injunctive relief set forth in Attachment A.

---

[8] The government does not contend that Meta's argument that the District Court misapplied *Kokkonen* is procedurally barred.  (*Compare* Gov't Br. 30 (contending that argument on pages 33–37 of Meta's principal brief is "new") *with* Br. 39–42 (arguing "The District Court Misapplied *Kokkonen*").)

20

(A589; *see* Gov't Br. 31 n.14 (citing Meta's argument).)  In addition, Meta emphasized the District Court's approval of Attachment A and its injunctive terms. (A590.)

Under well-established preservation principles, on appeal Meta can "make any argument in support of [the] claim" that Attachment A was part of the Stipulated Order.  *Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 358 (D.C. Cir. 2017).  By contrast, the government relies on a case in which appellant forfeited his claims by failing to assert ***any argument at all*** in support of those claims before the district court.  (Gov't Br. 30 (citing *Keepseagle v. Perdue*, 856 F.3d 1039, 053 (D.C. Cir. 2017)).)  That case has no application here.

In any event, it is well settled that parties may address on appeal the merits of issues passed on by the court.  *See*, *e.g.*, *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707–08 (D.C. Cir. 2009).  The District Court expressly addressed "whether Attachment A was 'made part of' the Stipulated Order …," including by addressing its approval of Attachment A as "needed to satisfy itself of the settlement's overall fairness."  (A706, A709.)

## IV.  The Res Judicata Effect of the Stipulated Order Bars the FTC from Modifying It

Even if Attachment A were not imposed by the District Court, the government concedes that it was part of the relief resolving a federal court complaint (Gov't Br. 7), and it is subject to res judicata for that reason alone.  (Br.

21

43–44.)  Citing *Astoria Federal Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 107–08 (1991), the government argues that Attachment A is not subject to res judicata, because Section 5(b) authorizes the FTC to modify administrative orders. (Gov't Br. 29.)  But *Astoria* had nothing to do with the resolution of a federal court complaint—instead holding that certain state administrative findings are not preclusive in federal courts.  501 U.S. at 107–08.  The government cites no precedent that casts doubt on the well-established principle that settlements resolving district court complaints have res judicata effect.  (And, as explained in Point V below, Section 5(b) does not apply to Attachment A.)

## V.    The Commission Lacks Any Statutory Authority to Modify or Enforce Attachment A

The government urges the Court not to reach the Commission's lack of authority to modify or enforce Attachment A.  (Gov't Br. 34.)  But the government cannot rely upon the District Court's statement that "nothing in Attachment A … or the Stipulated Order … expressly limits the FTC's statutory authority to modify its own administrative orders," (Gov't Br. 29–30), while simultaneously arguing that the issue is beyond appellate review.  The government invokes this claimed statutory authority throughout its brief.  (*See, e.g.*, Gov't Br. 1–3, 12–13, 20–22, 27–36.)  Section 5(b) does not apply to Attachment A, and the parties had no reason to "expressly limit[]" the applicability of an inapplicable statute.

22

## A.    Section 5(b) Does Not Authorize Modification of Consent Orders

Meta showed that Section 5(b) of the FTC Act authorizes the Commission to modify orders "issued on a litigated or stipulated record," but not on consent.  (Br. 46–47.)

The government ignores that Section 5(b) authorizes modification of an order *only* if the order was issued by the Commission "under this section."  (15 U.S.C. § 45(b); Gov't Br. 4–5, 29 (omitting "under this section" from language quoted from Section 5(b)).)  And the government does not, and cannot, point to any language in Section 5 authorizing the Commission to issue orders on consent and without a hearing.  The statute's plain language provides that a cease-and-desist order is to be issued only "upon" a hearing:

> ***If upon such hearing*** the Commission shall be of the opinion that the method of competition or the act or practice in question is prohibited by this subchapter, it shall make a report in writing … and shall issue and cause to be served … [a] cease and desist [order].

