

**U.S. Department of Justice**
Civil Division
Consumer Protection Branch

---

January 15, 2025

<u>VIA CM/ECF</u>

Clifton Cislak, Clerk of the Court
U.S. Court of Appeals for the D.C. Circuit
333 Constitution Ave., NW
Washington, DC 20001

      Re:   *United States v. Facebook, Inc.* (No. 23-5280)
             Notice of Supplemental Authority

Dear Mr. Cislak:

Pursuant to Federal Rule of Appellate Procedure 28(j), we write to notify the Court of a recent Federal Trade Commission administrative decision concerning the Commission's statutory authority to modify the 2020 Administrative Order in *In the Matter of Facebook, Inc.*, No. C-4365 (F.T.C. Jan. 20, 2025).

The Commission's decision unanimously rejects Meta's threshold legal arguments under Section 5(b) of the FTC Act, 15 U.S.C. § 45(b), concluding that Section 5(b) authorizes the Commission to modify administrative orders that were entered with the consent of the defendant. *See* Decision at 8-15. The decision also explains that the Commission, Congress, and federal courts often refer to conduct relief within FTC administrative orders as "injunctive." *See* Decision at 3-4 n.1.

The Commission's decision and Commissioner Ferguson's concurring statement are attached to this letter.

Regards,

Zachary L. Cowan
Trial Attorney
Consumer Protection Branch

CC (via CM/ECF):
Counsel of Record

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:   **Lina M. Khan, Chair**
**Rebecca Kelly Slaughter**
**Alvaro M. Bedoya**
**Melissa Holyoak**
**Andrew Ferguson**

| | |
|---|---|
| **In the Matter of**<br><br>**Facebook, Inc.,**<br>   **a corporation.**<br><br>**Respondent.** | **DOCKET NO. C-4365** |

**COMMISSION DECISION REGARDING SECTION 5(b) MODIFICATION AUTHORITY**

Respondent Facebook, Inc. (now known as Meta Platforms, Inc.) ("Facebook" or "Meta") has raised a number of threshold legal issues regarding the current proceedings to modify the existing consent order governing Meta's privacy practices. On the basis of those considerations, Meta asks that we vacate the order to show cause that initiated this proceeding. Here, we address Meta's arguments concerning the Commission's authority under Section 5(b) of the Federal Trade Commission Act ("FTC Act") to conduct modification proceedings for consent orders. As discussed below, we find the Commission has authority to conduct such proceedings, subject to the challenge to the Commission's jurisdiction pending before the United States Court of Appeals for the District of Columbia. A further order concerning next steps in the proceedings will be issued at a later time.

I.  BACKGROUND

    a.  History of the Case

        i.  2012 Order

In 2012, the Commission issued an administrative complaint charging Facebook with unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) ("Section 5"). Broadly, the complaint alleged that Facebook deceived consumers by

telling them they could keep their information private but then repeatedly allowing it to be shared with third parties or made public. According to the complaint, Facebook misled users about its privacy settings and privacy policy changes, how much it shared its users' personal information with third-party application developers and outside advertisers, and the steps it took to verify the security and privacy practices of third-party application developers. The complaint also alleged, among other things, that Facebook told users that, after they deactivated or deleted their accounts, their photos and videos would be inaccessible, when in truth Facebook continued allowing access to such content even after account deactivation or deletion.

Facebook settled the Commission's complaint by agreeing to enter into a consent order. *See* Agreement Containing Consent Order (Nov. 2011); Decision and Order, 154 F.T.C. 1 (July 27, 2012) ("2012 Order"). The 2012 Order barred Facebook from making misrepresentations about the extent to which it maintains the privacy or security of its users' personal information, the extent to which its users can control the privacy of that information, the extent to which Facebook makes its users' personal information accessible to third parties, and the steps it has taken to verify third-party privacy protections. 2012 Order, Part I. The 2012 Order also required Facebook to establish and maintain a comprehensive privacy program that was reasonably designed to address privacy risks related to the development and management of current and future products and services, and to protect the privacy and confidentiality of its users' personal information. *Id.*, Part IV. Facebook denied wrongdoing but agreed to waive its rights to any further procedural steps or to seek judicial review or otherwise challenge or contest the validity of the order. Agreement Containing Consent Order at 1–2. The Agreement Containing Consent Order also contained a provision under which Facebook agreed that the consent order would have the same force and effect and could be altered, modified, or set aside in the same manner and within the same time provided by statute for other orders. *Id.* at 2.

### ii. 2020 Order

In 2018, the Commission began an investigation into whether Facebook had violated the 2012 Order. The investigation culminated in a complaint, which subsequently was filed in district court by the Department of Justice on behalf of the Commission, alleging that Facebook violated the order by (1) misrepresenting the extent to which users could control the privacy of their data and the steps required to implement such controls; (2) misrepresenting the information that Facebook made accessible to third parties; and (3) failing to establish, implement, and maintain a privacy program reasonably designed to address privacy risks. Specifically, the complaint alleged that Facebook maintained deceptive settings that misled users about how to protect their information from being shared by Facebook with third-party developers of apps used by their Facebook Friends; promised to stop giving app developers access to the data of app users' Friends, when in fact many app developers continued to have such access; inconsistently enforced its privacy policies against app developers who violated those policies, taking less severe action against app developers that generated significant revenue for Facebook; and implied to users that they could "turn on" facial-recognition technology associated with their posted photos and videos when, in fact, that technology was "on" for those users by default. Additionally, the complaint claimed that Facebook violated Section 5 of the FTC Act when it told users it would collect their telephone numbers to enable a

security feature but did not disclose that it also used those numbers for advertising. Compl. for Civ. Penalties, Inj., and Other Relief, *United States v. Facebook, Inc.*, 456 F. Supp. 3d 115 (D.D.C. 2020) (No. 19-cv-2184(TJK)).

