# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 5, 2024            Decided May 16, 2025

No. 23-5280

UNITED STATES OF AMERICA,
APPELLEE

v.

FACEBOOK, INC.,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-02184)

———

*James P. Rouhandeh* argued the cause for appellant. With him on the briefs were *Michael Scheinkman*, *David B. Toscano*, *Marc J. Tobak*, *John A. Atchley III*, and *Paul J. Nathanson*.

*Zachary L. Cowan*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Arun G. Rao*, Deputy Assistant Attorney General, *Amanda N. Liskamm*, Director, Consumer Protection Branch, *Lisa K. Hsiao*, Senior Deputy Director, Civil Litigation, *Zachary A. Dietert*, Assistant Director, *Zachary L. Cowan*, Attorney, and *Scott P. Kennedy*, Attorney.

2

Before: RAO and WALKER, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: This appeal is the latest chapter in a long-running consumer-privacy dispute between Facebook[1] and the Federal Trade Commission. In 2020, the parties reached a two-part settlement: a consent order in the district court and an agency order on the FTC's administrative docket. The FTC later reopened the administrative docket to address alleged noncompliance with the settlement. Facebook then moved to enjoin those proceedings, arguing that the consent order governed the entire settlement and prevented unilateral modification. The district court, viewing the administrative and judicial processes as distinct, held that it lacked jurisdiction over the agency docket. We reverse and remand.

## I.

In 2012, the FTC filed an administrative complaint against Facebook, alleging that it had disregarded users' privacy settings when sharing data with third parties. Facebook settled that complaint by consenting to an administrative order entered on the FTC's docket. The 2012 administrative order directed Facebook to implement a privacy program including certain consumer disclosures and the employment of an independent auditor.

In 2019, the FTC concluded that Facebook had violated the

---

[1] During the course of the administrative and judicial proceedings in this case, Facebook, Inc., changed its name to Meta Platforms, Inc. We use "Facebook" as a shorthand for the company.

3

2012 order and referred a complaint to the Justice Department. In the agency's view, Facebook had continued to ignore users' privacy settings when sharing data. Facebook, the FTC, and DOJ ultimately reached a new settlement agreement to resolve the complaint. That settlement entailed a $5 billion fine and a series of remedial measures, including data-privacy reforms, reporting obligations, and monitoring. Facebook was also required to hire a third-party "assessor" to review its privacy practices.

To effectuate this agreement, the United States simultaneously filed—in district court—a new civil complaint, a consent motion for entry of judgment, and a proposed Stipulated Order. The Stipulated Order formalized the $5 billion monetary judgment and provided payment logistics. But it took a different tack with the injunctive relief. Instead of listing all the settlement provisions, the Stipulated Order merely required that Facebook "shall consent" to reopening the FTC docket to replace the 2012 order with a new order. App. 99. This new FTC order provided the specifics of the settlement and was appended to the Stipulated Order as "Attachment A." In addition, the Stipulated Order reserved district court jurisdiction for disputes relating to "construction, modification, and enforcement" of the Stipulated Order. App. 100. Facebook agreed both to entry of the consent motion and the Stipulated Order.

In April 2020, the district court approved the settlement and entered the Stipulated Order with Attachment A. Several days later, and over dissents by two commissioners, the FTC reopened the Facebook docket and entered a new "Order Modifying Prior Decision and Order." App. 380. That order described Attachment A as a "new Decision and Order." *Id.*

Three years later, the FTC issued a "show cause" order proposing to modify the 2020 administrative order. Citing a

4

recent assessor's report finding deficiencies in Facebook's adherence to the settlement and the agency's authority to "modify" any order, *see* 15 U.S.C. § 45(b), the FTC proposed a temporary pause on any new features and limits on Facebook's ability to use data gathered from minors. Facebook filed no response with the agency; instead, it moved in district court to "enforce" the original settlement by enjoining any further administrative proceedings. App. 233.

The district court denied Facebook's motion. The court determined that the terms set forth in Attachment A "were not made part of the Stipulated Order itself," App. 699, and thus "were not ordered by the Court," App. 703. Instead, the district court believed that those terms only became binding "later, when the FTC issued its 2020 administrative order." *Id.* And since the Stipulated Order only retained district court jurisdiction for disputes arising from the Order itself, the court held that it lacked jurisdiction over the FTC's parallel administrative proceeding. The court accordingly declined to reach any of Facebook's merits arguments. Facebook took this appeal.