15 U.S.C. § 45(b).  Accordingly, the Commission has long relied on respondents' consent to give orders issued without a hearing "the same force and effect ***as if entered after a full hearing***."  FTC, *Annual Report of the Federal Trade Commission for the Fiscal Year Ended June 30, 1954*, 1954 WL 47708, at *5 (Jan. 1, 1954) (explaining consent order rules); *see also Smith v. Spizzirri*, 601 U.S. 472, 476–77 (2024) (rejecting construction that would render a phrase in statute inapplicable).

23

The Commission requires respondents entering into consent orders resolving *administrative* complaints to agree expressly that "[t]he order will have the same force and effect and may be altered, modified or set aside *in the same manner provided by statute* for Commission orders issued on a litigated or stipulated record." 16 C.F.R. § 2.32(c). The contractual provisions required by Rule 2.32(c) ensure that consent orders are "as enforceable as adjudicated orders," *Dr. Pepper/Seven-Up Cos., Inc. v. FTC*, 991 F.2d 859, 863 (D.C. Cir. 1993), because "it is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree," *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 522 (1986).[9]

The government's argument (Gov't Br. 35) that Rule 2.32(c) does not *limit* the Commission's authority under Section 5(b) is a non sequitur. That rule formally embodies the *Commission's longstanding interpretation* that Section 5(b) does not authorize the issuance or modification of orders that are not "issued

---

[9] This Court has specifically noted this distinction, observing in *Elmo Co. v. FTC* that "the consent order itself," which expressly permitted modification, was the source of the Commission's modification authority, not Section 5(b). 389 F.2d 550, 551 (D.C. Cir. 1967). Nothing in the Eighth Circuit's earlier decision in *American Drug Corp. v. FTC*, which concerned judicial review, is to the contrary. 149 F.2d 608, 608–09 (8th Cir. 1945).

on a litigated or stipulated record." That is why the respondent's consent to modify is obtained. But such consent was not provided here.

The government separately argues that Rule 2.32(c) does not apply to Attachment A because it was not entered to resolve an administrative complaint. (Gov't Br. 34–35.) That is exactly the point. The parties' 2019 settlement included no agreement that Attachment A could be modified "in the same manner" as litigated orders. The Commission must show that Section 5(b) authorizes its modification. It cannot do so.[10]

The government's attempt to avoid the Commission's formal construction of Section 5(b) runs afoul of bedrock principles of interpretation.

- The government's gloss (Gov't Br. 35) that "requiring settling parties to concede a consent order is modifiable 'in the same manner' as other orders is sensible" disregards that under *National Federation of Independent Business v. Sebelius*, requiring agreement that consent orders can be modified "in the same manner" provided by statute necessarily implies that the statute does not provide for modification of consent orders. (Br. 20–21 (quoting 567 U.S. 519, 546 (2012)).)

- The government concedes that if Section 5(b) authorizes the Commission to modify consent orders, then Rule 2.32(c) would be redundant. (Gov't Br. 35.) But it ignores Supreme Court precedent cautioning against its construction that would "render the regulation entirely superfluous," *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 668–69 (2007). This applies with "special

---

[10] The government notes that Attachment A modified and replaced the 2012 Order. (Gov't Br. 25.) But Meta specifically ***agreed*** that (1) the 2012 Order could be modified "in the same manner … provided by statute for other orders," (A411) and (2) the 2012 Order could be replaced with Attachment A (A206). No such agreement allows unilateral modification of Attachment A.

force" where, as here, it would "render an entire subparagraph meaningless." *Pulsifer v. United States*, 604 U.S. 124, 143 (2024).