To resolve the allegations, Facebook agreed to a settlement pursuant to which it would pay $5 billion in civil penalties and consent to modification of the 2012 Order to add various additional requirements. In July 2019, the Commission voted to refer the complaint and a proposed stipulated order reflecting the proposed settlement to the Department of Justice for filing. Two Commissioners dissented from approval of the proposed settlement, filing separate statements asserting that the settlement did not go far enough to fix the problems that led to the violations and did not provide adequate deterrence.

On July 24, 2019, acting on the Commission's notification and authorization, the Department of Justice filed the complaint in the United States District Court for the District of Columbia against Facebook, seeking monetary penalties and injunctive relief pursuant to Section 5(*l*) of the FTC Act. The Department of Justice also moved, with Facebook's consent, for entry of the proposed stipulated order of settlement. *See* Pl.'s Consent Mot. for Entry of Stipulated Order for Civil Penalty, Monetary J., and Injunctive Relief and Mem. in Supp., *United States v. Facebook, Inc.,* No. 19-cv-2184(TJK), (D.D.C. July 24, 2019) (Kelly, J.) ("*Facebook I*"); *see also* Stipulated Order for Civil Penalty, Monetary J., and Injunctive Relief ("Stipulated Order"). The proposed Stipulated Order required Facebook to pay a $5 billion civil penalty and, *inter alia*, to consent to the reopening of the administrative proceeding in which the Commission had issued the 2012 Order and to modification of that Order. Stipulated Order at 3-4. The Stipulated Order also required Facebook to consent to waive its rights under the show cause procedures set forth in Section 3.72(b) of the Commission's Rules of Practice, 16 C.F.R. § 3.72(b). Stipulated Order at 4. A proposed amended Commission order was appended to the Stipulated Order as Attachment A. Judge Timothy J. Kelly, who presided over the district court matter, entered the Stipulated Order on April 23, 2020.

On April 27, 2020, the Commission reopened the administrative proceedings against Facebook and modified the 2012 Order with the order in Attachment A, finding that it was in the public interest to do so. *See* Order Modifying Prior Decision and Order ("2020 Order"). A motion to reopen and modify the order was put to a vote; the motion passed with two Commissioners dissenting.

The 2020 Order modified the 2012 Order's conduct relief.[1] It expanded the privacy program and assessment provisions, mandating that Facebook conduct a "privacy review" of

---

[1] The Commission and Commission staff often describe such relief as "injunctive," because it "forbid[s] future violations of law but impos[es] no sanctions for past misconduct." *Carl Drath Trading as Broadway Gift Co.*, 52 F.T.C. 844, 847 (1956); *see also, e.g.*, Analysis of Consent Order to Aid Public Comment, *Creaxion Corp.*, 167 F.T.C. 71, 116 (2019) ("The orders include injunctive relief that prohibit[s] these alleged violations and fences in similar and related conduct."); Statement of Joshua Wright, *L'Occitane, Inc.*, No. 122-3115, 2014 WL 187444, at *17 (F.T.C. Jan. 7, 2014) (describing consent agreement provisions requiring substantiation of ad

every new or modified product, service, or practice before implementation, and document its risk mitigation determinations. The 2020 Order also required Facebook to exercise more rigorous oversight over third-party apps and to take appropriate enforcement action against third-party developers who violate its platform terms and policies. It further required Facebook to implement greater data security protections for user passwords and certain other information, and it imposed new restrictions on Facebook's use of facial recognition technology and telephone numbers obtained to enable a security feature. The 2020 Order required Facebook to report incidents involving the compromise of data for 500 or more users and document its efforts to address them. It also continued to prohibit Facebook from misrepresenting the extent to which it maintains the privacy or security of user information.

In October 2021, Facebook notified the Commission that it had changed its name to Meta Platforms, Inc. *See* Response of Meta Platforms, Inc. (F/K/A Facebook, Inc.) to the Commission's Preliminary Findings of Fact at 114 (Apr. 1. 2024) ("Response to Preliminary Findings of Fact").

In May 2023, as described below, the Commission initiated proceedings to modify the 2020 Order.

### b. The OTSC Proceeding

Under Section 5(b) of the FTC Act, the Commission may, after notice and opportunity for hearing, modify a prior order whenever it believes that conditions of fact or of law have changed so as to require such action or if the public interest so requires. 15 U.S.C. § 45(b).

---

claims as "injunctive relief provisions"); *Pom Wonderful LLC*, 155 F.T.C. 1, 3, 77–78 (2013) (discussing "injunctive relief" in cease and desist order); Analysis of Consent Order to Aid Public Comment, *DesignerWare, LLC*, 155 F.T.C. 421, 447, 448 (2013) (discussing the "strong injunctive relief" and "injunctive provisions" in proposed consent orders); Analysis of Proposed Consent Order to Aid Public Comment, *US Search, Inc.*, 151 F.T.C. 184, 196 (2011) ("The proposed consent order includes injunctive relief that enjoins US Search from misrepresenting the effectiveness of its PrivacyLock service . . . ."). Congress has used similar language in reference to Commission orders. *See, e.g.*, S. Rep. No. 75-226, at 3-4 (1937) (describing "the powers of the Commission" as "injunctive rather than punitive"); S. Rep. No. 93-1408, at 25 (1974) (Conf. Rep.) ("Of course, the commission, in an enforcement action (including a cease and desist order proceeding), could seek to enjoin the imposition of such a requirement without undertaking a rulemaking proceeding . . . ."). Courts too have sometimes described the FTC's remedial authority as involving injunctive relief. *See, e.g.*, *Atl. Refin. Co. v. FTC*, 381 U.S. 357, 368 (1965) (noting that Commission order "enjoined" respondent's conduct); *id.* at 387 (Goldberg, J., dissenting) (describing Commission order as an "injunction"); *Fanning v. FTC*, 821 F.3d 164, 174 (1st Cir. 2016) (discussing Commission's "injunctive order" and its "[i]njunction on [m]isleading [s]peech"); *SCM Corp. v. FTC*, 565 F.2d 807, 809, 813 & n.18 (2d Cir. 1977) (discussing Commission's imposition of "injunctive relief").