## II.

### A.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Although subject matter jurisdiction typically arises from statutory grants, federal courts also possess "ancillary jurisdiction" in certain circumstances. *Id.* at 378.

"Generally speaking," one purpose of ancillary jurisdiction is "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its

5

decrees . . .." *Id.* at 379–80. With respect to the enforcement of settlement agreements, the federal courts' ancillary jurisdiction is limited to the enforcement of court orders containing "a provision 'retaining jurisdiction' over the settlement agreement" or "incorporating the terms of the settlement agreement in the order." *Id.* at 381. In those cases, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.*

In this case, both parties agree that the district court retained jurisdiction over the Stipulated Order itself. *See* App. 100 ("[T]his Court shall retain jurisdiction . . . for purposes of construction, modification, and enforcement of this Stipulated Order."). The central question is therefore whether Attachment A was part of the Stipulated Order.

**B.**

The Stipulated Order is a consent decree, "essentially a contract," and we therefore construe it "according to general principles of contract law." *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 339 (D.C. Cir. 2014) (first excerpt quoting *Segar v. Mukasey*, 508 F.3d 16, 21 (D.C. Cir. 2007)). Applying those principles, we first assess the document itself to determine "what a reasonable person in the position of the parties would have thought the language meant." *Richardson v. Edwards*, 127 F.3d 97, 101 (D.C. Cir. 1997). But if "the document itself is ambiguous," we can "look to extrinsic evidence of the parties' subjective intent." *Volvo*, 758 F.3d at 340 (quoting *Segar*, 508 F.3d at 22). This inquiry includes "aids to construction" such as "the circumstances surrounding the formation of the consent order." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975). We construe the Stipulated Order de novo. S*ee Volvo*, 758 F.3d at 337.

6

While the two documents here are themselves not entirely clear, the surrounding context—most significantly, the accompanying district court opinion—shows that Attachment A was part of the Stipulated Order.[2]

---

[2] Facebook also suggests that Attachment A, if a separate document, might violate Federal Rule of Civil Procedure 65(d)(1)(C). Under that rule, an injunction must describe its terms "in reasonable detail" and without "refer[ence] to the complaint or other document." Fed. R. Civ. P. 65(d)(1)(C). Other circuits have split on whether an injunction "refer[s]" to a document that is physically attached. *Compare Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) ("The court's incorporation of these specific terms by reference in an order, to which they are attached, would fully satisfy the requirements of Rule 65(d)."), *State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 783 (9th Cir. 1998) (injunction with documents "physically attached" was "consistent[] with" Rule 65), *and Combs v. Ryan's Coal Co.*, 785 F.2d 970, 979 (11th Cir. 1986) (approving Rule 65 compliance based on a review of "the decree and its attachments"), *with Dupuy v. Samuels*, 465 F.3d 757, 758 (7th Cir. 2006) (rejecting incorporation by reference for "physically attached" materials as "complicat[ing] the administration of the rule" through "thoughtless attachment of separately composed documents"), *and Hatten-Gonzales v. Hyde*, 579 F.3d 1159, 1168–69 (10th Cir. 2009) (suggesting that an injunction with "physically attached" materials "may have fallen short of the specificity requirement of Rule 65(d)"). But since we hold that Attachment A was itself part of the Stipulated Order, not merely referenced, we have no occasion to decide this question. *See* Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2955 (3d ed. 2025) ("It is noteworthy that most courts that have mentioned the third requirement of Rule 65(d)(1) have done so in cases in which reference has been made in the injunction to *outside documents*." (emphasis added)); *cf. Seattle-First Nat'l Bank v. Manges*, 900 F.2d 795, 800 (5th Cir. 1990) (holding that Rule 65(d) "require[s] that the parties be able 'to interpret the injunction from the four corners of the order'" (quoting *FTC v. Sw. Sunsites, Inc.*, 665 F.2d 711, 724 (5th Cir. 1982)).

7

Here, the text of the Stipulated Order and Attachment A do not settle the question whether Attachment A was part of the Order. Neither document delineates the precise scope of the district court's order, and the Stipulated Order does not explain the status of Attachment A. To be sure, the district court did order Facebook to consent to the entry of Attachment A on the FTC docket. But that does not disprove that Attachment A was incorporated into the court order.