- The government argues that because FTC consent orders are subject to civil penalties under Section 5(l), every provision of the FTC Act must apply to them, including modification under Section 5(b). (Gov't Br. 35 n.19.) But Section 5(l) provides for civil penalties for violations of "final orders of the Commission," without Section 5(b)'s requirement that the orders were issued "upon such [a] hearing." *Compare* 15 U.S.C. § 45(l), *with id.* § 45(b). Such "intentional[] and purpose[ful]" textual differences between those provisions are dispositive. *Collins v. Yellen*, 594 U.S. 220, 248 (2021).[11]

## B.   Section 5(b) Does Not Allow the Commission to Enforce Its Own Orders

The government does not dispute what courts and the Commission itself have long held—that only courts may enforce Commission orders or "determine whether they have been violated." (Br. 53 (quoting *United States v. J. B. Williams Co.*, 498 F.2d 414, 422 (2d Cir. 1974)); *see also FTC v. Morton Salt Co.*, 334 U.S. 37, 54 (1948).)

The government asserts that so long as the Commission invokes "changes in fact or law, or the public interest," it can both enforce its orders and determine whether Meta complied with them. (Gov't Br. 34 n.18.) Not surprisingly, it cites no judicial authority for that proposition. Here, the claimed need for modification is based solely on alleged order violations. The Commission cannot find that the

---

[11] The parties' 2019 settlement acknowledged Attachment A's validity as a final Commission order, but did not provide for its unilateral modification.

purported changed circumstances or public interests invoked in the OTSC require modification unless it first finds that Meta committed the alleged order violations, which is why the Commission concedes it seeks to enforce the order.  (Br. 52–53.) But in rejecting an Article III challenge to the constitutionality of its "adjudication process," the Commission specifically acknowledged that its orders are "enforceable only by order of the district court."  *In re Intuit*, 2024 WL 382358, at *56 (FTC Jan. 22, 2024) (citing 15 U.S.C. § 45(l) and *CFTC v. Schor*, 478 U.S. 833, 853 (1986)).  It cannot simultaneously claim in this proceeding that Section 5(b) gives it that authority.

## VI.    <u>Meta Is Entitled to an Injunction</u>

The government does not dispute that no further showing is necessary for a permanent injunction to issue here, insofar as the FTC's proceeding threatens the District Court's jurisdiction—and the finality and preclusive effect of its judgment. (Br. 54.)  Below, Meta addressed the traditional injunction factors because it sought to preliminarily enjoin the OTSC proceeding while the District Court considered its motion to enforce.  (Br. 54.)  Because this request was mooted, these factors are inapplicable, which the government does not appear to contest.  In any event, Meta has satisfied the standard four-prong test for preliminary injunctive relief, as shown in Meta's principal brief.  (Br. 54–56.)

27

## CONCLUSION

For the foregoing reasons, the order of the District Court should be reversed.

Dated: July 12, 2024                    */s/ James P. Rouhandeh*

                                                          _____

James P. Rouhandeh
Michael Scheinkman
David B. Toscano
Marc J. Tobak
John A. Atchley III
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com
david.toscano@davispolk.com
marc.tobak@davispolk.com
john.atchley@davispolk.com

Paul J. Nathanson
DAVIS POLK & WARDWELL LLP
901 15th Street, NW
Washington, DC 20005
Tel: (202) 962-7000
paul.nathanson@davispolk.com

*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because this document contains 6,499 words excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

This document complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5), and 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman Font.

Dated: July 12, 2024                           */s/ James P. Rouhandeh*

_____
James P. Rouhandeh
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com

*Counsel for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2024, true and correct copies of the

foregoing were filed using the Court's CM/ECF System and served on counsel of

record by FedEx at the following address:

> Zachary L. Cowan
> Scott P. Kennedy
> Consumer Protection Branch
> U.S. Department of Justice
> 450 5th Street, N.W.
> Washington, D.C. 20530

Dated: July 12, 2024                    */s/ James P. Rouhandeh*

                                        —————————————————
                                        James P. Rouhandeh
                                        DAVIS POLK & WARDWELL LLP
                                        450 Lexington Avenue
                                        New York, New York 10017
                                        rouhandeh@davispolk.com

                                        *Counsel for Defendant-Appellant*

30