Commission Rule of Practice 3.72(b), 16 C.F.R. § 3.72(b), sets out the process for the Commission to initiate a proceeding to modify an order. The Rule explains that, whenever the Commission is of the opinion that changed conditions of fact or law or the public interest may require an order to be altered, modified, or set aside, the Commission is to serve upon the person subject to the order an order to show cause, stating the changes it proposes to make and the reasons they are deemed necessary. Within thirty days after service of such order to show cause, the respondent may file an answer. If the order is not opposed or is opposed but the pleadings do not raise issues of fact to be resolved, the Commission, in its discretion, may decide the matter on the papers, or the Commission may serve the parties with a notice of hearing, setting the date when the cause will be heard. When the pleadings raise substantial factual issues, Rule 3.72(b) instructs the Commission to direct such hearings as it deems appropriate, including hearings for the receipt of evidence by it or by an Administrative Law Judge ("ALJ"), who after such hearings would certify the record and recommendations to the Commission for final disposition of the matter.

On May 3, 2023, pursuant to Rule 3.72(b), the Commission issued an Order to Show Cause Why the Commission Should Not Modify the Order and Enter the Proposed New Order ("OTSC"). The OTSC included a Proposed Decision and Order, which would modify the 2020 Order, as well as Preliminary Findings of Fact in Support of the Order to Show Cause.

The OTSC asserted that the Commission had reason to believe (1) that Meta failed to establish and implement an effective privacy program as mandated by the 2020 Order;[2] (2) that Meta misrepresented the extent to which apps that had not been used by a user in the previous 90 days could continue to receive the user's nonpublic information, in violation of Section 5 of the FTC Act, the 2012 Order for the period before April 27, 2020, and the 2020 Order thereafter; and (3) that Meta's Messenger Kids product allowed children to communicate with contacts who were not approved by their parents, in contravention of Meta's representations and notice to parents, in violation of the 2012 Order, Section 5 of the FTC Act, the Children's Online Privacy Protection Act (15 U.S.C. § 6502), and the Children's Online Privacy Protection Rule (16 C.F.R. Part 312). OTSC 12.

The OTSC explained that its proposed modifications to the 2020 Order were intended to enhance user privacy by imposing strict limitations on Meta's ability to use information it collects from children and teens. The proposed modifications would also reinforce Meta's privacy program by prohibiting Meta from releasing any new or modified product, service, or feature until Meta can demonstrate through written confirmation by a third-party assessor that its privacy program fully complies with the order and has no material gaps or weaknesses. The proposed modifications also include various other changes that strengthen and enhance the 2020 Order's protections, including extending existing protections to Meta's future uses of facial recognition templates, broadening protections that require Meta to provide conspicuous notice and obtain the user's affirmative express consent for changes in its data practices, and

---

[2] The OTSC noted that an independent assessment performed per the requirements of the 2020 Order, covering the period of October 25, 2020 until April 22, 2021, identified ▮▮▮▮▮ gaps and weakness in Meta's privacy program across ▮▮▮▮▮, which together presented substantial risks to the public. OTSC 4.

5

expanding Meta's mandatory reporting obligations to include its violations of its commitments. OTSC 12–13.

On April 1, 2024, after multiple extensions, Meta submitted a Response to the OTSC and a Response to the Preliminary Findings of Fact, accompanied by various declarations, expert reports, and exhibits. *See* Response of Meta Platforms, Inc. (F/K/A Facebook, Inc.) to the Order to Show Cause Why the Commission Should Not Modify the Order and Enter the Proposed New Order ("Meta Response"); Response to Preliminary Findings of Fact. Meta's Response put forward numerous arguments concerning, among other things, the Commission's authority to reopen the order, whether conditions for reopening have been met, the propriety of the proposed order modifications, and the constitutionality of the proceeding. The Response to Preliminary Findings of Fact averred that the Commission's preliminary findings were inaccurate or incomplete, and it introduced new factual assertions.

On May 8, 2024, the Commission directed Complaint Counsel to submit a reply to the legal questions raised in the Meta Response, not including questions concerning remedy. *See* Order Directing Compl. Counsel to File a Reply at 2–3 (May 8, 2024). The Commission observed that Meta's Response raised a number of threshold legal issues regarding the show cause proceeding, which should be resolved first, and that further briefing would help facilitate the resolution of these issues. *Id.* Complaint Counsel submitted their reply on June 7, 2024. The Commission then directed Meta to submit a further reply to address Complaint Counsel's positions. On July 18, 2024, Meta submitted its Further Reply in Response to Complaint Counsel's Reply to Legal Issues Raised in Respondent's Response to the Order to Show Cause ("Meta Reply"). The Commission heard oral argument on the threshold legal issues on November 12, 2024.

### c. Parallel Federal Court Proceedings

#### i. *Facebook I*

After the Commission issued the OTSC, Meta filed a motion before Judge Kelly to enforce the Stipulated Order that he had entered in 2020 and to enjoin the FTC from reopening the administrative proceedings on both a preliminary and permanent basis. First, Meta argued that the modification proceedings before the Commission were improper because the district court had exclusive jurisdiction to enforce or to modify the 2020 Order, the proposed version of which had been appended to the court's Stipulated Order as Attachment A. Similarly, Meta asserted that, because Attachment A was part of the court's Stipulated Order, the Commission's modification proceedings were barred by res judicata. Meta also claimed that the FTC's attempt to reopen the 2020 Order exceeded its statutory authority, and Meta raised numerous constitutional challenges to the modification proceedings and to the FTC's authority more broadly.

Judge Kelly denied Meta's motion, finding that the obligations imposed on Meta through the FTC's 2020 administrative order, although set forth in an attachment to the court's Stipulated Order, were not made part of the Stipulated Order itself. *Facebook I*, No. 19-cv-2184(TJK), 2023 WL 8190858, at *1 (D.D.C. Nov. 27, 2023), *argued*, 23-5280 (D.C. Cir. Nov. 5, 2024). Judge

Kelly explained that the Stipulated Order directed Meta to pay a civil penalty and to consent to the FTC's reopening of its administrative proceedings and modification of the 2012 Order with Attachment A, but the court had not ordered Meta to actually comply with the terms of Attachment A, nor had it directed the FTC to issue the modified order. *Id.* at *4. As a result, the court lacked jurisdiction over claims related to potential changes to the Commission's 2020 Order and the Commission's authority to reopen its proceedings and modify that order, because those claims did not involve the construction, modification, or enforcement of the court's Stipulated Order. *Id.* at *1.