To the extent the documents provide any hints, those hints are conflicting and hard to reconcile. Some details point toward the Stipulated Order incorporating Attachment A. For example, the Stipulated Order's full title is a "Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief," App. 96, and the only injunctive relief was "in the form of" Attachment A, App. 186. Moreover, the first page of Attachment A states that, "[t]his Court has jurisdiction over this matter," App. 104, and the only potential court was the district court. In addition, the Stipulated Order and Attachment A were entered onto the district court docket as a package, suggesting that they collectively comprised the consent decree. On the other hand, Attachment A does not look like a district court order. It is styled as a "Decision and Order" of the FTC, complete with the "Federal Trade Commission" header, the FTC docket number, and the signature of the FTC's Acting Secretary. Its introduction states that, "the Commission . . . issues the following Order," App. 104, and it became effective "upon the date of its publication on the Commission's website (ftc.gov) as a final order," App. 123.

Other indications—specifically, those contained in the district court's contemporaneous opinion approving the settlement—clearly show that Attachment A was part of the Stipulated Order. A court order is not "an isolated, self-contained writing but [an] order with the gloss of" an

8

accompanying opinion. *Hotel & Rest. Emps' Int'l All., Loc. No. 122 v. Wis. Emp. Rels. Bd.*, 315 U.S. 437, 441 (1942). Accordingly, injunctions should be read with all the connotations "that are infused into their terms by the opinions" of the issuing court. *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers Union, Loc. 309 v. Hanke*, 339 U.S. 470, 480 (1950).[3]

First, the opinion repeatedly stated that the Order directly imposed the injunctive relief contained in Attachment A. The opinion's first page explained that "the order would . . . *impose* injunctive relief in the form of an amended administrative order" on the FTC docket. App. 186 (emphasis added). Elsewhere, the opinion recounted that "[t]he United States has moved, with Facebook's consent, for the Court to enter a stipulated order that . . . *imposes injunctive relief* in the form of an amended administrative order." App. 191 (emphasis added).

Second, the opinion described the entire settlement as contained within the "Stipulated Order," including provisions only listed in Attachment A. For example, after listing the settlement terms, it noted that "[t]he Stipulated Order spells out Facebook's obligations precisely, it defines key terms in detail, and it incorporates specific deadlines." App. 197. But the

---

[3] We note that the district court's more recent opinion, at issue here, held that the Stipulated Order did not include Attachment A. While we assign deference to that interpretation, we conduct our own inquiry and the district court's view is not "necessarily conclusive." *FCC v. Pottsville Broad. Co.*, 309 U.S. 134, 141 (1940); *see also United States v. Bd. of Educ. of City of Chi.*, 717 F.2d 378, 382 (7th Cir. 1983) ("[T]he interpretation of consent decree provisions, like the interpretation of contract provisions, is a matter of law and subject to plenary review on appeal. The district court's views on interpretation, however, are entitled to deference." (citations omitted)).

9

obligations, terms, and deadlines were all located in Attachment A, not the five-page Stipulated Order. Similarly, when rebutting charges by amici curiae that the settlement was too lenient, the opinion held that "the *overall terms* of the Stipulated Order" passed muster because they went "far enough." App. 197–98 (emphasis added). But this language would make little sense if it referred only to the bare five-page Order, since the Order contained few of the "overall terms" of the settlement and itself ordered very little, if anything, that could be characterized as injunctive relief.

Third, the opinion discussed possessing continued jurisdiction to adjudicate violations of both the Stipulated Order and Attachment A. The court stated that, "under the Stipulated Order[,] it retain[ed] jurisdiction over this matter, including to enforce its terms." App. 201. And it cautioned that if Facebook "continued to violate the law or the terms of the amended administrative order" in Attachment A, it would impose a harsher penalty. *Id.* If Attachment A had no judicial force, the district court could not have retained jurisdiction to require adherence to its terms.

The FTC's only countervailing evidence is that it engaged in a separate process to adopt Attachment A on its docket and that two commissioners dissented. But those proceedings were unsurprising, as the Stipulated Order expressly contemplated implementation steps by the FTC. And while the dissenting votes might suggest a belief that the court had not ordered the settlement terms, their opposition was on policy grounds and was silent on the status of Attachment A. *See* App. 364–78. The district court's extensive comments on the very legal question now at issue here are a far better indicator of the parties' contemporaneous intent.

* * *

10

Because the 2020 Stipulated Order included Attachment A, the district court retained jurisdiction over both documents. Since the district court's dismissal on jurisdictional grounds meant that it never reached the merits, we reverse and remand so that it may consider Facebook's claims in the first instance.

*So ordered.*