Meta appealed Judge Kelly's decision to the United States Court of Appeals for the District of Columbia (No. 23-5280). That appeal is pending.

### ii. *Facebook II*

On November 29, 2023, shortly after Judge Kelly's dismissal of Meta's motion, Meta filed a complaint in the United States District Court for the District of Columbia raising its constitutional challenges to the modification proceedings. Meta alleged that the OTSC proceedings violate Articles I, II, and III of the U.S. Constitution and the Fifth and Seventh Amendments. That same day, Meta moved to preliminarily enjoin the Commission's modification proceedings from moving forward. The Commission (and the named Commissioners) opposed the motion and cross-moved to dismiss the complaint.

Judge Randolph D. Moss found that Meta failed to demonstrate that it is likely to suffer irreparable injury in the absence of injunctive relief and concluded that the motion failed at this threshold issue. *Meta Platforms, Inc. v. FTC*, 723 F. Supp. 3d 64, 79 (D.D.C. 2024), *appeal docketed*, 24-5054 (D.C. Cir. Mar. 15, 2024) ("*Facebook II*"). When addressing the likelihood of success on the merits, Judge Moss determined that Meta was not likely to succeed on any of the constitutional challenges. *Id.* at 84–96. Consequently, Judge Moss denied the preliminary injunction. Judge Moss refused to dismiss Meta's complaint, however, explaining that dismissal would be premature because *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024), which was at that time still pending before the Supreme Court, could have bearing on some of the constitutional arguments. *Id.* at 71.

Meta appealed the district court's denial of a preliminary injunction and filed an emergency motion for an injunction pending appeal. The D.C. Circuit, in a per curiam opinion, denied the injunction pending appeal. *Meta Platforms, Inc. v. FTC*, No. 24-5054, 2024 WL 1549732 (D.C. Cir. March 29, 2024) (per curiam) ("*Facebook II Appeal*"). The D.C. Circuit explained, "[f]or many of the reasons well explained in the district court's thorough opinion below, . . . Meta has not met its heavy burden of showing entitlement to an injunction pending appeal. On the merits, Meta presses five constitutional challenges. None has a likelihood of success given binding precedent and the unusual record before us." *Id.* at *1. The appeal of Judge Moss' decision was stayed pending the district court's decision on issues affected by the Supreme Court's *Jarkesy* decision.

After the Supreme Court issued its decision in *Jarkesy*, the Commission renewed its motion to dismiss the case before Judge Moss on August 14, 2024. That motion is still pending.

## II.  SCOPE OF THIS DECISION

In this Decision we address several aspects of Meta's challenge to the Commission's authority to modify the 2020 Order. Specifically, we deal with Meta's assertions: (1) that the Commission may not modify consent orders under Section 5(b) of the FTC Act, 15 U.S.C. § 45(b); (2) that Commission Rule of Practice 2.32(c), 16 C.F.R. § 2.32(c), represents a concession by the Commission that Section 5(b) does not apply to consent orders; (3) that the OTSC proceeding constitutes order enforcement and is therefore an improper Commission activity; and (4) that contractual principles prevent the Commission from modifying the consent order over Meta's opposition. We find that Meta's arguments lack merit.

We will not address in this Decision Meta's claim that the Commission may not proceed because the 2020 Order is a district court order rather than an administrative order, nor the issues flowing from that claim. Those issues are currently pending before the United States Court of Appeals for the District of Columbia Circuit as discussed *supra*. We also will not address the standards and bases for modifying the 2020 Order under Section 5(b). These issues will guide the eventual resolution of factual disputes in this matter, and we defer consideration of them until a future order in which we will address next steps for the proceeding. Nothing in this Decision should be regarded as expressing the views of any Commissioner as to whether the facts alleged in the OTSC satisfy the requisite standards for order modification. Finally, we will not address Meta's constitutional claims at this time. Such claims are also pending before the courts and need not be resolved in this Decision.

## III.  ANALYSIS

Meta challenges the Commission's Section 5 reopening and modification authority on multiple bases. For the reasons explained below, we find that none of the arguments addressed negates the Commission's authority to reopen and modify the 2020 Order under Section 5.

### a.  Section 5(b) Applies to the 2020 Order

Meta claims that Section 5(b), which authorizes the Commission to "alter, modify or set aside" orders "made or issued" by the Commission "under this section," does not allow the Commission to modify consent orders without the respondent's agreement. *E.g.*, Meta Response 20; Meta Reply 4–5. Meta asserts that Section 5(b) by its terms applies to orders entered "upon" administrative "hearing[s]"; consequently, Meta argues, Section 5(b) does not reach consent orders, which concededly do not involve hearings. Meta Response 20; Oral Arg. Tr. 5.

Meta's argument misses the mark. Section 5(b) of the FTC Act authorizes the Commission to modify any order "made or issued by it under this section." 15 U.S.C. § 45(b).

This coverage is broad, encompassing any order issued under Section 5.[3] In entering a consent order the respondent and the Commission agree to waive the requirement for a hearing, but the resulting order remains an order issued under Section 5. That occurred twice here, when the parties agreed that the Commission could enter the original 2012 consent order and when the parties agreed that the Commission could enter the modified 2020 Order without the hearings that would normally accompany a contested complaint or modification.[4] The resulting Orders are valid cease and desist orders that are authorized under Section 5.

Section 5 itself makes settlement authority clear. Section 5(m)(1)(B) refers to Commission determinations "in a proceeding under subsection (b)" in which the Commission "issues a final cease and desist order, other than a consent order." Thus, the text of Section 5 acknowledges that consent orders flow from Section 5(b). The Commission has repeatedly exercised that statutory authority to modify consent orders following orders to show cause. *See, e.g.*, Order, *Nat'l Housewares, Inc.*, 84 F.T.C. 1566, 1570 (Dec. 3, 1974) (Section 5(b) provides authority for reopening); Order, *Elmo Co.*, 68 F.T.C. 1229 (Dec. 1, 1965), *aff'd*, 389 F.2d 550, 552 (D.C. Cir. 1967); *Mitchell S. Mohr Trading*, 55 F.T.C. 720 (1958), *aff'd sub nom. Mohr v. FTC*, 272 F.2d 401, 405–06 (9th Cir. 1959).

Other statutory authority confirms that settlements are a necessary aspect of Section 5 adjudication. The Administrative Procedure Act ("APA"), 5 U.S.C. § 554(a), (c) requires an agency to entertain offers of settlement from interested parties "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing". The Commission has long recognized that this requirement governs its adjudications. *See Seeburg Corp.*, 70 F.T.C. 1818, 1825 (1966) (stating, in the context of an FTC proceeding, that the APA "provides that administrative agencies shall afford opportunities for informal settlement"); *see generally United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 230 (1975) (enforcing an FTC consent order without questioning FTC's authority).

Logical and practical grounds support these conclusions. A contrary holding would make all FTC consent orders ultra vires. Agencies can only act under authority granted by Congress, and without statutory authorization, the Commission could not impose consent orders. An absence of consent authority would pointlessly force parties to litigate to conclusion disputes that they could otherwise settle on terms that would serve the public interest. Such a result would violate public policy and would contravene caselaw that deems consent orders a critical element of the Commission's enforcement toolkit. *See Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 39 (2d Cir. 1990) ("Congress [] authorized the FTC to exercise its supervisory powers . . . in a variety of ways—ranging from industry-wide rulemaking to case-by-case adjudication, *including consent orders*.") (citing Section 5) (emphasis added); *cf. Bristol-Myers Co.*, 469 F.2d 1116, 1119 (2d

---

[3] The phrase "this section" does not apply narrowly to Section 5(b). When Congress wanted to refer to a subsection, it did so explicitly. *See, e.g.,* § 5(a)(3) (referring to "this subsection"); 5(a)(4)(A) ("subsection"); 5(b) (referring to appeal rights of subsection 5(c)). As discussed *infra*, the Commission entered the consent order in this case pursuant to Section 5.

[4] *See* Agreement Containing Consent Order (2011) ¶ 3; Stipulated Order Part II(ii).

Cir. 1972) (cleaned up) (Mansfield, J. concurring) ("Nothing in the Administrative Procedure Act or in the basic principles of fair procedure precludes the Commission from creating and following a procedure for settling disputes without recourse to adjudication."); *accord Seeburg Corp.*, 70 F.T.C. at 1824.

Meta argues that Section 5(b)'s modification rights are only triggered after expiration of time to file a petition for review, but that here a petition for review was unavailable, as any further proceedings would have required an appeal to a federal circuit court. Meta Response 29–30. The statute references the time for filing a petition for review not as the source of modification authority, but rather as a timing device: the relevant provisions merely provide for a different modification process based on whether modification occurs before or after the time for petitioning for review has lapsed. *See* 15 U.S.C. § 45(b) ("Until" the expiration of the time for filing a petition for review, the Commission may "at any time, upon such notice and in such manner as it shall deem proper," modify or set aside the order; while, in contrast, "[a]fter" the expiration of the time for filing a petition for review, the Commission may only reopen, modify, etc. "after notice and opportunity for hearing."). That the statute sets out different mechanisms for modification based on the timing of an event relevant for the vast majority of orders is no basis for finding an absence of modification authority in the different setting presented here.

### b. Rule 2.32(c) Does Not Undermine the Commission's Statutory Authority

Meta argues that the existence of Commission Rule of Practice 2.32(c) and the Commission's failure to employ its language at the time of the 2020 Order negate any claim that Section 5(b) authorizes modification of that Order. Rule 2.32(c) requires an agreement settling a Commission complaint to provide that the resulting order "may be altered, modified or set aside in the same manner provided by statute for Commission orders issued on a litigated or stipulated record." 16 C.F.R. § 2.32(c). Meta contends that this language would be superfluous if consent orders were already modifiable under Section 5(b) and concludes from the regulation's existence that they are not. Meta Response 20–22; Meta Reply 2, 5, 8–9; Oral Arg. Tr. 15. According to Meta, the regulation makes clear that the Commission views consent orders and litigated orders as distinct, with consent orders requiring the party's advance acceptance of Section 5(b)'s modification process before the Commission may modify them. Meta Response ES-16; Meta Reply 6 & n.7. Meta claims that the absence of Rule 2.32(c)'s language from the 2020 Order and the Stipulated Order should be viewed as an intentional act, undermining the Commission's ability to undertake this modification proceeding. Meta Response 27.

We find Meta's Rule 2.32(c) argument unpersuasive. To begin with, it misses the bigger picture of Section 5(b). That statute authorizes modification without regard to the type of order (see Section III.a above) and is therefore read into every order. Under binding Supreme Court authority, the 2020 Order includes all relevant statutory provisions, which are "necessarily implicit in every order issued under the . . . [FTC] Act, just as if the order set them out *in*

10

*extenso.*" *FTC v. Ruberoid Co.*, 343 U.S. 470, 476 (1952). Rule 2.32, a regulation, is subordinate to Section 5(b) and cannot exclude authority that the statute confers.

Moreover, treating Rule 2.32(c) as necessary to confer substantive modification authority leads to an absurd result because that section also states that consent orders have the same force and effect as litigated orders. That principle is already black letter law.[5] There is no need to include it in an agreement to make it effective. By the same reasoning, the modification right need not be in the agreement for it to be effective.

Nor is Rule 2.32(c) "regulatory surplusage," as Meta maintains. Meta Reply 2; *see also id.* at 7–8; Meta Response 22. The language gives the settling party notice of the statutory modification rights which both parties possess. The language thus serves a belt-and-suspenders function that may simplify future proceedings and head off disputes such as this one.

Finally, Meta's assertion that inclusion of Rule 2.32 language in conjunction with the 2012 Order but not the 2020 Order reveals the Commission's intention to relinquish modification rights as to the latter order is unsustainable. Rule 2.32 requires that notice of the government's modification rights be inserted into the agreement in settlement of a Commission complaint. 16 C.F.R. § 2.32(c). Because the parties proceeded by modification in 2019 and there was no new agreement containing consent order, the Rule 2.32 requirements did not require restatement of the modification rights.[6] But Facebook received notice of the parties' modification rights via the Rule 2.32(c) language in Paragraph 6 of the 2011 Agreement Containing Consent Order, so it had no need for repetition of the notice in 2019. In any event, waiver of either party's Section 5(b) rights would be disfavored here. A waiver of statutory rights must be demonstrated by "an express statement in the contract to that effect," and "even explicit language will not be read expansively." *George Banta Co., Banta Div. v. NLRB,* 686 F.2d 10, 20 (D.C. Cir. 1982) (citation omitted). The Commission should not be taken to have waived its modification rights for consent orders through the ambiguous route of a claimed *absence* of language from a rule (2.32(c)) that applies, not even directly to orders, but to agreements containing consent orders.

### c. The OTSC Is Not an Unlawful Attempt at Order Enforcement

Meta argues that order enforcement and order modification are categorically distinct activities. Meta Response 31–32. According to Meta, the Commission lacks authority to enforce its own orders or to adjudicate whether they have been violated. Meta Response, ES-18, 22, 30–33; Meta Reply 14. Meta contends that the Commission "styled" the OTSC as an enforcement action, which means that it is ultra vires and should be vacated because only courts can enforce FTC orders. Meta Response 31-32.

---

[5] *See Dr. Pepper/Seven-Up Cos. v. FTC*, 798 F. Supp. 762, 773 (D.D.C. 1992) (subsequent history omitted) (citing *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223 (1975)); *accord W. Tex. Transmission, L.P. v. Enron Corp.*, No. SA 88 CA 0638, 1988 WL 156330, at *9 (W.D. Tex. Dec. 16, 1988), *aff'd*, 907 F.2d 1554 (5th Cir. 1990).

[6] In fact, as explained in Section III.d, the 2011 Agreement Containing Consent Order applies to the modifications to the 2012 Order in 2020 and provides Meta's consent to the pending OTSC. This buttresses the conclusions we reach above regarding Rule 2.32(c).

11

Meta is incorrect. The Commission is seeking (only) to modify an order using an OTSC proceeding designed exclusively for that purpose. Meta's reliance on the text of the OTSC, which Meta claims is "styled as" order enforcement, proves our point. Meta's claim is based on the appearance of the word "enforcement" one time, on page 12 of the OTSC. The OTSC itself requests only modification as a remedy. Meta cites instances where the Commission publicly mentioned alleged non-compliance with the Order in the context of the proceeding. Meta Response 31. Yet, whether or not these allegations prove to be relevant to the OTSC proceedings and the nature of any needed modification, they do not transform the OTSC into an enforcement action.

Even if the OTSC used the term "enforcement" to describe the statutorily sanctioned modification process, this type of "enforcement" need not be dealt with by the courts. Seeking contempt sanctions or civil penalties are forms of enforcement that can only be addressed judicially. But revising an order to make it more effective would be a very different species of "enforcement," and it can be accomplished administratively. Meta cites two instances in which the Commission states that enforcement must take place in court, but in each instance the Commission was referring to penalties and not order modification. *See In re Intuit Inc.*, No. 9408, 2024 WL 382358, at *56 (F.T.C. Jan. 22, 2024), *argued*, 24-60040 (5th Cir. Nov. 4, 2024) (referring to 15 U.S.C. § 45(*l*) penalty action); *FTC v. Owens-Corning Fiberglas Corp.*, 853 F.2d 458, 462 (6th Cir.1988) (same). In this proceeding, the Commission's mandate will be to assess the necessity, or lack thereof, of a modification on a forward-looking basis. It cannot, and will not, assess whether penalties for past conduct are appropriate. Thus, the Commission has not entered any purportedly forbidden territory of enforcement.

Meta cites *FTC v. Morton Salt Co.*, 334 U.S. 37, 54 (1948) and *United States v. J.B. Williams Co.*, 498 F. 2d 414, 422 (2d Cir. 1974), in support of its claims that the Commission is engaging in enforcement activity reserved to the federal courts. But neither case involved policing the boundary between the Commission's modification power and judicial enforcement or addressed the Commission's ability to consider order violations when exercising its modification authority. *Morton Salt* addressed the distinct issue of whether an enforcing court could relitigate the factual underpinnings of a Commission order and found that it could not. The Court explained, "[t]he enforcement responsibility of the courts, once a Commission order has become final . . . is to adjudicate questions concerning the order's violation, *not questions of fact which support that valid order.*" 334 U.S. at 54. (emphasis added). The Second Circuit in *J.B. Williams Co.* interpreted *Morton Salt* as guiding the activities of a court of appeals or a district court in a Section 5(*l*) penalty case. 498 F.2d at 422. Since neither *Morton Salt* nor *J.B. Williams Co.* actually addresses the Commission's activity in a modification case, neither holds that the Commission may not exercise its statutory authority to modify a consent order in an administrative proceeding.

d.  **Meta's Contractual Arguments Lack Merit**

Finally, Meta asserts that the 2020 Order should be treated as a contract and does not allow for unilateral modification. Meta Response ES-17, 21, 23–25. Meta states that the authority for consent orders is not Section 5(b) but the consent of the respondent. Oral Arg. Tr.

12

13, 16–17; Meta Response 21 n.152. According to Meta, the Commission is bound by "hornbook law" that one party to an agreement cannot modify it absent express agreement. Meta Response 21.

Even assuming that contract principles are controlling, Meta has contractually authorized modification under the standards specified by Section 5(b). Paragraph 6 of the Agreement Containing Consent Order ("the 2011 Agreement"), entered by Facebook, Inc. and the Federal Trade Commission in November 2011, states in relevant part:

> This agreement contemplates that, if it is accepted by the Commission, and if such acceptance is not subsequently withdrawn by the Commission pursuant to the provisions of Section 2.34 of the Commission's Rules, the Commission may, without further notice to proposed Respondent, (1) issue its complaint corresponding in form and substance with the attached draft complaint and its decision containing the following order in disposition of the proceeding, and (2) make information about it public. When so entered, the order shall have the same force and effect and may be altered, modified, or set aside in the same manner and within the same time provided by statute for other orders.

The Commission's 2020 Order modified the 2012 Order that initially "follow[ed]" the 2011 Agreement. While the 2020 Order replaced the 2012 Order, the 2011 Agreement remained undisturbed and in full effect.[7] Consequently, the contractual modification right specified in the 2011 Agreement applies to the modifications to the 2012 Order in 2020 and provides Meta's consent to the pending OTSC. Under Meta's strained reading, the 2011 Agreement somehow only authorized a "one-time" modification despite its plain language to the contrary. We reject that reading and find that the 2011 Agreement authorizes Meta's consent to these proceedings.

Even setting these facts aside, and supposing arguendo that Facebook had not agreed to subsequent modification proceedings, we still find Meta's contractual arguments unpersuasive The Commission is not merely a party to a contract, but "a body charged with the protection of the public interest" that can reopen and modify an order if it determines that the public interest will be served thereby. *Elmo Co.*, 389 F. 2d. at 552; 15 U.S.C. § 45(b). Absent an express modification right, modification authority would nonetheless flow from the 2020 Order's status as an administrative order issued to serve that public interest.

Courts recognize a clear difference between construing a decree, which relies on contract principles, and modifying it, which does not.[8] These authorities belie Meta's argument

---

[7] See Oral Arg. Tr. 46 (Complaint Counsel stating, "The 2020 modification changed the language of the accompanying 2012 consent order, but it did not disturb the 2011 settlement agreement containing that consent order.").

[8] *See ITT Cont'l Baking Co.*, 420 U.S. at 236 n.9 (differentiating circumstances appropriate for interpreting decrees versus amending them); *Hughes v. United States*, 342 U.S. 353, 357 (1952) (noting that a remedy that was not available by construing a decree could nonetheless be available by modifying

13

that contract principles prevent modification. Meta quotes the Supreme Court's statement in *ITT Continental Baking* that FTC consent orders are construed "basically as contracts." Meta Reply 42 (quoting 420 U.S. at 238). However, the Court in that case was interpreting the consent order, not reviewing its modification.[9] *ITT Continental Baking* itself treated modification as an alternative to construction. 420 U.S. at 233 n.8, 236 n.9. Here, we are dealing with modification, and that imports the statutory analysis appropriate to orders. In *Facebook I*, the District Court emphasized the character of the 2020 Order as an administrative order that the Commission had voted to issue. *See* 2023 WL 8190858, at *4. Amplifying this point, in denying an injunction pending appeal in *Facebook II,* the Court of Appeals found that "Meta's attempt to repackage the matter as involving contract law fails for a simple reason: there is no contract," but rather "an administrative order." 2024 WL 1549732, at *4.

Meta argues that the Commission has never reopened a consent order when the respondent did not agree to a modification. Meta Response ES-17, 18–22; Meta Reply 2. The Commission has, in fact, issued orders to show cause that were contested. *See, e.g., Elmo Co. v. FTC*, 389 F.2d at 552; *ITT* Order Directing Hr'g for Receipt of Evid., *ITT Cont'l Baking Co.*, 81 F.T.C. 1021 (Aug. 1, 1972); *Nat'l Housewares, Inc.*, 84 F.T.C. 1566; Order, *Devcon Corp.*, 73 F.T.C. 272, 281 (Feb. 6, 1968) (modifying consent order pursuant to order to show cause). The fact that respondents in those cases had, as required by Rule 2.32(c), acknowledged that their orders were modifiable, does not mean they consented to the agency's modification plans.[10]

---

it after a proper hearing); *Allen v. Louisiana*, 14 F. 4th 366, 371 (5th Cir. 2021) (noting that a consent decree is a "hybrid" creature, part contract and part judicial decree). Modification of a decree takes place not under contract principles, but under a court's inherent power or Fed. R. Civ. P. 60(b). *See, e.g.*, *David C. v. Leavitt,* 242 F.3d 1206, 1211, 1213 (10th Cir. 2001).

Moreover, the cases that Meta cites do not support its claims. In *People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205*, 961 F.2d 1335, 1337 (7th Cir. 1992), the court readily acknowledged that when an injunction is joined to the parties' agreement, the result is "more than a contract," and observed unremarkably that the parties nonetheless cannot dispose of the rights of a third party. The case did not implicate Fed. R. Civ. P. 60(b). *1-800 Contacts, Inc.* does not support Meta's argument either. 166 F.T.C. 250 (2018), *rev'd on other grounds*, 1 F.4th 102 (2nd Cir. 2021). In that case, the alleged illegal conduct was a series of horizontal agreements that were mostly styled as trademark litigation settlements but restricted online keyword advertising among sellers of contact lenses. The Commission's remedy would have barred litigants from enforcing certain of the agreements in court. *1-800 Contacts,* 166 F.T.C. at 305. The Commission reaffirmed that private agreements remain subject to administrative review and antitrust scrutiny regardless of whether they are embodied in consent orders. *Id.* To the extent this holding is relevant, it does not aid Meta.

[9] In *ITT Continental Baking*, the Court addressed a technical question of whether a transaction consummated in violation of a consent order constituted a "continuing failure or neglect to obey" under the FTC Act, or whether each day of acquisition and holding constituted a separate act, for purposes of calculating statutory penalties. Contractual principles provided an aid. 420 U.S. at 238.

[10] We also reject Meta's argument that the inclusion to its benefit of two sections of the 2020 Order specifying that the parties could agree on particular types of modifications implies the absence of any more general modification rights. Meta Response at 25–26 (citing 2020 Order Parts II-III). Parties who

14

Meta is also incorrect to argue that, to the extent a consent order is modifiable by the Commission, such modifiability is improperly unilateral and lacking consideration. *See, e.g.*, Meta Response 23–24 (claiming that the Commission's ability to seek modification would "unilaterally obliterate" the consideration for the original agreement, rendering it "illusory and valueless"). Modification is not premised on the unilateral whim of the Commission. The proposed modification must meet a substantive standard,[11] and respondents receive substantial procedural protections. Respondents have an opportunity to be heard on the Commission's decision whether to reopen and modify and on the contents of any changed order. 16 C.F.R. § 3.72. In the event of substantial factual disputes, the Commission directs hearings as appropriate, including evidentiary hearings before the Commission or an ALJ, who would conduct such hearings insofar as practicable under the Commission's adjudicative rules. 16 C.F.R. § 3.72(b)(2). Here, Respondent raised threshold issues about the applicability of Section 5(b), among other matters, and the Commission provided an opportunity for a dedicated round of briefing and oral argument to address these issues. When the Commission modifies its orders, those modifications are subject to appellate review. 15 U.S.C. § 45(b), (c).

Relatedly, Meta argues that it "is not reasonable to suppose" that a party would pay a substantial sum (in this case, $5 billion) to finally resolve all released claims, and "leave to the [government] the absolute right completely to nullify the chief consideration" underlying the agreement. Meta Response ES-17 (quoting *Appleby v. Delaney*, 271 U.S. 403, 413 (1926)). But Meta's release has the same scope and effect that it always did. Meta has at all times been represented by sophisticated counsel and is charged with knowledge that Section 5(b) grants the Commission "clear authority to reopen and modify its own orders under its Rules of Practice establishing standards for so doing . . . ." *Nat'l Housewares*, 84 F.T.C. at 1570. As for the $5 billion order violation penalty that Facebook paid as part of a settlement, presumably it represented a voluntary compromise of Facebook's total exposure. Facebook cites no authority that paying a substantial penalty would confer any special immunity from modification proceedings.

---

negotiate agreements often build in redundancies. Meta here obtained a valuable mention of the potential need for modifications to address technological change in two areas. This implies nothing about the presence or absence of the Commission's normal statutory modification rights.

[11] The Commission must find that conditions of fact or of law have changed so as to require modification or that the public interest so requires. 15 U.S.C. § 45(b)

15

## IV. CONCLUSION

Without ruling on Meta's jurisdictional challenges pending in the United States Court of Appeals for the District of Columbia Circuit, for the reasons discussed above we find that Meta's challenges to the Commission's authority to conduct the OTSC proceeding under Section 5(b) of the FTC Act lack merit and form no basis for vacating the OTSC. We will specify mechanisms for resolving remaining issues at a later date.

By the Commission.

April J. Tabor
Secretary

SEAL:
ISSUED: January 10, 2025

FEDERAL TRADE COMMISSION | OFFICE OF THE SECRETARY | FILED 01/10/2025 OSCAR NO. 612627-PAGE Page 1 of 1 * CONFIDENTIAL *

USCA Case #23-5280   Document #2094168   Filed: 01/15/2025   Page 19 of 19



UNITED STATES OF AMERICA
**Federal Trade Commission**
WASHINGTON, D.C. 20580

Office of Commissioner
Andrew N. Ferguson

**Statement of Commissioner Andrew N. Ferguson
Concurring in Part and Concurring in the Decision
Commission Decision Regarding Section 5(B) Modification Authority
In the Matter of Facebook, Inc.
Docket Number C-4365**

January 10, 2025

Today the Commission issues a decision rejecting various arguments that Meta Platforms, Inc. (previously known as Facebook, Inc.) raised against the Commission's Order to Show Cause Why the Commission Should Not Modify the Order and Enter the Proposed New Order ("Order to Show Cause").[1] I agree with the decision's analysis as to several of Meta's arguments—that the authority to modify orders under Section 5(b)[2] does not extend to consent orders, that the absence of language in the previous order allowing modification precludes modification, and that consent orders are contracts not allowing unilateral modification. I also agree with the decision's conclusion that the Order to Show Cause is not an illegal attempt at order enforcement, but I think the decision's analysis on this argument misses the mark.

"Enforcement" of an order involves some process for compelling a party subject to an order to conform its conduct to the requirements of the order.[3] Meta is correct that "enforcement" of Commission orders is reserved to the judiciary. Only the judiciary can issue an injunction compelling the subject of an order to comply with the order, or civil penalties and consumer redress for failing to obey the order.[4] Modification of an order, even when the basis for that modification rests in part on violations of the order, is not "enforcement" of that order in any meaningful sense. Modifying an order does nothing to compel the party to comply with that order. The Commission's loose use of the word "enforcement" to describe order modification has now created considerable confusion and given rise to Meta's argument that the Order to Show Cause is an illegal attempt at "enforcement." Order modification is not enforcement. The Commission's use of the word to describe it was a mistake. We ought not to repeat it. But the Commission's misuse of the English language does not transform order modification into enforcement. Order modification cannot compel compliance with an order; it therefore is not enforcement of that order, no matter what label the Commission has attached to it. I therefore concur in the decision's rejection of Meta's argument to the contrary.

---

[1] *In re Facebook, Inc.*, Dkt. No. C-4365 (May 3, 2023).
[2] 15 U.S.C. § 45(b).
[3] *Enforcement*, Black's Law Dictionary (12th ed. 2024) ("The act or process of compelling compliance with a law, mandate, command, decree, or agreement; specif., the forcible or compulsory exaction of some duty, such as making a payment, honoring a promise, or otherwise meeting a responsibility").
[4] See 15 U.S.C. § 45(c)–(e), (l)–(m); *id.* § 57b(a)(2).